Case No. 23-55770

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SKOT HECKMAN, LUIS PONCE,
JEANENE POPP, JACOB
ROBERTS, on behalf of themselves
and all those similarly situated,
Plaintiffs-Appellees,

v.

LIVE NATION ENTERTAINMENT,
INC., TICKETMASTER, LLC,
Defendants-Appellants.

Appeal from the United States District Court
for the Central District of California
The Honorable George H. Wu Presiding
Case No. 2:22-cv-00047-GW-GJS

## MOTION TO EXPEDITE

Warren D. Postman
wdp@kellerpostman.com
Albert Young Pak
albert.pak@kellerpostman.com
Noah Heinz
noah.heinz@kellerpostman.com
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036
(202) 918-1123

Kevin Teruya
kevinteruya@quinnemanuel.com
Adam Wolfson
adamwolfson@quinnemanuel.com
William R. Sears, IV
willsears@quinnemanuel.com
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S Figueroa Street
10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Plaintiffs-Appellees*

## MOTION TO EXPEDITE[1]

This appeal is one of the first addressing an order denying a motion to compel arbitration since the Supreme Court's decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S. Ct. 1915 (2023). That decision held that district courts must stay proceedings while a court of appeals resolves whether the motion to compel arbitration was properly denied, abrogating this Court's longstanding rule applying the traditional stay factors. *Id.* at 1918. Even as it prescribed the strong medicine of a mandatory stay, the Supreme Court assured litigants that interminable delay would not be a side effect, because courts could—and would—act expeditiously and deter delay tactics. *See id.* at 1922.

The underlying action alleges that Live Nation Entertainment, Inc. ("Live Nation") and its subsidiary, Ticketmaster LLC ("Ticketmaster"), are inveterate monopolists who secretly and routinely violated the consent decree they entered with the Department of Justice that allowed their merger in 2010, and engaged in extensive other anticompetitive behavior so they can impose far-above-market fees on the ticket-

---

[1] Pursuant to Circuit Rule 27-12, Appellees state that Appellants have not served Appellees with a notice pursuant to Circuit Rule 10-3.1(a) and that Appellants have not yet filed a transcript order in the district court pursuant to Circuit Rule 10-3.1(d).

1

purchasing public. Plaintiffs-Appellees ("Consumers") filed suit under federal antitrust and California unfair competition law, and the district court denied a motion to compel arbitration because Defendants unconscionably changed their arbitration terms midstream during litigation on already-accrued claims. The Consumers now move this Court under Circuit Rules 27-12 and 34-3(5) to vindicate the Supreme Court's assurance in *Coinbase* by expediting this appeal.

Expedited treatment is especially warranted here because the issues are not particularly close. The district court denied the motion to compel arbitration for multiple, independent reasons, all of which are fact-specific. Defendants face a severe uphill climb in nullifying *all* of the district court's rationales. But, they gain tremendously from delay, since they continue to impose supra-competitive prices on ticket purchasers nationwide while this case is pending. Expediting the appeal would ensure Defendants cannot gain the benefit of excessive delay from their appellate right. If this case does not qualify for expedited treatment, it is hard to think of a section 16(a) appeal that would.

The current schedule sets the opening brief to be due December 18, 2023, a response brief January 17, 2024, and a reply 21 days later. *See*

Dkt. 1. The Consumers propose that the opening brief be due 21 days from the order granting this motion, with the response brief due 21 days after that, and the reply brief due 14 days later. The Consumers propose that no extensions be permitted. Last, the Consumers request that the Court direct the Clerk's Office to set this case for argument in the next available sitting once the briefs have been filed.

## BACKGROUND

In the first half of 2020, a group of consumers filed antitrust claims against Defendants identical to those asserted in this case. *See Oberstein, et al. v. Live Nation Enter., Inc., et al.*, No. 20-cv-03888 (C.D. Cal. Apr. 28, 2020), ECF No. 1. Defendants moved to compel arbitration; however, during the pendency of that lawsuit, it became clear to them that they might face thousands of arbitration demands for their antitrust violations, if they were successful in that motion. Defendants therefore searched for a way to tilt the arbitration playing field. Their litigation counsel (Latham & Watkins) spoke for hours with a new start-up called New Era ADR, which promised to provide a "critical prophylactic measure for client's mass arbitration risk." *Heckman, et al. v. Live Nation Enter., Inc., et al.*, No. 22-cv-00047 (C.D. Cal. Aug. 10, 2023), ECF

3

No. 202 (the "Arbitration Order") at 21. New Era had never conducted a single arbitration and did not even have arbitration rules. *Id.* at 3. After weeks of back-and-forth with Latham, New Era signed its first subscription customer (Defendants) and finalized its arbitration rules.[2] *Id.* Eager to hedge their upcoming mass arbitration risk, Defendants changed the arbitration forum in their Terms of Use from JAMS—a longstanding, reputable forum—to New Era. *Id.* at 7. The Terms purported to be binding immediately, but Defendants never announced this change and never flagged the forum-switch to New Era to consumers for their attention.

