**No. 23-55770**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**SKOT HECKMAN; LUIS PONCE;
JEANENE POPP; JACOB ROBERTS,**
**on behalf of themselves and all
those similarly situated,**

*Plaintiffs-Appellees,*

v.

**LIVE NATION ENTERTAINMENT, INC.;
TICKETMASTER, L.L.C.,**

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Central District of California
The Honorable George H. Wu
Case No. 2:22-cv-00047-GW-GJS

## OPPOSITION OF DEFENDANTS-APPELLANTS TO
## PLAINTIFFS-APPELLEES' MOTION TO EXPEDITE

Roman Martinez
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

Timothy L. O'Mara
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600
tim.o'mara@lw.com

*Counsel for Defendants-Appellants Ticketmaster L.L.C. and
Live Nation Entertainment, Inc.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Defendants-Appellants Ticketmaster L.L.C. ("Ticketmaster") and Live Nation Entertainment, Inc. ("Live Nation") hereby disclose and certify that, as of October 5, 2023: (1) Ticketmaster is a Virginia limited liability company with its principal place of business in Beverly Hills, California; (2) Ticketmaster is a wholly-owned subsidiary of Live Nation, a publicly-traded company; and (3) according to public records, Liberty Media Corporation owns more than 10% of the outstanding stock of Live Nation.

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................3

    A.    Factual Background....................................................................3

    B.    Procedural History....................................................................5

ARGUMENT ..........................................................................................................8

I.    PLAINTIFFS DO NOT SATISFY THE CRITERIA FOR EXPEDITION.............................................................................................8

    A.    Nothing About This Case Provides "Good Cause" For Expedition ....................................................................................8

    B.    Plaintiffs' Arguments For Expedition Are Meritless..........................10

II.    THERE ARE COMPELLING REASONS NOT TO EXPEDITE THIS APPEAL ...............................................................................14

    A.    This Appeal Raises Novel, Complex, And Important Questions ..............................................................................15

    B.    Expedition Would Prejudice Defendants ...........................................18

CONCLUSION ....................................................................................................20

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*All One God Faith, Inc. v. Hain Celestial Grp., Inc.*,
  2009 WL 4907433 (N.D. Cal. Dec. 14, 2009)..................................................11

*Coinbase, Inc. v. Bielski*,
  143 S. Ct. 1915 (2023)................................................................*passim*

*Cont'l Cas. Co. v. Staffing Concepts, Inc.*,
  538 F.3d 577 (7th Cir. 2008) ................................................9

*Gilmer v. Interstate/Johnson Lane*,
  500 U.S. 20 (1991)................................................................14

*McKee v. Audible*,
  2018 WL 2422582 (C.D. Cal. Apr. 6, 2018) ...................................20

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
  762 F.2d 1374 (9th Cir. 1985) ................................................9

*Oberstein v. Live Nation*,
  60 F.4th 505 (9th Cir. 2023) ................................................5

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010)................................................13, 16

*TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*,
  913 F.2d 676 (9th Cir. 1990) ................................................18

*Uber Techs., Inc. v. Am. Arbitration Ass'n, Inc.*,
  204 A.D.3d 506 (N.Y. App. Div. 2022) ...................................4

## STATUTES

9 U.S.C. § 16(a) ................................................2, 11

28 U.S.C.
  § 1292(a)(1) ................................................20
  § 1407................................................2

**RULES**

Ninth Cir. R. 3-3(b) .................................................................20

Ninth Cir. R. 27-12 ............................................................1, 8, 9

**OTHER AUTHORITIES**

Andrew J. Pincus et al., *Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of Commerce Inst. for Legal Reform (Feb. 28, 2023) ........................................................................................17

J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283 (2022) ...............4, 15, 17

