Case No. 23-55770

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SKOT HECKMAN, LUIS PONCE,
JEANENE POPP, JACOB
ROBERTS, on behalf of themselves
and all those similarly situated,
Plaintiffs-Appellees,

v.

LIVE NATION ENTERTAINMENT,
INC., TICKETMASTER, LLC,
Defendants-Appellants.

Appeal from the United States District Court
for the Central District of California
The Honorable George H. Wu Presiding
Case No. 2:22-cv-00047-GW-GJS

## SUPPLEMENTAL EXCERPTS OF RECORD FOR
## PLAINTIFFS-APPELLEES
## Volume II of IV (2-SER-7 to 2-SER-108)

Kevin Teruya
Adam Wolfson
William R. Sears, IV
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
865 S Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Warren D. Postman
    *Counsel of Record*
Albert Young Pak
Noah Heinz
Ethan H. Ames
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W.,
Suite 1100
Washington, DC 20036
(202) 918-1123
wdp@kellerpostman.com

*Attorneys for Plaintiffs-Appellees*

LATHAM & WATKINS LLP
  Timothy L. O'Mara (Bar No. 212731)
    *tim.o'mara@lw.com*
  Sadik Huseny (Bar No. 224659)
    *sadik.huseny@lw.com*
  Andrew M. Gass (Bar No. 259694)
    *andrew.gass@lw.com*
  Kirsten M. Ferguson (Bar No. 252781)
    *kirsten.ferguson@lw.com*
  Alicia R. Jovais (Bar No. 296172)
    *alicia.jovais@lw.com*
  Robin L. Gushman (Bar No. 305048)
    *robin.gushman@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C.
and Live Nation Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>    Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DEFENDANTS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: August 10, 2023<br><br>Hearing Time: 8:30 a.m.<br><br>Courtroom: 9D, 9th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-8**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    Procedural Unconscionability ........................................................................... 1

II.   Substantive Unconscionability ........................................................................ 3

III.  Severability ..................................................................................................... 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-9**

**TABLE OF AUTHORITIES**

*Ajzenman v. Comm'r of Baseball,*
    2020 WL 6031899 (C.D. Cal. Sept. 14, 2020) ...................................................2

*Dickey v. Ticketmaster,*
    2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ...................................................2

*Greenberg v. Amazon,*
    2021 WL 7448530 (N.D. Cal. May 7, 2021) .....................................................1

*In re Holl,*
    925 F.3d 1076 (9th Cir. 2019)...........................................................................3

*Lamps Plus, Inc. v. Varela,*
    139 S. Ct. 1407 (2019) ......................................................................................5

*Lee v. Postmates Inc.,*
    2018 WL 6605659 (N.D. Cal. Dec. 17, 2018) ..................................................5

*Lee v. Ticketmaster,*
    2019 WL 9096442 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393
    (9th Cir. 2020) ..................................................................................................1

*McKee v. Audible,*
    2017 WL 4685039 (C.D. Cal. July 17, 2017) ...................................................1

*Oberstein v. Live Nation,*
    60 F.4th 505 (9th Cir. 2023)..............................................................................3

*Oberstein v. Live Nation,*
    2021 WL 4772885 (C.D. Cal. Sept. 20, 2021)...................................................2

*Serpa v. Cal. Sur.,*
    215 Cal. App. 4th 695 (2013).............................................................................3

*Weber v. Amazon,*
    2018 WL 6016975 (C.D. Cal. June 4, 2018)......................................................1

*Wiseley v. Amazon,*
    709 F. App'x 862 (9th Cir. 2017).......................................................................3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-10**

## I.    Procedural Unconscionability

The fact that Defendants did not specifically notify consumers that the current Terms changed arbitration providers does not make them procedurally unconscionable.  Multiple courts, including this one, have held that a company need not specifically notify consumers when it adds an arbitration clause, so long as the consumer before the court assented to the updated terms.  *See Lee v. Ticketmaster*, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020) (plaintiff argued "that he could not have assented to arbitration, because when he first began using the website, the Ticketmaster terms did not include an arbitration clause, and Ticketmaster did not notify users when the terms were amended"; court enforced arbitration agreement because plaintiff "assented to terms that included an arbitration clause when purchasing tickets").[1]  Changing a contract from one with no arbitration provision to one with a mandatory arbitration provision and class action waiver is a far more significant change than switching from one arbitration provider to another.  If no specific notice is required for the former, then no specific notice is required for the latter.  Indeed, if the Court denied the present motion because Defendants did not provide specific notice of the change in arbitration providers, that would be a significant change in the law.  *See, e.g.*, *Greenberg v. Amazon*, 2021 WL 7448530, at *6 (N.D. Cal. May 7, 2021) (rejecting plaintiffs' argument that "Amazon must provide a separate, additional communication of its unilateral addition of the arbitration provision to its COUs," because "the standard for apprising a person of a unilateral change to a contract is 'reasonable notice,'" and "[w]ith the reasonable notice standard in mind, … [plaintiffs] manifested their assent to [the updated] terms by clicking the 'Place your order' button") (emphasis added). Defendants followed existing case law, in particular *Lee*—a case affirmed by the

---

[1] *See also, e.g.*, *Weber v. Amazon*, 2018 WL 6016975, at *6, *11 (C.D. Cal. June 4, 2018) (Wu, J.) (specific notice of adding arbitration clause not required; arbitration agreement enforceable because plaintiff assented to amended terms); *McKee v. Audible*, 2017 WL 4685039, at *11 n.7 (C.D. Cal. July 17, 2017) (Wu, J.) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-11

1   Ninth Circuit, involving the <u>same</u> Defendants and the <u>same</u> website—regarding the

2   notice required (or more specifically <u>not required</u>) when a company amends its

3   terms.  Doing so was not procedurally unconscionable.

4        The fact that Defendants' websites contain a browsewrap notice at the bottom

5   of most pages (which was true in *Lee*, *Dickey*, *Oberstein*, etc. too) is irrelevant.

6   Whether a consumer who agreed to arbitrate at JAMS could somehow be bound to

7   arbitrate at New Era simply because she browsed Defendants' websites after the

8   Terms were updated is a hypothetical with no application to this case.  Before

9   Defendants updated the Terms to change arbitration providers, Defendants <u>upgraded</u>

10  the assent at purchase from modified clickwrap (a simple notice above the action

11  button) to full clickwrap (a checkbox).  Now, to purchase tickets, consumers must

12  affirmatively check a box stating: "**I have read and agree to the current Terms of**

13  **Use**."  There are four plaintiffs in this case: Skot Heckman, Luis Ponce, Jeanene

14  Popp, and Jacob Roberts.  No other consumers are before the Court at this time.

15  Heckman checked this clickwrap box—assenting to the current Terms selecting New

16  Era—<u>four</u> times, buying 5 tickets in the process; Ponce checked this box <u>five</u> times,

17  buying 10 tickets; Popp checked this box <u>eight</u> times, buying 12 tickets; and Roberts

18  checked this box <u>five</u> times, buying 15 tickets.  It is hard to imagine a case where

19  the record of assent is as clear and unequivocal as the facts presently before the

20  Court.  This motion must be decided on <u>those</u> facts.  And on <u>those</u> facts, holding that

21  the Terms are highly procedurally unconscionable would be unprecedented.[2]

22       The fact that the Terms contain a unilateral modification provision also

23  doesn't warrant a finding of unconscionability.  That is a standard provision in online

24

25  ───────────────────────

26  [2] Furthermore, no court has found an arbitration agreement unenforceable where
    there was assent based on full or modified clickwrap, merely because a company
27  also had browsewrap on its website.  *See, e.g.*, *Dickey v. Ticketmaster*, 2019 WL
    9096443, at *6-7 & n.3 (C.D. Cal. Mar. 12, 2019) (Wu, J.) (browsewrap irrelevant
    where plaintiff "assented to the TOU … when facing the Sign Up Screen"); 
28  *Ajzenman v. Comm'r of Baseball*, 2020 WL 6031899, at *3 (C.D. Cal. Sept. 14,
    2020) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-12**

1   contracts like this,[3] and it is well established that this language is not unconscionable

2   because "implied in the unilateral right to modify is the accompanying obligation to

3   do so upon reasonable and fair notice." *Serpa v. Cal. Sur.*, 215 Cal. App. 4th 695,

4   708 (2013); *see also Wiseley v. Amazon*, 709 F. App'x 862, 864 (9th Cir. 2017).

5   Again, the notice provided here—a checkbox stating that the user has read and

6   agrees to the current Terms—is "reasonable and fair" as a matter of law.  *See*

7   *Oberstein v. Live Nation*, 60 F.4th 505, 512-13 (9th Cir. 2023) (courts "routinely"

8   enforce clickwrap, where "users must check a box explicitly stating 'I agree' in order

9   to proceed"); *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) ("no question" that

10  plaintiff agreed to the terms where "[h]e checked a box acknowledging as much").

## II.   Substantive Unconscionability

12        The Court has questioned whether New Era's Rules create a form of "class"

13  preclusion which deprives individual claimants of representation and a right to be

14  heard and, relatedly, whether the switch from JAMS to New Era makes it impossible

15  for a large number of small claims to be brought in arbitration.  The answer to both

16  questions is unequivocally: "*no*."

17        In 2018, Keller Lenkner filed 12,501 individual arbitrations at JAMS asserting

18  identical claims against Uber; and in 2019-20, Keller Lenkner filed 6,250 individual

19  arbitrations at AAA asserting identical claims against DoorDash.  Those two events

20  gave rise to the concept of "mass arbitration," and establish the paradigm for what

21  mass arbitration is.  So what happens when a single firm files thousands of identical

22  claims at JAMS or AAA?  First, the defendant typically has thirty days to pay tens

23  of millions of dollars in filing fees—money that goes to the arbitration provider, not

24  to claimants.  That deadweight loss creates astronomical settlement leverage that has

25

26  [3] *See, e.g.*, *Capital One Terms* § 7 (Feb. 27, 2023), https://www.capitalone.com
    /digital/terms-conditions/ ("We may amend any of this Agreement's terms at our
27  sole discretion by posting revised terms on the Site… [W]hen you use the Site after
    the effective date of the revised Agreement you accept the terms."); *Uber Terms* § 1
28  (June 14, 2023), https://www.uber.com/legal/en/document/?name=general-terms-
    of-use&country=united-states&lang=en (similar).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-13**

1    nothing to do with the merits of the individual claims.  Second, JAMS and AAA

2    cannot individually arbitrate thousands of claims on the merits, one by one; they

3    don't have any rules or procedures for doing so, and they don't have enough neutrals.

4    The result is a procedural morass, where individual claims are <u>not</u> capable of being

5    arbitrated on the merits.  A world where the judicial forum breaks down and the

6    litigation is completely divorced from the merits makes no sense.

7         New Era was founded in 2020.  They engaged many of the top neutrals in the

8    country, created various efficiencies around online proceedings, and developed some

9    of the very first rules and procedures that aim to fairly and efficiently arbitrate mass

10   arbitrations.  To be frank, the primary innovation was around filing fees—i.e., creating

11   a model that generated enough revenue to be a viable business, without imposing

12   multi-million-dollar upfront filing fees that forced parties to settle meritless claims.

13   Beyond that, the Rules create a bellwether process that allows the parties to assess the

14   strengths and weaknesses of their cases, which in turn may facilitate global settlements

15   (in whole or in part).  But if there is no settlement, the claims are addressed

16   individually, with precedent applying in the exact same, non-binding manner it does

17   in courts of equal level.  There is no way this procedure can be a due process violation.

18        Under New Era's Rules, no claimant represents absent claimants, and there is

19   no quasi-class preclusion that prevents anyone from being heard.  To the contrary,

20   mass arbitrations are expressly limited to claims filed by the same firm.  ECF No.

21   30-4, Rules 2(x)(ii)(1), 6(b)(ii)(2)(b); *see also* ECF No. 194-1, Rules 1(c)(iii)(3)(a),

22   6(b)(ii)(1).[4]  That threshold requirement alone addresses many of the Court's

23   concerns.  But regardless, each claimant picks their own counsel.  Each claimant

24   files their own complaint.  ECF No. 30-4, Rules 6(a)(ii)(1), 6(b)(ii)(4).  Each

25   claimant, at the outset of their case, uploads their own evidence and "initial

26   _____

27   [4] As explained in Defendants' briefing, New Era's original Rules are best interpreted
     as satisfying due process.  That said, over the course of two hearings and multiple
28   months, the Court suggested that perhaps the best reading of the Rules was one that
     did not pass muster.  New Era has clarified its Rules to address the Court's concerns.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS

4

**2-SER-14**

1    arguments." *Id.* 6(a)(vii)(1). Each claimant has a right to present facts and evidence

2    that will inform the neutral's understanding. *Id.* 2(r)(i). Each claimant may present

3    witness testimony. *Id.* 2(n)(i). Each claimant can raise whatever individualized

4    issues exist in their specific case. *Id.* 6(b)(iii)(4)(d), 6(b)(iii)(6)(a). And,

5    importantly, precedent from the bellwether cases is not binding; each claimant can

6    argue that such precedent is wrong, distinguishable, or should not be applied for any

7    other valid reason. ECF No. 194-1, Rules 6(b)(iii)(5)(a), 6(b)(iii)(6)(a). No one is

8    "[bound] … to the choices that are made" in the bellwethers, July 13 Tr. 13:25-14:3,

9    14:20-15:3, and the bellwethers do not have "collateral estoppel effect," *id.* 18:4-6.[5]

10   **III.   Severability**

11        Even if the selection of New Era were unenforceable, this case still must be

12   sent to arbitration—i.e., the Court's tentative is exactly right on severability. The

13   Terms "contain[] a clause stating that in the event New Era cannot conduct the

14   arbitration for any reason, the arbitration will instead be conducted by a different

15   arbitration provider." Tentative, ECF No. 160 at 17; *see* ECF No. 31-30 at 12

16   (identifying FairClaims as the alternate provider) & 14 (severability clause).

17   Because "the provisions Plaintiffs claim are unconscionable almost exclusively

18   relate to the selection of New Era," the Court can sever the selection of New Era,

19   and direct the parties to arbitrate at FairClaims. Tentative at 17; *see also* Defs.'

20   Reply, ECF No. 153 at 21-22. Plaintiffs have not challenged FairClaims—on

21   unconscionability or any other grounds—and have thus waived any such argument.

22   Consequently, at a minimum, this case must be arbitrated at FairClaims.

23   _____

24   [5] The Court asked about *Lamps Plus*. There, the Supreme Court declined to infer an
     agreement to arbitrate on a classwide basis (which could create a "procedural
     morass") where the parties had not expressly agreed to that procedure: if parties

25   "specify[] … the rules by which they will arbitrate," "the task for courts" is "to give
     effect to the intent of the parties." 139 S. Ct. 1407, 1416 (2019). Here, the parties

26   agreed to arbitrate pursuant to New Era's Rules. Moreover, while the Supreme Court
     has "expressed skepticism regarding class arbitration, it did not hold that the FAA

27   prohibits it. To the contrary, the Supreme Court has … held that an 'arbitrator may
     employ class procedures ... if the parties have authorized them.'" *Lee v. Postmates*

28   *Inc.*, 2018 WL 6605659, at *8 n.9 (N.D. Cal. Dec. 17, 2018) (quoting *Oxford Health
     Plans LLC v. Sutter*, 569 U.S. 564, 565 (2013)).

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-15**

1

Dated:  July 27, 2023                     Respectfully Submitted,

2

3                                         LATHAM & WATKINS LLP

4                         By: *Timothy L. O'Ma*

5                                         Timothy L. O'Mara

6                                         505 Montgomery Street, Suite 2000
                                          San Francisco, California  94111-6538
                                          Telephone:  +1.415.391.0600
7                                         Facsimile:  +1.415.395.8095
                                          tim.o'mara@lw.com

8                                         *Attorneys for Defendants*
                                          *Ticketmaster L.L.C. and Live Nation*
9                                         *Entertainment, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-16**

1
2

## CERTIFICATE OF COMPLIANCE

3

The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and

4 Live Nation Entertainment, Inc., certifies that this brief contains 5 pages, which

5 complies with the page limit set by the Court in its July 13, 2023 order (ECF

6 No. 182).

7
8 Dated: July 27, 2023

9                                                    Timothy L. O'Mara

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' SECOND SUPPLEMENTAL BRIEF
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-17

1   LATHAM & WATKINS LLP
2       Timothy L. O'Mara (Bar No. 212731)
            tim.o'mara@lw.com
3       Sadik Huseny (Bar No. 224659)
            sadik.huseny@lw.com
4       Andrew M. Gass (Bar No. 259694)
            andrew.gass@lw.com
5       Kirsten M. Ferguson (Bar No. 252781)
            kirsten.ferguson@lw.com
6       Alicia R. Jovais (Bar No. 296172)
            alicia.jovais@lw.com
7       Robin L. Gushman (Bar No. 305048)
            robin.gushman@lw.com
8   505 Montgomery Street, Suite 2000
    San Francisco, California  94111-6538
9   Telephone:  +1.415.391.0600
    Facsimile:  +1.415.395.8095

10  *Attorneys for Defendants Ticketmaster L.L.C.*
    *and Live Nation Entertainment, Inc.*

11

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14

15  Skot Heckman, Luis Ponce, Jeanene          Case No. 2:22-cv-00047-GW-GJS
16  Popp, and Jacob Roberts, on behalf of
    themselves and all those similarly
17  situated,                                  **DEFENDANTS' SUPPLEMENTAL**
                                               **REPLY BRIEF IN SUPPORT OF**
18                       Plaintiffs,           **MOTION TO COMPEL**
                                               **ARBITRATION**
19  v.
                                               The Honorable George H. Wu
20  Live Nation Entertainment, Inc., and
21  Ticketmaster LLC,

22                       Defendants.           Hearing Date: July 13, 2023

23                                             Hearing Time: 8:30 a.m.

24                                             Courtroom: 9D, 9th Floor

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-18**

1

2

## TABLE OF CONTENTS

3

I.    Introduction ..................................................... 1

II.   The Terms Are Not Procedurally Unconscionable ....................................... 1

III.  The Terms Are Not Substantively Unconscionable ..................................... 3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

# TABLE OF AUTHORITIES

**CASES**

*Cheng-Canindin v. Renaissance Hotel Assocs.*,
   50 Cal. App. 4th 676 (1996) ....................................................................7

*Cronus Invs. v. Concierge Servs.*,
   35 Cal. 4th 376 (2005) ..........................................................................6

*DeVries v. Experian*,
   2017 WL 733096 (N.D. Cal. 2017) .......................................................3

*Gilmer v. Interstate*,
   500 U.S. 20 (1991) ...........................................................................1, 4

*Graham v. Scissor-Tail*,
   28 Cal. 3d 807 (1981) ............................................................................7

*Kalasho v. BMW*,
   520 F. Supp. 3d 1288 (S.D. Cal. 2021) .................................................6

*Lee v. Ticketmaster*,
   2019 WL 9096442 (N.D. Cal. 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020) ..2

*Little v. Auto Stiegler*,
   29 Cal. 4th 1064 (2003) .........................................................................5

*McKee v. Audible*,
   2017 WL 4685039 (C.D. Cal. 2017) ...............................................1, 2, 3

*Modiano v. BMW*,
   2021 WL 5750460 (S.D. Cal. 2021) ......................................................6

*Mohammad v. T-Mobile*,
   2018 WL 6249910 (E.D. Cal. 2018) ......................................................3

*Mullo v. DoorDash*,
   2023 WL 1971897 (S.D.N.Y. 2023) ......................................................7

*Nguyen v. BMW*,
   2022 WL 102203 (S.D. Cal. 2022) ........................................................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-20**

*Oberstein v. Live Nation*,
    60 F.4th 505 (9th Cir. 2023) ............................................................. 2

*OTO v. Kho*,
    8 Cal. 5th 111 (2019) ........................................................................ 3

*Pemberton v. Nationstar Mortg.*,
    331 F. Supp. 3d 1018 (S.D. Cal. 2018) ........................................... 4

*Poublon v. C.H. Robinson*,
    846 F.3d 1251 (9th Cir. 2017) ......................................................... 1

*Sanchez v. Valencia Holding.*,
    61 Cal. 4th 899 (2015) ..................................................................... 5

*Shen v. UPS*,
    2022 WL 17886012 (C.D. Cal. 2022) .............................................. 2

*Weber v. Amazon.com*,
    2018 WL 6016975 (C.D. Cal. 2018) ................................................ 2

*Wiseley v. Amazon.com*,
    709 F. App'x 862 (9th Cir. 2017) ................................................... 3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-21

## I.      Introduction

Despite the Court's direction to "focus on … substantive unconscionability," May 1 Hr'g Tr. 43:24-44:4, Plaintiffs continue to focus extensively on <u>procedural</u> unconscionability.  Why?  Because nothing about the Terms or New Era's Rules meets the rigorous "shock the conscience" standard required for <u>substantive</u> unconscionability.  Plaintiffs rehash the exact same substantive arguments from their Opposition, but offer nothing to support a finding that the arbitral rules are so "[s]hocking to the conscience, monstrously harsh, [or] exceedingly calloused" that the Court should withhold enforcement.  *McKee v. Audible*, 2017 WL 4685039, at *13 (C.D. Cal. 2017) (Wu, J.).  The common thread in Plaintiffs' arguments is that arbitration is an inferior forum, and the Court should assume that any matter left to the arbitrator's discretion (discovery, application of precedent, etc.) will be unfair to claimants.  But the Court cannot treat arbitration as an inferior forum.  *Gilmer v. Interstate*, 500 U.S. 20, 24 (1991).  And it's industry standard practice to grant the arbitrator wide discretion to craft appropriate procedures as needed.  *Compare* ECF No. 150-5, AAA R-23 ("[A]rbitrator may issue any orders necessary to … achieve a fair, efficient, and economical resolution of the case."), *and* ECF No. 166 at 8 n.7, CPR Rule 9.1 ("Tribunal may conduct the arbitration in such manner as it shall deem appropriate while giving each party a fair opportunity to present its case."), *with* ECF No. 30-4, New Era Rule 2(f)(ii) ("Rules").  To that end, contrary to Plaintiffs' arguments, the Court <u>must</u> "assume that the arbitrator will" exercise that discretion "in a reasonable manner in conformity with the law."  *Poublon v. C.H. Robinson*, 846 F.3d 1251, 1265 (9th Cir. 2017).  Defendants' motion should be granted.

## II.     The Terms Are Not Procedurally Unconscionable

Plaintiffs devote nearly a quarter of their supplemental brief to procedural unconscionability, claiming that the Terms implicate "an extreme level of procedural unconscionability" because Defendants changed the arbitration provider from JAMS to New Era.  Pls.' Suppl. Br. at 1, 2-4.  It's undisputed, however, that each Plaintiff

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-22

1   had reasonable notice of the current Terms selecting New Era—and affirmatively

2   checked a box stating that they agreed to the current version of the Terms—<u>before</u>

3   filing this lawsuit.  *See* Mot. to Compel Arb. at 4-7, 11-13, ECF No. 30-1 ("Mot.");

4   *Oberstein v. Live Nation*, 60 F.4th 505, 515-17 (9th Cir. 2023).  Moreover, the law

5   doesn't require companies to inform consumers of specific changes to their terms; if

6   the user has reasonable notice of the amended terms, she is bound by them.  This

7   issue was addressed in *Lee v. Ticketmaster*, 2019 WL 9096442 (N.D. Cal. 2019),

8   *aff'd*, 817 F. App'x 393 (9th Cir. 2020).  There, the plaintiff first agreed to the Terms

9   when they did not contain an arbitration clause; subsequently, the plaintiff

10   manifested assent to an updated version of the Terms, which contained an arbitration

11   clause.  *Id.* at *1.  No notice of that significant change was provided.  *Id.*  Still, the

12   court held that plaintiff was bound to arbitrate, and the Ninth Circuit affirmed.

