No. 23-55770

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SKOT HECKMAN, LUIS PONCE, JEANENE POPP,
JACOB ROBERTS, on behalf of themselves and all those similarly
situated,

*Plaintiffs-Appellees*,

v.

LIVE NATION ENTERTAINMENT, INC.,
TICKETMASTER, LLC,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Central District of California
The Honorable George H. Wu Presiding
Case No. 2:22-cv-00047-GW-GJS

## BRIEF FOR *AMICUS CURIAE* PROFESSOR BRIAN
## FITZPATRICK IN SUPPORT OF PLAINTIFFS-APPELLEES

Adam Mortara
LAWFAIR LLC
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215

Benjamin M. Flowers
  *Counsel of Record*
ASHBROOK BYRNE KRESGE LLC
PO Box 8248
Cincinnati, Ohio 45249
(312) 898-3932
bflowers@ashbrookbk.com

*Attorneys for Amicus Curiae Professor Brian Fitzpatrick*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................. ii

Statement of *Amicus* Interest .......................................................................... 1

Summary of Argument ....................................................................................... 2

Argument ............................................................................................................. 4

    I.  *Concepcion* interpreted the Federal Arbitration Act to preempt state laws that make it harder for parties to engage in bilateral arbitration. .................. 5

    II. Neither *Concepcion* nor obstacle preemption has any application to the question whether the class-action waivers are unconscionable. ................. 12

Conclusion ........................................................................................................... 19

Certificate of Compliance ................................................................................. 20

Certificate of Service .......................................................................................... 21

i

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015) ...................................................................... 5, 6

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).................................................................. *passim*

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) ......................................................................... 7

*Buckley v. Am. Const. L. Found., Inc.*,
  525 U.S. 182 (1999) ....................................................................... 18

*Discover Bank v. Superior Court*,
  36 Cal.4th 148 (2005) ...................................................... 2, 9, 12, 14

*Edmo v. Corizon, Inc.*,
  949 F.3d 489 (9th Cir. 2020)........................................................... 18

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992)............................................................................ 7

*Hell's Angels Motorcycle Corp. v. McKinley*,
  360 F.3d 930 (9th Cir. 2004) ............................................................ 5

*Hines v. Davidowitz*,
  312 U.S. 52 (1941)............................................................. 3, 4, 12, 14

*NLRB. v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron
  Workers, Loc. 229, AFL-CIO*,
  974 F.3d 1106 (9th Cir. 2020)......................................................... 18

*Planned Parenthood of Indiana & Kentucky, Inc. v. Comm'r of Indiana State Dep't of Health,*
    917 F.3d 532 (7th Cir. 2018) ............................................................... 16

*Preterm-Cleveland v. McCloud,*
    994 F.3d 512 (6th Cir. 2021) (*en banc*) ............................................ 16

*Sanchez v. Valencia Holding Co., LLC,*
    61 Cal.4th 899 (2015) ........................................................................ 9

*Viking River Cruises, Inc. v. Moriana,*
    596 U.S. 639 (2022) ..................................................................... 5, 11

*Virginia Uranium, Inc. v. Warren,*
    139 S. Ct. 1894 (2019) ............................................................. 6, 7, 17

*Wyeth v. Levine,*
    555 U.S. 555 (2009) ........................................................................... 6

## US CONSTITUTIONAL PROVISIONS

Article VI
    § 2 ................................................................................................ 5, 6

## STATUTES

9 U.S.C.
    § 2 ............................................................................................ 7, 8, 13

## OTHER AUTHORITIES

Brian T. Fitzpatrick & Robert C. Gilbert, *An Empirical Look at Compensation in Consumer Class Actions,* 11 N.Y.U. J.L. & Bus. 767 (2015) ................................ 1

Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions,* 89 Fordham L. Rev. 1151 (2021) ....................................................... 1

Brian T. Fitzpatrick, *Can and Should the New Third-Party Litigation Financing Come to Class Actions?*, 19 Theoretical Inquiries L. 109 (2018) ......................... 1

Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U. Pa. L. Rev. 2043 (2010) ............................................................................................. 1

Brian T. Fitzpatrick, *Justice Scalia and Class Actions: A Loving Critique*, 92 Notre Dame L. Rev. 1977 (2017)................................................................................ 1

Brian T. Fitzpatrick, *Objector Blackmail Update: What Have the 2018 Amendments Done?*, 89 Fordham L. Rev. 437 (2020) ............................................................ 1

Brian T. Fitzpatrick, *The End of Class Actions?*, 57 Ariz. L. Rev. 161 (2015)............. 1

Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225 (2000) ................................................ 6

H.L. Ho, *The Legitimacy of Medieval Proof,* 19 J.L. & Religion 259 (2004) ............. 14

Vincent R. Johnson, *The Ancient Magna Carta and the Modern Rule of Law: 1215 to 2015*, 47 St. Mary's L.J. 1 (2015).................................................................. 14

iv

## STATEMENT OF *AMICUS* INTEREST

Brian T. Fitzpatrick, Professor of Law at Vanderbilt University Law School, is a nationally renowned scholar.[*] Professor Fitzpatrick is an expert on class actions and a prolific author of books and articles about class-action law. *See, e.g.*, Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89 Fordham L. Rev. 1151 (2021); Brian T. Fitzpatrick, *Objector Blackmail Update: What Have the 2018 Amendments Done?*, 89 Fordham L. Rev. 437 (2020); Brian T. Fitzpatrick, *Can and Should the New Third-Party Litigation Financing Come to Class Actions?*, 19 Theoretical Inquiries L. 109 (2018); Brian T. Fitzpatrick, *Justice Scalia and Class Actions: A Loving Critique*, 92 Notre Dame L. Rev. 1977 (2017); Brian T. Fitzpatrick, *The End of Class Actions?*, 57 Ariz. L. Rev. 161 (2015); Brian T. Fitzpatrick & Robert C. Gilbert, *An Empirical Look at Compensation in Consumer Class Actions*, 11 N.Y.U. J.L. & Bus. 767 (2015); Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U. Pa. L. Rev. 2043 (2010).

Professor Fitzpatrick is filing a brief in this case because the question presented relates to his interest in preserving access to class-action procedures, which are the

---

[*] No party's counsel authored this brief in whole or in part. Nor did any person or entity, including any party or party's counsel, contribute money intended to fund this brief's preparation or submission. *See* Fed. R. App. P. 29(a)(4)(E). All parties consented to the filing of this brief.

most effective means of holding wrongdoers accountable when they inflict small injuries on large numbers of people. *See generally* Brian T. Fitzpatrick, *The Conservative Case for Class Actions* (2019).

## SUMMARY OF ARGUMENT

This brief addresses an alternative basis for affirmance: the class-action waivers in the defendants' contracts are unconscionable under California law and therefore unenforceable.

By way of background, the Supreme Court of California held in *Discover Bank v. Superior Court*, that class-arbitration waivers are generally unconscionable. 36 Cal.4th 148, 161 (2005). The Federal Arbitration Act, as interpreted by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), forbids some applications of *Discover Bank*. According to *Concepcion*, Congress passed the Act to promote bilateral arbitration, which was the form of arbitration then in common use. *See Concepcion*, 563 U.S. at 339. *Concepcion* determined that *Discover Bank* interfered with this congressional goal. *Id*. at 343. Businesses, the Court said, would be less likely to agree to resolve disputes through bilateral arbitration if, by doing so, they assumed the risk of being forced into *class* arbitration. *Id*. at 346–51. Yet, that is precisely the risk that *Discover Bank*, by deeming class-arbitration waivers unconscionable, forced businesses to take. Applying the doctrine of obstacle-preemption—which forbids the

2

enforcement of any state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"—the Court determined that the Federal Arbitration Act preempted California's unconscionability rules as applied to class-action waivers in contracts where parties agreed to resolve their disputes through bilateral arbitration. *Id.* at 352 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