Once they became aware of this mid-litigation change, Consumers filed a class-action complaint in federal court, alleging the same claims as the previous lawsuit and noting that the arbitration agreement with New Era is unconscionable, and therefore unenforceable. Defendants once again moved to compel arbitration. After limited arbitration-related

---

[2] Notably, the discussions between Latham and New Era continued while the motion to compel was litigated in court, culminating in New Era attempting to change the rules midstream: "Indeed, there appears to be a remarkable degree of coordination between Latham and New Era in terms of their interpretation and the evolution of New Era's Rules." Arbitration Order at 16 n.13.

4

discovery, full briefing (including several rounds of supplemental briefing), and multiple hearings, Judge Wu denied the motion to compel in a methodical and thorough 30-page order, applying California's unconscionability doctrine in the well-established manner repeatedly applied by California state courts and this Court: by examining both procedural and substantive unconscionability. *See generally* Arbitration Order. Notably, because Defendants' terms of use contain a delegation clause, Judge Wu specifically focused his unconscionability analysis on the delegation clause itself, as this Court instructs for such situations. *Id.* at 8 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010)).

First, the order found "that the arbitration agreement (and more specifically, the delegation clause contained therein) is procedurally unconscionable to an extreme degree." *Id.* at 9. Defendants imposed a contract of adhesion, using their market power to require customers to accept its terms, and "these grounds alone" would support procedural unconscionability. *Id.* But here the "extreme amount of procedural unconscionability far above and beyond a run-of-the-mill" case was apparent based on the way Defendants modified their Terms of Use (TOU): "Specifically, the TOU were amended: (1) to bring about a

5

significant change in the parties' agreement (from individual, bilateral arbitration to mass arbitration); (2) unilaterally; (3) in the midst of ongoing litigation; (4) to be applied retroactively to already accrued claims; (5) without giving any notice to existing customers about this major change; and (6) while burying the true nature of this change in New Era's difficult-to-parse Rules." *Id.* at 9-10.

Second, the district court found the Terms (and "the delegation clause specifically") to be substantively unconscionable, again for multiple reasons: "(1) the mass arbitration protocol [in New Era's Rules] including the application of precedent from the bellwether decisions to other claimants plus the lack of corresponding procedural safeguards; (2) the lack of a right to [any] discovery and other procedural limitations; (3) the arbitrator selection provisions; and (4) the [one-way] limited right of appeal." *Id.* at 27. In light of the many unconscionable provisions and Defendants' extreme procedural unconscionability, the court declined to sever the unconscionable aspects of the arbitration clause. *Id.* at 28.[3]

---

[3] Notably, the district court did not rely on several of the Consumers' arguments, including those based on New Era's bias and the incompatibility of New Era's mass arbitration protocol with traditional bilateral arbitration. This Court could affirm on those bases as well as those provided by the district court.

6

Defendants filed a notice of appeal and moved to stay all proceedings in the district court, citing *Coinbase*. *See Heckman*, No. 22-cv-00047 (C.D. Cal. Sept. 8, 2023), ECF Nos. 212, 213. When asked, Defendants stated that they oppose Appellees' motion to expedite this appeal.

## ARGUMENT

"'Arbitration laws are passed to expedite and facilitate the settlement of disputes and avoid the delay caused by litigation,' not to provide 'a means of furthering and extending delays.'" *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 140 (4th Cir. 2018) (quoting *Radiator Specialty Co. v. Cannon Mills*, 97 F.2d 318, 319 (4th Cir. 1938)). The Supreme Court took pains to adhere to that creed in *Coinbase*, rejecting the argument that a mandatory stay would amount to an unwarranted procedural advantage held by defendants, who would have an incentive to appeal every denial of a motion to compel arbitration for the delay alone. That problem need not arise, it explained: "Importantly, moreover, the courts of appeals possess robust tools to prevent unwarranted delay and deter frivolous interlocutory appeals. For example, a party can ask the court of appeals to summarily affirm, *to*

*expedite an interlocutory appeal*, or to dismiss the interlocutory appeal as frivolous." *Coinbase*, 143 S. Ct. at 1922 (emphasis added).