# INTRODUCTION

On September 25, 2023—13 days after this appeal was docketed—Plaintiffs moved to expedite the appeal, proposing that Defendants file their opening brief just 21 days after an order on the motion. But Plaintiffs have not even tried to demonstrate "good cause" to justify expedition of any kind, much less to that extreme degree. Ninth Cir. R. 27-12. Nor can they: Plaintiffs are not incarcerated, their appeal is not at risk of becoming moot, and they are not threatened with any kind of irreparable harm. Rather, Plaintiffs seek to represent a nationwide class in a federal antitrust action and, having (for now) successfully overcome Defendants' motion to compel arbitration, they do not want to wait for this appeal to run its natural course. That is no good reason for expedition, notwithstanding Plaintiffs' distortion of the Supreme Court's recent decision in *Coinbase, Inc. v. Bielski*. That case observed only that expedition would be appropriate for "frivolous" or otherwise "improper[]" appeals—not appeals, like this one, raising myriad novel and complicated legal questions that the district court itself described as judicial "headaches." And apart from overreading *Coinbase*, Plaintiffs offer zero justification for diverting scarce judicial resources from parties who really need immediate review, or who have already waited their turn.

On the contrary, Plaintiffs' litigation conduct to date belies the sense of urgency permeating their motion. For the past 22 months, Plaintiffs were in no

1

apparent rush.  Before the district court, they proposed or agreed to at least seven stipulated time extensions, and never once sought to expedite the proceedings.  Their persistent and time-consuming efforts to avoid arbitration resulted in a complex and voluminous record, including thousands of pages of discovery, hundreds of pages of briefing, and three separate hearings on the merits.  Yet now they ask this Court to cut short the time that Defendants have to litigate *their* statutory right of appeal.  *See* 9 U.S.C. § 16(a).  This Court consistently rejects efforts by appellees to rush an appellant's conduct of their appeal.  *See, e.g.*, Order, *Van Dusen v. Swift Transp. Co. Inc.*, No. 17-15102 (9th Cir. May 9, 2017), ECF No. 19 (denying appellees' motion to expedite Section 16(a) appeal despite stay of underlying litigation).

Furthermore, there are compelling reasons to *deny* expedition, particularly on the severely truncated schedule that Plaintiffs propose.  This appeal involves novel and complex questions about arbitration procedures designed to address a troubling phenomenon pioneered by Plaintiffs' own counsel:  en masse arbitration filings designed to extract *in terrorem* settlements given the crushing cost of aggregate filing fees.  At issue here is an arbitration scheme that seeks to mitigate this systemic risk to arbitration through procedures modeled after the federal multidistrict litigation ("MDL") statute.  *See* 28 U.S.C. § 1407.  A ruling from this Court determining the circumstances under which such MDL-like procedures may be used

will have far-reaching consequences. These issues deserve thorough briefing and deliberation.

Expedition would also prejudice Defendants, who need the benefit of a regular briefing schedule to adequately present their case. And for two reasons, that prejudice is especially acute. First, Defendants have brought on specialist appellate counsel, who must familiarize himself with the case, while balancing numerous other pressing commitments. Second, Plaintiffs have filed a baseless motion for a preliminary injunction in the district court, one that raises entirely distinct legal issues and itself gives Plaintiffs an automatic right to an expedited appeal if and when the district court denies relief. *See Heckman v. Live Nation Entm't., Inc.*, No. 22-cv-00047 (C.D. Cal. Aug. 21, 2023), ECF No. 208 (motion for preliminary injunction); *see also* ECF No. 215 (opposition). Expediting this appeal along with it would only reward Plaintiffs' brazen attempt to spread Defendants' counsel thin by forcing them to litigate two simultaneous appeals on tight briefing schedules.

This Court should deny Plaintiffs' motion to expedite the appeal.

## BACKGROUND

### A.    Factual Background

Seeking to capitalize on the fact that arbitration providers did not have procedures designed to deal with thousands of individual claims that are virtually identical, Plaintiffs' counsel Keller Postman (formerly Keller Lenkner) pioneered a