13        This Court reached the same conclusion in two cases, including one involving

14   a "last updated" notice.[1]  *See McKee* at *11 n.7 (Wu, J.) (plaintiff created Amazon

15   account and agreed to terms that didn't contain an arbitration clause; Amazon later

16   amended terms to add an arbitration clause, but never specifically notified plaintiff;

17   still, plaintiff had to arbitrate because he later assented to amended terms); *Weber v.*

18   *Amazon.com*, 2018 WL 6016975, at *13 (C.D. Cal. 2018) (Wu, J.) (tentative;

19   "[t]hough the text immediately below or next to the 'Place your order' buttons … do

20   not mention a change to the COU, upon clicking the hyperlinked COU in the precise

21   disclosure adjacent to the buttons (which [plaintiff] would have necessarily agreed

22   to …), the COUs … state at the very top the date the COU was last updated."); *see*

23   *also Shen v. UPS*, 2022 WL 17886012, at *4-5 (C.D. Cal. 2022) (finding notice, no

24   surprise where plaintiffs saw pop-up with a link to updated terms; it was irrelevant

25   "whether UPS identified any specific changes" because a company need not

26   "publish a redline version of the terms" "to bind a consumer … to new terms").

27        Plaintiffs also claim that, because the arbitration agreement can be changed

28

---

[1] The Terms contain a "Last Updated" date at the top of the page.  ECF No. 31-30.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-23**

1  unilaterally and apply to accrued claims, it's procedurally unconscionable.  Pls.'

2  Suppl. Br. at 3-4.  But online contracts often include a unilateral modification

3  provision—and courts routinely enforce them.  *See Wiseley v. Amazon.com*, 709 F.

4  App'x 862, 864 (9th Cir. 2017); *McKee*, 2017 WL 4685039, at *13 (Wu, J.).  And

5  parties may agree to arbitrate accrued claims where, as here, the agreement covers

6  "any dispute … irrespective of when [it] arose." ECF No. 31-30 at 10; *DeVries v.*

7  *Experian*, 2017 WL 733096, at *8 (N.D. Cal. 2017) ("Courts … consistently appl[y]

8  arbitration agreements retroactively where [they] … facially apply to disputes

9  arising prior to the agreement."); *Mohammad v. T-Mobile*, 2018 WL 6249910, at *7

10  (E.D. Cal. 2018) (clause covering "any and all claims or disputes" "sufficiently

11  broad to apply retroactively to pre-existing claims").[2]

12  **III.    The Terms Are Not Substantively Unconscionable**

13        Even if the Court were to find a high degree of procedural unconscionability,

14  to prevail Plaintiffs must still show that any substantive unconscionability "shocks

15  the conscience."  *OTO v. Kho*, 8 Cal. 5th 111, 118, 129-30 (2019) (finding an

16  "unusually high degree of procedural unconscionability," and still applying the

17  "shock the conscience" standard).  Plaintiffs fail to meet that stringent standard.

18        ***The Mass Arbitration Procedures Don't Shock the Conscience.***  The core

19  dispute about New Era's Rules concerns the procedures for mass arbitrations—in

20  particular, whether bellwether precedent precludes claimants from presenting new

21  or different issues or arguments.[3]  New Era's Rules define precedent as non-binding,

22  and provide each claimant with the opportunity to be heard.  *See* Rules 2 & 6; Defs.'

23  Suppl. Br. at 3-7.  New Era has filed a declaration unequivocally confirming this.  In

24  particular, New Era explains that "the Precedent rule is not absolute."  New Era Decl.

25  ¶ 14, ECF No. 163.  Rather, in each case, the neutral must "individually consider …

26
27  [2]  Plaintiffs also argue that consumers will not be able to find the Rules or know which ones apply.  Pls.' Suppl. Br. at 2.  That's false.  The Terms hyperlink to the Rules, and state which rules and procedures apply.  ECF No. 31-30 at 12.

28  [3]  To be clear, this case is *not* a mass arbitration.  There are only four Plaintiffs here; that's below the threshold to qualify as a mass arbitration.  *See* Rule 6(b)(ii)(1).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-24**

1   the arguments made regarding whether and to what extent Precedent should apply

2   to a particular case." *Id.* ¶ 12; *see also id.* ("each party has the right and opportunity

3   to … argue [case] should not be subject to Precedent"); *id.* ¶ 14 ("[T]he neutral <u>may</u>

4   apply the factual findings and legal determinations … in a bellwether case to other

5   cases in the mass arbitration … <u>provided</u> the parties present no compelling reason to

6   depart from that Precedent.") (emphases added); *id.* ¶ 17 (later-filed claimants "have

7   the opportunity to explain and argue why their particular issues of law and fact

8   should be adjudicated differently from the Precedent"); Defs.' Suppl. Br. at 3-7.

9       Still, Plaintiffs maintain that precedent must be preclusive, binding absentee

10  claimants, because Rule 6 states that the bellwether decisions "will" act as precedent,

11  and that precedent "shall be applied" to later-filed cases.  Pls' Suppl. Br. at 5.  This

12  argument ignores the fact that "precedent" is a defined term, and all references to

13  precedent are subject to (and must be interpreted in accordance with) that definition.

14  *See Pemberton v. Nationstar Mortg.*, 331 F. Supp. 3d 1018, 1038 (S.D. Cal. 2018)

15  ("[the] law treats a defined contract term according to the definition set forth in the

16  contract").  That definition provides that application of precedent is (a) discretionary

17  (the neutral "may" apply it) and (b) "subject to any rights contained" in the Rules.

18  Rule 2(y)(i).  The Rules, in turn, contain a plethora of rights ensuring that <u>every</u>

19  claimant has a fair opportunity to be heard.  Defs.' Suppl. Br. at 8-9.[4]

20      Plaintiffs also complain that mass arbitrations at New Era are unfair because

21  they are not "analog[ous] to MDLs."  Pls.' Suppl. Br. at 6.  Most of these complaints

22  are "generalized attacks on arbitration" (e.g., it's not public, there's generally limited

23  review of awards); as such, they cannot be a basis for not enforcing the Terms.  *See*

24  *Gilmer*, 500 U.S. at 30.  Plaintiffs' other complaints are simply wrong: MDL courts

25  often decide "the merits" (e.g., summary judgment), and there's no requirement that

26  _____

27  [4]  Plaintiffs also claim that the use of default page and record limits in bellwethers is
    unfair.  Pls.' Suppl. Br. at 6.  But Plaintiffs <u>concede</u> arbitrators have discretion to

28  modify default record limits.  *Id.*  And the Rules give arbitrators discretion to request
    post-hearing briefing in excess of the default.  Rule 2(p)(vii); *see also id.* 2(f)(ii).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-25**

1  MDL courts hold a formal leadership appointment process (rather, as at New Era,

2  that's left up to the judge's discretion).  *See* Defs.' Suppl. Br. at 5 n.3, 7 n.6.

3      It's also worth noting that Plaintiffs <u>still</u> have not addressed the fact that New

4  Era's procedures are strikingly similar to their counsel's proposal for administering

5  mass arbitration.  Mot. at 19-20.  How can these procedures be fair when Plaintiffs'

6  counsel proposes them, but "shock the conscience" here?  They cannot.

7      ***The Limited Right of Appeal Is Enforceable Under Sanchez.***  The Terms

8  contain a right to appeal awards of injunctive relief; it's identical to the one upheld

9  in *Sanchez v. Valencia Holding*.  Plaintiffs, however, argue that the provision in

10 *Sanchez* was only enforceable because it also allowed appeals of awards for $0.  Pls.'

11 Suppl. Br. at 8.  According to Plaintiffs, "where a plaintiff did not receive injunctive

12 relief, he also would get $0, and so could appeal," which meant that the provision

13 was "not so tilted against plaintiffs."[5]  *Id.*  *Sanchez* does not support this argument.

14 The *Sanchez* court analyzed the two parts of the appeal provision completely

15 separately; its rationale for upholding the right to appeal injunctive relief had <u>nothing</u>

16 to do with the right to appeal awards for $0.  *See* 61 Cal. 4th 899, 915-17 (2015).

17     Plaintiffs also argue that, in *Sanchez*, "the denial of injunctive relief affected

18 just a single plaintiff," whereas "the denial of injunctive relief for a bellwether

19 plaintiff would result in the denial for *all* plaintiffs."  Pls.' Suppl. Br. at 8.  That's

20 wrong.  The plaintiff in *Sanchez* (a putative class action) was asserting a UCL claim

21 to enjoin fraudulent business practices—and the court specifically recognized that

22 "the public has a strong interest in ensuring that [such] practices are enjoined."  61

23 Cal. 4th at 907, 917.  Moreover, the bellwether decisions are <u>not</u> binding on "all"

24 claimants.  Defs.' Suppl. Br. at 3-6; New Era Decl. ¶¶ 12, 14, 17.[6]

25 _____

26 [5]  There's no reason to assume that, "where a plaintiff did not receive injunctive
   relief, he also would get $0."  Injunctions are rarely granted where damages provide
   a suitable remedy, and monetary damages aren't available on UCL claims—so there
27 was no possibility in *Sanchez* of a no injunction/$0 damages result on the UCL claim.
   [6]  Per the Court's instructions, Defendants are not briefing severability generally.
28 May 1 Hr'g Tr. 44:16-46:7.  The appeal provision, however, is clearly severable, per
   Plaintiffs' own case.  *Little v. Auto Stiegler*, 29 Cal. 4th 1064, 1075 (2003).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-26**

***The FAA Governs.***  The arbitration agreement expressly provides that "the FAA governs" and "State arbitration laws do not govern in any respect."  ECF No. 31-30 at 11.  Still, Plaintiffs argue that any arbitration must comply with the CAA's arbitrator selection rules.  Pls.' Suppl. Br. at 9-10, 13.  That's wrong: "parties to an arbitration agreement … [may] expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law."  *Cronus Invs. v. Concierge Servs.*, 35 Cal. 4th 376, 394 (2005); *see also* Tentative at 13-14.  *Modiano v. BMW* is directly on point.  There, the plaintiff made the <u>exact</u> argument Plaintiffs make here: that "the arbitration agreement is unenforceable because it waives Plaintiffs' right to select a neutral arbitrator under the CAA."  2021 WL 5750460, at *2 (S.D. Cal. 2021).  The court rejected that argument because (as here) the parties' agreement provided that "any arbitration … shall be governed by the Federal Arbitration Act … and not by any state law concerning arbitration."  *Id.*  The court held that "parties … may select which procedural rules will apply in arbitration, and here, the parties expressly agreed that the FAA would apply and the CAA would not.  This agreement is enforceable." *Id.*

Moreover, New Era's selection process mirrors JAMS and AAA's.  Tentative at 13;  Reply at 18-19, ECF No. 149-1.  And Plaintiffs' cases are clearly distinguishable.  In *Ovitz*, the agreement stated the CAA applied.  133 Cal. App. 4th 830, 855 (2005).  In *Kalasho*, "[t]he parties [did] not dispute … that the CAA provisions at issue [were] not preempted by the FAA."  520 F. Supp. 3d 1288, 1295 (S.D. Cal. 2021); *see also Modiano*, 2021 WL 5750460, at *2.  And in *Nguyen*, the defendant did not address preemption.  2022 WL 102203, at *7 (S.D. Cal. 2022).

***Discovery Is Consistent with Industry Standards.***  Plaintiffs next rehash their argument that there is no right to discovery in expedited arbitrations.  Pls.' Suppl. Br. at 6-8.  The Court already correctly rejected this argument: the Rules "allow[] for informal discovery at the discretion of the arbitrator."  Tentative at 15; Reply at 15-18.  Still, Plaintiffs argue that discovery limits are permissible only if they give

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-27

1   "claimants a baseline *right* to some discovery, and then discretion to an arbitrator to
2   grant *additional* discovery." Pls.' Suppl. Br. at 7. But that's <u>exactly</u> what New Era's
3   Rules provide: a baseline right to exchange of relevant documents, Rule 6(a)(vii)-
4   (viii), plus additional exchanges "to ensure a fundamentally fair process," *id.*, plus
5   production of other "relevant or necessary" information upon "good cause" shown,
6   *id.* 2(q)(i). This discovery process is strikingly similar to AAA's: hearing exhibits
7   are exchanged; the arbitrator "may direct" the exchange of documents and witness
8   lists; but "[n]o other exchange of information … is contemplated … unless an
9   arbitrator determines further information exchange is needed to provide for a
10  fundamentally fair process." ECF No. 150-5, AAA R-22.

11      ***New Era Is a Neutral Forum.*** Defendants explained how discovery put the
12  lie to Plaintiffs' unfounded bias allegations. Reply at 2-4. Plaintiffs do not address,
13  let alone dispute, that discussion. To the contrary, they implicitly concede that they
14  cannot show New Era is "actually biased." *See* Pls.' Suppl. Br. at 10. The analysis
15  can stop there. *See Mullo v. DoorDash*, 2023 WL 1971897, at *4 (S.D.N.Y. 2023).

16      Undeterred, Plaintiffs now argue that they fall within "a separate line of cases"
17  declining to enforce arbitration "before a forum that lacks minimum levels of
18  integrity." Pls.' Suppl. Br. at 10. The two cases Plaintiffs cite are not remotely on
19  point. In *Graham*, the agreement designated the defendant's union—of which
20  plaintiff was not a member—as the sole arbitrator. 28 Cal. 3d 807, 826-28 (1981).
21  And in *Cheng-Canindin*, the plaintiff did not agree to arbitrate at all, but rather to
22  participate in an "internal problem solving procedure" in which "[e]veryone
23  involved in the decision making process is employed by, selected by, and under the
24  control of the [defendant]." 50 Cal. App. 4th 676, 688, 691 (1996). That's nothing
25  like this case. New Era is a neutral forum, where cases are decided by professional
26  neutrals—many of whom also work for JAMS and AAA. New Era Decl. ¶¶ 5-6.[7]

27
28  ---
    [7]   Finally, Plaintiffs also claim that it's unconscionable to "impos[e] $300 per
    claimant" as a filing fee. Pls.' Suppl. Br. at 12. The $300 arbitration filing fee is
    consistent with the per claimant filing fee at JAMS (i.e., $250). Mot. at 22 n.22.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-28**

Dated:  June 19, 2023                    Respectfully Submitted,

                                         LATHAM & WATKINS LLP

                                         By: _Timothy L. O'Ma_____
                                             Timothy L. O'Mara

                                         505 Montgomery Street, Suite 2000
                                         San Francisco, California  94111-6538
                                         Telephone:  +1.415.391.0600
                                         Facsimile:  +1.415.395.8095
                                         tim.o'mara@lw.com

                                         *Attorneys for Defendants*
                                         *Ticketmaster L.L.C. and Live Nation*
                                         *Entertainment, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-29**

1
2

## CERTIFICATE OF COMPLIANCE

3    The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and

4  Live Nation Entertainment, Inc., certifies that this brief contains 7 pages, which

5  complies with the page limit set by the Court in its May 1, 2023 order (ECF No. 160).

6

7  Dated: June 19, 2023

8                                                          Timothy L. O'Mara

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-30

LATHAM & WATKINS LLP
   Timothy L. O'Mara (Bar No. 212731)
      tim.o'mara@lw.com
   Sadik Huseny (Bar No. 224659)
      sadik.huseny@lw.com
   Andrew M. Gass (Bar No. 259694)
      andrew.gass@lw.com
   Kirsten M. Ferguson (Bar No. 252781)
      kirsten.ferguson@lw.com
   Alicia R. Jovais (Bar No. 296172)
      alicia.jovais@lw.com
   Robin L. Gushman (Bar No. 305048)
      robin.gushman@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C.
and Live Nation Entertainment, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>              Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: July 13, 2023<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D, 9th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-31**

# TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................... 1

II.   ARGUMENT ............................................................................................. 2

    A.    What Mass Arbitrations Are—and How They Work at
          New Era.......................................................................................... 2

         1.    Application of Precedent to Individual Cases ......................... 3

         2.    Other Mass Arbitration Questions Raised by the
              Court ........................................................................................ 7

    B.    The FAA Ensures Minimum Due Process—and Contract
          Law Favors Enforceability................................................................ 10

    C.    The Limited Right of Appeal Is Not Unconscionable ...................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ass'n W. Pulp & Paper Workers v. Rexam Graphic*,
   221 F.3d 1085 (9th Cir. 2000)................................................................7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .............................................................................1

*Bleecher v. Conte*,
   29 Cal. 3d 345 (1981).......................................................................2, 12

*City & Cnty. of S.F. v. Purdue Pharma*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020)..............................................5, 6

*City of Chi. v. Purdue Pharma*,
   2021 WL 1208971 (N.D. Ill. Mar. 31, 2021)........................................6

*Costco Wholesale Corp. v. Int'l Bhd. Teamsters, Loc. No. 542*,
   850 F. App'x 467 (9th Cir. 2021)........................................................11

*DeVries v. Experian Info. Sols.*,
   2017 WL 733096 (N.D. Cal. Feb. 24, 2017)........................................13

*Dickey v. Ticketmaster*,
   2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ....................................13

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) .......................................................................11

*Fosson v. Palace, Ltd.*,
   78 F.3d 1448 (9th Cir. 1996)..............................................................12

*In re Gen. Motors Ignition Switch Litig.*,
   No. 14-MD-02543, ECF No. 875 (S.D.N.Y. Apr. 24, 2015)..............6

*Graham v. Scissor-Tail, Inc.*,
   28 Cal. 3d 807 (1981).........................................................................11

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
   59 F.4th 55 (3d Cir. 2023) ...................................................................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-33**

*Howard v. Sulzer Orthopedics, Inc.*,
    382 F. App'x 436 (6th Cir. 2010) ........................................................................ 9

*In re Korean Air Lines Co.*,
    642 F.3d 685 (9th Cir. 2011) ............................................................................... 5

*Kryzhanovskiy v. Amazon.com Servs.*,
    2022 WL 2345677 (E.D. Cal. June 29, 2022) .................................................... 13

*Kyocera Corp. v. Prudential-Bache Trade Servs.*,
    341 F.3d 987 (9th Cir. 2003) ........................................................................ 10, 11

*In re Lipitor Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*,
    892 F.3d 624 (4th Cir. 2018) ............................................................................ 5, 6

*McGill v. Citibank*,
    2 Cal. 5th 945 (2017) ......................................................................................... 13

*McGrath v. DoorDash*,
    2020 WL 6526129 (C.D. Cal. Nov. 5, 2020) ...................................................... 8

*McKay v. JPMorgan Chase Bank*,
    2016 WL 11755601 (C.D. Cal. Mar. 8, 2016) .................................................. 12

*Mullo v. DoorDash*,
    2023 WL 1971897 (S.D.N.Y. Jan. 17, 2023) ................................................. 1, 11

*Oberstein v. Live Nation*,
    2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) .................................................... 5

*Payne v. Tenn.*,
    501 U.S. 808 (1991) ............................................................................................ 5

*Republic of Nicar. v. Standard Fruit*,
    937 F.2d 469 (9th Cir. 1991) .......................................................................... 2, 12

*Sanchez v. Valencia Holding Co.*,
    61 Cal. 4th 899 (2015) ................................................................................. 12, 13

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ........................................................................... 12

*U.S. Life Ins. v. Superior Nat'l Ins.*,
    591 F.3d 1167 (9th Cir. 2010) ...................................................................... 10, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-34

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022) ................................................................. 9

*Weiner v. Original Talk Radio*,
   2011 WL 873246 (N.D. Cal. Mar. 14, 2011) ...................................... 7

*In re Zoloft Prods. Liab. Litig.*,
   176 F. Supp. 3d 483 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017)........... 6

**STATUTES**

9 U.S.C. § 10(a)(2)-(3) ................................................................... 11

Cal. Civ. Code
   § 1643 ................................................................................. 2, 12
   § 3541 ................................................................................. 2, 12

**RULES**

Fed. R. Civ. P. 23 ....................................................................... 9, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-35**

## I.    INTRODUCTION

The Court has raised questions about how New Era's Rules for mass arbitrations would operate in practice.  We explain below exactly how New Era's Rules answer those questions—and unequivocally provide each individual claimant with the opportunity to be heard.  Nothing about the use of precedent compromises that opportunity; rather, the role of precedent is effectively no different than in court.  It allows the arbiter to decide an issue in the first instance, and then in subsequent cases determine whether the facts presented yield the same analysis and outcome or a different one.  No one is precluded from arguing that their case is different—at the same time, the judicial forum is not required to pretend that the thousandth presentation of an identical claim may turn out differently from the nine hundred ninety-ninth.

Fundamentally, New Era's mass arbitration procedures are designed to be a solution to a very specific problem: how to actually arbitrate, on the merits, large numbers of identical (or nearly identical) claims brought by the <u>same</u> counsel.  These procedures operate as flexible case management tools that create efficiencies, enabling the arbitration of large numbers of individual cases "filed by the same law firm or group of law firms."  Rule 2(x)(ii)(1), ECF No. 30-4.  They are designed to result in <u>more</u> cases being heard, not fewer.  This is a paradigmatic example of what the FAA empowers parties to do: to exercise their "discretion in designing arbitration processes … to allow for efficient, streamlined procedures tailored to the type of dispute."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

Nevertheless, Plaintiffs speculate that, if a certain series of events occurred, then a mass arbitration could, in practice, prove unfair to a particular claimant.  Plaintiffs, however, cannot avoid arbitration by speculating that a prejudicial series of events <u>might</u> occur—or that New Era's Rules <u>could</u> be construed in a way that prejudices a party.  The FAA squarely rejects that.  *See Mullo v. DoorDash*, 2023 WL 1971897, at *4 (S.D.N.Y. Jan. 17, 2023) ("The FAA does not … allow a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-36**

1   plaintiff to avoid arbitration … based on speculation that the process will be

2   unfair.").   So, too, does contract law.   In reviewing any agreement—including

3   arbitration agreements—courts "must choose [the] interpretation which will make

4   the [agreement] legally binding," not one that will render it unenforceable.   *Bleecher*

5   *v. Conte*, 29 Cal. 3d 345, 350 (1981); *see also* Cal. Civ. Code §§ 1643, 3541.   New

6   Era's Rules are unquestionably susceptible to an interpretation that provides for a

7   fundamentally fair process for all parties.   The Court should—and, indeed, must—

8   choose that interpretation over one that would render the selection of New Era

9   unenforceable.   *See Republic of Nicar. v. Standard Fruit*, 937 F.2d 469, 479 (9th Cir.

10  1991) (if arbitration agreement "is susceptible of an interpretation that would allow

11  arbitration, any doubts ... should be resolved in favor of arbitration").

12  **II.   ARGUMENT**

13          **A.   What Mass Arbitrations Are—and How They Work at New Era**

14          Mass arbitrations are a very specific litigation phenomenon: large numbers of

15  virtually identical, individual claims brought in arbitration by the same counsel.   For

16  example, in 2018, Keller Lenkner, in coordination with Larson O'Brien LLP, filed

17  12,501 individual arbitrations at JAMS asserting identical claims against Uber; and

18  in 2019-20, Keller Lenkner filed 6,250 individual arbitrations at AAA asserting

19  identical claims against DoorDash.[1]   JAMS and AAA, however, do not have nearly

20  enough neutrals to actually arbitrate those claims on the merits, one by one—and

21  they have not promulgated any rules on how to decide them.   As a result,

22  adjudication of those claims is, at best, delayed—and more often never occurs at all.

23  *See* Mot. at 8-9.

24          This is the very specific situation that New Era's mass arbitration procedures

25  were designed to address.   Consequently, New Era's mass arbitration procedures

26  contain an important threshold requirement: they are only triggered when there are

27  "similar cases filed by the same law firm or group of law firms."   Rule 2(x)(ii)(1)

28  _____

[1] *See* Mot. to Compel Arb. at 8 n.6, ECF No. 30-1 ("Mot.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-37**

1  (emphasis added).  This built-in gating requirement operates at the administrative

2  level before cases are ever assigned to a neutral, and thus limits, upfront, which

3  claims can be grouped together into a mass arbitration.  *Id.*

4     This administrative limitation is critical to understanding how the mass

5  arbitration procedures operate in practice; it is the lens through which those

6  procedures must be viewed—including the selection of the neutral, the selection of

7  the bellwethers, participation in the settlement conference, and, importantly, the

8  limited reach of precedent.  At each stage, the claimants in any given mass arbitration

9  are represented by the same firm or group of firms acting in coordination.