In this case, the defendants' contracts with the plaintiffs included class-action waivers that are unconscionable under California law. But the District Court refused to apply California law. It reasoned that "the United States Supreme Court overruled *Discover Bank* in *Concepcion.*" 1-ER-29. *Concepcion* did no such thing. To be sure, *Concepcion* held that the Federal Arbitration Act preempts California's unconscionability rules in their application to class-action waivers in contracts requiring traditional, bilateral arbitration. In *that* application, California's unconscionability rules obstruct Congress's goal to promote bilateral arbitration. Here, however, the defendants' contracts with plaintiffs do not commit the parties to traditional, bilateral arbitration. Instead, those contracts call for novel dispute-resolution procedures unknown to the Congress that passed the Federal Arbitration Act in 1925. California's unconscionability rules will not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" as applied to class-action

waivers in contracts that call for a form of dispute resolution unlike that which Congress sought to promote with the Federal Arbitration Act. *Id.* at 352 (quoting *Hines*, 312 U.S. at 67).

Because the Federal Arbitration Act does not preempt the application of California unconscionability rules to the class-action waivers in the defendants' contracts, those waivers are unenforceable. As such, the plaintiffs have a right to litigate this dispute as a class action. Therefore, the defendants are not entitled to an order compelling arbitration.

## ARGUMENT

The appellees defend the District Court's rationale for refusing to order arbitration. This brief addresses an alternative basis for affirmance. In support of their motion to compel arbitration, Live Nation and Ticketmaster cited class-action waivers in their agreements with the plaintiffs. They claimed these waivers barred the plaintiffs from litigating the case as a class action. But the class-action waivers are unconscionable, and thus unenforceable, as a matter of California law. *See* Appellees' Br.59. The District Court did not disagree. But it held that the Federal Arbitration Act, as interpreted by *Concepcion*, preempted California unconscionability rules. *See* 1-ER-29.

4

The District Court erred. This Court can and should correct that error to provide important guidance to the district courts in this circuit. Appellate courts "may affirm on any basis finding support in the record." *Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930, 933 (9th Cir. 2004). Here, the Court may affirm the District Court's order denying the motion to compel by holding that the class-action waivers are invalid and that the plaintiffs may therefore seek relief in this class action.

**I.**  ***Concepcion* interpreted the Federal Arbitration Act to preempt state laws that make it harder for parties to engage in bilateral arbitration.**

Understanding the District Court's error requires some background on *Concepcion*. Understanding *Concepcion* requires some background on the Federal Arbitration Act. And understanding the Act requires some background on federal preemption. This section addresses each issue.

**1.** The concept of preemption derives from the Supremacy Clause. Validly enacted federal laws are the "supreme Law of the Land"; they prevail over contrary state laws. U.S. Const., art. VI, §2. The clause thus "creates a rule of decision," barring courts from giving "effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324 (2015). State laws made unenforceable by this rule of decision are said to be "preempted." *See, e.g.*, *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 662 (2022).

A federal law contradicts a state law—and thus preempts that law—when it either expressly permits what the state law forbids or forbids what the state law permits. *Armstrong*, 575 U.S. at 326. In addition to this form of preemption, often called "conflict preemption," the Supreme Court has recognized "obstacle preemption." Under the obstacle-preemption doctrine, state laws are preempted when they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Co*ncepcion*, 563 U.S. at 352 (quoting *Hines*, 312 U.S. at 67).

Obstacle preemption is controversial for at least two reasons. First, the doctrine is a judicial invention with no basis in the Constitution's text. *See Wyeth v. Levine*, 555 U.S. 555, 587 (2009) (Thomas, J., concurring in the judgment); Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225, 265–87 (2000); *see also Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1907 (2019) (op. of Gorsuch, J.). The Supremacy Clause makes federal laws, not Congress's unenacted goals and motives, the "supreme Law of the Land." U.S. Const., art. VI, §2. "Beyond these concerns … lie well-known conceptual and practical ones." *Virginia Uranium*, 139 S. Ct. at 1906 (op. of Gorsuch, J.). Most prominently, "[t]rying to discern what motivates legislators individually and collectively invites speculation and risks overlooking the reality that individual Members of Congress often pursue multiple and competing purposes, many of which are compromised to secure a law's passage and few of which are fully realized in the

final product." *Id*. at 1907–08. As such, "[e]fforts to ascribe unenacted purposes and objectives to a federal statute" are ill-advised. *Id*. at 1907.