Here, as with other section 16(a) appeals, expedition is appropriate. The Supreme Court specifically flagged that section 16(a) appeals should proceed quickly. "On remand, we anticipate that the Ninth Circuit here, *as we anticipate in § 16(a) appeals more generally*, will proceed with appropriate expedition when considering Coinbase's interlocutory appeal from the denial of the motion to compel arbitration." *Id.* at 1923 (emphasis added). Even before *Coinbase*, courts of appeals commonly granted motions to expedite section 16(a) appeals. *See, e.g.*, *Atkins v. CGI Techs. & Sols., Inc.*, No. 17-5506 (6th Cir. May 31, 2017), ECF Nos. 19 (granting a motion to expedite a section 16(a) appeal), 20 (setting all three briefs to be due within one month); Order on Mot. to Expedite, *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, No. 14-6158 (10th Cir. Oct. 9, 2014) (granting the motion to expedite argument of a section 16(a) appeal).

Those precedents make sense. Section 16(a) appeals like this one inherently delay litigation and deviate from the traditional final judgment rule. They are, moreover, substantially simpler than appeals

8

after a trial. Here, for example, the disputed issues have been fully briefed below, by the same law firms. There is no reason counsel cannot brief the relevant issues quickly. And there is no good reason why Consumers and the putative class of nationwide ticket purchasers should continue to suffer from Defendants' supra-competitive prices—and why Defendants should continue to benefit from the same—while the underlying litigation is stayed pending a prolonged appeal. Notably, Defendants promptly moved to stay the underlying litigation pending appeal, but oppose this motion to expedite the appeal's resolution.

*Coinbase* only strengthened the argument for an expedited appeal, particularly for appeals of fact-bound rulings that are specific to the circumstances surrounding the arbitration agreement at hand. Here, reversal would require overturning Judge Wu on multiple independent points, including key fact-specific determinations concerning procedural unconscionability: that "Defendants imposed the changes to their TOU . . . (1) to bring about a significant change in the parties' agreement (from individual, bilateral arbitration to mass arbitration); (2) unilaterally; (3) in the midst of ongoing litigation; (4) to be applied retroactively to already accrued claims; (5) without giving any notice to existing customers about

9

this major change; and (6) while burying the true nature of this change in New Era's difficult-to-parse Rules." Arbitration Order at 9-10. Under California law, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* at 6 (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015)). For that reason, knocking out one or two of the eight procedural unconscionability findings would not be enough; nor could Defendants prevail if this Court disagreed with respect to some of the four substantive unconscionability findings.

Rather, to prevail on appeal Defendants would need to demonstrate error in virtually every finding either of procedural or substantive unconscionability—including key factual findings on procedural unconscionability. These factual findings concern the specific circumstances of this arbitration agreement. This is the type of case that, before *Coinbase*, would not have been stayed under the traditional factors. After *Coinbase*, it is exactly the type of dubious, one-off appeal that should be expedited to ensure Defendants cannot profit from "unwarranted delay." *Coinbase*, 143 S. Ct. at 1922.

10

## CONCLUSION

For these reasons, Consumers respectfully request that the Court expedite this appeal.

Respectfully submitted,

Dated: September 25, 2023   By:   */s/Warren D. Postman*
Warren D. Postman

Warren D. Postman
Albert Young Pak
Noah Heinz
KELLER POSTMAN LLC

Kevin Teruya
Adam Wolfson
William R. Sears, IV
QUINN EMANUEL URQUHART & SULLIVAN, LLP

*Attorneys for Plaintiffs-Appellees*

**RULE 27-12 STATEMENT**

Pursuant to Circuit Rule 27-12, Appellees have conferred with opposing counsel to determine their position on this motion. Appellants oppose Appellees' motion to expedite this appeal.

Dated: September 25, 2023         */s/Warren D. Postman*
                                  Warren D. Postman

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27-1 because it contains 2,007 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 27(a)(2)(B).

Dated: September 25, 2023  /s/ *Warren D. Postman*
Warren D. Postman

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 25, 2023  /s/ *Warren D. Postman*
Warren D. Postman