plan to extort significant monetary settlements, without ever having to prove up a meritorious case in arbitration. That plan involves filing thousands—or even tens of thousands—of materially identical arbitration claims against a single defendant, all at once. *See, e.g.*, Opp. to Mot. to Compel Arb., *Abernathy v. DoorDash, Inc*., No. 3:19-cv-07545 (N.D. Cal. Jan. 16, 2020), ECF No. 157 at 6 (Keller Lenkner filed 6,250 employment arbitrations against DoorDash). Under traditional arbitration schemes, these so-called "mass arbitration" filings almost immediately trigger obligations for defendants to pay millions of dollars in filing fees. *See, e.g.*, *Uber Techs., Inc. v. Am. Arbitration Ass'n, Inc.*, 204 A.D.3d 506, 507 (N.Y. App. Div. 2022) (Uber facing minimum $91.6 million filing fee after mass arbitration filing of 31,500 claims). Faced with the prospect of these fees, defendants have little choice but to accept a "blackmail settlement." *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1921 (2023). Thus, mass arbitration filings—by design—almost never lead to arbitration or any meaningful consideration of the underlying legal claims. And if they do, the ensuing flood of claims overwhelms the arbitral system. *See* J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283, 1363 (2022). Adjudication on the merits is at best delayed—and often effectively denied.

In response to these developments, Defendants sought an arbitration provider that could fairly and efficiently handle thousands of identical claims without charging crippling filing fees. To that end, on July 2, 2021, they updated their Terms

of Use ("Terms") to designate New Era ADR ("New Era"), instead of JAMS, as their arbitration provider. *See* ECF No. 202 ("Arb. Order") at 1. Much like the federal MDL scheme, when a mass arbitration is filed with New Era, three bellwether cases are selected to be arbitrated to conclusion. After the arbitrator issues a decision in each bellwether, the parties participate in a mandatory, non-binding settlement conference. If the conference does not result in a settlement (or if individual claimants opt out of a settlement), the arbitrator then proceeds to adjudicate the remaining cases, guided by the bellwether decisions on common issues of law and fact, while hearing arguments from claimants who believe their cases involve individualized issues warranting a different outcome. ECF No. 166 at 2-7 (explaining New Era's Rules). New Era also offers a subscription pricing model that eliminates the up-front filing fee problem. ECF No. 30-1 at 10.

"In the event that New Era ADR is unable to conduct the arbitration *for any reason*," the Terms provide "the arbitration will be conducted by FairClaims," another arbitration provider, as a fallback option. ECF No. 31-29 at 94 (emphasis added). And if "FairClaims is [also] unable to conduct the arbitration for any reason," then the parties "mutually select an alternative arbitration provider." *Id.*

## B.  Procedural History

On February 13, 2023, this Court held that the arbitration scheme included in a prior version of Defendants' Terms was "a valid agreement." *Oberstein v. Live*

*Nation*, 60 F.4th 505, 509 (9th Cir. 2023). But after Defendants revised their Terms to designate New Era as their arbitration provider, the same law firms enlisted a new set of plaintiffs and re-filed a virtually identical case.

After Defendants once again moved to compel arbitration, Plaintiffs claimed that the change from JAMS to New Era converted what *Oberstein* recognized as a "valid agreement" into a procedurally and substantively unconscionable—and therefore unenforceable—arbitration clause. *See* ECF No. 134-1 at 5. Plaintiffs argued that the arbitration clause was procedurally unconscionable because it was part of a contract of adhesion and the change to MDL-like procedures was purportedly unfairly surprising. *See id.* at 6-9. They further contended that the agreement was substantively unconscionable, arguing, as relevant here, that: (1) New Era is allegedly biased in favor of Defendants; (2) its procedures violate certain fairness, notice, and representation requirements; (3) the arbitrator selection procedure violates a California statute; (4) New Era's rules do not permit adequate briefing or discovery; and (5) the appeal provision operates only to Defendants' benefit. *See id.* at 9-19. Plaintiffs also demanded extensive discovery—a process that dragged on for nearly a year. *See* ECF No. 36 at 2. But Plaintiffs never challenged the procedures of the alternative arbitration provider, FairClaims.