10    With this framework in mind, we now turn to the Court's specific questions.

11      *1.    Application of Precedent to Individual Cases*

12    The Court questioned how precedent works—in particular, whether a mass

13  arbitration "bears a greater resemblance to a class action than an MDL" due to the

14  use of precedent.  Tentative at 12.  Unlike a class action, however, bellwether

15  precedent does <u>not</u> operate as some sort of "class-wide" preclusion that binds

16  absentee claimants; it does not deprive parties of their due process right to be heard.

17    "Precedent" is a defined term, and all references to precedent are subject to

18  that definition—which provides that the application of precedent is (a) discretionary

19  (the neutral "may" apply it) <u>and</u> (b) "subject to any rights contained" in the Rules.

20  Rule 2(y)(i).  There are a plethora of rights in the Rules that ensure that <u>every</u>

21  claimant—including claimants in a mass arbitration—has a fair opportunity to be

22  heard.  Unlike absent class members who are bound by class proceedings, every

23  litigant in a New Era arbitration has the chance to present their case to the arbitrator

24  for consideration of how to adjudicate it on the merits.

25    For example, in <u>every</u> case, the "parties may offer relevant and material facts

26  and evidence as necessary to facilitate the neutral's understanding of the dispute."

27  Rule 2(r)(i).  In <u>every</u> case, a claimant has an opportunity to upload evidence to New

28  Era's platform and, if witness testimony is relevant, to "present that testimony to the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-38**

1   neutral." *Id.* 2(p)(i), 2(n)(i).  And in <u>every</u> case, the neutral must determine "what

2   evidence shall be considered … based on fairness, equity, or the law." *Id.* 2(p)(iv).

3            Further, in a mass arbitration, there are two important, additional opportunities

4   to be heard.  *First*, the "parties may present evidence and arguments demonstrating

5   that a case or cases do not involve Common Issues of Law and Fact." *Id.* 2(x)(iii);

6   *see also id.* 6(b)(iii)(6)(c).  The neutral will hear that evidence and argument and, if

7   the neutral agrees, the case will be removed from the mass arbitration.  *Id.* 2(x)(iii),

8   6(b)(iii)(6)(c).   *Second*, after the bellwethers are arbitrated and the settlement

9   conference is conducted, the Rules expressly provide each party with the

10  opportunity—and the right—to argue that her case "involve[s] individualized issues

11  of law and/or fact that should not be subject to Precedent (the 'Remaining Cases')."

12  *Id.* 6(b)(iii)(4)(c)-(d).  There's absolutely no limit on the kinds of "individualized

13  issues" a claimant can raise; they could be <u>any</u> argument or evidence that's different,

14  unique, or new—or any reason to depart from precedent in that case.  In addressing

15  those issues, the neutral must determine "what evidence shall be considered … based

16  on fairness, equity, or the law." *Id.* 2(p)(iv).  And the Rules specifically direct the

17  neutral to adjudicate those issues in a manner that will "ensure fundamental fairness

18  and equity."   *Id.* 6(b)(iii)(6)(a).   There's no fair reading of these Rules—which

19  expressly require that evidence be considered based on fairness, equity, and the law,

20  and that Remaining Cases be adjudicated in a manner that will ensure fundamental

21  fairness and equity—that leads to the conclusion that Remaining Cases will, instead,

22  be adjudicated in a manner that violates claimants' fundamental due process rights.

23        In short, New Era's Rules unequivocally provide each individual claimant

24  with the opportunity to present new, different, or unique issues, and argue that, as a

25  result, precedent should not apply to their case (in whole or in in part).  The neutral

26  hears those arguments, determines what needs to be decided to ensure that the

27  individual case is adjudicated fairly, equitably, and consistent with the law—and

28  then exercises her discretion as to whether (and to what extent) to apply precedent.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-39

1    *See id.* 2(p)(iv), 2(y)(i), 6(b)(iii)(4)(c)-(d), 6(b)(iii)(5)-(6).

2        This is <u>exactly</u> how precedent operates within the same court: the

3    decisionmaker hears each case, but has no obligation to pretend that it will decide

4    identical issues differently each time they are presented.  Rather, the court typically

5    follows its prior decisions on the same issues unless a party comes forward with a

6    compelling reason to depart in their case.  Take, for example, this Court's application

7    of its prior rulings in *Oberstein*, *Dickey*, and this case.  In *Oberstein*, the Court

8    applied "its previous holding" in *Dickey*: that the Terms' delegation clause was clear

9    and unmistakable.  *See* 2021 WL 4772885, at *7.  In this case, the Court explained

10   that it "sees no reason to depart from this prior finding, and Plaintiffs have not

11   suggested one."[2]  Tentative at 5-6.  This doesn't violate due process; it "promotes

12   the evenhanded, predictable, and consistent development of legal principles, fosters

13   reliance on [legal] decisions, and contributes to the actual and perceived integrity of

14   the [legal] process."  *Payne v. Tenn.*, 501 U.S. 808, 827 (1991).

15       Courts in MDLs take the same approach to precedent.[3]  Transferor courts do

16   not relitigate issues that have already been litigated in the MDL court unless there is

17   a case-specific reason to depart.  For example, in *City & County of San Francisco v.*

18   *Purdue Pharma*, 491 F. Supp. 3d 610 (N.D. Cal. 2020), defendants argued that the

19   transferor court should not apply the MDL court's rulings on motions to dismiss—

20   or its legal findings on the merits—from other cases in the MDL to their case.  *Id.* at

---

22   [2] Likewise, in *Barfuss*—a related case before this Court with similar but distinct
23   claims, different plaintiffs, and different plaintiffs' counsel—the plaintiffs requested
     discovery into "substantive unconscionability as it relates to the New Era arbitration
     agreement."  *Barfuss v. Live Nation*, No. CV 23-1114, May 4, 2023 Hr'g Tr. 9:1-9.
24   The Court denied that request: "I would normally say yes, but the problem is … that
     precise topic is being litigated in another case in front of me, so I'm not going to
25   allow additional discovery on that particular point in this case."  *Id.* 9:10-13.

26   [3] The Court's tentative stated that an MDL court's orders "are typically limited to
     pre-trial, case management issues—not legal findings on the merits."  Tentative at
27   12.  But the MDL court has "the power to decide dispositive pretrial motions" on the
     merits, *In re Korean Air Lines Co.*, 642 F.3d 685, 699 (9th Cir. 2011), and "[i]t is
     well established that a transferee court may dispose of cases in an MDL through
28   summary judgment—and indeed, they often do."  *In re Lipitor Mktg., Sales Pracs.*
     *& Prods. Liab. Litig. (No. II)*, 892 F.3d 624, 648 (4th Cir. 2018).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-40**

630.  Judge Breyer agreed that those decisions were "not binding," but nevertheless held that, given the similarities, "the MDL's rulings will serve as a 'springboard.'" *Id.*  Thus, while it would review defendants' arguments, the transferor court would "rely on the MDL's rulings as highly persuasive authority."[4]  *Id.*  Similarly, MDL courts can and do grant summary judgment across all cases in an MDL if no plaintiff can show that their case warrants different treatment.  *See, e.g.*, *In re Zoloft Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 486 n.4 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017) (MDL court granted summary judgment for defendants in 311 cases after giving "all Plaintiffs' counsel the opportunity to submit any non-duplicative arguments in opposition").[5]  Thus, "[i]n MDLs, like in other litigation, a district court may apply prior rulings to new cases," including rulings on the merits, "if a party presents no new facts, evidence, or arguments to warrant a departure."  *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 66 n.6 (3d Cir. 2023).  New Era's Rules take the same approach: they direct the neutral to apply "significant factual findings and legal determinations" in the bellwethers to common issues if a party presents nothing different, unique, or new in their particular case that would warrant a departure.  Rules 2(y)(i), 6(b)(iii)(4)(d), 6(b)(iii)(5)-(6).

Fundamentally, precedent under New Era's Rules creates efficiencies and promotes consistent rulings where cases share common issues.  Its primary and most obvious application is when a large number of claimants represented by the same counsel bring literally identical claims, which is in fact the paradigm for mass arbitrations.  But in any event, its application is flexible—and it will not apply to an

---

[4] *See also City of Chi. v. Purdue Pharma*, 2021 WL 1208971, at *7 (N.D. Ill. Mar. 31, 2021) (transferor court applied the MDL court's decisions on summary judgment and motions to dismiss, explaining that those rulings were "highly persuasive," and "it would only belabor the point to retrace [those] steps any further").

[5] *See also In re Lipitor*, 892 F.3d at 647-49 (affirming summary judgment across all cases in MDL, after no plaintiff produced adequate evidence of specific causation in response to show-cause orders); *In re Gen. Motors Ignition Switch Litig.*, No. 14-MD-02543, ECF No. 875 at 8 (S.D.N.Y. Apr. 24, 2015) (parties bound by MDL court's rulings on consolidated complaints, unless they showed cause why a ruling should not apply to their case).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-41

1   individual case in a mass arbitration where there is a case-specific reason to depart.

2   ### 2.   *Other Mass Arbitration Questions Raised by the Court*

3   **Lead Counsel.**   The Court questioned that New Era's Rules do not specify a

4   particular process for appointing lead counsel—and thus appeared to "lack critical

5   procedural safeguards."   Tentative at 13; Hr'g Tr. 20:19-21:4.   But as explained

6   above, cases can only be part of a mass arbitration if the individual claimants are

7   represented by the same firm or group of firms acting in coordination.   Rules

8   2(x)(ii)(1), 6(b)(ii)(2)(b).   As a result, leadership conflicts are unlikely.   New Era's

9   Rules thus contemplate that counsel acting in coordination will be able to, for

10   example, reach consensus on neutral selection and bellwether selection for their

11   respective side.   *Id.* 6(b)(iii)(1)(d), 6(b)(iii)(3)(b).   Nevertheless, if some unforeseen

12   issues arose with regard to coordination of plaintiffs' counsel, the neutral has

13   discretion to implement reasonable procedures to resolve those issues and ensure

14   that every claimant is represented and heard.[6]   Such procedures could include:

15   creating a process for appointing lead counsel; increasing the number of bellwethers;

16   appointing additional neutrals; and revisiting whether common issues exist,

17   including whether claimants represented by different counsel should be in distinct

18   mass arbitration proceedings.   *See, e.g.*, *id.* 6(b)(iii)(1)(f), 6(b)(iii)(3)(d).

19   "Arbitrators are granted wide latitude to fashion remedies appropriate to the

20   situations they confront."   *Ass'n W. Pulp & Paper Workers v. Rexam Graphic*, 221

21   F.3d 1085, 1091 (9th Cir. 2000).   To that end, the rules governing arbitrations need

22   not spell out what the arbitrator should do in every possible situation.   *See, e.g.*,

23   *Weiner v. Original Talk Radio*, 2011 WL 873246, at *3 (N.D. Cal. Mar. 14, 2011)

24   (rejecting argument that arbitration agreement was unconscionable because it was

25   "silent on certain matters (such as with regard to allowable discovery, requiring the

26   arbitrator to provide a written statement of findings, or whether any arbitration rules

27

28   ────────────────────

[6] Similarly, in an MDL, there are no specific processes for appointing lead counsel; when, how, and whether to appoint lead counsel is up to the MDL court's discretion.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-42**

1   apply)"). Indeed, AAA and CPR's rules contemplate that the arbitrator will exercise

2   discretion to craft appropriate procedures for a particular case. *See* ECF No. 150-5,

3   Rule R-23 ("[A]rbitrator may issue any orders necessary to … achieve a fair,

4   efficient, and economical resolution of the case."); CPR Administered Arb. Rule 9.1

5   ("Tribunal may conduct the arbitration in such manner as it shall deem appropriate

6   while giving each party a fair opportunity to present its case.").[7]  Likewise, New

7   Era's Rules give neutrals discretion to adapt the proceedings as necessary—

8   whatever issues may arise—to ensure that the process is efficient, equitable, and fair.

9         ***Efficient Resolution of Remaining Cases.***  The Court questioned whether the

10  Rules "could create a bottleneck" because, in contrast to an MDL, "a single neutral

11  determines how to resolve all the individual cases."  Tentative at 12-13.  It bears

12  repeating that the real bottleneck in mass arbitrations occurs when providers like

13  JAMS or AAA lack any procedures at all for dealing with thousands of identical

14  claims.  In that instance, the absence of any case management tools (like bellwethers)

15  combined with the limited number of available arbitrators creates an obstacle to

16  actually resolving all of the claims on the merits.  But in any event, New Era's Rules

17  provide ample flexibility to address the Court's expressed concern.  If there were a

18  large number of Remaining Cases, if the issues were especially complex, or if having

19  multiple neutrals was, for whatever reason, more efficient, New Era's Rules

20  <u>expressly</u> provide that New Era "retains the right to provide more than one neutral

21  for a particular Mass Arbitration."  Rule 6(b)(iii)(1)(f).[8]  Moreover, the Rules direct

22  the neutral to adjudicate the issues in Remaining Cases in a manner that will "ensure

23  fundamental fairness and equity."  *Id.* 6(b)(iii)(6)(a).  Creating a bottleneck that's

24  prejudicial to claimants isn't a fair or equitable way to adjudicate Remaining Cases.

25

26  _____

    [7] *See* https://drs.cpradr.org/rules/arbitration/administered-arbitration-rules-2019.

27  [8] *See also McGrath v. DoorDash*, 2020 WL 6526129, at *9-10 (C.D. Cal. Nov. 5,
    2020) (rejecting claim that CPR's bellwether process "would force the thousands of
28  [claimants] … to delay their arbitration … for years, while they wait their turn in the
    'queue,'" because there was "little concrete evidence" of "significant delay").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-43

***Choice of Law.***  The Court also asked how "choice of law / conflict of laws issues" might impact bellwethers.  Tentative at 11 n.9.  As a threshold matter, if individual cases involve many different state laws, those cases likely do not involve common issues of law and fact—and so would not proceed as a mass arbitration.  But assuming that there were common issues, variations in state law could result in distinct, state-specific mass arbitrations.  Or the neutral could address variations in law by increasing the number of bellwethers—which the neutral expressly has the discretion to do—in order to provide for proper, representative test cases for the various sub-groups.  *See* Rule 6(b)(iii)(3)(d).  And again, the fact that the Rules expressly require that the neutral "create a process for handling and resolving individualized issues of law … to ensure fundamental fairness and equity" guarantees that individual claims will be decided fairly under the law applicable to them, and will not be prejudiced by choice of law issues.  *Id.* 6(b)(iii)(6)(a).

***Notice and Opt-Outs.***  The Court also noted that New Era's Rules do not provide notice to non-parties or an opportunity to opt out.  Tentative at 13.  Notice and opt-outs arise in class actions "because class judgments bind absentees with respect to their individual claims for relief and are preclusive as to all claims the class could have brought."  *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1920 (2022); *see also* Fed. R. Civ. P. 23(c)(2)(B)(vi)-(vii) (absentee class members must receive notice stating "the binding effect of a class judgment on members").  By contrast, notice and opt-outs are not required where the proceedings—like MDLs, for example—do not preclude absentee plaintiffs from bringing their individual claims.  *See, e.g.*, *Howard v. Sulzer Orthopedics, Inc.*, 382 F. App'x 436, 442 (6th Cir. 2010) (rejecting as "meritless" argument that plaintiff should have had an "opportunity to 'opt out' of the MDL procedure, just as absent class plaintiffs can opt out of a class action").  New Era's mass arbitration proceedings, like MDL proceedings, do not bind absentee claimants.  Further, the mass arbitration procedures provide a fair opportunity for claimants to be heard, regardless of when

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-44**

1  they file their claims; consequently, due process does not require notice and an

2  opportunity to opt out.[9]

3  **B.    The FAA Ensures Minimum Due Process—and Contract Law**

4  **Favors Enforceability**

5  Plaintiffs' arguments are a series of "what-if" hypotheticals.  They speculate

6  that, if a certain series of events occurred—for example, <u>if</u> a mass arbitration is filed

7  (Plaintiffs' counsel have <u>never</u> said they would bring one); <u>if</u> issues subsequently

8  arise with regard to the coordination of plaintiffs' counsel; <u>if</u> claimants disagree with

9  the arguments made in the bellwethers; and <u>if</u> the arbitrator acts unreasonably and

10  contrary to the New Era Rules by refusing to let those claimants raise new issues and

11  arguments in their individual cases—then a mass arbitration <u>could</u> be unfair to a

12  particular claimant.  In the unlikely event that something like that happened, the

13  FAA protects a claimant's due process rights by providing for post-award review.

14  Congress designed the FAA "to preserve due process but not to permit

15  unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v.*

16  *Prudential-Bache Trade Servs.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc).

17  Congress thus struck a balance between preserving due process and allowing

18  arbitration "to respond to the wishes of the parties more flexibly and expeditiously

19  than the federal courts' uniform rules of procedure." *Id.*  This balance "is a

20  reasonable legislative judgment that [courts] have no authority to reject." *Id.*

21  Accordingly, "when interpreting and applying the FAA," courts must be

22  "mindful not to impose the federal courts' procedural and evidentiary requirements

23  on the arbitration proceeding." *U.S. Life Ins. v. Superior Nat'l Ins.*, 591 F.3d 1167,

24  _____

25  [9] Moreover, New Era's Rules do not raise adequacy of counsel concerns.  Adequacy
    of counsel is another concept specific to class actions; it exists to ensure that class

26  counsel represent the interests of the entire class—including members who are not
    present, not involved in the proceedings, and not otherwise represented. *See* Fed. R.

27  Civ. P. 23 advisory committee note (2003) (subsection (g)).  By contrast, in a New
    Era mass arbitration, all individual claimants are present and participate directly in

28  the process; all are represented by their own counsel, <u>whom they selected</u>; and all
    have a fair opportunity to present their own issues and arguments.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-45**

1   1173 (9th Cir. 2010).  Arbitration is fundamentally different from court.  "[P]arties
2   have complete freedom to contractually modify the arbitration process by designing
3   whatever procedures and systems they think will best meet their needs." *Kyocera*,
4   341 F.3d at 1000.  And courts must "rigorously … enforce arbitration agreements
5   according to their terms, including terms that specify … the rules under which that
6   arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621
7   (2018).  If, in practice, arbitrations proceeding under those rules unfold in a way that
8   prejudices a party, the FAA empowers courts to review arbitration awards to "ensure
9   that the FAA's due process protections were afforded." *U.S. Life Ins.*, 591 F.3d at
10  1173.  To that end, "[a]n arbitration award may be vacated if the proceedings
11  violated the rule of fundamental fairness." *Costco Wholesale Corp. v. Int'l Bhd.*
12  *Teamsters, Loc. No. 542*, 850 F. App'x 467, 468 (9th Cir. 2021); *see also* 9 U.S.C.
13  § 10(a)(2)-(3) (award may be vacated where arbitrator was "guilty of misconduct in
14  refusing … to hear evidence pertinent and material to the controversy," or where
15  "the rights of any party have been prejudiced").

16      It's true that courts sometimes invalidate arbitration procedures before
17  arbitration, rather than after arbitration.  But where that happens, the procedure at
18  issue was fundamentally unfair under any reading.  The cases cited by the parties
19  illustrate the difference.  For instance, in *Graham*, the arbitration procedures were
20  invalidated pre-arbitration because they designated defendant's union—of which
21  plaintiff was not a member—as the sole arbitrator, and thus, on their face, did not
22  satisfy "minimum levels of integrity." 28 Cal. 3d 807, 826-27 (1981).  By contrast,
23  in *Mullo*, the absence of a specific rule that was facially deficient required that
24  plaintiffs' challenges be addressed post-arbitration.  2023 WL 1971897, at *4.

25      Moreover, contract law favors interpreting agreements so they're enforceable.
26  Thus, if the arbitration agreement's selection of New Era is "capable of two
27  constructions," e.g., one which interprets that selection as enforceable, and another
28  which interprets it as unenforceable, the Court "must choose [the] interpretation

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-46**

1   which will make the [agreement] legally binding." *Bleecher*, 29 Cal. 3d at 350; *see*

2   *also Fosson v. Palace, Ltd.*, 78 F.3d 1448, 1454 (9th Cir. 1996) (same); Cal. Civ.

3   Code § 1643 ("A contract must receive such an interpretation as will make it lawful,

4   operative, definite, reasonable, and capable of being carried into effect."); *id.* § 3541

5   ("An interpretation which gives effect is preferred.").   New Era's Rules are

6   unquestionably capable of an interpretation that renders them enforceable: that they

7   provide for a fair process for all parties, consistent with the expedited, streamlined

8   nature of the proceeding, and do not "shock the conscience."  The Court should—

9   and, indeed, must—choose that interpretation over one that would render the

10   selection of New Era unenforceable.  *See Standard Fruit*, 937 F.2d at 479 (if

11   arbitration agreement "is susceptible of an interpretation that would allow

12   arbitration, any doubts ... should be resolved in favor of arbitration); *Tompkins v.*

13   *23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (similar).

14       **C.**    **The Limited Right of Appeal Is Not Unconscionable**

15       The Terms contain a limited right to appeal injunctive relief.  The California

16   Supreme Court has enforced an identical provision—one where "grants but not

17   denials of injunctive relief may be appealed." *Sanchez v. Valencia Holding Co.*, 61

18   Cal. 4th 899, 906 (2015); *see also McKay v. JPMorgan Chase Bank*, 2016 WL

19   11755601, at *7 (C.D. Cal. Mar. 8, 2016).  The Terms' provision was adopted from

20   *Sanchez*, and tracks the language nearly verbatim; this Court, however, questioned

21   whether (a) *Sanchez* was distinguishable because injunctive relief in antitrust cases

22   "is a critical remedy for vindication of the public good," and (b) "claimants would

23   be the only parties pursuing any real form of injunctive relief."  Tentative at 16.

24       The importance of injunctive relief in antitrust cases is not a basis to

25   distinguish *Sanchez*; the relief at issue in *Sanchez* was also "a critical remedy for

26   vindication of the public good," and had an equally "broad impact" on the public.

27   *Id.*  Specifically, the plaintiff brought a claim for violations of California's UCL

28   based on fraudulent business practices. *Sanchez*, 61 Cal. 4th at 907.  Under the UCL,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-47**

1   a plaintiff cannot obtain damages; only equitable remedies are available.  *See, e.g.*,

2   *Kryzhanovskiy v. Amazon.com Servs.*, 2022 WL 2345677, at *3 (E.D. Cal. June 29,

3   2022).  One such remedy is "public injunctive relief, i.e., injunctive relief that has

4   the primary purpose and effect of prohibiting unlawful acts that threaten future injury

5   to the general public."  *McGill v. Citibank*, 2 Cal. 5th 945, 951 (2017).  It is hard to

6   imagine a form of relief that is more geared toward "vindication of the public good"

7   or more likely to have a "broad impact" on the public than enjoining a fraudulent

8   business practice.  *See Sanchez*, 61 Cal. 4th at 917 (recognizing "the public['s] …

9   strong interest in ensuring that fraudulent business practices are enjoined").

10      Moreover, it's not true that claimants would be the only parties pursuing

11   injunctions.  For example, Defendants employ ticket limits to prevent resellers from

12   engaging in ticketing arbitrage; resellers, in turn, use constantly evolving strategies

13   to circumvent these limits (e.g., they pay other people to open accounts, and then

14   use those accounts to purchase tickets).  Obtaining injunctive relief via arbitration is

15   an important tool in this arms race.  Where Defendants obtain an injunction against

16   a reseller, the reseller is highly likely to appeal.

17      In any event, *Sanchez* enforced the appeal provision despite the fact that it was

18   more likely to benefit the defendant.  *Id.*  And this Court adopted *Sanchez*'s exact

19   reasoning when rejecting a claim that the conditional license carve-out in

20   Defendants' Terms was unconscionable: an "arguably one-sided clause in [an]

21   arbitration agreement [is] not unconscionable where it provide[s] 'the party with

22   superior bargaining strength a type of extra protection for which it has a legitimate

23   commercial need.'"  *Dickey v. Ticketmaster*, 2019 WL 9096443, at *9 (C.D. Cal.