To keep preemption from drifting any further from the Constitution or devolving into a "free wheeling judicial inquiry into whether a state statute is in tension with federal objectives," courts must exercise great care before finding obstacle preemption. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 111 (1992) (Kennedy J., concurring in part and concurring in the judgment). More precisely, courts should find obstacle preemption only when the relevant federal law's text and structure very clearly indicate Congress's purpose. *See Virginia Uranium*, 139 S. Ct. at 1907 (op. of Gorsuch, J.), 1915–16 (Ginsburg, J., concurring in the judgment).

**2.** With the Federal Arbitration Act, Congress used its preemptive authority to advance "a liberal federal policy favoring arbitration." *Concepcion*, 563 U.S. at 339 (quotation omitted). That is especially true of the Act's second section, which "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Section 2 effects this national policy by making arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract …." 9 U.S.C. §2.

Look closely at this text, and one sees the limits of §2's preemptive scope. Section 2 *generally* preempts state laws interfering with arbitration agreements; broadly speaking, federal law makes agreements to arbitrate "valid, irrevocable, and enforceable," contrary state laws notwithstanding. *Id.* But §2 contains a saving clause, which "permits arbitration agreements to be declared unenforceable" under state law "'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Concepcion*, 563 U.S. at 339 (quoting 9 U.S.C. §2). The saving clause thus "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* (internal quotation marks omitted). Put differently, the saving clause lifts the preemptive effect of §2 for generally applicable contract doctrines, but leaves the preemptive effect in place for "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.*

**3.** Turn now to *Concepcion*, which presented the question whether §2 "prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." 563 U.S. at 336.

Unconscionable contract clauses are unenforceable in California. The "doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter

on overly harsh or one-sided results." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015) (quotation omitted). While procedural and substantive un-conscionability "must *both* be present" before a court can deem a provision uncon-scionable, "they need not be present in the same degree." *Id.* (emphasis in original) (quotation omitted). Instead, the doctrine operates on a sliding scale. The "more substantively oppressive the contract term, the less evidence of procedural uncon-scionability is required, … and vice versa." *Id.* (quotation omitted).

In *Discover Bank*, California's high court considered the circumstances in which class-arbitration waivers are unconscionable. 36 Cal.4th at 158-72. Through class-arbitration waivers, consumers waive any right to arbitrate as a class against the seller of goods or services. The Supreme Court of California held that, in some cir-cumstances, such waivers are unconscionable. More precisely, it adopted the follow-ing rule: such waivers are unenforceable when (1) they are "found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages," and (2) the "party with the superior bargaining power" is alleged to have "carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. *Id.* at 162–63.

In *Concepcion*, the Court held that the Federal Arbitration Act preempted *Dis-cover Bank*'s application of California's unconscionability rules. But the Court

reached this conclusion based on an obstacle-preemption theory, not based on any interpretation of §2.

*Concepcion* began by acknowledging that §2's saving clause "permits" invalidating "agreements to arbitrate" under "generally applicable contract defenses." 563 U.S. at 339 (quotation omitted). The Court further acknowledged that unconscionability—the doctrine *Discover Bank* applied—is "normally thought to be generally applicable." *Id*. at 341. Had the Court stopped there, it would have held that *Discover Bank*'s application of California unconscionability principles came within §2's saving clause.

Instead, the Court went further and determined that, "[a]lthough § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the [Federal Arbitration Act's] objectives." *Id*. at 343. Put differently, the Court put §2 and conflict preemption aside, choosing instead to consider the case through the lens of *obstacle* preemption.