After being presented with more than 250 pages of briefing accompanied by dozens of declarations and exhibits, and after holding three hearings on the merits,

the district court issued a 30-page order denying Defendants' motion to compel on August 10, 2023. The district court recognized that, because the Terms contain a delegation clause that "clearly and unmistakably delegates issues of enforceability to the arbitrator," "the [c]ourt's unconscionability inquiry" had to be "limited to the delegation clause instead of the arbitration clause as a whole." Arb. Order at 8. Yet it nonetheless addressed all challenged aspects of the arbitration agreement based on the belief that "[e]ach of these elements is present with respect to the delegation clause specifically, as each applies to threshold issues of arbitrability." *Id.* at 27. And while the district court was "not entirely persuaded that the evidence of bias [was] all that Plaintiffs ma[de] it out to be," it agreed with Plaintiffs that the delegation clause and the arbitration agreement itself were both procedurally and substantively unconscionable. *See id.* at 16. The district court also refused to enforce the provisions designating FairClaims or a mutually agreeable arbitrator as fallback options, reasoning that "[b]ecause the parties have not briefed the issue," the court was "unable to conclude that requiring consumers to arbitrate" before FairClaims "would alleviate [its] concerns." *Id.* at 29.

On August 21, 2023, Plaintiffs asked the district court for a preliminary injunction that would "enjoin Defendants from applying any future arbitration clause" to *any* antitrust claims in this case, whether brought by the named Plaintiffs

themselves or putative class members.  *See* ECF No. 208-1 at 3.  Plaintiffs agreed to a two-week extension for a hearing on that motion, which is now set for October 19.

On September 8, 2023, Defendants timely appealed to this Court from the district court order denying their motion to compel arbitration, and moved for a mandatory stay of the District Court proceedings under *Coinbase*.  *See* ECF Nos. 212, 213.  A full 17 days later, and 13 days after this Court docketed the appeal, Plaintiffs filed this motion to expedite.

## ARGUMENT

This Court should deny Plaintiffs' motion to expedite this appeal.  Nothing about this case warrants expedition.  On the contrary, there are compelling reasons for this appeal to proceed in the ordinary course.

## I.  PLAINTIFFS DO NOT SATISFY THE CRITERIA FOR EXPEDITION

In this Circuit, expedition is granted only for "good cause."  Ninth Cir. R. 27-12(3).  Plaintiffs tellingly do not mention this standard anywhere in their motion to expedite.  And for good reason:  There is no good cause here.

### A.  Nothing About This Case Provides "Good Cause" For Expedition

Ninth Circuit Rule 27-12 provides that motions to expedite "will be granted upon a showing of good cause."  Prototypical examples of "good cause" include truly urgent situations where, in the absence of expedition, "an incarcerated criminal defendant" may be released before his appeal would be decided, "the appeal may

8

become moot," or "irreparable harm may occur." Ninth Cir. R. 27-12(1)-(3). Absent such extraordinary circumstances, this Court will deny expedited review, even where (unlike here) the request is unopposed. *See, e.g.*, Order, *In re Carrier IQ, Consumer Privacy Litigation*, No. 14-15846 (9th Cir. Jul. 10, 2014), ECF No. 8 (denying unopposed motion); Order, *Komaiko v. LegalZoom.com, Inc.*, No. 16-55422 (9th Cir. Apr. 5, 2016), ECF No. 7 (same).

The Court should deny expedition here too. Plaintiffs are not incarcerated. They seek to represent a nationwide class in an antitrust case about concert tickets; they just want it to happen faster. Nor will this appeal become moot in the absence of expedition. Either this Court will affirm (and Plaintiffs' claims will proceed in court), or this Court will reverse (and their claims will be sent to arbitration). Plaintiffs are also not threatened with irreparable harm absent expedition. They will just have to wait their turn, like everyone else. "[D]elay incident to an orderly process" is not "irreparable damage." *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, 538 F.3d 577, 581 (7th Cir. 2008). Plaintiffs have no good cause for expedition.

On the contrary, Plaintiffs' "long delay" in litigating this case—before and after obtaining a favorable district court ruling—betrays the complete "lack of urgency and irreparable harm" here. *Oakland Tribune, Inc. v. Chronicle Publ'g Co*., 762 F.2d 1374, 1377 (9th Cir. 1985). They repeatedly proposed or agreed to extensions and continuations throughout the district court proceedings. *See* Tr. of

H'rg on Mot. to Compel Arb. (C.D. Cal. May 1, 2023) at 49:17; *see, e.g.*, ECF Nos. 28, 131, 161.  Nor did Plaintiffs ever seek to expedite the litigation in district court.