24   Mar. 12, 2019) (quoting *Sanchez*).[10]

25

26   [10] The Court also sought clarity on the temporal scope of the Terms.  Tentative at 9.
     The Terms' arbitration agreement expressly covers claims "irrespective of when
27   [they] arose."  ECF No. 31-30 at 11.  "Courts have … consistently applied arbitration
     agreements retroactively where," as here, the agreement "facially appl[ies] to
28   disputes arising prior to the agreement."  *DeVries v. Experian Info. Sols.*, 2017 WL
     733096, at *8 (N.D. Cal. Feb. 24, 2017).  Thus, where a consumer has agreed to the
     current Terms, claims not previously filed go to New Era.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-48

1  Dated:  June 2, 2023                          Respectfully Submitted,

2

3                                                LATHAM & WATKINS LLP

4                                         By: _Timothy L. O'Ma____

5                                                Timothy L. O'Mara

6                                                505 Montgomery Street, Suite 2000
                                                 San Francisco, California  94111-6538
                                                 Telephone:  +1.415.391.0600
7                                                Facsimile:  +1.415.395.8095
                                                 tim.o'mara@lw.com
8                                                *Attorneys for Defendants*
                                                 *Ticketmaster L.L.C. and Live Nation*
9                                                *Entertainment, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-49

1
2

## CERTIFICATE OF COMPLIANCE

3
4
5

The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc., certifies that this brief contains 13 pages, which complies with the page limit set by the Court in its May 1, 2023 order (ECF No. 160).

6
7   Dated: June 2, 2023
8                                                    Timothy L. O'Mara
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-50**

LATHAM & WATKINS LLP
  Timothy L. O'Mara (Bar No. 212731)
   *tim.o'mara@lw.com*
  Sadik Huseny (Bar No. 224659)
   *sadik.huseny@lw.com*
  Andrew M. Gass (Bar No. 259694)
   *andrew.gass@lw.com*
  Kirsten M. Ferguson (Bar No. 252781)
   *kirsten.ferguson@lw.com*
  Alicia R. Jovais (Bar No. 296172)
   *alicia.jovais@lw.com*
  Robin L. Gushman (Bar No. 305048)
   *robin.gushman@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C.
and Live Nation Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>        Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: May 1, 2023<br><br>Hearing Time: 8:30 a.m.<br><br>Courtroom: 9D, 9th Floor |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-51**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................... 1

II.     DISCOVERY PUT THE LIE TO PLAINTIFFS' BIAS
        ALLEGATIONS ..................................................................................... 2

III.    ARGUMENT ........................................................................................... 4

        A.      Plaintiffs' Challenges Have Been Delegated to the
                Arbitrator ..................................................................................... 4

        B.      The Terms Are Not Unconscionable ........................................... 6

                1.      The Terms Are Not Procedurally Unconscionable .................. 6

                2.      The Terms Are Not Substantively Unconscionable ................ 8

                        a.      New Era's Rules Promote the Efficient,
                                Bilateral Resolution of Individual
                                Arbitrations, as the FAA Intends ..................................... 8

                                (1)      Mass Arbitrations Are Not "Class" or
                                         "Representative" Proceedings............................. 9

                                (2)      The FAA Applies ................................................. 11

                        b.      New Era Is a Neutral Forum ......................................... 12

                        c.      New Era's Rules on Page Limits Are
                                Discretionary ................................................................. 14

                        d.      New Era's Rules Allow for Discovery
                                Consistent with Industry Standards.............................. 15

                        e.      New Era's Arbitrator Selection Rules Are
                                Fair and Consistent with Industry Standards ............... 18

                        f.      The Class Action Waiver and Appeal
                                Provision Are Enforceable ............................................ 19

        C.      Even If the Selection of New Era Arbitration Were
                Unenforceable, Plaintiffs Are Still Required to Arbitrate ................ 21

IV.     CONCLUSION ..................................................................................... 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-52

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abeyrama v. J.P. Morgan Chase Bank,*
  2012 WL 2393063 (C.D. Cal. June 22, 2012)...................................................18

*AT&T Mobility v. Concepcion,*
  563 U.S. 333 (2011) ..........................................................................2, 15, 20, 21

*Borgarding v. JPMorgan Chase Bank,*
  2016 WL 8904413 (C.D. Cal. Oct. 31, 2016) ..................................................18

*Carillo v. Gruma Corp.,*
  2017 WL 11631614 (C.D. Cal. Mar. 14, 2017) ...............................................18

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.,*
  83 Cal. App. 4th 677 (2000)..............................................................................17

*Colby v. J.C. Penney Co.,*
  811 F.2d 1119 (7th Cir. 1987) ............................................................................9

*Discover Bank v. Superior Ct.,*
  36 Cal. 4th 148 (2005).......................................................................................20

*Donovan v. Coinbase Glob., Inc.,*
  2023 WL 2124776 (N.D. Cal. Jan. 6, 2023) ......................................................5

*Dotson v. Amgen, Inc.,*
  181 Cal. App. 4th 975 (2010)......................................................................13, 17

*Epic Sys. Corp. v. Lewis,*
  138 S. Ct. 1612 (2018) ........................................................................................2

*Fitz v. NCR Corp.,*
  118 Cal. App 4th 702 (2004)............................................................................18

*Gilmer v. Interstate/Johnson Lane,*
  500 U.S. 20 (1991) ...................................................................................2, 11, 13

*Hallsted v. JPMorgan Chase,*
  2017 WL 8186687 (C.D. Cal. Sept. 11, 2017)...................................................6

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-53**

*Home Depot USA v. Lafarge N. Am.*,
 59 F.4th 55 (3d Cir. 2023) ..................................................................... 9, 10

*Lee v. Ticketmaster*,
 2019 WL 9096442 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393
 (9th Cir. 2020) ........................................................................................... 7

*Little v. Auto Stiegler*,
 29 Cal. 4th 1064 (2003) ........................................................................... 20

*McCray v. Am. Canyon City Hall*,
 2023 WL 2278408 (E.D. Cal. Feb. 28, 2023) .......................................... 15

*McKay v. JPMorgan Chase Bank*,
 2016 WL 11755601 (C.D. Cal. Mar. 8, 2016) .......................................... 20

*Modiano v. BMW of N. Am.*,
 2021 WL 5750460 (S.D. Cal. June 29, 2021) ........................................... 18

*Mullo v. DoorDash*,
 2023 WL 1971897 (S.D.N.Y. Jan. 17, 2023) ................................. 11, 12, 13

*Nixon v. Dream St. Inc.*,
 2019 WL 13197378 (D. Ariz. May 24, 2019) .............................................. 5

*Oberstein v. Live Nation*,
 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) .................................... 5, 6, 8

*Oberstein v. Live Nation*,
 60 F.4th 505 (9th Cir. 2023) ........................................................... 1, 7, 21

*Pokrass v. DirecTV Grp.*,
 2008 WL 2897084 (C.D. Cal. July 14, 2008) ............................................. 6

*Poublon v. C.H. Robinson*,
 846 F.3d 1251 (9th Cir. 2017) ........................................................... 17, 22

*Price v. Apple*,
 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) .............................................. 6

*Rent-A-Center, W., Inc. v. Jackson*,
 561 U.S. 63 (2010) ..................................................................................... 5

*Roman v. Superior Ct.*,
 172 Cal. App. 4th 1462 (2009) ................................................................. 17

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-54

*Sanchez v. Valencia Holding Co.*,
   61 Cal. 4th 899 (2015)..................................................................6, 20, 21

*Sandquist v. Lebo Auto., Inc.*,
   1 Cal. 5th 233 (2016).............................................................................13

*Serv. Partners v. Am. Home Assurance*,
   2011 WL 2516411 (C.D. Cal. June 20, 2011).......................................19

*Sheppard v. Staffmark Inv.*,
   2021 WL 690260 (N.D. Cal. Feb. 23, 2021).........................................20

*Szetela v. Discover Bank*,
   97 Cal. App. 4th 1094 (2002)..................................................................7

*Taylor v. TA Operating*,
   2023 WL 171359 (E.D. Cal. Jan. 12, 2023)............................................5

*Tiri v. Lucky Chances, Inc.*,
   226 Cal. App. 4th 231 (2014)..............................................................5, 6

*Viking River Cruises v. Moriana*,
   142 S. Ct. 1906 (2022) ....................................................................11, 12

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) ...............................................................15

*Wu v. JPMorgan Chase Bank*,
   2019 WL 4261880 (C.D. Cal. Aug. 5, 2019) ........................................21

*Yeomans v. World Fin. Grp. Ins. Agency*,
   485 F. Supp. 3d 1168 (N.D. Cal. 2020) .................................................17

**STATUTES**

9 U.S.C. § 10(a)(2) ......................................................................................19

Cal. Civ. Proc. Code §§ 1280-1294.4..........................................................18

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-55**

# I.    INTRODUCTION

Defendants filed their motion to compel arbitration over a year ago.  In the interim, the Ninth Circuit affirmed, in full, this Court's order compelling arbitration in the earlier *Oberstein* case (brought by the same counsel as here), and rejected the argument that consumers did not *really* know who they were contracting with, and had not *really* agreed to arbitration with Defendants.  Instead, the Ninth Circuit held—in a unanimous, published opinion—that the arbitration agreement in Defendants' Terms is "a valid agreement" between Defendants and consumers, and that "the requirements for mutual assent [are] met."  *Oberstein v. Live Nation*, 60 F.4th 505, 509 (9th Cir. 2023).  Consequently, in this case, Plaintiffs' counsel do not dispute that Plaintiffs repeatedly agreed to the Terms, which select New Era as the arbitration provider.

Instead, Plaintiffs' counsel take a different approach to trying to avoid arbitration here—arguing that Defendants' selection of New Era as the arbitration provider in their Terms "shocks the conscience."  So, over the past 12+ months, Plaintiffs sought (and received) extensive discovery from Defendants and New Era on this issue.  Plaintiffs brazenly claimed that discovery would uncover facts that shock the conscience: that Defendants were "intimately involved in New Era's founding and growth," that Defendants "collude[d] with" New Era, that "Latham … played a significant role in … drafting New Era's rules and procedures," and that New Era had an "anti-consumer bias" due to its "direct financial dependence" on Defendants.  ECF No. 34-1 at 2-3, 5.  *Discovery proved that <u>none</u> of those accusations are true*.  That's why—despite receiving thousands of pages of documents and taking two depositions—Plaintiffs cite so little discovery in their Opposition.

Instead, Plaintiffs focus on the text of New Era's Rules, which they had before them a year ago.  They argue that the procedures for mass arbitrations and arbitrator selection are unconscionable, that the Rules create a risk of potential bias, that the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-56**

1   default limitations on discovery, brief length, and record size are unconscionable,

2   etc.   Ultimately, Plaintiffs claim that New Era's Rules are so outlandish that

3   arbitrations administered by New Era are not really arbitrations at all, and thus fall

4   outside the FAA's scope.  Plaintiffs' arguments are frivolous.

5          Contrary to Plaintiffs' irresponsible and distorted allegations, New Era's

6   Rules are sensible, fair, and similar to those promulgated by JAMS and AAA.

7   Plaintiffs' arguments are also contrary to controlling law.  The FAA does not allow

8   a plaintiff to avoid arbitration based on speculation that the arbitrator and arbitral

9   process will not be "competent, conscientious and impartial." *Gilmer v. Interstate/*

10  *Johnson Lane*, 500 U.S. 20, 30 (1991).  And the FAA requires courts to respect the

11  parties' "discretion in designing arbitration processes … to allow for efficient,

12  streamlined procedures tailored to the type of dispute." *AT&T Mobility v.*

13  *Concepcion*, 563 U.S. 333, 344 (2011).  Consequently, courts must "rigorously …

14  enforce arbitration agreements according to their terms, including terms that

15  specify … *the rules* under which that arbitration will be conducted." *Epic Sys. Corp.*

16  *v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

17         There's nothing unconscionable about New Era's Rules, and the arbitration

18  agreement should be enforced, in full.  But it's worth noting that, even if the Court

19  somehow deemed New Era's Rules unconscionable, Plaintiffs are still required to

20  arbitrate their claims.  The Terms contain a clear severability clause, and the Terms

21  state that, if New Era is unable to conduct the arbitration for any reason, arbitration

22  will instead be conducted by another arbitration provider.  The law is clear that the

23  severability clause and the provision on alternate arbitration providers are binding

24  and enforceable.

25         Defendants respectfully request that the Court grant their Motion.

26  **II.     DISCOVERY PUT THE LIE TO PLAINTIFFS' BIAS ALLEGATIONS**

27         Despite insisting on—and receiving—extensive pre-arbitration discovery,

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-57**

1    Plaintiffs cite hardly any discovery in their Opposition.[1]  That's because discovery

2    showed that Plaintiffs' incendiary allegations about New Era and Live Nation are

3    false.

4         First, discovery confirmed that Defendants and their counsel were not

5    involved in New Era's founding—let alone "intimately involved."  New Era was

6    founded in 2020, and launched its ADR services in April 2021.  *See* Opp'n Ex. C

7    10:16-18, 11:3-5.  The first communication between New Era and Defendants'

8    counsel was in May 2021.  *See id.* 86:2-88:2.

9         Second, discovery established that Defendants' counsel and New Era engaged

10   in an arm's-length discussion over the potential selection of New Era—and that there

11   was nothing improper about those interactions.  To the contrary, those interactions

12   consisted of, in total, five or six Zoom meetings in May and June 2021, during which

13   Defendants' counsel vetted New Era—asking questions about their capabilities and

14   offerings—and negotiated the terms of the subscription agreement (e.g., price).  *See*

15   *id.* 65:22-66:4, 89:15-18, 92:3-93:14, 95:4-9, 96:12-20, 169:24-170:1, 174:9-16.

16        Third, discovery confirmed that Defendants and their counsel played no role

17   whatsoever in the drafting of New Era's Rules.  *Id.* 96:17-97:2, 108:12-16.[2]

18        Fourth, discovery established that New Era is not financially dependent on

19   Defendants. ██████████████████████████████████████████████████

20   ███████████████████████████████████████████████████████████████

21   ████████████████████████████████████████.[3]  *Id.* 16:17-21, 17:2-4, 18:3-6.

22   _____

23   [1]    For example, Plaintiffs cite Live Nation's deposition once, *see* Opp'n at 3,
     and they cite to just nine documents (out of nearly 700) that were produced, *see*
24   Opp'n Exs. F-N.  Notably, only four of those nine are actually communications
     between New Era and Defendants' counsel.  The remainder are communications
25   with Latham attorneys in other offices who have never represented Defendants and
     have no connection to Defendants whatsoever.
26   [2]    Plaintiffs' footnote argument that the Court should nevertheless just infer that
     "Latham shaped" New Era's Rules—without any evidence—is absurd.  Opp'n at 2
27   n.1.
     [3]    For example, well-known companies like SeatGeek, SpotHero, Zynga, and
28   PopID designate New Era in their publicly available online terms.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-58



1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ████████████. *Id.* 24:20-23, 31:13-21; Opp'n Ex. E ¶¶ 5-6.

4     Finally, discovery did not uncover <u>any</u> evidence of bias.  That doesn't stop

5 Plaintiffs from misrepresenting the discovery record.  But Plaintiffs' "evidence" of

6 bias consists of (1) a handful of emails reflecting the fact that some attorneys at

7 Latham and other firms were interested in learning about New Era's services (*see,*

8 *e.g.*, Opp'n Exs. F, G, I, J, K, L, N), and (2) a New Era PowerPoint, which states

9 that ████████████████████████████████████████

10 █████████.  Opp'n at 2 (citing Ex. F at 15).  This is obviously not evidence

11 of bias—in fact, ██████████████████████████████████

12 ████████████████████████████████████████████:

21 Opp'n Ex. F at 15.  Plaintiffs never acknowledge █████████████████

22 ███████████████████████████████████████████████

23 ███████████████████████████.

**III.   ARGUMENT**

    **A.   Plaintiffs' Challenges Have Been Delegated to the Arbitrator**

    This Court has repeatedly held—and Plaintiffs do not dispute—that the Terms

contain a "delegation clause [which] clearly and unmistakably delegates arbitrability

to the arbitrator," and, consequently, that "the Court's unconscionability inquiry is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-59**

1   limited to the delegation clause instead of the arbitration clause as a whole."

2   *Oberstein v. Live Nation*, 2021 WL 4772885, at *8 (C.D. Cal. Sept. 20, 2021).

3   Nevertheless, virtually all of Plaintiffs' arguments relate to the arbitration

4   agreement as a whole.  Plaintiffs hope to solve this problem by tacking on four

5   conclusory sentences to the end of their Opposition, claiming—without

6   explanation—that all of Plaintiffs' arguments apply to the delegation clause.  *See*

7   Opp'n at 24.  That's not enough.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S.

8   63, 74 (2010) (court cannot consider unconscionability challenge unless plaintiff

9   argues that, "*as applied* to the delegation provision," it "render[s] *that provision*

10  unconscionable"); *Taylor v. TA Operating*, 2023 WL 171359, at *9 (E.D. Cal. Jan.

11  12, 2023).  Plaintiffs' conclusory argument does not "reflect any specific showing

12  as to why the [d]elegation [c]lause itself is actually unenforceable due to

13  unconscionability." *Nixon v. Dream St. Inc.*, 2019 WL 13197378, at *4 (D. Ariz.

14  May 24, 2019); *see also Donovan v. Coinbase Glob., Inc.*, 2023 WL 2124776, at *5

15  (N.D. Cal. Jan. 6, 2023) (plaintiffs failed to meet their burden where they

16  "identif[ied] a hodgepodge of *other provisions* within the Arbitration Clause … that

17  supposedly unfairly favor [defendant] and thus render the Delegation Clause unfair

18  as well").  It is not enough that "arbitration procedures—for example … limitations

19  on discovery—may apply equally to the delegation clause"; instead, Plaintiffs "must

20  argue that those provisions are unconscionable <u>as applied to the delegation clause</u>."

21  *Taylor*, 2023 WL 171359, at *9.

22  Plaintiffs do assert (without explanation) that delegation is unconscionable

23  because New Era's arbitrators will be biased on "threshold issues."  Opp'n at 24.

24  The argument seems to be that New Era's arbitrators have a business incentive to

25  rule in favor of subscribing Defendants.  That fails as a matter of law.  Even if "the

26  arbitrator has a unique self-interest in deciding that a dispute is arbitrable," because

27  "one party tends to be a repeat player," that does not render a delegation clause

28  unconscionable. *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 248-49 (2014).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-60**

1    It does not, because the concern regarding arbitrator self-interest is "virtually <u>always</u>

2    present with delegation clauses"; therefore, deeming it a basis for unconscionability

3    "would be tantamount to concluding that delegation clauses … are categorically

4    unenforceable." *Id.* at 249; *infra* Section III.B.2.b (explaining why Plaintiffs' bias

5    argument against the arbitration agreement as a whole fails).

6          The Court's inquiry can and should end here.

7    **B.    The Terms Are Not Unconscionable**

8          In any event, Plaintiffs' challenges to the Terms as a whole are meritless.

9    Under California law, a plaintiff must show that a contract is both procedurally and

10   substantively unconscionable to be unenforceable.  *Sanchez v. Valencia Holding*

11   *Co.*, 61 Cal. 4th 899, 910 (2015).  Plaintiffs show neither.

12         *1.    The Terms Are Not Procedurally Unconscionable*

13         "Procedural unconscionability concerns the manner in which the contract was

14   negotiated," focusing on oppression and surprise.  *Hallsted v. JPMorgan Chase*,

15   2017 WL 8186687, at *3 (C.D. Cal. Sept. 11, 2017).  Here, the Terms concern

16   non-essential, recreational activities; that weighs against a finding of procedural

17   unconscionability.  *See Oberstein*, 2021 WL 4772885, at *9; *Pokrass v. DirecTV*

18   *Grp.*, 2008 WL 2897084, at *7 (C.D. Cal. July 14, 2008) ("contracts for nonessential

19   recreational activities cannot be procedurally unconscionable"); *Price v. Apple*, 2022

20   WL 1032472, at *3 (N.D. Cal. Apr. 6, 2022) ("the nature of such contracts weighs

21   against" procedural unconscionability).

22         Plaintiffs seek to evade this well-established principle by arguing that the

23   selection of New Era was a "no-notice … unilateral change" imposed "midstream"

24   during litigation, and thus was surprising and oppressive.  Opp'n at 7-8.  That's

25   unequivocally false.  Defendants <u>did</u> provide Plaintiffs notice, repeatedly, of the

26   current Terms, which clearly select New Era.  *See* Mot. to Compel Arb. at 4-7, 11-

27   13, ECF No. 30-1 ("Mot.").  And Plaintiffs repeatedly assented to those Terms: in

28   addition to the notice at sign-in (which this Court and the Ninth Circuit previously

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-61**

1    upheld), Plaintiffs here also affirmatively checked a box stating that they had read

2    and agreed to the current Terms designating New Era. *Id.* at 5-6; *see also Oberstein*,

3    60 F.4th at 517.  *Plaintiffs do <u>not</u> dispute that they did so*.  Instead, Plaintiffs imply

4    that they did not receive *specific* notice regarding a *specific* change in the Terms.

5    Courts (including the Ninth Circuit) have rejected that argument.   *Lee v.*

6    *Ticketmaster*, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x

7    393, 395 (9th Cir. 2020) (holding that changes to Ticketmaster's Terms are

8    enforceable where plaintiff later agreed to updated Terms through notice on

9    purchase page).

10    Plaintiffs ignore *Lee* and cite *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094,

11    1100 (2002) instead.  There, the plaintiff received a notice purporting to amend the

12    terms of his agreement with the bank in a bill stuffer.  Those facts could not be more

13    inapposite.  Here, by contrast, Plaintiffs checked a box expressly affirming that they

14    had read and agreed to the current Terms; they cannot complain now that they had

15    "no notice" of the content of those Terms.

16    Plaintiffs' "midstream" litigation argument is equally disingenuous.  Plaintiffs

17    are deliberately conflating this case with *Oberstein*—presenting them as though they

18    are one continuous litigation.  These are two separate cases, filed at entirely different

19    times, with different named plaintiffs (just by the same counsel, seeking to

20    circumvent arbitration via different arguments).  Defendants have <u>never</u> argued that

21    the current Terms apply in *Oberstein*, that the *Oberstein* named plaintiffs must

22    arbitrate at New Era, or that any claims filed prior to when the Terms were updated

23    should go to New Era.   New and different named plaintiffs filed the present

24    complaint six months <u>after</u> the Terms were amended to designate New Era.  Those

25    plaintiffs—Heckman, Ponce, Popp, and Roberts—were not named plaintiffs in

26    *Oberstein*, and each of them indisputably agreed to the current version of the Terms

27    selecting New Era <u>before</u> they filed this case.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-62

1    Finally, Plaintiffs argue that Defendants and consumers were in "an ongoing

2  contractual relationship," and thus there is an "implied covenant" that the Terms

3  cannot be changed "midstream."  Opp'n at 7-8.  Plaintiffs are arguing that even

4  where a company provides notice, and the specific consumers at issue expressly

5  agree to updated terms, a company can never change its terms.  That's obviously not

6  the law—and Plaintiffs cite no case to the contrary.

7    Ultimately, none of Plaintiffs' arguments compels a different conclusion than

8  the one this Court reached in *Oberstein*: there is, at most, "a low level of procedural

9  unconscionability."  *Oberstein*, 2021 WL 4772885, at *9.  Therefore, the Terms

10  "must be enforced unless there is a heightened finding of substantive

11  unconscionability." *Id.*

### 2.    The Terms Are Not Substantively Unconscionable

13    In order to demonstrate substantive unconscionability, "[i]t is not enough that

14  terms are slightly one-sided or confer more benefits on a particular party; a

15  substantively unconscionable term must be so unreasonable and one-sided as to

16  'shock the conscience.'"  *Id.*  There is nothing about the Terms or the selection of

17  New Era that comes close to "shocking the conscience."

### a.    New Era's Rules Promote the Efficient, Bilateral Resolution of Individual Arbitrations, as the FAA Intends

20    Plaintiffs' unconscionability argument focuses on New Era's use of a

21  bellwether process for mass arbitrations.  Specifically, Plaintiffs claim that, due to

22  the application of precedent from bellwethers, claimants are unfairly subjected to

23  "class or representative proceedings," Opp'n at 11, and because New Era's mass

24  arbitrations are actually "class arbitrations," the FAA cannot apply to the Terms, *id.*

25  at 1, 19-23.  Plaintiffs are wrong.