From there, *Concepcion* determined that the *Discover Bank* rule stood as an obstacle to the Act's objectives. This conclusion rested on the Court's determination that the Federal Arbitration Act "was designed to promote arbitration." *Id*. at 345. Critically, "arbitration as envisioned" by the Act did not include *class* arbitration. *Id*.

10

at 351.  Instead, "when it passed" the Act in 1925, Congress had bilateral arbitration in mind.  *Id*. at 349; *see also Viking River Cruises*, 596 U.S. at 657.  The "principal advantage" of bilateral arbitration is "its informality."  *Concepcion*, 563 U.S. at 348. In contrast, "class arbitration *requires* procedural formality."  *Id*. at 349 (emphasis in original).  Thus, by mandating class arbitration, *Discover Bank* "sacrifice[d] the principal advantage" of the sort of arbitration Congress sought to promote, making "the process slower, more costly, and more likely to generate procedural morass."  *Id*. at 348.  Further, insofar as class arbitration does proceed informally, that informality may "greatly increase[] risks to defendants"; informality always introduces an error risk, and while the risk is worth taking to secure a quick resolution of a bilateral dispute, it will "often become unacceptable" if it means that *thousands* of claimants can secure unwarranted relief in one fell swoop.  *Id*. at 350.  For this reason, too, making the enforceability of arbitration agreements depend on the availability of class arbitration would deter businesses from entering such agreements, thwarting Congress's goals.  *See id*.

All told *Concepcion* stands for the following principle:  because Congress enacted the Federal Arbitration Act with the purpose of allowing parties to contract for bilateral arbitration, any state-law doctrine that frustrates their ability to do so "stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress," and is therefore preempted. *Id*. at 352 (quoting *Hines*, 312 U.S. at 67). That principle is broad. But even broad principles have limits. One stands out here: state-law doctrines that *do not* interfere with the right to contract for traditional, bilateral arbitration do not implicate *Concepcion*. On this, more below.

## II. Neither *Concepcion* nor obstacle preemption has any application to the question whether the class-action waivers are unconscionable.

**1.** Live Action's and Ticketmaster's contracts contain class-action waivers that are unconscionable as a matter of California law. Remember, *Discover Bank* held that class-arbitration waivers in consumer contracts are unconscionable when (1) they are "found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages," and (2) the "party with the superior bargaining power" allegedly "carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. 36 Cal.4th at 162–63. Everyone seems to agree that Live Action's and Ticketmaster's contracts are contracts of adhesion. And Live Action is alleged to have carried out a scheme to cheat large numbers of consumers out of individually small sums of money. So the test announced in *Discover Bank* is satisfied. True, *Discover Bank* involved a waiver of the right to class *arbitration*, while the class-action waivers in this case additionally prohibit class-action *litigation*. *See* 2-ER-123, 2-ER-137. But there is no reason that distinction ought to make a difference. *See*

12

*Concepcion*, 563 U.S. at 341 (citing *America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1, 17–18 (2001)). Live Action and Ticketmaster do not contend otherwise.

Given all that, the sole remaining question is whether the Federal Arbitration Act preempts California's unconscionability principles in their application to the parties' class-action waivers—if not, those waivers are unconscionable and unenforceable.

The Act has no preemptive effect in this case. To see why, begin with *Concepcion*'s acknowledgment that unconscionability is a "generally applicable" defense to contractual enforcement. *Id*. at 339. As such, it falls within §2's saving clause; it is a "ground[]" that "exist[s] at law or in equity for the revocation of any contract." 9 U.S.C. §2. This eliminates any threat of conflict preemption, leaving only the issue of obstacle preemption. More precisely, the Court must answer the following question: Does California law, by treating Live Action's and Ticketmaster's class-action waivers as unconscionable and thus unenforceable, "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"? *Concepcion*, 563 U.S. at 352 (quoting *Hines*, 312 U.S. at 67).