Of course, Defendants do not fault Plaintiffs' counsel for their willingness to proceed in the district court at a reasonable pace.  But if there were really good cause for expedition, Plaintiffs could not have afforded to be accommodating.  Indeed, even though the district court issued its order denying Defendants' motion to compel arbitration on August 10, and even though Plaintiffs were fully aware that Defendants would appeal that decision, Plaintiffs *still* did not file a motion to expedite the appeal until September 25—which was 13 days after this appeal was docketed on September 12.  This Court should heed what Plaintiffs' conduct shows, not what their motion says.  There is no good cause for expedition here.

### B.    Plaintiffs' Arguments For Expedition Are Meritless

Plaintiffs do not even try to meet this Court's "good cause" standard for expedition.  In fact, that term does not appear anywhere in their motion.  Instead, Plaintiffs rely almost exclusively on the Supreme Court's recent decision in *Coinbase*, cherry-picking language noting that parties seeking affirmance of a denial of a motion to compel arbitration "*can ask* the court of appeals to summarily affirm, to expedite an interlocutory appeal, or to dismiss the interlocutory appeal as frivolous." *Coinbase*, 143 S. Ct. at 1922 (emphasis added); *see* Mot. at 1-2, 7-10. But *Coinbase* did not hold that *all* appeals from denials of a motion to compel

arbitration must be expedited. What *Coinbase* actually said was that expedition (among other procedural tools) could be used to address any risk of "*frivolous* appeals that would *improperly* delay district court proceedings." *Id.* (emphasis added). In *that* circumstance, "expedition" may be "appropriate." *Id.* at 1923.

Plaintiffs nonetheless act as though, after *Coinbase*, appeals from the denial of a motion to compel arbitration *always* result in "improper[] delay" given the mandatory stay of proceedings below. *Id.* at 1922; *see* Mot. at 8-9 (asserting that "Section 16(a) appeals like this one inherently delay litigation"). That is wrong. As the Supreme Court itself recognized in *Coinbase*, interlocutory appeals of orders denying qualified immunity also require mandatory stays. 143 S. Ct. at 1920 n.4. But qualified immunity appeals are frequently litigated in the ordinary course, including with extensions of time. *See, e.g.*, Order, *Bennett v. Hicks*, No. 22-36046 (9th Cir. Apr. 13, 2023), ECF No. 13 (granting appellant's motion to extend time). District court proceedings are likewise stayed during interlocutory appeals regarding California anti-SLAPP motions. *See All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, 2009 WL 4907433, at *2 n.2 (N.D. Cal. Dec. 14, 2009). And plaintiffs in anti-SLAPP cases aren't entitled to automatic expedition, either. *See, e.g.*, Order, *Martinez v. ZoomInfo Tech., Inc.*, No. 22-35305 (9th Cir. Jun. 28, 2022), ECF No. 15 (granting appellant's motion to extend time *despite appellee's opposition*). There is no good reason why a different rule should apply here.

*Coinbase* does not impose on the Courts of Appeals the burdensome task of adjudicating each and every appeal from the denial of a motion to compel arbitration on an expedited schedule. It simply noted that where an appeal was frivolous or would otherwise result in improper delay, expedition is one of several available tools in the docket-management toolbox.[1]

No serious argument can be made that this appeal is frivolous or otherwise improper to potentially warrant expedition under *Coinbase*. The district court itself acknowledged that an appeal here would present "a number of interesting issues" and that it would "be happy to hear what the [Ninth] Circuit says," given that complexity. Tr. of H'rg on Mot. to Compel Arb. (C.D. Cal. Aug. 10, 2023) at 21:5-10. Defendants are in good faith exercising their statutory right to appeal the district court's order and raise those novel and complex legal issues in this Court. Any delays caused by this appeal are not "improper[]," making expedition emphatically *not* "appropriate" under *Coinbase*. 143 S. Ct. at 1922-23.