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-63**

*(1)   Mass Arbitrations Are Not "Class" or "Representative" Proceedings*

Mass arbitrations are not "class" or "representative" proceedings under New Era's Rules; to the contrary, each case retains its separate identity as an individual, bilateral arbitration.  Nothing about the use of bellwethers changes this.  Bellwether claimants do not represent, for example, absentee claimants.  And New Era's Rules are clear that precedent from bellwethers is <u>non-binding</u>: the neutral *may* apply significant factual findings and legal determinations in one proceeding to another proceeding involving common issues.  Rule 2(y)(i), ECF No. 30-4 ("New Era Rules").  Any party, however, is free to argue that a case "involve[s] individualized issues of law and/or fact that should not be subject to [p]recedent."  New Era Rule 6(b)(iii)(4)(d).  If the neutral agrees, then precedent from the bellwethers will not apply to those issues.

Bellwethers thus do <u>not</u> have law-of-the-case or issue-preclusive effect.  Instead, bellwether precedent is similar to how precedent operates among individual court cases of equal level: while the arbitrator "must give considerable weight to [prior] decisions … [the arbitrator] is not absolutely bound by them, and must give fair consideration to any substantial argument that a litigant makes" in support of a different result.  *See Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) (describing precedent).[4]  Plaintiffs' key case here—*Home Depot USA v. Lafarge N. Am.*, 59 F.4th 55 (3d Cir. 2023)—helpfully explains this issue.  There, the Third Circuit reversed the district court's application of law-of-the-case and issue preclusion to a later-filed case in a longstanding MDL.  In doing so, the court drew a distinction between law-of-the-case and issue preclusion, on the one hand, and application of precedent to common issues, on the other.  The court explained that,

---

[4]   Contrary to Plaintiffs' claim (Opp'n at 11-12), this is true for later-filed claims too.  *See* New Era Rule 2(y)(ii) (later-filed cases involving common issues *may* be subject to precedent).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-64**

1  "[i]n MDLs, like in other litigation, a district court may apply prior rulings to new

2  cases if a party presents no new facts, evidence, or arguments to warrant a

3  departure." *Id.* at 66 n.6.  The court further explained that, in MDLs, judges are free

4  to "enter an order with respect to one party and then provide that it will be

5  automatically extended to other parties if they do not come forward and show cause

6  why it should be not be applicable." *Id.* at 66.  That is <u>exactly</u> how New Era's Rules

7  work: precedent from bellwethers applies to common issues in individual cases,

8  unless a party demonstrates that a case "involve[s] individualized issues of law

9  and/or fact that should not be subject to the [p]recedent."    New Era Rule

10  6(b)(iii)(4)(d).

11     Plaintiffs also argue that the use of precedent is non-mutual, because "only

12  plaintiffs bear the risk of loss on common issues." Opp'n at 5.  That's categorically

13  false.  The application of precedent is mutual—and neutral.  Either party could win

14  or lose common issues; there's nothing about the process that favors one party over

15  another.  *See* New Era Rules 2(y) (defining precedent), 6(b)(iii)(4)-(6) (explaining

16  application of precedent).

17     Plaintiffs make two fallback arguments.  First, they claim that if Defendants

18  lost on a common issue, "Defendants get … the choice of leaving New Era." Opp'n

19  at 5.  That makes no sense.  If Defendants lost on a common issue, they could not

20  simply select a new arbitration provider; any change to the Terms would not apply

21  to an ongoing mass arbitration, to anyone who had already filed an arbitration

22  demand, or to anyone who did not assent to the new Terms.  Second, Plaintiffs

23  speculate that if Defendants lost on a common issue, they could "forc[e] every

24  individualized issue through the bottleneck of a single arbitrator." *Id.*  New Era's

25  Rules do <u>not</u> require that a single arbitrator decide individualized issues in each case;

26  rather, they provide that the arbitrator will create a process for resolving those issues.

27  *See* New Era Rule 6(b)(iii)(6).  That process could, for example, include assigning

28  cases to other New Era arbitrators, if that's more efficient.  In any event, Plaintiffs

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-65**

1  cannot avoid arbitration by speculating that the arbitrator will not employ a fair and

2  efficient process for resolving remaining cases.  *See, e.g.*, *Gilmer*, 500 U.S. at 30;

3  *Mullo v. DoorDash*, 2023 WL 1971897, at *4 (S.D.N.Y. Jan. 17, 2023).

4  Furthermore, New Era's Rules in this regard are completely consistent with industry

5  standards—for example, AAA's suggested mass arbitration procedures include

6  "assigning multiple proceedings to a single, mutually agreeable Merits Arbitrator."

7  *Compare* O'Mara Decl. Ex. E, AAA Suppl. Rules for Multiple Case Filings, Rule

8  MC-7, *with* New Era Rule 6(b)(iii)(1).

9        Finally, it's worth pausing on the fact that (as explained in Defendants'

10  Motion at 19-20) Plaintiffs' own counsel previously proposed procedures for

11  administering mass arbitrations that are strikingly similar to New Era's.  Plaintiffs

12  do not make any meaningful attempt to explain the hypocrisy here, other than say—

13  in a footnote, without explanation—that the "comparison is facially inaccurate."

14  Opp'n at 5 n.3.  That's plainly wrong.  And Plaintiffs' inability to explain why the

15  bellwether process is fine when they propose it—but "shocks the conscience" here—

16  speaks volumes.

17        *(2)*    <u>The FAA Applies</u>

18        The Terms expressly state that they are governed by the FAA.  ECF No. 31-

19  30 at 12.  Nevertheless, Plaintiffs devote nearly a quarter of their Opposition to

20  arguing that the FAA cannot apply, because the use of bellwethers means that New

21  Era's mass arbitrations are really "class arbitrations."  *See* Opp'n at 1, 19-23.  They

22  are not, as explained above.

23        Nevertheless, Plaintiffs cite *Viking River Cruises v. Moriana*, 142 S. Ct. 1906

24  (2022), relying on several out-of-context quotes from that case.  *See* Opp'n at 22.

25  *Viking*, however, does not help Plaintiffs.  There, the Supreme Court addressed a

26  California rule prohibiting the division of individual and representative claims under

27  California's Private Attorneys General Act ("PAGA").  142 S. Ct. at 1916-17.

28  Viking argued that the FAA preempted this rule because "PAGA creates a form of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-66

1    class or collective proceeding," and class procedures are inconsistent with the FAA.

2    *Id.* at 1918.  The Court ultimately held that the California rule was preempted, but

3    rejected Viking's rationale.  Instead, the Court distinguished class proceedings

4    (which "bind absentees with respect to their individual claims for relief and are

5    preclusive as to all claims the class could have brought") from non-class

6    proceedings, and explained that, "[b]ecause PAGA actions do not adjudicate the

7    individual claims of multiple absent third parties," they were <u>not</u> class proceedings—

8    and thus did "not present the problems of notice, due process, and adequacy of

9    representation that render class arbitration inconsistent with arbitration's

10   traditionally individualized form." *Id.* at 1920-21.  The same thing is true of New

11   Era's bellwether process: that process does not "adjudicate the individual claims of

12   multiple absent third parties," and does not have preclusive effect; it therefore is <u>not</u>

13   a class proceeding, and <u>not</u> inconsistent with the FAA.

14                    **b.     New Era Is a Neutral Forum**

15          Plaintiffs also argue that the selection of New Era is unconscionable because

16   "New Era is biased in favor of Defendants and Latham."  Opp'n at 9-11.  As

17   explained above, in Section II, discovery did not uncover any evidence of <u>actual</u>

18   bias.  What Plaintiffs are really arguing is that New Era and its arbitrators <u>might</u> be

19   biased: that New Era's subscription model[5] creates incentives to "appease"

20   Defendants; that New Era's arbitrators could be biased because "New Era selects,

21   pays, and can terminate those arbitrators"; and that New Era could improperly

22   change its Rules or replace a neutral "on a whim." *Id.*  This is all pure speculation.

23          First, the "risk of 'potential bias'" is not a basis for invalidating an arbitration

24   agreement. *Mullo*, 2023 WL 1971897, at *4.  Moreover, the law is clear that "the

25   belief that arbitrators might over time be biased toward the repeat players that bring

26

27   _____

28   [5]    New Era isn't the only arbitration provider that offers a subscription
     agreement; FedArb, for example, does as well.  *See* https://www.fedarb.com/
     framework-for-mass-arbitration-proceedings-adr-mdl/.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-67

1  them business" is not a basis for finding an arbitration agreement unconscionable,

2  and courts may not presume "that arbitrators are ill-equipped to disregard such

3  institutional incentives and rule fairly and equitably." *Sandquist v. Lebo Auto., Inc.*,

4  1 Cal. 5th 233, 259 (2016).  Nothing about New Era's subscription option changes

5  this analysis.  Mot. at 20-22.

6        Second, there is absolutely no basis to impute any purported bias from New

7  Era to its arbitrators.  As explained in Defendants' Motion (at 21), New Era's role is

8  purely administrative; it does not make any substantive determinations in the

9  arbitrations it administers.  Nevertheless, Plaintiffs argue that New Era's arbitrators

10  <u>could</u> be biased because "New Era selects, pays, and can terminate those arbitrators."

11  Opp'n at 10.  But that it is true of every arbitration provider.  And there is no basis

12  to presume that New Era's experienced, qualified neutrals cannot rule fairly and

13  equitably.  *See Sandquist*, 1 Cal. 5th at 259; *Gilmer*, 500 U.S. at 30.

14        Third, New Era's ability to modify its rules and replace neutrals is 100-percent

15  consistent with industry standards.  *Compare* New Era Rule 2(dd) (New Era may

16  modify its rules, but will endeavor to do so only once per quarter and provide notice

17  of changes that substantively affect proceedings), *with* O'Mara Decl. Ex. A, JAMS

18  Streamlined Rule 3 ("JAMS may amend these Rules without notice."); *compare*

19  New Era Rule 2(k)(iv) (allowing New Era to replace a neutral upon "a legitimate

20  request or concern or upon unforeseeable circumstances"), *with* O'Mara Decl. Ex.

21  A, JAMS Streamlined Rule 12(h) (JAMS decides whether arbitrator is unable to

22  fulfill her duties), *and* O'Mara Decl. Ex. D, AAA Consumer Rule R-20 (similar).

23        Stated simply, "[t]he FAA does not … allow a plaintiff to avoid arbitration

24  altogether based on speculation that the process will be unfair."  *Mullo*, 2023 WL

25  1971897, at *4; *see also Gilmer*, 500 U.S. at 30 (declining "to indulge the

26  presumption that the parties and arbitral body conducting a proceeding will be

27  unable or unwilling to retain competent, conscientious and impartial arbitrators");

28  *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 984 (2010) (courts must "assume that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-68

1    the arbitrator will operate in a reasonable manner in conformity with the law").

2              *c.*      ***New Era's Rules on Page Limits Are Discretionary***

3            Plaintiffs also contend that New Era's default rules on page and record limits

4    are "inadequate." Opp'n at 16-17.[6] Plaintiffs characterize these limits as absolute

5    and, therefore, unconscionable. That's wrong. New Era's Rules make clear that

6    these limits are underlined guidelines, not mandates; the arbitrator has discretion to adjust them.

7            For instance, New Era's Rules provide that "[t]he neutral has discretion to

8    allow evidence in excess of the stated limits as necessary to ensure a fundamentally

9    fair process." New Era Rule 6(a)(vii)(4); *see also* New Era Rule 2(p)(iii) (same).

10   Likewise, the Rules allow the neutral to "request additional evidence" and "post

11   hearing, supplementary evidence or argument"—i.e., files and briefing in excess of

12   the default limits. New Era Rule 2(p)(vi)-(vii). Thus, while the default limits may

13   be appropriate in many cases, the arbitrator can adjust them as needed to ensure a

14   fundamentally fair process for all litigants.

15           New Era confirmed this in deposition. ████████████████████

16   ██████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████

20   ██████████████████████████████████████████████████████

21   ██████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████

24   ███████████

25           Courts and other arbitration providers employ similar "guardrails." For

26

27   ────────────────────

28   [6]    Plaintiffs also reference New Era's rule on the number of witnesses allowed
     (Opp'n at 1), but that rule expressly allows the neutral to grant additional witnesses
     on good cause shown. New Era Rule 2(n)(v).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-69

example, judges frequently limit briefs—including trial briefs—to under ten pages. *See, e.g.*, Standing Order of U.S. District Judge Trina L. Thompson (N.D. Cal.) (five page limit for trial briefs); Standing Order of U.S. District Judge Haywood S. Gilliam (N.D. Cal.) (five page limit for trial briefs and motions in limine).  If a five-page trial brief is sufficient in federal court, it is surely sufficient in arbitration—where "streamlined proceedings" are the goal.  *See Concepcion*, 563 U.S. at 344. Likewise, limits on the length of complaints are common in arbitration and litigation.[7]  *See, e.g.*, AAA Demand for Arbitration, https://www.adr.org/sites/default/files/Consumer_Demand_for_Arbitration_Form_3.pdf   (providing   only about three lines of text for a claimant to "explain the dispute"); *McCray v. Am. Canyon City Hall*, 2023 WL 2278408, at *3 (E.D. Cal. Feb. 28, 2023) (limiting amended complaint to ten pages).

### d. *New Era's Rules Allow for Discovery Consistent with Industry Standards*

Plaintiffs also argue that New Era's Rules are unconscionable because they allegedly allow zero discovery.  In particular, Plaintiffs claim that there is "no right to discovery" in New Era's expedited arbitrations; rather, "[t]o obtain discovery," claimants are forced to "request to be upgraded" to New Era's standard arbitration process, and "pay additional fees of $15,000" for the "privilege."  Opp'n at 3; *see also id.* at 1, 4, 22, 24.  <u>This absolutely wrong, and a blatant mischaracterization of New Era's Rules</u>.

First, discovery <u>is</u> available in expedited arbitrations.  It's true that New Era's Rules on standard arbitrations set forth a formalized, step-by-step discovery process

---

[7]    Plaintiffs suggest that there is a conflict between New Era's ten-page limit for complaints and the "heightened pleading standard" imposed by New Era's Rules. Opp'n at 3, 16.  But there is no "heightened pleading standard" in New Era's Rules. Rather, as in federal court, a claimant must plead "facts specific to the Claimant(s) that [give] rise to the dispute."  New Era Rule 6(a)(ii)(1)(a)(i); *cf. Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176-79 (9th Cir. 2021) (requiring "well-pleaded facts demonstrating the pleader's entitlement to relief").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-70

1    and schedule, and that New Era's expedited arbitrations are not subject to that same

2    formalized process.  *See* New Era Rule 2(o)(i).  But that does not mean that there is

3    "no discovery" in expedited arbitrations, or that parties must "upgrade" to a standard

4    arbitration to obtain discovery.  To the contrary, New Era's Rules expressly provide

5    for discovery in <u>all</u> arbitrations, as needed to ensure a fundamentally fair process.

6    The difference is that, compared to standard arbitrations, discovery in expedited

7    arbitrations is informal and proceeds at the arbitrator's discretion, so that the

8    proceedings may be streamlined consistent with the expedited nature of the

9    arbitration.  Specifically, New Era's Rules provide that, in any proceeding (including

10   expedited arbitrations), "[a]ny request for discovery must be submitted to the

11   neutral," who "has discretion to determine whether it should be allowed."  New Era

12   Rule 2(o)(iii).  Further, "if a party believes an opposing party has relevant or

13   necessary evidence that they are not disclosing, they can make a request to the

14   neutral that such evidence be provided or disclosed," and the neutral will determine

15   whether "good cause for the production exists."  New Era Rule 2(q)(i).  The Rules

16   also provide for a document exchange process, pursuant to which the neutral may

17   allow additional exchanges "as necessary to ensure a fundamentally fair process."

18   New Era Rule 6(a)(vii)-(viii).  New Era confirmed in deposition that ███████

19   ████████████████████████████████████████████████  Opp'n

20   Ex. C 310:11-17, 311:1-6.[8]

21        Second, even if a consumer wanted to switch to standard arbitration, she

22   would not have to "pay additional fees of $15,000." Opp'n at 3, 16.  That is the fee

23   for binding mediation; the number "$15,000" does not appear anywhere in New

24   Era's Rules for arbitrations.  *See* New Era Rules 1(a)(i)(2), 4(a).  More importantly

25

26

---

[8]    Plaintiffs also complain that New Era's standard rule limiting each party to

27   three depositions is "obviously inadequate," Opp'n at 17-18, but they ignore that
     JAMS limits each party to one deposition by default.  *See* O'Mara Decl. Ex. B,

28   JAMS Comprehensive Rule 17(b).  Likewise, AAA has no express provision for
     depositions in consumer cases at all.  *See id.* Ex. D, AAA Consumer Rule R-22.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-71

1   for this case, under Defendants' Terms, a claimant is only required to pay the initial

2   filing fee (and if a claimant can't afford that fee, Defendants will cover it).   ECF

3   No. 31-30 at 13.   <u>All</u> other fees (if any) are paid by Defendants.   *Id.*

4        Third, New Era's Rules on discovery for expedited arbitrations are consistent

5   with the well-established principle that "[l]imited discovery rights are the hallmark

6   of arbitration."   *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677,

7   689-90 (2000).   The guiding principle under New Era's Rules is that "limitations on

8   discovery are one of the primary ways efficiencies are achieved in arbitration, and

9   [so] discovery must be narrowly tailored only to the information necessary to

10  advancing a neutral's understanding of the case."   New Era Rule 2(o)(i).   Such

11  reasonable limits are <u>exactly</u> what arbitration is supposed to be: "a streamlined

12  procedure."   *Dotson*, 181 Cal. App. 4th at 983 ("[D]iscovery limitations are an

13  integral and permissible part of the arbitration process."); *see also, e.g.*, *Poublon v.*

14  *C.H. Robinson*, 846 F.3d 1251, 1270 (9th Cir. 2017) ("The California Supreme Court

15  has made clear that limitation on discovery is one important component of the

16  simplicity, informality, and expedition of arbitration.").[9]

17       Courts therefore routinely uphold arbitration discovery rules—like New

18  Era's—that give the arbitrator discretion to control discovery.   *See, e.g.*, *Roman v.*

19  *Superior Ct.*, 172 Cal. App. 4th 1462, 1475-76 (2009) (upholding AAA rule

20  allowing the arbitrator "to order such discovery … as the arbitrator considers

21  necessary to a full and fair exploration of the issues in dispute, consistent with the

22  expedited nature of the arbitration"); *Yeomans v. World Fin. Grp. Ins. Agency*, 485

23  F. Supp. 3d 1168, 1188-89 (N.D. Cal. 2020) (rejecting argument that "the arbitration

24

25  _____
    [9]   Not surprisingly, given that streamlined discovery is the "hallmark" of
26  arbitration, JAMS and AAA also limit discovery.   *See, e.g.*, O'Mara Decl. Ex. C,
    JAMS Arbitration Discovery Protocols at 5 ("the arbitrator will set meaningful
27  limitations" on discovery); *id.* Ex. D, AAA Consumer Arbitration Rule R-22(a) ("If
    any party asks or if the arbitrator decides on his or her own, keeping in mind that
28  arbitration must remain a fast and economical process, the arbitrator may direct"
    exchange of documents and identification of witnesses).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-72

1   agreement is substantively unconscionable because 'the [agreement] only provides

2   for discovery at the arbitrator's discretion'"); *Abeyrama v. J.P. Morgan Chase Bank*,

3   2012 WL 2393063, at *4 (C.D. Cal. June 22, 2012) ("[I]f limited discovery was

4   grounds for unconscionability then every arbitration clause would be

5   unconscionable.").[10]

6
   e.   ***New Era's Arbitrator Selection Rules Are Fair and***
7        ***Consistent with Industry Standards***

8        Plaintiffs next argue that New Era's arbitrator selection process is

9   unconscionable.

10       First, Plaintiffs claim that New Era's procedures conflict with the California

11  Arbitration Act's ("CAA") provisions on arbitrator selection.  *See* Opp'n at 13-16

12  (discussing Cal. Civ. Proc. Code §§ 1280-1294.4).  The CAA provides parties to an

13  arbitration with a right to disqualify any arbitrator based on a mandated disclosure

14  statement.  As explained above, the Terms are expressly governed by the FAA, <u>not</u>

15  the CAA.  *See supra* Section III.B.2.a(2).  "It is well-established that parties to an

16  arbitration agreement may select which procedural rules will apply in arbitration,"

17  and when they "expressly agree[] that the FAA [will] apply and the CAA [will] not,"

18  that "agreement is enforceable."  *Modiano v. BMW of N. Am.*, 2021 WL 5750460, at

19  *2 (S.D. Cal. June 29, 2021).  Because the Terms select the FAA, the CAA—

20  including Section 1281.91(b)(1)—does not apply.

21       Second, Plaintiffs take issue with three aspects of the selection process: (1) if

22  a party objects to an arbitrator, New Era determines whether the arbitrator will be

23  disqualified; (2) in a mass arbitration, each side works together to rank and strike

24  _____

25  [10]    The single case on which Plaintiffs rely—*Fitz v. NCR Corp.*, 118 Cal. App
    4th 702 (2004)—is inapposite.  There, arbitrator discretion over discovery was an
26  "inadequate safety valve" only because "the arbitrator [was] constrained by an
    'impossibility' standard."  *Id.* at 716-17 (rules allowed arbitrator to grant discovery
27  only if "a fair hearing would be <u>impossible</u> without" it); *Carillo v. Gruma Corp.*,
    2017 WL 11631614, at *6 (C.D. Cal. Mar. 14, 2017) (distinguishing *Fitz* on this
28  basis); *Borgarding v. JPMorgan Chase Bank*, 2016 WL 8904413, at *6 (C.D. Cal.
    Oct. 31, 2016) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                18                    DEFS.' REPLY ISO MOT. TO
                                                                  COMPEL ARBITRATION
                                                                  CASE NO. 2:22-CV-00047-GW-GJS
                                                                  **2-SER-73**

1    arbitrators for that side; and (3) a single arbitrator typically presides over the cases
2    in a mass arbitration.  Opp'n at 14-15.  These rules do not "shock the conscience."
3    To the contrary, they are sensible, fair, and (again) mirror the rules promulgated by
4    JAMS and AAA.  Like New Era, JAMS and AAA make the final decision on any
5    challenge to an arbitrator for cause.  *Compare* O'Mara Decl. Ex. A, JAMS
6    Streamlined Rule 12(j), *and* Ex. D, AAA Consumer Rule R-19(b), *with* New Era
7    Rules 2(k)(i)(2), 2(k)(iii).  Like New Era, JAMS provides that "[e]ntities or
8    individuals whose interests are not adverse with respect to the issues in dispute shall
9    be treated as a single Party for purposes of the Arbitrator selection process."
10   *Compare* O'Mara Decl. Ex. A, JAMS Streamlined Rule 12(g), *with* New Era Rule
11   6(b)(iii)(1).  And like New Era, AAA's suggested mass arbitration procedures
12   include "assigning multiple proceedings to a single, mutually agreeable Merits
13   Arbitrator."  *Compare* O'Mara Decl. Ex. E, AAA Suppl. Rules for Multiple Case
14   Filings, Rule MC-7, *with* New Era Rule 6(b)(iii)(1).

15       Finally, Plaintiffs speculate that a neutral <u>might</u> disclose a conflict, or a party
16   <u>might</u> object, and then New Era <u>might</u> improperly decline to disqualify that neutral.
17   But New Era's Rules require neutrals to disclose any actual or potential conflicts,
18   allow the parties to strike proposed neutrals, and also allow the parties to object to
19   neutrals based on any actual or potential conflict.  New Era Rule 2(k).  That's
20   eminently reasonable.  Further, the law is clear that "a district court cannot entertain
21   an attack upon the … partiality of arbitrators until after the conclusion of the
22   arbitration and the rendition of an award."  *Serv. Partners v. Am. Home Assurance*,
23   2011 WL 2516411, at *5 (C.D. Cal. June 20, 2011).  In the unlikely event that a
24   conflicted arbitrator somehow adjudicated their claims, Plaintiffs could move to
25   vacate the award under the FAA.  *See* 9 U.S.C. § 10(a)(2).