The answer is no. No doubt, Congress enacted the Federal Arbitration Act in 1925 "to promote arbitration." *Id*. at 345. But that broad goal does not mean that

13

Congress's "purposes and objectives" include the promotion of anything that parties might label "arbitration." For example, class arbitration did not exist in 1925. *Id.* at 349 (citing *Discover Bank*, 36 Cal.4th at 163). Accordingly, "class arbitration was not … envisioned by Congress when it passed" the Act, and Congress could not possibly have acted with the "purpose[]" or "objective[]" to promote this form of arbitration. *Id.* at 352 (quoting *Hines*, 312 U.S. at 67). The same logic applies to other forms of arbitration that Congress could not possibly have intended to promote when it passed the Federal Arbitration Act. Imagine hypothetical provisions obligating consumers to "arbitrate" through coin flips, trials by combat, or trials by ordeal. *Cf.* Vincent R. Johnson, *The Ancient Magna Carta and the Modern Rule of Law: 1215 to 2015*, 47 St. Mary's L.J. 1, 37 (2015) (addressing trial by combat); H.L. Ho, *The Legitimacy of Medieval Proof*, 19 J.L. & Religion 259, 261 (2004) (addressing trial by ordeal). Would a state-court decision deeming these clauses unconscionable even conceivably interfere with Congress's objectives? Of course not. And the reason is apparent in *Concepcion* itself: the "arbitration" that Congress passed the Federal Arbitration Act to promote was the form of arbitration with which it was familiar, bilateral arbitration. Accordingly, a state-law doctrine interfering with parties' ability to pursue other forms of dispute resolution does not frustrate any relevant congressional objective.

14

That proves dispositive here. The Live Action and Ticketmaster arbitration provisions do not call for traditional, bilateral arbitration, at least not with respect to the present dispute. Instead, the contracts permit arbitrators to invoke a "mass arbitration" protocol whenever five or more cases bear some similarity to one another. 2-ER-19. At that point, the arbitrator selects three bellwether cases. *Id.* The rulings in those cases are binding in subsequent arbitrations. *Id.* at 20. This means that a single arbitrator's decision in a set of bellwether cases may irrevocably impair the rights of non-parties. *See* Appellees' Br. 2–3, 13–14. Whatever one makes of this new form of dispute resolution, it does not even arguably resemble the traditional, bilateral form of arbitration that Congress, in 1925, enacted the Federal Arbitration Act to promote. Accordingly, applying California's unconscionability rules to the class-action waivers, thus freeing the appellees from having to engage in this form of dispute resolution, would not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Concepcion*, 563 U.S. at 352 (quoting *Hines*, 312 U.S. at 67).

In the end, the Federal Arbitration Act does not preempt the application of California's unconscionability rules to the class-action waivers in this case. That is true as a matter of conflict preemption under §2. And it is true as a matter of obstacle preemption. The District Court should have held the class-action waivers

15

unconscionable and unenforceable under California law. That would have independently defeated the defendants' motion to compel arbitration.

**2.** The District Court rejected this argument in a single paragraph. The court explained that, even if the class-action waivers are unconscionable under the principles announced in *Discover Bank*, "the United States Supreme Court overruled *Discover Bank* in *Concepcion*." 1-ER-29. What about the plaintiffs' argument that *Concepcion*'s holding applies only to state-law doctrines that interfere with parties' ability to enter traditional, bilateral arbitration? To this, the Court offered the following response: "there is no clear indication that once the Supreme Court considers the creation and use of mass arbitrations, it will reconsider its ruling that the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of class-wide arbitration procedures." *Id.*

Every component of the District Court's analysis is flawed. "Judicial opinions are not statutes; they resolve only the situations presented for decision." *Planned Parenthood of Indiana & Kentucky, Inc. v. Comm'r of Indiana State Dep't of Health*, 917 F.3d 532, 536 (7th Cir. 2018) (Easterbrook, J., dissenting from the denial of rehearing *en banc*). Accordingly, courts must not "read precedents" to resolve questions the issuing courts had no occasion to consider. *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 536 (6th Cir. 2021) (Sutton, J., concurring) (quoting *Herr v. U.S. Forest Serv.*,