Plaintiffs also say expedition is appropriate because "reversal would require overturning Judge Wu on multiple independent points, including key fact-specific

---

[1] The two out-of-circuit, pre-*Coinbase* decisions that Plaintiffs cite both involved *unopposed* motions to expedite. *See* Resp. iso Mot. to Expedite, *Atkins v. CGI Techs. & Sols., Inc.*, No. 17-5506 (6th Cir. May 15, 2017), ECF No. 16 at 2; Resp. to Mot. to Expedite, *In re Cox Enter., Inc. Set-top Cable Television Box Antitrust Litig.*, No. 14-6158 (10th Cir. Oct. 7, 2014), at 1. They are of no help to Plaintiffs.

determinations concerning procedural unconscionability." Mot. at 9. That is wrong. To begin, in concluding that multiple elements of the arbitration agreement render it unconscionable (and supposedly the delegation clause along with it), the district court emphasized that "[a]ny one of these elements, standing alone, might not suffice to invalidate the agreement." Arb. Order at 27-28. Only "when viewed together" were they enough. *Id.* That holistic conclusion is especially shaky given the district court's mistaken belief that Plaintiffs' kitchen-sink attacks on New Era's procedures were sufficiently directed to the delegation clause. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010). All this refutes Plaintiffs' assertion that "to prevail on appeal Defendants would need to demonstrate error in virtually every finding either of procedural or substantive unconscionability." Mot. at 10.

Furthermore, reversing the district court on *just one issue*—severability— would result in this case being arbitrated rather than litigated in federal court. Again, the Terms expressly provide that, if "New Era ADR is unable to conduct the arbitration for any reason," "arbitration will be conducted" by FairClaims or, failing that, a mutually agreeable arbitrator. ECF No. 31-29 at 94. For that reason, Plaintiffs' desire to be sent back to litigate in federal court in just a few weeks is a pipedream: The district court's severability decision is indefensible given *two* express contractual provisions making clear that any finding of unconscionability would not vitiate the entire arbitration agreement. And as to the agreed-upon

13

alternative arbitration provider, the district court improperly "indulge[d] [a] presumption that" FairClaims "will be unable or unwilling to retain competent, conscientious and impartial arbitrators," even though Plaintiffs failed to challenge FairClaims. *Gilmer v. Interstate/Johnson Lane*, 500 U.S. 20, 30 (1991). And Plaintiffs have forfeited any counterargument by failing to brief any such challenge to FairClaims before the district court. *See* Arb. Order at 29 (acknowledging that "the parties have not briefed the [FairClaims] issue" but deciding it anyway).

Regardless, the fact that this case involves myriad different legal issues is a reason to *deny* expedition, not to rush adjudication of this complicated appeal. This is no ordinary appeal from the denial of a motion to compel arbitration. The novel issues it presents regarding mass arbitration procedures demand careful and considered briefing. Requiring the opening brief to be filed in just eight days longer than it took Plaintiffs to file their motion to expedite would disserve the adjudicatory process. So even if *Coinbase* held that interlocutory arbitration appeals should usually be expedited—which it didn't—expedition *still* would not be warranted.

## II.   THERE ARE COMPELLING REASONS NOT TO EXPEDITE THIS APPEAL

Plaintiffs' failure even to try to carry their burden of demonstrating the requisite "good cause" is reason enough to deny their motion. But two more powerful factors confirm the correctness of that result. *First*, this case raises novel and complicated legal issues of tremendous importance that deserve to be fully aired

14

with sufficient time. *Second*, given the complexity of this appeal, Defendants will be prejudiced by a truncated briefing schedule.