26            ***f.***     ***The Class Action Waiver and Appeal Provision Are***
27            ***Enforceable***

28       Finally, Plaintiffs launch two attacks against the Terms that have nothing to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-74**

1    do with New Era.   First, Plaintiffs argue that the class action waiver is

2    unconscionable under California state law, citing *Discover Bank v. Superior Ct.*, 36

3    Cal. 4th 148 (2005).   Opp'n at 19.   But they concede that the Supreme Court

4    overruled *Discover Bank* more than a decade ago because it is inconsistent with the

5    FAA.  *Id.* (citing *Concepcion*, 563 U.S. 333); *see also Sheppard v. Staffmark Inv.*,

6    2021 WL 690260, at *7 (N.D. Cal. Feb. 23, 2021) ("Class action waivers are

7    enforceable under the FAA.").

8        Second, Plaintiffs challenge a provision granting both parties a limited right

9    of appeal: "in the event that the arbitrator awards injunctive relief against either you

10   or us, the party against whom injunctive relief was awarded may … appeal that

11   decision to JAMS."   ECF No. 31-30 at 14.   Relying on one case—*Little v. Auto

12   Stiegler*, 29 Cal. 4th 1064 (2003), which examined the right to appeal monetary

13   awards, <u>not</u> injunctive relief awards—Plaintiffs argue that the appeal provision in

14   the Terms is "non-mutual" and unconscionable.  Opp'n at 18-19.

15       But the appeal provision in the Terms <u>is</u> mutual: it grants a limited right of

16   appeal to <u>both</u> parties.   Moreover, the California Supreme Court has enforced a

17   nearly identical appeal provision: in *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th at

18   915-17, the court upheld a provision in an arbitration agreement allowing the party

19   against whom injunctive relief was awarded to request a new arbitration.   The court

20   noted that the provision, in practice, likely favored the seller (the party with superior

21   bargaining strength) more than the buyer.  *Id.* at 917.   Nevertheless, the court

22   enforced the provision, finding that, because injunctive relief could have a "broad

23   impact" on the seller's business, "the additional arbitral review [of] such relief …

24   furnishes a margin of safety that provides the party with superior bargaining strength

25   a type of extra protection for which it has a legitimate commercial need."  *Id.*

26   Plaintiffs' argument is "foreclosed by *Sanchez*" and should be rejected.  *See McKay

27   v. JPMorgan Chase Bank*, 2016 WL 11755601, at *7 (C.D. Cal. Mar. 8, 2016)

28   (rejecting the argument Plaintiffs make here).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-75**

**C.    Even If the Selection of New Era Arbitration Were Unenforceable, Plaintiffs Are Still Required to Arbitrate**

As explained in Defendants' Motion (at 24-25), if the Court somehow found that New Era's Rules were unconscionable, this case must still be sent to arbitration: the Terms contain a clear severability clause, ECF No. 30-31 at 15, and provide that, if New Era is unable to conduct the arbitration for <u>any</u> reason, the arbitration will instead be conducted by another arbitration provider, *id.* at 13.  Plaintiffs' only response is to argue that the severability clause should be disregarded, and the provision on alternate providers not enforced, because the <u>entire</u> arbitration agreement is permeated with unconscionability—and thus must be thrown out, in full.[11]

There's no way that the entire arbitration agreement is "permeated" with unconscionability.  The Ninth Circuit has held that the Terms' arbitration agreement is "a valid agreement" between Defendants and consumers, and that "the requirements for mutual assent [are] met." *Oberstein*, 60 F.4th at 509.  The Supreme Court has held that class action waivers are enforceable under the FAA. *Concepcion*, 563 U.S. at 352.  And the California Supreme Court has specifically upheld the limited right to appeal. *Sanchez*, 61 Cal. 4th at 915-17.  The only conceivable issue here is New Era's Rules.  Those Rules are either unconscionable, or they're not.  And the Terms specifically spell out (and the parties expressly agreed to) what happens if a court for some reason finds that the Rules aren't good enough.

"Where a contract expressly addresses severability, a court must enforce such terms and the corresponding mutual intent of the parties." *Wu v. JPMorgan Chase*

---

[11]    Plaintiffs also argue that the current Terms have had a "chilling effect" on overall arbitration because "[t]here were 47 mass arbitration demands against Defendants in 2019, 20 in 2020, and zero in 2021 and 2022, when Defendants switched to New Era (and just one bilateral arbitration)."  Opp'n at 25.  But the number of arbitrations filed against Defendants varies widely across years.  For instance, in 2018, <u>before</u> Defendants switched to New Era, there were only two individual arbitrations and zero mass arbitrations filed against Defendants—almost exactly the same as in 2022.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-76**

1   *Bank*, 2019 WL 4261880, at *13 (C.D. Cal. Aug. 5, 2019).  Consequently, if the

2   Court somehow deemed New Era's Rules unconscionable, the Court should sever

3   the selection of New Era as "collateral to the main purpose of the contract, which is

4   to require arbitration of disputes," and enforce the balance of the arbitration

5   agreement.  *See Poublon*, 846 F.3d at 1272-74.[12]

6   **IV.    CONCLUSION**

7          Defendants respectfully request that the Court grant their Motion.

8

9   Dated:  April 14, 2023                    Respectfully Submitted,

10                                            LATHAM & WATKINS LLP

11                                      By: _Timothy L. O'Ma_____

12                                            Timothy L. O'Mara

13                                            505 Montgomery Street, Suite 2000
                                              San Francisco, California  94111-6538
14                                            Telephone:  +1.415.391.0600
                                              Facsimile:  +1.415.395.8095
15                                            tim.o'mara@lw.com

16                                            *Attorneys for Defendants*
                                              *Ticketmaster L.L.C. and Live Nation*
17                                            *Entertainment, Inc.*

18

19

20

21

22

23

24

25

26   _____

27   [12]     Plaintiffs' cases (*Armendariz*, *Capili*, *Martinez*, *Lhotka*) involved arbitration
     agreements that were fundamentally non-mutual, as a whole—e.g., one party had to
28   arbitrate all claims, while the other didn't have to arbitrate any.  Consequently, there
     was no way to sever the unenforceable provisions and leave a viable path to
     arbitration.  That's not true here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-77**

1
2

## CERTIFICATE OF COMPLIANCE

3
4      The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and
5      Live Nation Entertainment, Inc., certifies that this brief contains 6,990 words, which
6      complies with the word limit of L.R. 11-6.1.

7      Dated: April 14, 2023                    *Timothy L. O'Ma*
8                                               Timothy L. O'Mara

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                        23

                                             DEFS.' REPLY ISO MOT. TO
                                             COMPEL ARBITRATION
                                             CASE NO. 2:22-CV-00047-GW-GJS
                                             **2-SER-78**

1   LATHAM & WATKINS LLP
      Daniel M. Wall (Bar No. 102580)
2        *dan.wall@lw.com*
      Timothy L. O'Mara (Bar No. 212731)
3        *tim.o'mara@lw.com*
      Andrew M. Gass (Bar No. 259694)
4        *andrew.gass@lw.com*
      Kirsten M. Ferguson (Bar No. 252781)
5        *kirsten.ferguson@lw.com*
      Alicia R. Jovais (Bar No. 296172)
6        *alicia.jovais@lw.com*
    505 Montgomery Street, Suite 2000
7   San Francisco, California 94111-6538
    Telephone: +1.415.391.0600
8   Facsimile: +1.415.395.8095

9   *Attorneys for Defendants Ticketmaster L.L.C.*
    *and Live Nation Entertainment, Inc.*

10

11                 **UNITED STATES DISTRICT COURT**

12                **CENTRAL DISTRICT OF CALIFORNIA**

13

14   Skot Heckman, Luis Ponce, Jeanene      Case No. 2:22-cv-00047-GW-GJS
15   Popp, and Jacob Roberts, on behalf of
     themselves and all those similarly
16   situated,                              **MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT OF
17                   Plaintiffs,            DEFENDANTS' MOTION TO
                                            COMPEL ARBITRATION**
18   v.
19   Live Nation Entertainment, Inc., and   The Honorable George H. Wu
20   Ticketmaster LLC,
21                   Defendants.            Hearing Date: May 26, 2022
22                                          Hearing Time: 8:30 a.m.
23                                          Courtroom: 9D, 9th Floor
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-79**

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ....................................................................... 1

II.  FACTUAL BACKGROUND ...................................................... 3

    A.   Plaintiffs' Ticket Purchases & Agreement to the Amended Terms .................................................................... 4

    B.   The Current Terms of Use ................................................. 7

    C.   New Era ............................................................................. 8

III. LEGAL STANDARD .................................................................. 10

IV.  ARGUMENT ............................................................................... 11

    A.   The Terms Constitute a Valid, Enforceable Agreement .................... 11

    B.   The Parties Clearly and Unmistakably Delegated Arbitrability to the Arbitrator ........................................... 13

    C.   Replacing JAMS with New Era—an Arbitration Provider That Has Procedures in Place to Litigate Mass Arbitrations—Does Not Render the Terms Unconscionable .................................................................. 14

        1.   New Era's Procedures for Mass Arbitrations Are Fair, Equitable, and Mirror the MDL Procedures Used By Courts ................................................. 15

        2.   New Era's Subscription Option Is Not Unconscionable ........................................................... 20

        3.   The $300 Filing Fee Is Not Unconscionable ................ 22

        4.   The Attorneys' Fees Provisions Are Not Unconscionable ........................................................... 23

    D.   Even If the New Era Arbitration Agreement Were Unenforceable, Plaintiffs Would Still Be Required to Arbitrate ........................................................................... 24

    E.   This Action Should Be Dismissed .................................... 25

V.   CONCLUSION ............................................................................ 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-80**

1

## TABLE OF AUTHORITIES

2
3

**Page(s)**

4

**CASES**

5

*Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................................... 22

6
7

*Adams v. Postmates, Inc.*,
  2020 WL 1066980 (N.D. Cal. Mar. 5, 2020) .................................................. 22

8
9

*Ajzenman v. Office of Comm'r of Baseball*,
  No. CV 20-3643, 2020 WL 6031899 (C.D. Cal. Sept. 14, 2020) ............... 5, 12

10

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................. 11, 24

11
12

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .................................................................. 11, 14

13
14

*Carmax Auto Superstores Cal. LLC v. Hernandez*,
  94 F. Supp. 3d 1078 (C.D. Cal. 2015) ............................................................ 17

15
16

*Dickey v. Ticketmaster LLC*,
  No. CV 18-9052, 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) .......... 1, 12, 13

17
18

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ......................................................................... 10, 15, 25

19
20

*Fleming v. Weather Shield Mfg., Inc.*,
  No. 18-00589, 2018 WL 6010365 (C.D. Cal. May 14, 2018) ......................... 22

21
22

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ......................................................................................... 20

23
24

*Hansen v. Ticketmaster Entm't, Inc.*,
  No. 20-cv-02685, 2020 WL 7319358 (N.D. Cal. Dec. 11, 2020) ............... 5, 11

25
26

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ...................................................................................... 11

27

*Himber v. Live Nation Worldwide, Inc.*,
  No. 16-CV-5001, 2018 WL 2304770 (E.D.N.Y. May 21, 2018) ............... 4, 14

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-81**

*Hodges v. Comcast Cable Commc'ns*,
 21 F.4th 535 (9th Cir. 2021) .................................................................... 15

*In re Grice*,
 974 F.3d 950 (9th Cir. 2020) ................................................................... 10

*In re Holl*,
 925 F.3d 1076 (9th Cir. 2019) ................................................................. 12

*In re Zimmer M/L Taper Hip Prosthesis*,
 MDL No. 2859, 2022 U.S. Dist. LEXIS 11866 (S.D.N.Y. Jan. 21,
 2022) ........................................................................................................ 18

*In re Zyprexa Prod. Liab. Litig.*,
 467 F. Supp. 2d 256 (E.D.N.Y. 2006) ..................................................... 18

*Johnmohammadi v. Bloomingdale's, Inc.*,
 755 F.3d 1072 (9th Cir. 2014) ................................................................. 25

*Johnson v. Oracle Am., Inc.*,
 No. 17-cv-05157, 2017 WL 8793341 (N.D. Cal. Nov. 17, 2017) .................. 13

*Lee v. Ticketmaster L.L.C.*,
 817 F. App'x 393 (9th Cir. 2020) ................................................... 5, 6, 12

*Lee v. Ticketmaster L.L.C.*,
 No. 18-CV-05987-VC, 2019 WL 9096442 (N.D. Cal. Apr. 1,
 2019), aff'd, 817 F. App'x 393 (9th Cir. 2020) ................................. 12, 14

*McGrath v. DoorDash, Inc.*,
 No. 19-cv-05279, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) .................... 19

*McManus v. CIBC World Markets Corp.*,
 109 Cal. App. 4th 76 (2003) .................................................................... 17

*Nevarez v. Forty Niners Football Co., LLC*,
 No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .......... 12, 14

*Oberstein v. Live Nation Entertainment, Inc.*,
 No. CV 20-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) ............. passim

*Ortiz v. Volt Mgmt. Corp.*,
 No. 16-cv-07096, 2017 WL 1957072 (N.D. Cal. May 11, 2017) .................... 23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-82

*Payne v. Tennessee,*
    501 U.S. 808 (1991) ........................................................................... 18

*Peterson v. Lyft,*
    No. 16-cv-07343, 2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) ................. 25

*Pokrass v. The DirecTV Grp., Inc.,*
    No. EDCV 07-423, 2008 WL 2897084 (C.D. Cal. July 14, 2008) ................ 15

*Sanchez v. Valencia Holding Co., LLC,*
    61 Cal. 4th 899 (2015) ................................................................ 14, 15

*Sandquist v. Lebo Auto., Inc.,*
    1 Cal. 5th 233 (2016) ................................................................. 20, 21

*Shoals v. Owens & Minor Distrib., Inc.,*
    No. 2:18-CV-2355, 2018 WL 5761764 (E.D. Cal. Oct. 31, 2018) ................ 22

*Tompkins v. 23andMe, Inc.,*
    840 F.3d 1016 (9th Cir. 2016) ..................................................... 22, 23

**STATUTES**

28 U.S.C. § 1407(a) .......................................................................... 16

9 U.S.C. § 2 .................................................................................... 10

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-83**

## I.   INTRODUCTION

This case is <u>identical</u> to another case that this Court sent to arbitration less than six months ago: *Oberstein v. Live Nation Entertainment, Inc.*, No. CV 20-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) (Wu, J.).  It is brought by the same plaintiffs' counsel.  The allegations are the same.  The putative classes are the same.  The claims are the same.  Indeed, the complaint in this case is a nearly word-for-word copy of the *Oberstein* complaint.  Why, then, are we here—yet again—and not in arbitration?

We are here because Plaintiffs are attacking as unconscionable one change that Ticketmaster and Live Nation made to their Terms of Use ("Terms") last year: the current Terms select New Era ADR ("New Era") as the default arbitration provider; by contrast, the prior version of the Terms (i.e., the one at issue in *Oberstein*) selected JAMS.  Nothing else has changed in the intervening months that could somehow compel a different result than the one the Court reached so recently in *Oberstein*, after more than a year of litigation over the proper forum for Plaintiffs' claims.  This case thus presents a single, narrow question: can Plaintiffs get out of arbitration, despite their repeated agreement to it, simply because the Terms now select New Era as the arbitration provider?

No.  As this Court has ruled numerous times now, the Terms are "clear and unmistakable" in delegating enforceability issues to the arbitrator, not the Court. *Oberstein*, 2021 WL 4772885, at *7; *Dickey v. Ticketmaster LLC*, No. CV 18-9052, 2019 WL 9096443, at *8 (C.D. Cal. Mar. 12, 2019).  And, in any event, there is nothing about New Era that's remotely sub-standard for the industry, let alone *unconscionable*, as the law would require for Plaintiffs' improbable gambit to prevail.  Plaintiffs do not like New Era because, unlike JAMS and other arbitration providers, New Era offers comprehensive rules and procedures to administer and adjudicate mass individual consumer arbitrations on the merits.  Mass arbitrations are a new but increasingly common strategy, pioneered by Plaintiffs' counsel in this

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-84**

1  case, Keller Lenkner.  That strategy capitalizes on the fact that other arbitration
2  providers (like JAMS) do <u>not</u> have pre-established rules and procedures in place to
3  deal with the circumstance in which the same plaintiffs' counsel seeks to bring
4  thousands of individual consumer claims.  As a result, at JAMS, the parties have to
5  confront anew, with respect to each suite of cases, the question of how to administer
6  numerous claims raising the same issues—on topics ranging from how to deal with
7  filing fees, to how to stage and order the overlapping litigations, and beyond.

8         New Era's rules and procedures solve these problems.  They use a
9  "bellwether" approach that mirrors not only the well-accepted MDL process used by
10  federal courts, but also the process that Plaintiffs' own counsel have proposed for
11  other mass arbitrations.  That process facilitates the arbitration of mass individual
12  consumer claims efficiently and fairly, and thereby *promotes* arbitration—exactly as
13  the Federal Arbitration Act intends.  Far from being *unconscionable*, New Era's
14  rules and procedures are a material *improvement* over JAMS's.

15         Moreover, in assessing Plaintiffs' bid to override their repeated agreement to
16  arbitration, it is important to take a step back and look at what the operative contract
17  between Plaintiffs and Defendants actually says.  The Terms are clear that, if New
18  Era cannot conduct the arbitration for <u>any</u> reason, the arbitration will be conducted
19  by another arbitration provider: FairClaims.  And if FairClaims cannot conduct the
20  arbitration for <u>any</u> reason, the parties will mutually select another arbitration
21  provider to conduct the arbitration.  In other words, if the Court for some reason
22  reached the question of enforceability *and* found that New Era's rules and
23  procedures were unconscionable, the result would <u>not</u> be what Plaintiffs seek here:
24  a class action in federal court.  The case would proceed in arbitration, just in front
25  of a different arbitrator.

26         Plaintiffs are essentially asking the Court to issue an advisory opinion on the
27  enforceability of New Era's rules and procedures, even though the Terms clearly and
28  unmistakably delegate enforceability issues to the arbitrator.  Indulging the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-85**

1   suggestion that the Court could and should tackle that issue, the result would be that

2   New Era's rules and procedures are absolutely enforceable; it is not even a close

3   question.  But at the end of the day, there is *no* possible result here that would

4   culminate in a federal class action.  This case—just like *Oberstein*—must be sent to

5   arbitration.  To say that Plaintiffs' counsel are wasting the Court's time is an

6   understatement.

7   ## II.       FACTUAL BACKGROUND

8         On September 20, 2021, this Court granted Ticketmaster and Live Nation's

9   motion to compel arbitration in the *Oberstein* case, finding that: (1) Ticketmaster

10  and Live Nation's websites provided sufficient constructive notice of the Terms,

11  thereby binding users to the Terms; (2) the authority to decide Plaintiffs' argument

12  that their claims fell within an exception to the arbitration agreement had been

13  clearly and unmistakably delegated to the arbitrator; and (3) the delegation clause

14  itself was not unconscionable.  *Oberstein*, 2021 WL 4772885, at *6-9.  A month

15  later, Plaintiffs appealed the Court's order to the Ninth Circuit.  *See Oberstein v.*

16  *Live Nation Entm't, Inc.*, No. 21-56200 (9th Cir. Oct. 29, 2021), ECF No. 1.  That

17  appeal is pending, and the parties are currently in the midst of briefing.

18        In the meantime, the same counsel initiated this case.  The allegations,

19  putative classes, and claims are the same.  Indeed, with the exception of five

20  paragraphs that Plaintiffs' counsel added at the beginning of the complaint (and the

21  substitution of different named plaintiffs), the complaint here is a nearly identical,

22  word-for-word copy of the *Oberstein* complaint.  *Compare Heckman* Compl., ECF

23  No. 1, *with Oberstein* Compl., No. CV 20-3888, ECF No. 1; *see also* Pls.' Notice of

24  Related Cases at 2, ECF No. 5 (conceding that the cases are "substantively

25  identical").  Those five paragraphs reveal the one thing that is "new" about this case:

26  the named Plaintiffs here all agreed to the current Terms, in effect since July 2, 2021,

27  which select New Era as the arbitration provider, rather than JAMS.

28        Ticketmaster and Live Nation's websites continue to provide "sufficient

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-86**

1 constructive notice as required for mutual assent," *Oberstein*, 2021 WL 4772885, at

2 *7, and nothing has changed in the intervening months that would alter that

3 conclusion.  Nor do Plaintiffs allege otherwise.  Nevertheless, we will briefly walk

4 through Plaintiffs' recent purchases, the notices of the Terms that they saw, and the

5 substance of the Terms that they agreed to—repeatedly.

6    **A.    Plaintiffs' Ticket Purchases & Agreement to the Amended Terms**

7        During the putative class period, Plaintiffs have made over 200 purchases

8 from Defendants' websites: Skot Heckman purchased tickets more than 30 times,

9 Luis Ponce purchased tickets more than 50 times, Jeanene Popp purchased tickets

10 more than 30 times, and Jacob Roberts purchased tickets more than 90 times.  Decl.

11 of H. Green in Support of Defs.' Mot. to Compel Arb. ("Green Decl.") ¶¶ 5, 12, 20,

12 27.  More specifically, since Defendants amended the Terms on July 2, 2021—on

13 the Ticketmaster mobile and desktop sites alone—Heckman purchased tickets on

14 four separate occasions, Ponce purchased tickets on five separate occasions, Popp

15 purchased tickets on eight separate occasions, and Roberts purchased tickets on five

16 separate occasions.  *Id*. ¶¶ 6, 13, 21, 28.

17        In order to make those purchases, Plaintiffs had to assent to the current Terms

18 multiple times—including each time they signed into their accounts, and each time

19 they placed an order.[1]  For example, when Plaintiffs made their post-July 2, 2021

20 purchases on the Ticketmaster desktop and mobile sites, they were required to sign

21 in to their accounts in order to make every purchase.  And each time they did that,

22 they were notified: "By continuing past this page, you agree to the **Terms of Use**

23 _____

24 [1]    Users also have to agree to the Terms when they create their accounts; and, at
the bottom of virtually every Live Nation and Ticketmaster website page that users

25 navigate in the ticket selection and purchase process, there is a notice that, by using
the site, users are agreeing to the Terms.  *See* Decl. of K. Tobias in Support of Defs.'

26 Mot. to Compel Arb. ("Tobias Decl.") ¶¶ 5, 14, 16, 25.  Each of these additional
points of assent are valid and binding.  *See, e.g., Oberstein*, 2021 WL 4772885, at

27 *6-7; *Himber v. Live Nation Worldwide, Inc.*, No. 16-CV-5001, 2018 WL 2304770,
at *5 (E.D.N.Y. May 21, 2018).  But to streamline this motion, the factual discussion

28 will focus on the named Plaintiffs' post-July 2, 2021 acceptances of the current
Terms at the point of sign-in and the point of purchase.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-87**

1   and understand that information will be used as described in our **Privacy Policy**."

2   The words "Terms of Use" appeared in bold, color-contrasting text, immediately

3   above the "Sign In" button, and hyperlinked to the full text of the current Terms:

4

5

6

7

8

9

10

11

12

13



14   *See* Tobias Decl. ¶ 7.  This is the <u>exact same</u> notice that the named plaintiffs saw in

15   *Oberstein*, and that this Court (and others) found constitute constructive notice,

16   binding users to the Terms.   *Oberstein*, 2021 WL 4772885, at *6-7; *Hansen v.*

17   *Ticketmaster Entm't, Inc.*, No. 20-cv-02685, 2020 WL 7319358, at *1, *5 (N.D. Cal.