803 F.3d 809, 819 (6th Cir. 2015). Those principles must inform any honest application of *Concepcion*. The Supreme Court simply had no occasion to consider whether California unconscionability principles are preempted insofar as the "arbitrations" they frustrate are unlike the traditional, bilateral arbitrations Congress hoped to promote when it passed the Federal Arbitration Act. Because *Concepcion* did not consider whether California unconscionability rules are preempted as applied in these circumstances, *Concepcion* cannot be read to have resolved the issue. This means the Court can correctly resolve this case without waiting for the Supreme Court to "revisit its ruling" in *Concepcion*. *See* 1-ER-29.

This Court should be especially reluctant to extend *Concepcion* because it rests on obstacle preemption. As discussed above, obstacle preemption is an atextual, judge-empowering doctrine with no basis in our constitutional history. The doctrine's atextual nature and susceptibility to abuse has led the Supreme Court itself to insist on limiting the doctrine's application to situations in which statutory "text and structure" leave no doubt as to Congress's goals. *Virginia Uranium*, 139 S. Ct. at 1907 (op. of Gorsuch, J.) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). And the same insight counsels in favor of reading the Court's obstacle-preemption holdings—including the holding in *Concepcion*—no more broadly than necessary.

Indeed, even outside the obstacle-preemption context, courts must "tread carefully before extending" Supreme Court "precedent" that is "seriously questioned as an original matter." *NLRB. v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron Workers, Loc. 229, AFL-CIO*, 974 F.3d 1106, 1117 (9th Cir. 2020) (Bumatay, J., dissenting from denial of rehearing *en banc*) (quotation omitted). "Judges and lawyers live on the slippery slope of analogies; they are not supposed to ski it to the bottom." *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 194 n.16 (1999) (quoting Robert Bork, *The Tempting of America: The Political Seduction of the Law* 169 (1990)). Courts should therefore "resolve questions about the scope of" Supreme Court "precedents in light of and in the direction of the constitutional text and constitutional history." *Edmo v. Corizon, Inc.*, 949 F.3d 489, 506 (9th Cir. 2020) (Bumatay, J., dissenting from the denial of rehearing *en banc*) (quoting *Free Enter. Fund v. PCAOB*, 537 F.3d 667, 698 (D.C. Cir. 2008) (Kavanaugh, J., dissenting)). These principles matter here because *Concepcion* rests entirely on obstacle preemption, a doctrine with no support in the Constitution's text or history. For all the reasons laid out above, *Concepcion* is best read not to bar applications of unconscionability rules that frustrate dispute resolution methods distinct from the bilateral arbitration that Congress sought to promote with the Federal Arbitration Act. But at the

very least, *Concepcion* is susceptible of this narrow reading. The Constitution's text and history support adopting that narrow reading.

## CONCLUSION

This Court should hold that the class-action waivers are unconscionable under California law.

December 19, 2023                    Respectfully submitted,

Adam Mortara                         */s/ Benjamin M. Flowers*
LAWFAIR LLC                          Benjamin M. Flowers
40 Burton Hills Blvd., Suite 200        *Counsel of Record*
Nashville, TN 37215                  ASHBROOK BYRNE KRESGE LLC
                                     PO Box 8248
                                     Cincinnati, Ohio 45249
                                     (312) 898-3932
                                     bflowers@ashbrookbk.com

# CERTIFICATE OF COMPLIANCE

9th Cir. Case Number(s) _____23-55770_____

I am the attorney or self-represented party.

This brief contains __4,053__ words, including __0__ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief (select only one):

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature _/s/ Benjamin M. Flowers_     Date December 19, 2023

## CERTIFICATE OF SERVICE

I certify that on December 19, 2023, I filed this brief electronically with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


*/s/ Benjamin M. Flowers*