## A. This Appeal Raises Novel, Complex, And Important Questions

Mass arbitration filings are a recent invention by Plaintiffs' counsel that arbitration providers have only begun attempting to address—efforts that courts, in turn, have only recently begun to assess. *See* Glover, *supra*, at 1364-73. Filing tens of thousands of identical claims creates intractable problems for arbitration providers and defendants alike. Arbitration providers do not have sufficient resources to handle all of them one-by-one, much less in a timely manner. And defendants are frequently forced to accept "blackmail settlements" based solely on the sheer size of up-front filing fees under traditional arbitration agreements. *Coinbase*, 143 S. Ct. at 1921. How best to ensure that claims can be litigated fairly and efficiently, while warding off the use of *in terrorem* settlements and ensuring an adjudication process consistent with governing law, is a novel and difficult question. Various procedural mechanisms to address these problems have been proposed, which are only now beginning to be tested in the courts.

This case is in the judicial vanguard, and it presents complicated questions across the board. The district court's decision addressed the extent to which mass arbitration procedures may attempt to streamline the claims process, including by placing limits on discovery and briefing, and by applying determinations from

bellwether cases to common issues without hampering claimants' ability to litigate individualized issues. *See* Arb. Order at 17-23. It addressed whether the California Arbitration Act's arbitrator selection provisions are preempted by the FAA, and whether (or how) appeal procedures may be streamlined consistent with California law. *See id.* at 24-27. And it addressed whether mass arbitration procedures ought to be subject to heightened notice standards under California law and, if so, whether those legal standards are themselves consistent with the FAA. *See id.* at 8-10. As the district court candidly and repeatedly recognized, these myriad "interesting issues" present judicial "headaches" that deserve careful attention from "the [Ninth] Circuit." Tr. of H'rg on Mot. to Compel Arb. (C.D. Cal. Aug. 10, 2023) at 21:5-10; Tr. of H'rg on Mot. to Compel Arb. (C.D. Cal. Jul. 13, 2023) at 18:16-17. This Court, moreover, will have to decide how closely these attacks on mass arbitration procedures more generally must be directed at the delegation clause in particular. *See Rent-A-Center*, 561 U.S. at 74.

On top of all that, and as explained, the district court concluded not just that New Era's MDL-like mass arbitration procedures are unenforceable under state law. It further found that the arbitration agreement was so "permeated by unconscionability" that the *entire* arbitration agreement must be invalidated, including the choice of an alternate arbitrator, notwithstanding multiple express clauses providing for precisely the opposite outcome. *See* Arb. Order at 28-29.

16

Defendants respectfully submit that this severability conclusion was transparently wrong. But it is yet another legal issue that the parties will have to brief and this Court may need to address in its decision.

The appeal's complexity is matched by its importance. Mass arbitration filings deliberately undermine the system of individual arbitration favored by Congress and repeatedly endorsed by the Supreme Court. While this maneuver has paid enormous dividends for Plaintiffs' counsel, resulting in hundreds of millions of dollars of settlements, it has undercut arbitration as a viable method of dispute resolution. *See* Glover, *supra*, at 1380 ("The mass-arbitration model operates on its ability to impose significant *in terrorem* settlement pressure."). Since the proliferation of the mass arbitration tactic, many companies have looked for ways to mitigate the arbitration-destroying consequences of mass arbitration rather than giving up on arbitration entirely. *Id.* at 1364-73; *see* Andrew J. Pincus et al., *Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of Commerce Inst. for Legal Reform (Feb. 28, 2023), at 1, 42-45. Responding to customer demand, arbitration providers such as New Era have begun developing strategies to handle mass filings expeditiously, fairly, and economically. *See id.* Companies and arbitration providers around the country will look to this case to determine what they can permissibly do to handle mass arbitration filings.

The Court should accordingly adjudicate this case under the standard timelines and procedures. The future of arbitration as a meaningful method of dispute resolution is uncertain, and this Court will not be well-served by hasty briefing and adjudication of such a complicated and important case. "[C]ourts must not rush to dispose summarily of cases—especially novel, complex, or otherwise difficult cases of public importance." *TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 684-85 (9th Cir. 1990). The Court should not do so here.

## B.    Expedition Would Prejudice Defendants

Expediting this appeal would also prejudice Defendants. Plaintiffs took 13 days after this appeal was docketed to perfect their motion to expedite. Yet now they expect Defendants to prepare their opening brief on the merits within just 21 days of an order on the motion. *See* Mot. at 3. That is a bold request. And for two reasons, the severely truncated briefing schedule that Plaintiffs propose would unfairly hamstring Defendants' ability to litigate this appeal.