18   Dec. 11, 2020); *Ajzenman v. Office of Comm'r of Baseball*, No. CV 20-3643, 2020

19   WL 6031899, at *1-2, *4 (C.D. Cal. Sept. 14, 2020); *see also Lee v. Ticketmaster*

20   *L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (substantially identical notice).

21   Since July 2, 2021, Heckman would have seen this notice on Ticketmaster's sites at

22   least <u>four</u> times; Ponce would have seen it at least <u>five</u> times; Popp would have seen

23   it at least <u>eight</u> times; and Roberts would have seen it at least <u>five</u> times.[2]

24          In order to complete each of their post-July 2, 2021 purchases on the

25   Ticketmaster desktop and mobile sites, Plaintiffs also would have been required to

26   check a box affirmatively acknowledging their acceptance of the current Terms.

27   _____

28   [2]    Roberts also saw this notice on Live Nation's sites at least four more times since July 2, 2021.  *See* Green Decl. ¶ 28; Tobias Decl. ¶ 18 & Exs. 17-18.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-88**

1   Specifically, depending on whether the particular event had special protocols related
2   to COVID-19 in place at the time of purchase, Plaintiffs would have seen either:
3   (a) "**I have read and agree to the current Terms of Use**," as shown in the excerpt
4   below, or (b) "**I have read and agree to the current Terms of Use**," <u>plus</u> the
5   event's COVID disclosure, as shown in the other excerpt below, for example.
6   Tobias Decl. ¶¶ 10-11.[3]  Either way, the notice required the user to check a box
7   affirming their agreement to the Terms to make the purchase.  The notice appeared
8   in bold font, with the words "**Terms of Use**" in color-contrasting text (hyperlinked
9   to the full text of the current Terms), immediately above the "Place Order" button:



15   *See* Tobias Decl. ¶ 10.  This notice is similar to the one that this Court found
16   constituted constructive notice (thereby binding users to the Terms) in *Oberstein*—
17   it appears in bold, color-contrasting, hyperlinked text immediately above the "Place
18   Order" button.  *Oberstein*, 2021 WL 4772885, at *6-7; *see also Lee*, 817 F. App'x
19   at 394-95 (reaching the same conclusion, on *de novo* review, with respect to
20   substantially identical notice on Ticketmaster's purchase page); Tobias Decl. ¶ 13 &
21   Exs. 11-12 (screenshots of notices at issue in *Oberstein*).  But in contrast to the notice
22   at issue in *Oberstein*, the purchase page notice in this case also required Plaintiffs to
23   check a box affirming their agreement to the current Terms.[4]  And since July 2, 2021,

---

24
25   [3]      Each of the Plaintiffs saw (and checked the box in) version (a)—i.e., "**I have
**read and agree to the current Terms of Use**," <u>without</u> a COVID disclosure—on
26   at least one occasion since July 2, 2021.  *See* Green Decl. ¶¶ 8, 16, 23, 31; Tobias
Decl. ¶¶ 10-11, 21-22.

27   [4]      Notably, in *Oberstein*, Plaintiffs' counsel complained that the notice on the
purchase page did <u>not</u> include such a checkbox, arguing that, without it, the notice
28   was "inconspicuous."  Pls.' Opp'n to Am. Mot. to Compel Arb. at 2, *Oberstein*, No.
CV 20-3888 (C.D. Cal. Mar. 19, 2021), ECF No. 92-1.  The Court rejected that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-89**

1   Heckman has checked that box on Ticketmaster's sites <u>four</u> times, Ponce has

2   checked it <u>five</u> times, Popp has checked it <u>eight</u> times, and Roberts has checked it

3   <u>five</u> times.[5]  Each and every time they did so, Plaintiffs affirmed their agreement to

4   the "**current Terms of Use**."

5        **B.    The Current Terms of Use**

6        Over the years, Defendants have revised the Terms from time to time.  Tobias

7   Decl. ¶ 28.  The current Terms have been in effect since July 2, 2021.  *Id.*  The core

8   provisions of those Terms are substantially the same as prior versions enforced by

9   this Court and others: like those prior versions, the current Terms provide for

10  binding, individual arbitration, state that the arbitration agreement is governed by

11  the Federal Arbitration Act ("FAA"), and delegate the power to decide arbitrability

12  to the arbitrator.  *Compare id*. Exs. 29 & 30, *with id*. Exs. 31-35 & 36-40.  The

13  primary difference is the arbitration provider.  The prior version of the Terms (at

14  issue in *Oberstein*) selected JAMS.  By contrast, the current version provides:

15          Any arbitration will be administered by New Era ADR in
16          accordance with their Virtual Expedited Arbitration Rules
            and Procedures, as well as any applicable General Rules
17          and Procedures, except as modified by the Terms ....

18          In the event that New Era ADR is unable to conduct the
            arbitration for any reason, the arbitration will be conducted
19          by FairClaims pursuant to its FastTrack Rules &
            Procedures, and/or any applicable rules for consumer
20          arbitrations, available at www.fairclaims.com.  In the
            event that FairClaims is unable to conduct the arbitration
21          for any reason, you and we will mutually select an
            alternative arbitration provider, and the arbitration will be
22          conducted pursuant to that provider's applicable rules ....

23  *Id*. Ex. 29 at 8 & 30 at 12.

24

25
    _____

26  argument, finding "that the Defendants' websites already provide adequate
    constructive notice as is."  *Oberstein*, 2021 WL 4772885, at *6.  Nevertheless, for
27  almost two years now, the purchase page has included the checkbox that Plaintiffs'
    counsel claimed was needed to bind users to the Terms.  Tobias Decl. ¶ 11.

28  [5]    Roberts also checked this box *four more times* on Live Nation's sites.  Green
    Decl. ¶ 28; Tobias Decl. ¶ 21 & Exs. 21-24.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-90**

### C.    New Era

JAMS's rules and procedures are designed for traditional, one-off arbitrations—for example, where one consumer brings claims against a company in a standalone case.  But there is a new and increasingly common trend in arbitration: mass individual arbitrations, in which hundreds or thousands (and sometimes tens of thousands) of individual, but otherwise identical, claims are brought in arbitration. Keller Lenkner, Plaintiffs' counsel in this case, pioneered this strategy—starting first with mass numbers of employment claims, and expanding more recently to mass numbers of consumer claims.[6]  JAMS, however, does not have <u>any</u> rules or procedures in place for mass individual arbitrations, employment or consumer.[7] How will thousands of individual arbitrations be administered and actually arbitrated—and on what timeline?  How will arbitrators for so many cases be appointed?  How will discovery be conducted?  Will there be a process to avoid inconsistent rulings on common issues?  What fees should be assessed when there are thousands of nearly identical claims?[8]  There are no rules or procedures in place

---

[6]     *See, e.g.*, Opp'n to Mot. to Compel Arb. at 3, *Abadilla et al. v. Uber Techs., Inc.*, No. 3:18-cv-07343 (N.D. Cal. Jan. 14, 2019), ECF No. 53 (Keller Lenkner filed 12,501 employment arbitrations against Uber in 2018); Opp'n to Am. Mot. to Compel Arb. at 6, *Abernathy et al. v. DoorDash, Inc.*, No. 3:19-cv-07545 (N.D. Cal. Jan. 16, 2020), ECF No. 157 (Keller Lenkner filed 6,250 employment arbitrations against DoorDash in 2019-2020); R. Cole Decl. ¶¶ 18-19, *In re Intuit Free File Litig.*, No. 3:19-cv-02546 (N.D. Cal. Dec. 7, 2020), ECF No. 192 (Keller Lenkner filed over 100,000 consumer arbitrations against Intuit in 2019 and 2020).

[7]     As of the date of filing, none of the old establishment arbitration providers (JAMS, AAA, CPR) have adopted pre-established rules and procedures for administering mass individual arbitrations of consumer claims (like the ones asserted by Plaintiffs here).  CPR does offer special rules and procedures for mass arbitrations of employment claims, but those rules and procedures do not apply to consumer claims.  *See* Decl. of T. O'Mara in Support of Defs.' Mot. to Compel Arb. ("O'Mara Decl.") Ex. C (CPR Employment-Related Mass Claims Protocol).

[8]     JAMS's rules, for example, require an up-front filing fee of $1,750 for each case, regardless of whether it's a standalone or one of 10,000 individual (but otherwise identical) cases filed at the same time.  *See* JAMS Arbitration Schedule of Fees and Costs, www.jamsadr.com/arbitration-fees (last visited Mar. 8, 2022).  In either case, the company pays $1,500 of the fee, and the claimant pays $250 (unless the claimant can demonstrate an inability to pay, in which case the company pays the entire $1,750).  *Id.*; JAMS Consumer Arbitration Minimum Standards, www.jamsadr.com/consumer-minimum-standards/ (last visited Mar. 8, 2022).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-91

1 to answer these questions. As a result, the parties involved in mass individual
2 arbitrations end up embroiled in contentious negotiations over how to conduct
3 discovery and arbitrate the claims (e.g., bellwether arbitrations, consolidation, etc.),
4 over the number and type of arbitrators, and over whether the typical fees should be
5 modified. Those negotiations can last for months, even years. Adjudication of
6 claims on the merits is, at best, delayed and sometimes never occurs at all.[9]

7     New Era, founded in 2020, stepped in to fill the void. Unlike other arbitration
8 providers, it offers comprehensive rules and procedures to administer and adjudicate
9 both traditional, standalone arbitrations _and_ mass individual consumer arbitrations
10 efficiently—and to conclusion, on the merits. The rules and procedures for mass
11 arbitrations apply where the presiding neutral[10] determines that more than five
12 arbitrations have been filed that present common issues. O'Mara Decl. Ex. A,
13 Rules 2(x), 6(b) ("New Era Rules"). In such cases, the arbitrations will be subject
14 to a bellwether process which (as explained in more detail in Section IV.C.1, below)
15 mirrors the process routinely used by federal courts in multi-district litigations
16 ("MDLs"). _See_ New Era Rules 6(b)(ii)(1) & 6(b)(iii)(3).

---

18 Multiply those numbers by 5,000 arbitrations, and the upfront fees (to say nothing of the administration fees, all paid by the company) quickly become astronomical, making the prospect of arbitrating the cases on the merits a dim one.

19 [9]    _See, e.g._, Mot. to Compel Arb. at 9-10, _Abadilla et al. v. Uber Techs., Inc._, No. 3:18-cv-07343 (N.D. Cal. Dec. 5, 2018), ECF No. 3 (parties spent _nine months_ trying to work out mass arbitration procedures: arbitrations filed August-November 2018; parties unsuccessfully attempted to negotiate process for arbitrating the merits; plaintiffs then moved to compel arbitration; case was voluntarily dismissed in May 2019); Opp'n to Am. Mot. to Compel Arb. at 4-11, _Abernathy et al. v. DoorDash, Inc._, No. 3:19-cv-07545 (N.D. Cal. Jan. 16, 2020), ECF No. 157 (parties spent over 1.5 years trying to work out mass arbitration procedures: arbitrations threatened in March 2019, and filed in July-September 2019; parties and AAA unsuccessfully attempted to negotiate workable fee schedule and process for handling demands; plaintiffs then moved to compel arbitration, which the court granted, in part, in February 2020; case was voluntarily dismissed in December 2020).

26 [10]    The neutral is selected by the parties using a rank-and-strike process. _See_ New Era Rules 2(j) & 6(b)(iii). New Era neutrals are members of the National Academy of Distinguished Neutrals, which accepts only professional neutrals who are referred by at least two current members and have arbitrated at least 20 civil cases to final award or mediated at least 200 private civil disputes. Our Neutrals, New Era ADR, www.neweraadr.com/neutrals/ (last visited Mar. 6, 2022); Membership Requirements, www.nadn.org/membership (last visited Mar. 6, 2022).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-92**

1    New Era offers two pricing options for its services: (1) a "pay as you go"

2  option, where, for each arbitration filed, the company pays $9,500 and the consumer

3  pays $500, New Era Rules 1(a)(ii), 6(a)(iii)(1)(c); or (2) a subscription option, which

4  consists of an annual subscription fee (paid by the company), plus a reduced per-

5  case filing fee (i.e., $300 instead of $500), New Era Rule 1(e)(i).[11]   The New Era

6  Rules provide an example of how these two options compare: if 100 mass individual

7  arbitrations were filed with New Era, a non-subscribing company would be charged

8  $950,000 (100 x $9,500), and each claimant would pay a $500 fee; by contrast, a

9  subscribing company with a $250,000 annual subscription would pay its $250,000

10  subscription fee, and each claimant would pay a reduced fee of $300.  New Era Rules

11  1(e)(i)(5), 1(a)(ii), 6(a)(iii)(1)(d).  Defendants have a subscription with New Era.

## III.   LEGAL STANDARD

13    The Federal Arbitration Act ("FAA") governs Plaintiffs' claims.  *See* Tobias

14  Decl. Exs. 29-40 (current and prior versions of the Terms, stating that the FAA

15  governs).  Under the FAA, an agreement to arbitrate "shall be valid, irrevocable, and

16  enforceable, save upon such grounds as exist at law or in equity for the revocation

17  of any contract."  9 U.S.C. § 2.  Congress enacted the FAA in order "to replace [a]

18  widespread judicial hostility" toward arbitration "with a liberal policy favoring

19  arbitration."  *In re Grice*, 974 F.3d 950, 955 (9th Cir. 2020).  This liberal policy

20  applies specifically to the parties' chosen arbitration rules and procedures: "[n]ot

21  only did Congress require courts to respect and enforce agreements to arbitrate; it

22  also specifically directed them to respect and enforce the parties' chosen arbitration

23  procedures."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  Courts must

24  "rigorously … enforce arbitration agreements according to their terms, including

25  terms that specify … *the rules* under which that arbitration will be conducted."  *Id.*

26  ───────────────

27  [11]    Under the subscription option, the reduced per-case filing fee may be allocated
to consumers and/or the company, pursuant to the parties' arbitration agreement; the
28  subscription fee, however, is paid entirely by the company.  New Era Rules
1(a)(iii)(1), 1(e)(i)(3)-(4).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-93**

1    (emphasis in original).  By "affording parties discretion in designing arbitration

2    processes," the FAA promotes "efficient, streamlined procedures tailored to the type

3    of dispute." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

4         Pursuant to the FAA's strong policy favoring arbitration, the district court's

5    role in ruling on a motion to compel arbitration is typically "limited to determining:

6    (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

7    agreement encompasses the dispute at issue." *Oberstein*, 2021 WL 4772885, at *2.

8    But where (as here) the parties delegate to the arbitrator the power to decide gateway

9    arbitrability issues—such as the scope and enforceability of the arbitration

10   agreement—the district court's inquiry is even more limited.  "[I]f a valid agreement

11   exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court

12   may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales,

13   Inc.*, 139 S. Ct. 524, 530 (2019).  To determine whether there is a valid delegation,

14   the court undertakes a limited inquiry into whether the parties "clearly and

15   unmistakably" delegated the power to decide arbitrability to the arbitrator. *Brennan

16   v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

17   **IV.    ARGUMENT**

18        **A.    The Terms Constitute a Valid, Enforceable Agreement**

19        There is no question that each Plaintiff in this case repeatedly (dozens if not

20   hundreds of times) agreed to various versions of the Terms over the years, and that

21   each Plaintiff repeatedly agreed to the <u>current</u> Terms over the past eight months.

22        In particular, since July 2, 2021, Plaintiffs assented to the current Terms each

23   time they signed in to their accounts (which they were required to do in order to

24   purchase tickets). *See* Tobias Decl. ¶¶ 7-9, 18-20.  Specifically, at the point of sign-

25   in, Plaintiffs were presented with a notice that this Court has already found is

26   conspicuous and binds users to the Terms. *See Oberstein*, 2021 WL 4772885, at *6-

27   7 (exact same notice at sign-in "provided sufficient constructive notice as required

28   for mutual assent"); *see also Hansen*, 2020 WL 7319358, at *1, *5 (exact same

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-94**

1  notice at sign-in bound users to the Terms); *Ajzenman*, 2020 WL 6031899, at *2, *4

2  (same); *Lee*, 817 F. App'x at 394-95 (same conclusion, on *de novo* review, with

3  respect to substantially identical notice at sign-in).

4      The notice at sign-in alone binds Plaintiffs to the current Terms.[12]  But there's

5  more: since July 2, 2021, each Plaintiff also checked a box, *many times*, affirming

6  that they read and agreed to the current Terms.  *See* Tobias Decl. ¶¶ 10-12, 21-23.

7  This Court and others have repeatedly found that similar notices (without the

8  additional step of a checkbox) on Defendants' purchase pages are conspicuous and

9  bind users to the Terms.  *See Oberstein*, 2021 WL 4772885, at *6-7; *Lee*, 817 F.

10  App'x at 394-95; *Ajzenman*, 2020 WL 6031899, at *2, 4; *Nevarez v. Forty Niners*

11  *Football Co., LLC*, No. 16-CV-07013, 2017 WL 3492110, at *7-10 (N.D. Cal. Aug.

12  15, 2017).   The notice on the purchase page is now, if anything, even more

13  conspicuous: it includes a box that users must check, attesting that they "have read

14  and agree to the current Terms," before they can purchase tickets.  Courts routinely

15  find that checkbox notices bind users to the terms at issue.  *See In re Holl*, 925 F.3d

16  1076, 1084 (9th Cir. 2019) ("no question" that plaintiff "affirmatively assented to

17  the … Terms" where "[h]e checked a box acknowledging as much").  Indeed, in

18  *Oberstein*, Plaintiffs' counsel expressly conceded that a checkbox "approach

19  supports a finding that website users had actual notice of the Terms."  Appellant's

20  Opening Br. at 28, *Oberstein*, No. 21-56200 (9th Cir. Feb. 7, 2022), ECF No. 18.

21      Less than six months ago, after careful consideration of the notices on

22  Defendants' websites, this Court concluded: "Ultimately, the Court joins many

23  others in again finding that the Defendants' websites provided sufficient constructive

24  notice as required for mutual assent."   *Oberstein*, 2021 WL 4772885, at *7.

25  Absolutely nothing has changed since then that could compel a different finding.

26

27  ───────────────
    [12]    The Court need only find that Plaintiffs assented to the Terms at *one* point in
28  the user flow to conclude that the Terms are enforceable.  *See Lee v. Ticketmaster*
    *L.L.C.*, No. 18-CV-05987-VC, 2019 WL 9096442, at *1 n.1 (N.D. Cal. Apr. 1,
    2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020); *Dickey*, 2019 WL 9096443, at *7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-95

1   Plaintiffs assented to the current Terms, which select New Era as the arbitration

2   provider for any disputes—and they did so many, many times.

3       **B.**    **The Parties Clearly and Unmistakably Delegated Arbitrability to**

4              **the Arbitrator**

5          Because Plaintiffs agreed to be bound by the Terms, this case must be sent to

6   arbitration.    Nevertheless, the Complaint makes clear that Plaintiffs intend to

7   challenge the enforceability of the Terms on the basis that they are "permeated with

8   unconscionability," due to the decision to switch from JAMS to New Era.  Compl.

9   ¶ 5. But as this Court has already determined—multiple times—the Terms are "clear

10  and unmistakable" in delegating such enforceability issues to the arbitrator, not the

11  Court.  *Oberstein*, 2021 WL 4772885, at *7; *Dickey*, 2019 WL 9096443, at *8.

12         The Terms specify that "[t]he arbitrator, and not any federal, state or local

13  court or agency, shall have exclusive authority to the extent permitted by law to

14  resolve <u>all</u> disputes arising out of or relating to the interpretation, applicability,

15  <u>enforceability</u>, or formation of this Agreement, including, but not limited to any

16  claim that all or any part of this Agreement is void or voidable."[13]  *See* Tobias Decl.

17  Ex. 29 at 8 & Ex. 30 at 13 (current Terms) (emphases added); *see also id*. Exs. 31-

18  40 (prior versions).[14]  "Multiple other courts," in addition to this one, "have looked

19

20      [13]    In addition, the Terms also specify that the arbitration "will be administered
by New Era ADR in accordance with their Virtual Expedited Arbitration Rules and

21  Procedures, as well as any applicable General Rules and Procedures, except as
modified by the Terms."  Tobias Decl. Ex. 29 at 9 & Ex. 30 at 13.  The New Era

22  Rules specify that "[a]ny question or matter of arbitrability of a dispute shall be
determined solely by the neutral(s) provided by New Era ADR Inc. and not in a court

23  of law or other judicial forum.  *The parties agree and acknowledge that they are
waiving their right to seek a determination of arbitrability in a court of law or other*

24  *judicial forum*."  New Era Rule 2(z)(i) (emphasis in original).  This is further "clear
and unmistakable" evidence that the parties intended the arbitrator to determine the

25  threshold question of arbitrability.  *See, e.g., Johnson v. Oracle Am., Inc.*, No. 17-
cv-05157, 2017 WL 8793341, at *6-9 (N.D. Cal. Nov. 17, 2017) (enforcing

26  arbitration agreement incorporating arbitration provider's rules, which gave
"arbitrator authority to decide arbitrability disputes").

27      [14]    The delegation clause in the current Terms is identical to prior versions
(including the versions at issue in *Oberstein* and *Dickey*), save for one difference; it

28  includes a narrow exception: "in the event of a dispute about which particular version
of this Agreement you agreed to, a court will decide that specific question."  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-96**

1   at the exact same language and also confirmed that it satisfies the 'clear and

2   unmistakable' standard." *Oberstein*, 2021 WL 4772885, at *7 (citing *Lee*, 2019 WL

3   9096442, at *1, *aff'd*, 817 F. App'x 393 (9th Cir. 2020)); *Nevarez*, 2017 WL

4   3492110, at *11; *Himber*, 2018 WL 2304770, at *5.

5        As this Court explained just a few months ago, because "the delegation clause

6   clearly and unmistakably delegates arbitrability to the arbitrator, the Court's

7   unconscionability inquiry is limited to the delegation clause instead of the arbitration

8   clause as a whole."  *Oberstein*, 2021 WL 4772885, at *8.  In other words, the only

9   unconscionability challenge the Court may entertain is a challenge to whether the

10  delegation clause itself is unconscionable.  The Court already carefully considered

11  this specific question in *Oberstein*, and found that the delegation clause was <u>not</u>

12  unconscionable. *Id*. at *8-9.  As a result, Plaintiffs' challenge to the enforceability

13  of the current Terms on the basis that they are "permeated with unconscionability"

14  must be sent to arbitration, because it is the arbitrator who must rule on these

15  arguments.  *Id*. at *8 (ruling that plaintiffs' claim that the arbitration clause as a

16  whole was unconscionable must go to the arbitrator).  The Court's inquiry can and

17  should end there.  Nothing about the selection of New Era changes this.

18
19       **C.    Replacing JAMS with New Era—an Arbitration Provider That
            Has Procedures in Place to Litigate Mass Arbitrations—Does Not
20          Render the Terms Unconscionable**

21       In any event, if the Court were to reach Plaintiffs' challenge to the

22  enforceability of the Terms, Plaintiffs' various arguments—all of which attack the

23  use of New Era as somehow unconscionable—are meritless.   To prove

24  unconscionability under California law, a plaintiff must show both procedural and

25  substantive unconscionability—i.e., "an absence of meaningful choice on the part of

26  one of the parties together with contract terms which are unreasonably favorable to

27  ─────────────

28  Tobias Decl. Ex. 29 at 8 & Ex. 30 at 13.  This exception does not apply here;
    Plaintiffs concede that they each purchased tickets after the current Terms took
    effect, and that those Terms are the relevant version.  *See* Compl. ¶¶ 1-5, 25-28.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-97

1  the other party." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015).
2  The party asserting unconscionability bears the burden of proof. *Id.* at 911.

3       Plaintiffs cannot show procedural unconscionability.  Contracts of adhesion
4  covering non-essential recreational activities (like attending concerts or sporting
5  events) are not procedurally unconscionable, because "the consumer always has the
6  option of simply foregoing the activity." *Pokrass v. The DirecTV Grp., Inc.*, No.
7  EDCV 07-423, 2008 WL 2897084, at *6 (C.D. Cal. July 14, 2008).  Here, Plaintiffs
8  "could choose not to attend these specific recreational events." *Oberstein*, 2021 WL
9  4772885, at *9.  But Plaintiffs did choose to purchase from Defendants, many times.
10  The Terms are not procedurally unconscionable.