First, given the novelty and complexity of the legal issues presented, Defendants need sufficient time to brief them thoroughly. As discussed, the district court's thorough 30-page order covers numerous distinct legal issues, including questions regarding procedural unconscionability, substantive unconscionability, preemption, and severability. *See supra* Section II(A). It also addresses a complex record, involving thousands of pages of discovery, multiple rounds of briefing

spanning hundreds of pages, and six separate discovery- and arbitration-related hearings. This is not the kind of case that can or should be rushed.

Furthermore, Defendants have brought on appellate counsel—Latham & Watkins partner Roman Martinez—to handle the appeal. Mr. Martinez is heavily engaged in other pressing matters.[2] Mr. Martinez did not participate in the district court proceedings and needs to familiarize himself with its myriad legal issues, voluminous factual and procedural record, and lengthy district court decision. There is no compelling reason to deny Mr. Martinez the ordinary period of time for preparing Defendants' opening brief. Requiring him to get up to speed in a few short weeks is an unreasonable demand, one that threatens Defendants' ability to proceed with their chosen appellate counsel.

Second, Plaintiffs are potentially trying to force Defendants to litigate simultaneously parallel appeals raising entirely distinct issues. After the district court issued its August 10 order denying Defendants' motion to compel arbitration, Plaintiffs moved for a preliminary injunction, seeking to enjoin Defendants from

---

[2] Over just the next five weeks, his commitments include: (1) a reply brief in support of a motion to dismiss in the Northern District of Illinois due October 9; (2) a reply brief in the First Circuit due October 16; (3) a reply brief in support of a motion to dismiss in the Central District of California due October 20; (4) an opening brief in the Second Circuit due October 23; (5) a brief in opposition to certiorari in the Supreme Court due October 23; (6) a reply brief in the California Court of Appeal due October 23; (7) an opening brief in the First Circuit due October 27; and (8) an argument in the First Circuit due November 9.

making any changes to their Terms that could affect not just Plaintiffs' own claims, but also the potential claims of putative class members. ECF No. 208; *see also McKee v. Audible*, 2018 WL 2422582, at *8 (C.D. Cal. Apr. 6, 2018) (Wu, J.) (holding that, even after denial of motion to compel arbitration, defendant could revise arbitration provision as to "[putative class] members provided it does so in a manner that discloses information about this suit and affords an opt-out"). The merits of that motion are divorced from the issues here: They involve questions of ripeness, the ability of named plaintiffs to seek injunctive relief on behalf of absent putative class members, the propriety of resort to the All Writs Act, and the scope of stays pending appeal under *Coinbase*. That motion is set for a hearing on October 19, 2023. And whether the district court grants or denies relief, the losing side may appeal that decision—on an automatically expedited schedule. *See* 28 U.S.C. § 1292(a)(1); Ninth Cir. R. 3-3(b). Defendants thus face the prospect of briefing two distinct appeals at the same time.

All of this adds up to a clear attempt by Plaintiffs to spread Defendants' counsel thin in the hope of obtaining a perceived advantage on appeal. The Court should reject their gamesmanship and maintain the original briefing schedule.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to expedite this appeal.

Dated:  October 5, 2023                    Respectfully submitted,

                                           _/s/ Timothy L. O'Mara____
Roman Martinez                             Timothy L. O'Mara
LATHAM & WATKINS LLP                       LATHAM & WATKINS LLP
555 Eleventh Street, NW                    505 Montgomery Street
Suite 1000                                 Suite 2000
Washington, DC 20004                       San Francisco, CA 94111
(202) 637-2200                             (415) 391-0600
roman.martinez@lw.com                      tim.o'mara@lw.com

*Counsel for Defendants-Appellants Ticketmaster L.L.C. and*
*Live Nation Entertainment, Inc.*

21

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27-1 because it contains 4,807 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 27(a)(2)(B).

Dated: October 5, 2023        */s/ Timothy L. O'Mara*

                                          Timothy L. O'Mara