11       Moreover, nothing about New Era renders the Terms substantively
12  unconscionable.  To be substantively unconscionable, "[i]t is not enough that terms
13  are slightly one-sided or confer more benefits on a particular party; a substantively
14  unconscionable term must be so unreasonable and one-sided as to 'shock the
15  conscience.'"  *Id*.  There is nothing like that here.  To the contrary—unlike JAMS
16  and other arbitration providers—New Era's rules, procedures, and fee structure all
17  facilitate the arbitration of mass numbers of individual consumer claims on the
18  merits, efficiently and fairly.  Selecting New Era <u>promotes</u> arbitration, as the FAA
19  intends.  *See Epic Sys. Corp.*, 138 S. Ct. at 1621 (FAA requires courts to
20  "rigorously … enforce" the parties' agreement regarding "*the rules* under which …
21  arbitration will be conducted"); *Hodges v. Comcast Cable Commc'ns*, 21 F.4th 535,
22  547 (9th Cir. 2021) (FAA protects "efficient, streamlined procedures" for consumer
23  arbitrations).  That's not remotely unconscionable.

24           **1.    *New Era's Procedures for Mass Arbitrations Are Fair,***
25                ***Equitable, and Mirror the MDL Procedures Used By Courts***

26       Plaintiffs claim that New Era's rules force consumers "to submit to batched
27  arbitration proceedings," which Plaintiffs characterize as "a novel and one-sided
28  process that is tailored to disadvantage consumers."  Compl. ¶ 4.  That's false.  New

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-98**

1    Era's rules do not provide for "batching"; nor are New Era's procedures "novel" or

2    "one-sided."  To the contrary, New Era uses a bellwether approach that mirrors not

3    only the well-accepted MDL process used by federal courts, but also the process that

4    Plaintiffs' own counsel have proposed for other mass arbitrations.

5         New Era's rules provide that—where the neutral determines that there are

6    more than five cases that present the same or similar evidence, witnesses, or issues

7    of law and fact—those cases are governed by New Era's mass arbitration rules.  New

8    Era Rules 2(x), 6(b)(ii)(1), 6(b)(iii)(3)(a).  Contrary to Plaintiffs' claim, New Era

9    does not "group [consumers'] cases together for any reason it deems appropriate."

10   Compl. ¶ 4.  New Era may initially, "[s]olely for administrative purposes," treat

11   cases as part of a mass arbitration, so that those cases can be sent to a neutral for

12   determination as to whether they involve common issues.  New Era Rules 2(x)(ii) &

13   6(b)(ii)(2).  But it is the presiding neutral—not New Era—who has the "[u]ltimate

14   authority" to make that determination.  *Id*.  And the neutral does so by applying a

15   standard which tracks the MDL statute.  *Compare* New Era Rules 2(x) & 6(b)(ii)(1)

16   (providing that "cases or proceedings [that] present the same, or similar evidence;

17   present the same, or similar, witnesses; and/or rely on determination of the same, or

18   similar, facts and issues of law" are governed by the mass arbitration rules and

19   procedures), *with* 28 U.S.C. § 1407(a) (providing that "civil actions involving one

20   or more common questions of fact … may be transferred to any district for

21   coordinated or consolidated pretrial proceedings").

22        The neutral who presides over the mass arbitration—and who makes the

23   threshold determination as to whether the cases involve common issues—is chosen

24   by the parties using New Era's rank-and-strike process.  New Era Rule 6(b)(iii)(1).[15]

25   ——————————

26   [15]   Specifically: New Era provides a list of neutrals; each party may strike 1-2
     neutrals; each party ranks the remaining neutrals; if one neutral has the best score,
27   that neutral is appointed; in the event of a tie, neutrals with the worst scores are
     dropped, the parties re-rank the remaining neutrals, and the neutral with the best
28   score is appointed; and, if the re-ranked scores remain tied, New Era randomly
     appoints one of the remaining neutrals.  New Era Rules 6(b)(iii)(1) & 2(j)(iii).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-99

1    That process does <u>not</u> "abridge consumers' rights to select neutral decisionmakers,"

2    as Plaintiffs claim.  Compl. ¶ 4.  To the contrary, numerous arbitration providers use

3    similar rank-and-strike processes, and those processes are routinely blessed by

4    courts.  *See, e.g.*, JAMS Streamlined Arbitration Rules & Procedures, Rule 12,

5    www.jamsadr.com/rules-streamlined-arbitration/ (last visited March 8, 2022)

6    ("JAMS Rules") (describing rank-and-strike process); *Carmax Auto Superstores*

7    *Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1107 (C.D. Cal. 2015) (approving

8    neutral selection process where arbitration provider sent list of seven neutrals; each

9    party struck unacceptable neutrals; and arbitration provider selected neutral from

10    remaining names); *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76,

11    94-97 (2003) (arbitrator selection process where each party had one peremptory

12    challenge and unlimited challenges for cause not unconscionable).  Nor is it unfair

13    or even unusual that "later-filing consumers will not be able to participate" in the

14    arbitrator selection process.  *See* Compl. ¶ 4.  Plaintiffs who file related claims in

15    federal court after the conclusion of JPML proceedings selecting the transferee court

16    do not have the opportunity to weigh in on the proper transferee court.  Similarly, at

17    JAMS, parties to a consolidated proceeding are deemed to have waived their right

18    to select an arbitrator.  *See* JAMS Rule 6(e)(iii) (providing that, "[u]nless applicable

19    law provides otherwise, where JAMS decides to consolidate a proceeding into a

20    pending Arbitration, the Parties to the consolidated case or cases will be deemed to

21    have waived their right to designate an Arbitrator").

22        Once the presiding neutral determines that the cases involve common issues

23    and should proceed under the mass arbitration rules, the New Era Rules provide that

24    three bellwether cases will be arbitrated to conclusion: one chosen by the claimants,

25    one chosen by the respondents, and one chosen through a process set by the neutral.

26    New Era Rule 6(b)(iii)(3).[16]  After the neutral issues a decision in each bellwether,

27

28    _____

[16]    The New Era Rules also provide that the "neutral shall have the discretion to increase the number of Bellwether Cases … but only if it is necessary to allow for a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-100

1  the parties participate in a mandatory, non-binding settlement conference.  New Era

2  Rule 6(b)(4).  If the conference does <u>not</u> result in settlement, the neutral will apply,

3  as precedent, the decisions from the bellwether cases to all common issues in each

4  remaining individual case, and then create a process for resolving remaining cases

5  that involve individual issues.  New Era Rules 6(b)(iii)(4)-(6).  If the conference

6  does result in settlement, any party can opt out of that settlement and continue to

7  proceed individually: the neutral will apply, as precedent, the decisions from the

8  bellwether cases to all common issues in the opt-out cases, and create a process for

9  resolving individual issues in those cases.  *Id.*

10        There is nothing "novel" or "one-sided" about this process.  Bellwether cases

11  are used routinely in MDLs, where (as in a mass arbitration) there are multiple

12  similar cases that are not proceeding as a class action; bellwethers are "important

13  case management tools" that allow the decisionmaker "to give the major arguments

14  of both parties due consideration without facing the daunting prospect of resolving

15  every issue in every action."  *In re Zimmer M/L Taper Hip Prosthesis*, MDL No.

16  2859, 2022 U.S. Dist. LEXIS 11866, at *31-33 (S.D.N.Y. Jan. 21, 2022).  Moreover,

17  under New Era's rules, the outcome of the bellwether cases is not unfairly "forced"

18  on consumers, as Plaintiffs claim.  Compl. ¶ 4.  Application of precedent to common

19  issues is routine and expected; it promotes stability and efficiency, and protects

20  reasonable expectations.  *See, e.g.*, *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)

21  (adherence to precedent "promotes the evenhanded, predictable, and consistent

22  development of legal principles, fosters reliance on judicial decisions, and

23  contributes to the actual and perceived integrity of the judicial process").  Indeed, in

24  an MDL, "[o]rders issued by a federal transferee court remain binding if the case is

25  sent back to the transferor court."  *In re Zyprexa Prod. Liab. Litig.*, 467 F. Supp. 2d

26  256, 273 (E.D.N.Y. 2006).  There is nothing unfair about applying decisions on

27

28  fundamentally fair process.  Each party is entitled to an equal number of Bellwether
    Cases."  New Era Rule 6(b)(iii)(3)(d).

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

18

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-101

1    common issues in the bellwether cases to individual cases not resolved after the

2    settlement conference.  And, of course, a claimant always has the opportunity to

3    arbitrate any issues unique to her individual claim.  New Era Rules 6(b)(4)-(6).

4          Other arbitration providers have developed similar procedures for mass

5    arbitrations of employment claims.[17]  For example, CPR's protocol for employment-

6    related mass claims provides for ten randomly-selected test cases followed by

7    mediation; if a global resolution is not reached, any party may proceed individually

8    in court or arbitration, and if a global resolution is reached, an unsatisfied claimant

9    may opt-out and proceed in individual arbitration.  *See* O'Mara Decl. Ex. C (CPR

10    Employment-Related Mass Claims Protocol).  A court in the Northern District of

11    California reviewed this protocol and found that it was "fair and impartial—i.e., one

12    that is not predisposed more favorably to … defendants generally compared to other

13    generally accepted conventional arbitration rules."  *See McGrath v. DoorDash, Inc.*,

14    No. 19-cv-05279, 2020 WL 6526129, at *9-11 (N.D. Cal. Nov. 5, 2020).[18]

15          Indeed, in a mass arbitration that they initiated against Uber at JAMS,

16    Plaintiffs' own counsel proposed procedures for administering those arbitrations that

17    are strikingly similar to New Era's.[19]  *See* O'Mara Decl. Ex. B (*Abadilla v. Uber

18    Techs., Inc.*, No. 3:18-cv-07343, Ex. I to Mot. to Compel Arb., ECF No. 3-4 (N.D.

19    Cal. Dec. 5, 2018)).  Specifically, Warren Postman, counsel for Plaintiffs here,

---

[17]    *See supra* n.7.

[18]    Likewise, FedArb designed an MDL-like process pursuant to which a panel of three arbitrators decides all common issues, and those decisions are binding on all current and future claimants.  *See* FedArb Framework for Mass Arbitration Proceedings, www.fedarb.com/rules/framework-for-mass-arbitration-proceedings-adr-mdl/ (last visited March 8, 2022).

[19]    Because JAMS does not have rules and procedures for mass arbitrations, the parties and JAMS had to engage in negotiations over how the arbitrations would proceed (e.g., what procedures would apply, and what fees would be paid); those negotiations were so fraught and contentious, the dispute over arbitration ultimately ended up in court.  *See, e.g.*, Mot. to Compel Arb. at 9-10, *Abadilla*, No. 3:18-cv-07343 (N.D. Cal.), ECF No. 3.  This illustrates what can happen in the absence of pre-established rules and procedures to administer mass arbitrations efficiently and on the merits.  Indeed, *Abadilla* was never litigated on the merits.  *See id.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-102

1   proposed that: (1) the parties jointly select three bellwether cases from each of three

2   relevant jurisdictions; (2) the parties select an arbitrator using an alternating strike

3   process; (3) after conclusion of the bellwethers, the parties participate in non-binding

4   mediation to decide on a formula for extrapolating the results of the bellwethers to

5   the remaining claims; and (4) if the mediation did not result in agreement, the parties

6   brief the appropriate formula before a single arbitrator, who would then decide how

7   to extrapolate the results of the bellwethers.  *Id.  These were the procedures that*

8   *Plaintiffs' own counsel proposed*.  They are—undeniably—incredibly similar to

9   New Era's procedures.  Now, in this case, the same counsel suddenly claim that

10  those procedures are so "novel" and "one-sided" as to shock the conscience and

11  render the Terms unenforceable.  That's absurd.

12           **2.     *New Era's Subscription Option Is Not Unconscionable***

13          Plaintiffs also take issue with New Era's subscription option, pursuant to

14  which businesses pay an annual subscription fee in advance, covering a set number

15  of arbitrations; this compares to the "pay as you go" model, which is used by other

16  arbitrations providers, such as JAMS.  *See* Compl. ¶ 3 (claiming that the subscription

17  model puts New Era "on retainer" for companies).  Plaintiffs never identify how the

18  subscription option supposedly makes the Terms unconscionable, but the argument

19  seems to be that this option gives New Era and its arbitrators a business incentive to

20  rule in favor of subscribing defendants.  *See id.*  This argument is meritless.

21          California law is clear that "the belief that arbitrators might over time be

22  biased toward the repeat players that bring them business" is <u>not</u> a basis for finding

23  an arbitration agreement unconscionable.  *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th

24  233, 259 (2016).  Courts may not presume "that arbitrators are ill-equipped to

25  disregard such institutional incentives and rule fairly and equitably," because "the

26  FAA requires that [they] treat arbitration as a coequal forum for dispute resolution."

27  *Id.*; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991)

28  (declining "to indulge the presumption that the parties and arbitral body conducting

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-103

1  a proceeding will be unable or unwilling to retain competent, conscientious and

2  impartial arbitrators").

3       Nothing about New Era's subscription option changes this analysis.  First, to

4  be clear, New Era's role is administrative; New Era does not make any substantive

5  determinations in the arbitrations it administers.  *See, e.g.*, New Era Rule 2(x)(ii)(2)

6  ("New Era ADR makes no determination with respect to issues of law and fact.").

7  The neutral, <u>not</u> New Era, decides all substantive issues, including whether

8  individual arbitrations present common issues such that the mass arbitration rules

9  should apply.  *See* New Era Rules 2(x)(ii)(2) & 6(b)(ii)(2).  There is absolutely no

10 basis to presume that New Era's experienced, qualified neutrals (who are members

11 of the National Academy of Distinguished Neutrals) cannot rule fairly and equitably.

12 *See Sandquist*, 1 Cal. 5th at 259 (2016).

13      Second, any purported incentives associated with New Era's subscription

14 option are the same as the incentives at play every time a company specifies an

15 arbitration provider in its terms of use.  When a company agrees with consumers in

16 its terms of use to arbitrate disputes at a particular arbitration provider, it is agreeing

17 to pay that provider its applicable fees for any arbitrations brought under those terms,

18 essentially keeping the provider "on retainer."  Compl. ¶ 3.  That is exactly the case

19 here; the only difference is that New Era offers companies the predictability of an

20 annual up-front fee, compared to the variability of the "pay as you go" model.

21      Moreover, the New Era Rules provide an example of how the subscription

22 model (compared to "pay as you go" pricing) results not only in predictability, but

23 also in <u>less</u> total money being paid to New Era in the event of a mass arbitration:

24      Example of default vs subscription pricing:

25      Default Pricing = 100 Mass Arbitration cases at $10,000

26 per case fee = $1M

     Sample of Subscription Fees = 100 Mass Arbitration cases

27 on $250,000 annual subscription fee + $300 per case filing

fee = $280,000

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-104**

1    New Era Rule 1(e)(i)(5).  This subscription pricing is a far cry from what JAMS and

2    other arbitration providers claim they are owed in the event of a mass arbitration.[20]

3    If JAMS collecting millions from companies does not create improper bias (and the

4    law is clear that it does not), then it's hard to fathom how New Era's subscription

5    option possibly could.  Any "assertion that business incentives bias [New Era's]

6    arbitrators to repeat player defendants" who pay a subscription is flatly "inconsistent

7    with … the FAA" and should be rejected.  *Shoals v. Owens & Minor Distrib., Inc.*,

8    No. 2:18-CV-2355, 2018 WL 5761764, at *6 (E.D. Cal. Oct. 31, 2018).

### 3.    The $300 Filing Fee Is Not Unconscionable

10        Plaintiffs also suggest that the Terms are unconscionable because consumers

11    are asked to pay a discounted[21] $300 filing fee.  *See* Compl. ¶ 3.  But such fees are

12    nothing new.  JAMS, AAA, and others all require claimants to pay per case filing

13    fees of similar amounts, as do the federal courts.[22]  Moreover, courts routinely

14    approve arbitration agreements that require claimants to pay filing fees of this

15    amount.  *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1026 (9th Cir. 2016) (cost-

16    shifting provision in consumer arbitration agreement is unenforceable "[o]nly if the

17    agreement 'impos[es] arbitral forum fees that are prohibitively high,' such that the

18    agreement 'effectively blocks every forum for the redress of disputes, including

19    arbitration itself'"); *Fleming v. Weather Shield Mfg., Inc.*, No. 18-00589, 2018 WL

---

[20]    *See, e.g.*, *Adams v. Postmates, Inc.*, 2020 WL 1066980, at *1 (N.D. Cal. Mar. 5, 2020) (AAA demanded $10 million in fees); *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1064 (N.D. Cal. 2020) (AAA demanded $9.5 million in fees); Opp'n to Mot. to Compel Arb. at 1, *Abadilla et al. v. Uber Techs.*, No. 3:18-cv-07343 (N.D. Cal. Jan. 14, 2019), ECF No. 53 (Uber supposedly owed JAMS $18 million).

[21]    As noted above, where the company has a subscription with New Era, the per case filing fees "are discounted from the default per case pricing as a result of the subscription fee."  New Era Rule 1(e)(i)(3)(b).

[22]    *See, e.g.*, JAMS Consumer Minimum Standards, www.jamsadr.com/ consumer-minimum-standards/ (last visited March 8, 2022) (providing for $250 fee); CPR Due Process Protections, www.cpradr.org/resource-center/rules/pdfs/ Due-Process-Protections.pdf (last visited March 8, 2022) (providing that consumers may be required to pay an amount equivalent to filing a lawsuit in court); C.D. Cal. Schedule of Fees, www.cacd.uscourts.gov/sites/default/files/forms/G-072/G-72.pdf ($402 fee to file a civil lawsuit in C.D. Cal.).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
2-SER-105

1    6010365, at *7 (C.D. Cal. May 14, 2018) (Wu, J.) (cost-shifting provision in

2    arbitration agreement not unconscionable where "[t]he sole cost Plaintiff would bear

3    is a $300 filing fee"). Further, the Terms are clear that Defendants—in addition to

4    paying for the arbitration itself—will pay the consumer's $300 filing fee if the

5    consumer cannot pay. *See* Tobias Decl. Ex. 29 at 8 & Ex. 30 at 12 ("[I]f New Era

6    ADR determines that you are unable to pay any part of the filing fee, we will pay

7    that part too."); New Era Rule 6(b)(iii)(2)(c) (financial hardship affidavits). That

8    certainly does not "shock the conscience" or come close to meeting the threshold the

9    Ninth Circuit has set for unconscionability of fees: i.e., "arbitral forum fees that are

10   prohibitively high,' such that the agreement 'effectively blocks every forum for the

11   redress of disputes, including arbitration itself.'" *Tompkins*, 840 F.3d at 1026.

12              **4.     *The Attorneys' Fees Provisions Are Not Unconscionable***

13              Finally, Plaintiffs argue that New Era's rules are unconscionable because they

14   strip away their statutory right to attorneys' fees and costs. Compl. ¶ 5. That's false.

15   The Terms expressly state that, "in cases where a statute gives you the right to

16   recover attorneys' fees if you prevail, the arbitrator may award attorneys' fees

17   pursuant to that statute." Tobias Decl. Ex. 29 at 8 & Ex. 30 at 12-13 ("Any

18   arbitration will be administered by New Era ADR in accordance with their [rules] …

19   except as modified by the Terms."). In addition, New Era's rules provide that "[t]he

20   neutral may grant any remedy or relief that is just and equitable and within the scope

21   of the parties' agreement or applicable law." New Era Rule 2(e); *see also, e.g.*, *Ortiz*

22   *v. Volt Mgmt. Corp.*, No. 16-cv-07096, 2017 WL 1957072, at *4 (N.D. Cal. May 11,

23   2017) (provision that "arbitrator may be entitled to award reasonable attorneys' fees

24   and costs to the prevailing party, in accordance with the law" not unconscionable;

25   "[t]he arbitrator's discretion with regard to attorneys' fees is bounded by what

26   otherwise would be allowed under the applicable laws").

27                                    *      *      *

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

2-SER-106

1    There's nothing about New Era's rules and procedures that's unconscionable
2    or unenforceable.  The subtext of Plaintiffs' complaints is this: they prefer the current
3    situation at JAMS and other arbitration providers, where there are no established
4    rules and procedures in place to administer and actually arbitrate mass arbitrations,
5    because the resulting chaos gives them outsized settlement leverage, right out of the
6    gate.  But that preference has absolutely nothing to do with arbitrating claims on the
7    merits; it only concerns a perceived tactical advantage for Plaintiffs' counsel.  If the
8    concern was about facilitating the arbitration of mass claims—and reaching an
9    efficient resolution on the merits—there would be no complaint about New Era
10   whatsoever.  New Era makes the actual arbitration of mass claims *more* feasible.
11   That is (and should be) a welcome result for all involved.  Moreover, that result is
12   specifically what the FAA so strongly encourages.  *See Concepcion*, 563 U.S. at 344
13   ("The point of affording parties discretion in designing arbitration processes is to
14   allow for efficient, streamlined procedures tailored to the type of dispute.").

15   **D.    Even If the New Era Arbitration Agreement Were Unenforceable,**
16   **Plaintiffs Would Still Be Required to Arbitrate**

17   If the Court for some reason reached the question of enforceability *and* found
18   that New Era's rules and procedures were unenforceable, the result would not be
19   what Plaintiffs seek here: a class action in federal court.  The case would still proceed
20   in arbitration, just not at New Era.  The Terms clearly provide that, if New Era is
21   unable conduct the arbitration for <u>any</u> reason, its will instead be conducted by
22   FairClaims, another arbitration provider.  Tobias Decl. Ex. 29 at 8 & Ex. 30 at 12.
23   And if FairClaims is unable to conduct the arbitration for <u>any</u> reason, the parties will
24   mutually select another arbitration provider to conduct the arbitration.  *Id*.  In other
25   words, if there were some problem with New Era (which there manifestly is not),
26   the answer is not a class action in federal court; it's an arbitration conducted by
27   another arbitration provider.  This is what Plaintiffs agreed to, repeatedly, when they
28   checked the box affirming their agreement to the Terms: <u>arbitration</u>.  Plaintiffs did

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS
**2-SER-107**

1   not have to check that box; they did not have to purchase tickets from Defendants

2   and agree to arbitrate their disputes. But they did—many, many times. The Court

3   should enforce that clear agreement.

4        **E.**     **This Action Should Be Dismissed**

5        The Court "may either stay the action or dismiss it outright when, as here, the

6   court determines that all of the claims raised in the action are subject to arbitration."

7   *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).

8   Here, as courts have found in many other cases, dismissal is the most efficient path

9   forward. *See, e.g.*, *Peterson v. Lyft*, No. 16-cv-07343, 2018 WL 6047085, at *6

10   (N.D. Cal. Nov. 19, 2018) (granting motion to compel arbitration, dismissing case).

11  **V.**    **CONCLUSION**

12        The FAA directs courts to "respect and enforce the parties' chosen arbitration

13   procedures" and "rigorously … enforce arbitration agreements according to their

14   terms, including terms that specify … *the rules* under which that arbitration will be

15   conducted." *Epic Sys. Corp.*, 138 S. Ct. at 1621. The parties here unquestionably

16   agreed to New Era's procedures and, barring that, to arbitration before FairClaims

17   or a mutually agreed upon arbitration provider. What they did not agree to is

18   litigation in federal court. Defendants therefore respectfully request that the Court

19   compel individual arbitration and dismiss or, in the alternative, stay this action.

20  Dated: March 8, 2022              Respectfully Submitted,

21

22                              LATHAM & WATKINS LLP

23                      By: _____

23                         Timothy L. O'Mara

24                         505 Montgomery Street, Suite 2000

24                         San Francisco, California 94111-6538

25                         Telephone: +1.415.391.0600

25                         Facsimile: +1.415.395.8095

26                         tim.o'mara@lw.com

27                      *Attorneys for Defendants*

27                      *Ticketmaster L.L.C. and Live Nation*

28                      *Entertainment, Inc.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**2-SER-108**