**No. 23-55770**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**SKOT HECKMAN; LUIS PONCE; JEANENE POPP; JACOB ROBERTS,**
**on behalf of themselves and all those similarly situated,**

*Plaintiffs-Appellees*,

v.

**LIVE NATION ENTERTAINMENT, INC.; TICKETMASTER LLC,**

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Central District of California
No. 2:22-cv-00047-GW-GIS (George H. Wu, District Judge)

### OPENING BRIEF OF LIVE NATION ENTERTAINMENT, INC.
### AND TICKETMASTER LLC

### UNDER SEAL

Roman Martinez
Uriel Hinberg
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Sadik Huseny
LATHAM & WATKINS LLP
300 Colorado Street
Suite 200
Austin, TX 78701
(737) 910-7300

November 13, 2023

Timothy L. O'Mara
  *Counsel of Record*
Andrew M. Gass
Alicia R. Jovais
Robin L. Gushman
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600
tim.omara@lw.com

*Counsel for Defendants-Appellants*
*Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Defendants-Appellants Ticketmaster L.L.C. ("Ticketmaster") and Live Nation Entertainment, Inc. ("Live Nation") hereby disclose and certify that, as of November 13, 2023: (1) Ticketmaster is a Virginia limited liability company with its principal place of business in Beverly Hills, California; (2) Ticketmaster is a wholly-owned subsidiary of Live Nation, a publicly-traded company; and (3) according to public records, Liberty Media Corporation owns more than 10% of the outstanding stock of Live Nation.

# TABLE OF CONTENTS

Page

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.......................................i

TABLE OF AUTHORITIES ................................................................iv

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION...........................................................3

STATEMENT OF THE ISSUES..............................................................4

STATUTORY AUTHORITIES ................................................................4

STATEMENT OF THE CASE..................................................................4

    A.    The FAA And Live Nation's Long History Of Enforceable Arbitration Agreements....................................................4

    B.    The Threat To Fair Adjudication Posed By Mass Arbitration Filings Designed To Extract Blackmail Settlements ...........................7

    C.    Live Nation's Designation Of New Era As Its Arbitration Provider ............................................11

    D.    This Lawsuit And The District Court's Refusal To Enforce The Parties' Arbitration Agreement ..........................................14

SUMMARY OF ARGUMENT ................................................................18

STANDARD OF REVIEW ...................................................................20

ARGUMENT ......................................................................................21

I.    DELEGATION CLAUSES ARE ENFORCEABLE EXCEPT IN EXTRAORDINARY CIRCUMSTANCES .................................................21

II.    THE PARTIES VALIDLY DELEGATED TO NEW ERA THE AUTHORITY TO RESOLVE THRESHOLD ARBITRABILITY DISPUTES........................................................23

    A.    The Delegation To New Era Is Not Procedurally Unconscionable ...................................................24

Page

1. The New Era Delegation Was Part Of A Routine Contract Of Adhesion ...............................................................24

2. The District Court's Finding Of "Extreme" Procedural Unconscionability Is Deeply Flawed........................................29

B. The Delegation To New Era Is Not Substantively Unconscionable ...................................................................39

1. New Era's Arbitrator-Selection Process Does Not Make The Delegation Clause Substantively Unconscionable ...........41

2. The Limited Right Of Appeal Does Not Make The Delegation Clause Substantively Unconscionable .................42

3. New Era's Rule Governing Bellwether "Precedent" Does Not Make The Delegation Clause Substantively Unconscionable........................................................45

4. The Other Factors The District Court Cited Do Not Make The Delegation Clause Substantively Unconscionable ...........52

III. ALTERNATIVELY, A DIFFERENT ARBITRATOR MUST DECIDE WHETHER THIS CASE IS SUBJECT TO ARBITRATION .................................................................55

A. The Parties' Backup Agreement To Arbitrate Before FairClaims Or A Mutually Agreeable Arbitrator Must Be Respected .................55

B. The District Court Abused Its Discretion By Refusing To Send This Case To FairClaims Or A Mutually Agreeable Arbitrator ........58

C. If The Entire Arbitration Agreement Is Unenforceable, Then This Case Must Be Arbitrated By JAMS ...........................61

CONCLUSION .....................................................................63

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Airs International, Inc. v. Perfect Scents Distributions, Ltd.*,
902 F. Supp. 1141 (N.D. Cal. 1995) ............................................................61, 62

*Ajzenman v. Office of the Commissioner of Baseball*,
No. CV 20-3643, 2020 WL 6031899 (C.D. Cal. Sept. 14, 2020) ......................6

*Arbitech, LLC v. Hackney*,
No. G053744, 2017 WL 4296101 (Cal. Ct. App. Sept. 28, 2017) ..............61, 62

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..........................................................................................4, 5

*Badie v. Bank of America*,
79 Cal. Rptr. 2d 273 (Ct. App. 1998) ................................................................37

*Baltazar v. Forever 21, Inc.*,
367 P.3d 6 (Cal. 2016)............................................................................25, 26, 28

*Belton v. Comcast Cable Holdings, LLC*,
60 Cal. Rptr. 3d 631 (Ct. App. 2007) ..........................................................18, 26

*Blake v. Ecker*,
113 Cal. Rptr. 2d 422 (Ct. App. 2001) ..............................................................57

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....................................................................21, 22

*In re Chevron, U.S.A., Inc.*,
109 F.3d 1016 (5th Cir. 1997) .............................................................................9

*Circuit City Stores, Inc. v. Mantor*,
335 F.3d 1101 (9th Cir. 2003) ..............................................................19, 39, 46

*City & County of San Francisco v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020)................................................................48

*Cobb v. Ironwood Country Club*,
183 Cal. Rptr. 3d 282 (Ct. App. 2015) ..............................................................37

iv

**Page(s)**

*Crawford v. Honig,*
37 F.3d 485 (9th Cir. 1994) .................................................................51

*DeVries v. Experian Infomation Solutions, Inc.,*
No. 16-cv-02953, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017)........................38

*Doctor's Associates, Inc. v. Casarotto,*
517 U.S. 681 (1996).................................................................5, 41

*Dotson v. Amgen, Inc.,*
104 Cal. Rptr. 3d 341 (Ct. App. 2010) .................................51, 54, 60

*Epic Systems Corp. v. Lewis,*
138 S. Ct. 1612 (2018)........................................................1, 4, 5

*Fuentes v. Empire Nissan, Inc.,*
307 Cal. Rptr. 3d 512 (Ct. App. 2023) ....................................33

*Gelboim v. Bank of America Corp.,*
574 U.S. 405 (2015)..................................................................48

*Graham v. Scissor-Tail, Inc.,*
623 P.2d 165 (Cal. 1981) .......................................................33

*Green Tree Financial Corp.-Alabama v. Randolph,*
531 U.S. 79 (2000)..................................................................51

*Hansen v. Ticketmaster Entertainment, Inc.,*
No. 20-cv-02685, 2020 WL 7319358 (N.D. Cal. Dec. 11, 2020) .....................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
139 S. Ct. 524 (2019).............................................................22

*Hill v. Xerox Business Services, LLC,*
59 F.4th 457 (9th Cir. 2023) ...................................................20

*Himber v. Live Nation Worldwide, Inc.,*
No. 16-CV-5001, 2018 WL 2304770 (E.D.N.Y. May 21, 2018)........................6

*HNHPC, Inc. v. Department of Cannabis Control,*
311 Cal. Rptr. 3d 771 (Ct. App. 2023) ......................................47

**Page(s)**

*In re Holl*,
    925 F.3d 1076 (9th Cir. 2019) ...................................................31

*Home Depot USA, Inc. v. Lafarge North America, Inc.*,
    59 F.4th 55 (3d Cir. 2023) .....................................................48

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002).................................................................21

*Kalasho v. BMW of North America, LLC*,
    520 F. Supp. 3d 1288 (S.D. Cal. 2021) ..............................42

*Lane v. Francis Capital Management LLC*,
    168 Cal. Rptr. 3d 800 (Ct. App. 2014) ........................19, 26

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ......................1, 6, 31, 32

*Lee v. Ticketmaster L.L.C.*,
    No. 18-cv-05987, 2019 WL 9096442 (N.D. Cal. Apr. 1, 2019) .................31, 32

*Lhotka v. Geographic Expeditions, Inc.*,
    104 Cal. Rptr. 3d 844 (Ct. App. 2010) ..............................30

*Lim v. TForce Logistics, LLC*,
    8 F.4th 992 (9th Cir. 2021) .............................20, 23, 24, 39

*Mendez v. Small*,
    298 F.3d 1154 (9th Cir. 2002) ............................................45

*Mercuro v. Superior Court*,
    116 Cal. Rptr. 2d 671 (Ct. App. 2002) ..............................54

*Modiano v. BMW of North America LLC*,
    No. 21-cv-00040, 2021 WL 5750460 (S.D. Cal. June 29, 2021).................41, 42

*Mohamed v. Uber Technologies, Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ............................................22

*Morris v. Redwood Empire Bancorp*,
    27 Cal. Rptr. 3d 797 (Ct. App. 2005) ................................33

**Page(s)**

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
   460 U.S. 1 (1983) ................................................................4

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) .................................................39, 46

*Nevarez v. Forty Niners Football Co.*,
   No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017).....................6

*Nguyen v. BMW of North America*, *LLC*,
   No. 20-CV-2432, 2022 WL 102203 (S.D. Cal. Jan. 11, 2022) ........................42

*Oberstein v. Live Nation Entertainment, Inc.*,
   No. CV 20-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) ...........7, 22, 30

*Oberstein v. Live Nation Entertainment, Inc.*,
   60 F.4th 505 (9th Cir. 2023) ...............................................1, 6, 7

*Olsen v. Breeze, Inc.*,
   55 Cal. Rptr. 2d 818 (Ct. App. 1996) ........................................26

*OTO, L.L.C. v. Kho*,
   447 P.3d 680 (Cal. 2019) ...............................................24, 26, 39

*Patterson v. ITT Consumer Financial Corp.*,
   18 Cal. Rptr. 2d 563 (Ct. App. 1993) ........................................34

*Peleg v. Neiman Marcus Group, Inc.*,
   140 Cal. Rptr. 3d 38 (Ct. App. 2012) ........................................38

*Peng v. First Republic Bank*,
   162 Cal. Rptr. 3d 545 (Ct. App. 2013) .......................................38

*Pinnacle Museum Tower Association v. Pinnacle Market
   Development (US), LLC*,
   282 P.3d 1217 (Cal. 2012) ...................................................60

*Platt, LLC v. OptumRx, Inc.*,
   No. A163061, 2023 WL 2507259 (Cal. Ct. App. Mar. 15, 2023).....................38

*Ponkey v. LLR, Inc.*,
   No. 22-55532, 2023 WL 4863296 (9th Cir. July 31, 2023) .........................36

**Page(s)**

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) ...................................................*passim*

*Price v. Apple, Inc.*,
  No. 21-cv-02846, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) .......................26

*Rejuso v. Brookdale Senior Living Communities, Inc.*,
  No. CV 17-5227, 2018 WL 6173384 (C.D. Cal. Nov. 13, 2018) ....................62

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) .....................................................................*passim*

*Roman v. Superior Court*,
  92 Cal. Rptr. 3d 153 (Ct. App. 2009) .........................................20, 57

*Sanchez v. Valencia Holding Co.*,
  353 P.3d 741 (Cal. 2015) ......................................................19, 44, 45

*Serafin v. Balco Properties, LLC*,
  185 Cal. Rptr. 3d 151 (Ct. App. 2015) .............................................28

*Shen v. United Parcel Service*,
  No. 21-cv-08446, 2022 WL 17886012 (C.D. Cal. Nov. 21, 2022)...................31

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
  59 F. Supp. 2d 1067 (S.D. Cal. 1999).............................................61

*Volt Information Sciences, Inc. v. Board of Trustees of the Leland
  Stanford Junior University*,
  489 U.S. 468 (1989)..................................................................42

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) ...................................................26

## STATUTES

9 U.S.C. § 2 ...........................................................................4, 41

9 U.S.C. § 5 ...........................................................................5, 41

9 U.S.C. § 16(a) .........................................................................3

**Page(s)**

28 U.S.C. § 1331 .............................................................................3

28 U.S.C. § 1337 .............................................................................3

28 U.S.C. § 1407 .............................................................................9

Cal. Civ. Code § 1643 ...............................................................39, 49

Cal. Civ. Code § 1670.5(a) .......................................................57, 61

Cal. Civ. Proc. Code § 1281.9 ......................................................41

Cal. Civ. Proc. Code § 1281.91(b)(1) ...........................................41

## OTHER AUTHORITIES

Andrew J. Pincus et al., *Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of Commerce Inst. for Legal Reform (Feb. 2023), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf ..........7, 8, 11

FairClaims, *FastTrack Rules & Procedures for Claims Over $25,000* (effective Oct. 15, 2021), https://s3.amazonaws.com/arbi-website/fairclaims-rules/FairClaims-FastTrack-Rules.pdf ...............................60

Fed. R. App. P. 4(a)(1)(A) ...........................................................4

J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283 (2022) .......................7, 8

*Restatement (Second) of Contracts* (1981) .........................................61, 62

1 B.E. Witkin, *Summary 11th Contracts* (2023).......................................61

ix

## INTRODUCTION

Under the Federal Arbitration Act ("FAA"), courts must "enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). This appeal challenges the district court's unwarranted departure from that statutory command.

Historically, Appellants Live Nation Entertainment, Inc. and Ticketmaster LLC (collectively "Live Nation") and their customers have freely agreed to arbitrate their disputes. Until July 2021, they agreed to arbitrate before JAMS—an arrangement repeatedly blessed by this Court. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509-10 (9th Cir. 2023); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020). Then, faced with the emerging phenomenon of a single law firm filing thousands of virtually identical arbitration claims at once, Live Nation revised the arbitration agreement to send disputes to New Era, an arbitration provider that had developed MDL-like procedures to deal with such mass arbitration filings. The revised agreement further made clear that if New Era were unable to conduct the arbitration, disputes would be sent to FairClaims (a different arbitrator) or a mutually agreeable alternative.

Plaintiffs in this case repeatedly assented to the New Era-focused revisions using standard click-through and box-checking procedures that this Court has repeatedly upheld. Nonetheless, six months after those revisions were made,

1

Plaintiffs flouted the arbitration agreement by filing this putative antitrust class action in district court. When Live Nation moved to compel arbitration, the district court refused to enforce the agreement. Despite a clear delegation clause requiring the arbitrator to resolve threshold enforceability disputes, the district court adjudicated enforceability itself, holding that the July 2021 contractual change from JAMS to New Era was procedurally and substantively unconscionable. The court also declined to follow the contractual terms identifying backup arbitrators, or even to send the case to JAMS under the prior version of the agreement upheld in *Oberstein*.

In refusing to compel arbitration, the district court made two fundamental errors, each requiring reversal.

*First*, the district court erred in holding that the delegation of threshold questions of enforceability to New Era was unconscionable. The court found "extreme" procedural unconscionability, even though the agreement was an ordinary contract of adhesion, which California courts routinely enforce. As to substantive unconscionability, the court violated *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), by focusing on aspects of the parties' agreement—such as a supposedly one-sided right to appeal injunctive relief—that are not relevant to the delegation clause. It also ignored textbook FAA preemption of California rules for selecting

arbitrators, misunderstood California unconscionability law, and violated its duty to resolve doubts in favor of contract enforceability and arbitration.

*Second*, the district court erred in refusing to enforce the parties' agreement to have FairClaims or a mutually agreeable arbitrator adjudicate their disputes if New Era is unable to do so. Because Plaintiffs never challenged the fairness of arbitrating before FairClaims, any supposed problems with New Era could not have "permeated" the entire arbitration agreement. Moreover, even if the entire updated arbitration agreement were somehow unenforceable, the proper result would be to revert to the parties' prior agreement—upheld in *Oberstein*—to arbitrate before JAMS.

The district court's refusal to send this case to arbitration is inexplicable given the parties' clear intent and the FAA's overarching purposes. The parties repeatedly agreed to arbitrate—first before JAMS, then before New Era or a backup arbitrator. Nothing about the mere change in arbitration providers here was unfair, unexpected, or otherwise unconscionable. This Court should enforce the parties' bargain and reverse.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1337. The district court's August 10, 2023 order is appealable under 9 U.S.C. § 16(a). The notice of

appeal was timely filed on September 8, 2023.  2-ER-270–74; *see* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1.     Whether the parties validly agreed to delegate to a New Era arbitrator the authority to determine the enforceability of their arbitration agreement.

2.     Whether the parties validly agreed that FairClaims, a different mutually agreeable arbitrator, or JAMS should determine the enforceability of their arbitration agreement if New Era does not conduct the arbitration.

## STATUTORY AUTHORITIES

Pertinent statutes are included in the attached statutory addendum.

## STATEMENT OF THE CASE

### A.     The FAA And Live Nation's Long History Of Enforceable Arbitration Agreements

In 1925, Congress enacted the FAA to replace "widespread judicial hostility to arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), with a "liberal federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The FAA commands that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. That requires courts to enforce "arbitration agreements according to their terms," *Epic Sys.*, 138 S. Ct. at 1619, unless a "generally applicable contract defense[], such

as fraud, duress, or unconscionability" applies, *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). This protection extends to the agreed-upon "rules under which th[e] arbitration will be conducted." *Epic Sys.*, 138 S. Ct. at 1621 (emphasis omitted). For example, the FAA provides that if parties contract "for a method of naming or appointing an arbitrator," that "method shall be followed." 9 U.S.C. § 5. By safeguarding private parties' "discretion in designing arbitration processes" in these ways, the FAA promotes "efficient, streamlined procedures tailored to the type of dispute" at hand. *Concepcion*, 563 U.S. at 344.

Appellants Live Nation Entertainment, Inc. and Ticketmaster LLC (collectively "Live Nation") operate websites that sell tickets for entertainment events, such as concerts and sporting events. Since 2011, the websites' Terms of Use ("Terms") have included an arbitration clause requiring Live Nation and its customers to arbitrate "any dispute, claim, or controversy" relating to the Terms, use of the website, or ticket purchases. 2-ER-114–15 (¶27); 2-ER-123.[1] Until the most recent change, in July 2021, the designated arbitrator was JAMS. 2-ER-148 (Jan. 2021 agreement).

Live Nation's arbitration agreement has always included a so-called "delegation clause." While courts presumptively determine the applicability and

---

[1] Record references are to Live Nation Entertainment's Terms. Ticketmaster's Terms are identical. *See* 2-ER-128–42.

enforceability of arbitration agreements, delegation clauses are "agreement[s] to arbitrate [those] threshold issues" instead. *Rent-A-Ctr.*, 561 U.S. at 68, 70. Live Nation's delegation clause has always given "[t]he arbitrator, and not any federal, state or local court or agency," the "exclusive authority to the extent permitted by law" to resolve disputes relating to "the interpretation, applicability, enforceability, or formation" of the arbitration agreement. 2-ER-123; *see* Tobias Decl. Ex. 44 at 6, *Oberstein v. Live Nation Entertainment, Inc.*, 20-cv-03888-GW-GJS (C.D. Cal. June 19, 2020), Dkt. No. 26-44 ("*Oberstein*").

Over the years, numerous courts—including this Court—have upheld the Terms' arbitration agreement, and its delegation clause, as valid and enforceable.[2] Most recently, in *Oberstein*—a putative class action brought by Plaintiffs' counsel here on behalf of different clients—the district court granted Live Nation's motion to compel arbitration, concluding that: (1) those clients had assented to the Terms by "completing the account creating process, signing in to an account, or completing a purchase"; (2) "the delegation clause clearly and unmistakably delegates

---

[2]   *See Oberstein*, 60 F.4th at 509; *Lee*, 817 F. App'x at 394-95; *Hansen v. Ticketmaster Ent., Inc.*, No. 20-cv-02685, 2020 WL 7319358, at *5 (N.D. Cal. Dec. 11, 2020); *Ajzenman v. Off. of the Comm'r of Baseball*, No. CV 20-3643, 2020 WL 6031899, at *4 (C.D. Cal. Sept. 14, 2020); *Nevarez v. Forty Niners Football Co.*, No. 16-CV-07013, 2017 WL 3492110, at *14-15 (N.D. Cal. Aug. 15, 2017); *Himber v. Live Nation Worldwide, Inc.*, No. 16-CV-5001, 2018 WL 2304770, at *5 (E.D.N.Y. May 21, 2018).

arbitrability questions to the arbitrator"; and (3) the delegation clause was not unconscionable. No. CV 20-3888, 2021 WL 4772885, at *6, 8-9 (C.D. Cal. Sept. 20, 2021). On appeal, this Court affirmed the first holding, while the plaintiffs conceded the validity of the delegation clause. *See Oberstein*, 60 F.4th at 509-10 & n.1.

### B. The Threat To Fair Adjudication Posed By Mass Arbitration Filings Designed To Extract Blackmail Settlements

During the *Oberstein* litigation, Plaintiffs' counsel pioneered a tactic designed to undermine the viability of arbitration as a dispute-resolution mechanism: mass arbitration filings. *See* J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283, 1323 (2022); Andrew J. Pincus et al., *Mass Arbitration Shakedown: Coercing Unjustified Settlements* at 18-19, U.S. Chamber of Commerce Inst. for Legal Reform (Feb. 2023), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf. Starting in 2018, Keller Postman LLC (formerly Keller Lenkner) began filing (or threatening to file) thousands—sometimes tens of thousands—of essentially identical arbitration claims against single defendants. *See* Pincus, *supra*, at 2-3, 18, 24.

Under traditional arrangements, arbitration defendants bear the costs of upfront filing fees, often due within 30 days. Mass filings thus immediately impose "astounding" costs that "can spell financial catastrophe." Glover, *supra*, 1345, 1349. In 2018, for example, Keller filed over 12,500 arbitration claims against Uber,

triggering over $18 million in immediate filing-fee obligations (in addition to other arbitrator fees Uber would have had to pay later). *See* Opp. to Mot. Compel Arbitration 1-3, *Abadilla v. Uber Techs., Inc.*, No. 18-cv-07343-EMC (N.D. Cal. Jan. 14, 2019), Dkt. No. 53.

The purpose of Keller's tactic is to leverage traditional fee structures to impose overwhelming "*in terrorem* settlement pressure." Glover, *supra*, at 1349-50. Immediate obligations to pay millions in filing fees forces companies to forego defending themselves on the merits—even when claims are meritless. And if the case gets beyond the filing-fee stage, proceedings "[can]not realistically move forward" expeditiously in arbitral systems ill-equipped for a flood of filings. *Id.* at 1363. Arbitration providers have "a limited number of available arbitrators," and it would take an army of lawyers "to litigate tens of thousands of arbitrations simultaneously." Pincus*, supra*, at 43.

New Era ADR has attempted to address these problems. Developed with the mission of "introducing efficiency and expediency" to arbitration, New Era's online platform and streamlined rules allow "litigants to focus on the core substance of their disputes" instead of getting "bogged down by unproductive and unnecessary delay." 2-ER-75 (¶4). New Era's founders were also concerned about the increasing trend of mass arbitration filings "not being resolved on their merits." 2-ER-76 (¶7).

New Era addressed mass arbitration filings in two ways. First, it offered a subscription option, under which a company pays an annual subscription fee, and the parties pay a reduced per-case filing fee. 2-ER-165–67 (Rule 1(a)(iii), (b), (e)). By lowering the marginal cost of arbitration, the subscription option alleviates the threat of blackmail settlements premised on prohibitive filing fees.[3]

New Era also introduced special rules for adjudicating large numbers of virtually identical cases. These rules were modeled after the bellwether approach used in federal multi-district litigation ("MDL"), where "civil actions involving one or more common questions of fact" can be "transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407; *see* 2-ER-90 (Rule 6(b)(ii)). MDLs often involve "bellwether" trials for a limited number of cases, in hopes of encouraging a global settlement by informing parties "on the value of the cases." *In re Chevron, U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).

The July 2021 version of New Era's rules provides that MDL-like procedures apply when five or more cases raise common factual and legal issues—and recognize that, in practice, such mass filings are "filed by the same law firm or group of law firms." 2-ER-178 (Rule 2(x)(ii)(1)). Three bellwether cases (more, if needed) are

---

[3] All references to New Era's rules, unless otherwise specified, refer to the version in effect on July 2, 2021. *See* 2-ER-163–93. As noted below, the rules have been modified or clarified in various ways that do not change the fundamental points at issue in this appeal. 2-ER-35; *infra* at 49-50.

selected—one by the claimants, another by the defendants, and the third through a process determined by the arbitrator. 2-ER-191–92 (Rule 6(b)(iii)(3)(b)). The bellwethers are then arbitrated to conclusion. 2-ER-191–93 (Rule 6(b)(iii)(3)-(4)). With the benefit of those results, the parties participate in a mandatory, non-binding settlement conference, and if no global settlement is reached (or if individual claimants opt out), the arbitrator adjudicates the remaining cases. *Id.* (Rule 6(b)(iii)(4)).

To promote fair and consistent results, New Era's July 2021 rules allow the arbitrator to apply certain determinations from the bellwethers as "Precedent" in the remaining cases. 2-ER-178 (Rule 2(y)). Under those rules, the arbitrator "*may* apply" the legal and factual determinations reached in the bellwether cases "in the same manner and with the same force and effect" in other cases, *id.* (Rule 2(y)(i)) (emphasis added), "provided the parties present no compelling reason to depart from" those determinations, 2-ER-79–80 (¶14); *see* 2-ER-192–93 (Rule 6(b)(iii)(4)-(5)). Every claimant is guaranteed an "opportunity to present individualized arguments," and the arbitrator must resolve "individualized issues." 2-ER-79 (¶12); 2-ER-193 (Rule 6(b)(iii)(6)(a)). For efficiency, New Era's rules also include default limitations on complaints, evidentiary submissions, argument length, and discovery. 2-ER-173–74, 188–93 (Rules 2(o), 6(a)(vii), (x), 6(b)). The arbitrator, however,

always retains "broad discretion to depart from the Rules where warranted." 2-ER-81–82 (¶20).

New Era ensures that its arbitrators are experienced and impartial. A New Era arbitrator must be a member of the National Academy of Distinguished Neutrals, an attorney with at least 15 years of experience, or have a high level of expertise in certain practice areas. 2-ER-75–76 (¶6). Many New Era arbitrators also work for other arbitration providers like AAA and JAMS. 2-ER-76 (¶6). Under New Era's rules, the arbitrator is chosen using a rank-and-strike method similar to that used by JAMS. 2-ER-171, 189 (Rules 2(j)(iii), 6(a)(vi)(1)); *see* 2-ER-92 (JAMS procedure).

### C.   Live Nation's Designation Of New Era As Its Arbitration Provider

Despite the proliferation of mass arbitration filings, JAMS failed to update its rules and procedures to make it practical to adjudicate thousands of simultaneous (and largely identical) claims on the merits. *See* Pincus, *supra*, at 3, 42-43. So on July 2, 2021—six months before this litigation began—Live Nation updated its Terms to designate New Era, instead of JAMS, as its arbitration provider. 2-ER-196 (¶1).

Live Nation's updated Terms, like those upheld in *Oberstein*, require the parties to arbitrate "any dispute, claim, or controversy" relating to the Terms, use of the website, or ticket purchases. 2-ER-123 (capitalization normalized). And like before, they provide that "[t]he arbitrator"—not any court—has the "exclusive

authority to the extent permitted by law" to resolve disputes relating to "the interpretation, applicability, enforceability, or formation" of the arbitration agreement. 2-ER-124. The major difference is the replacement of JAMS with New Era as the primary arbitration provider. *Id.* The other relevant change is the provision of a right for either party to appeal a grant of injunctive relief to a panel of JAMS arbitrators. *Id.*

The revised Terms also provide for backup arbitration providers. Specifically, if "New ERA ADR is unable to conduct the arbitration for any reason, the arbitration will be conducted by FairClaims," a different provider. *Id.* And if FairClaims "is unable to conduct the arbitration for any reason," the parties will select a mutually agreeable arbitrator. *Id.* The Terms also include a global severability clause providing that "if any part of the Terms is determined to be illegal, invalid, or unenforceable," then (a) "that part shall nevertheless be enforced to the extent permissible in order to effect the intent of the Terms" and (b) "the remaining parts shall be deemed valid and enforceable." 2-ER-125.

Live Nation gave customers clear notice of the revised Terms and required them to affirmatively confirm their assent. For example, to sign in to Live Nation's websites, a customer was required to click a "Sign in" button that appeared immediately under a notice that said, "By continuing past this page, you agree to the **Terms of Use**." 2-ER-106, 111 (¶¶7, 18). The words "Terms of Use" appeared in

bold and different-colored text, making clear they are hyperlinked to the revised Terms. *Id.*



Additionally, a customer making a purchase had to check a box acknowledging that "I have read and agree to the current **Terms of Use.**" 2-ER-107–08, 112–13 (¶¶10, 21); *see* 2-ER-109, 113–14 (¶¶11-12, 22-23). Again, "Terms of Use" appeared in different-colored text, hyperlinked to the revised Terms. 2-ER-107–08 (¶¶10, 21).



The very first page of the Terms contained a "**NOTICE REGARDING ARBITRATION AND CLASS ACTION WAIVER**" in large, bold typeface. 2-ER-117. The notice itself contained a short, simple explanation of the arbitration agreement and a hyperlink to the agreement. *Id.*

### D. This Lawsuit And The District Court's Refusal To Enforce The Parties' Arbitration Agreement

Before July 2021, Plaintiffs Scott Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts purchased tickets on Live Nation's websites dozens of times, assenting to various versions of the Terms over many years. 2-ER-153–159 (¶¶5, 12, 20, 27). Since July 2, 2021, they have also affirmatively assented to the revised Terms (including the updated arbitration agreement), each making between four and twelve separate ticket purchases on Live Nation's websites. 2-ER-153–60 (¶¶6, 13, 21, 28).

Plaintiffs here are represented by Keller Postman and Quinn Emanuel Urquhart & Sullivan LLP, plaintiffs' counsel in *Oberstein*. In January 2022—shortly after *Oberstein* was sent to arbitration, and six months after Live Nation designated New Era as the primary arbitration provider—Plaintiffs filed this lawsuit, making identical antitrust allegations as the *Oberstein* complaint. 2-ER-198–268. Plaintiffs here, however, claimed that the switch from JAMS to New Era transformed an enforceable arbitration agreement into one "permeated with unconscionability." 2-ER-152–53 (¶¶1-5). Plaintiffs argued that the switch was

procedurally unconscionable because it was part of a contract of adhesion and this "abrupt" change was surprising and oppressive. Dkt. No. 135 at 1, 5-9. Plaintiffs further argued that the amended arbitration agreement was substantively unconscionable for using an arbitrator-selection procedure that violates the California Arbitration Act ("CAA"), granting one-sided appeal rights, lacking certain procedural protections, and permitting inadequate briefing and discovery. *Id.* at 9-19.

Live Nation countered that Plaintiffs' attacks were not focused on the delegation clause, which was virtually identical to the one upheld in *Oberstein*—and that, in any event, there was nothing procedurally or substantively unconscionable about the change from JAMS to New Era. Dkt. No. 30-1 at 13-24. Live Nation also emphasized that Plaintiffs were not attacking the fairness of the backup provision requiring arbitration by FairClaims or a mutually agreeable arbitrator. *Id.* at 24-25. Collin Williams—New Era's co-founder and co-drafter of New Era's rules— submitted a declaration clarifying New Era's understanding of several aspects of its rules, including the discretionary nature of "Precedent." 2-ER-73–82. In July 2023, New Era also published updated rules that made this and other aspects of the rules even more clear. 2-ER-38–72.

On August 10, 2023, the district court denied Live Nation's motion to compel arbitration. 1-ER-2. The court noted that under *Rent-A-Center*, its

"unconscionability inquiry" had to be "limited to the delegation clause instead of the arbitration clause as a whole," because the Terms contain a delegation clause that "clearly and unmistakably delegates issues of enforceability to the arbitrator." 1-ER-10. But instead of focusing on the delegation clause, the district court proceeded to analyze the entire arbitration agreement.

The district court found an "extreme amount of procedural unconscionability" with the July 2021 switch to New Era. 1-ER-11. In its view, Live Nation made the change "(1) to bring about a significant change in the parties' agreement (from individual, bilateral arbitration to mass arbitration); (2) unilaterally; (3) in the midst of ongoing litigation [in *Oberstein*]," which was filed six months later; "(4) to be applied retroactively to already accrued claims; (5) without giving any notice to existing customers about this major change; and (6) while burying the true nature of this change in New Era's difficult-to-parse Rules." 1-ER-11–12.

The district court also concluded that the arbitration agreement "contain[s] several elements supporting a finding of substantive unconscionability." 1-ER-29. First, the court held that New Era's arbitrator-selection process violated certain CAA provisions not preempted by the FAA. 1-ER-26–27. Second, the court held that "the exclusive right to appeal only *grants* of injunctive relief" impermissibly favored Live Nation. 1-ER-27–28. Third, despite acknowledging that New Era's rules arguably made application of bellwether determinations to other cases discretionary,

the court perceived a lack of "guidance as to how the neutral is to exercise [its] discretion" that created "*potential* due process concerns." 1-ER-22–23 (emphasis altered). Fourth, although New Era arbitrators have "discretion" to go beyond default "discovery, page, and record limitations," the court deemed those limitations substantively unconscionable based on its view that "'a reasonable arbitrator would feel constrained'" in expanding those limits "'to the extent necessary to vindicate [Plaintiffs'] statutory rights'" under the Sherman Act. 1-ER-24–25 (alteration in original).

"Any one of these elements," the district court conceded, "might not suffice to invalidate the agreement" on its own. 1-ER-29–30. Only "when viewed together," and only "alongside [an] extremely high degree of procedural unconscionability," could they render the agreement unenforceable. 1-ER-30.

Almost as an afterthought, the court also asserted that these purported problems were "present with respect to the delegation clause specifically." 1-ER-29. But the sole support for that assertion came in a short, citation-less footnote mentioning only (1) the appeal-of-injunctions issue, (2) the selection of the arbitrator, and (3) the use of so-called "precedent." 1-ER-29–30 n.21.

After finding the selection of New Era unconscionable, the district court declined to "sever the offending provisions," concluding "that unconscionability permeates the arbitration clause." 1-ER-31. And it refused to compel arbitration

before FairClaims because "the parties have not briefed" whether that "would alleviate the Court's concerns" about arbitration. *Id.* The Court did not explain how the *absence* of any evidence or argument suggesting that using FairClaims would be unconscionable could support an unconscionability finding. Nor did it address the parties' express agreement to use another "mutually select[ed]" arbitrator if both New Era and FairClaims were unavailable.

## SUMMARY OF ARGUMENT

The parties unambiguously delegated to New Era or an alternative arbitrator the authority to decide whether their agreement to arbitrate this antitrust case is enforceable, just as they previously had done with JAMS. Under *Rent-A-Center*, the only question properly before the district court was whether that delegation clause was rendered unenforceable simply because the arbitration provider changed. The delegation clause is *not* unconscionable, and this Court should enforce it.

The delegation clause is not procedurally unconscionable to any meaningful degree. There was no oppression: Plaintiffs were not manipulated, lied to, or forced into that agreement. They voluntarily accepted the delegation clause while buying tickets for "nonessential recreational activit[ies]." *Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 650 (Ct. App. 2007). Nor was there any surprise: Plaintiffs had validly agreed *for years* that an arbitrator would decide threshold enforceability questions. All that changed was the designated arbitration

provider—from JAMS to New Era (or an alternative). That modest alteration was not "hidden within a prolix printed form." *Lane v. Francis Capital Mgmt. LLC*, 168 Cal. Rptr. 3d 800, 810 (Ct. App. 2014). The revised Terms, including the delegation to New Era, were clearly and conspicuously presented to Plaintiffs, and they affirmatively assented to them. The district court's reasons for finding "extreme" procedural unconscionability fail to focus on the delegation clause and do not withstand scrutiny even on their own terms.

The delegation clause also was not substantively unconscionable—i.e., "so one-sided as to shock the conscience." *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1107 (9th Cir. 2003). New Era's industry-standard procedures for selecting an arbitrator must be enforced, as the FAA clearly preempts contrary state-law provisions in the CAA. Giving both parties the right to appeal only grants of injunctive relief (but not denials) is wholly irrelevant to the delegation clause—and, in any event, an arrangement expressly approved in *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 753 (Cal. 2015). Fairly read, New Era's rules make application of bellwether determinations in other cases fully discretionary; the mere possibility that an arbitrator might abuse that discretion cannot support unconscionability. Nor do default limits on things like briefing length and discovery render *the delegation clause* substantively unconscionable. The district court's contrary conclusion

improperly analyzed the procedures for deciding Plaintiffs' antitrust claims (rather than the delegation clause) and misunderstood both the FAA and California law.

Finally, even if the delegation *to New Era* were unenforceable, that would mean only that *New Era* could not arbitrate threshold enforceability issues. The parties agreed that a different arbitration provider—either FairClaims or a mutually agreeable alternative—would conduct the arbitration if New Era "is unable to conduct the arbitration for any reason." 2-ER-124. That express agreement must be respected, particularly given the "strong legislative and judicial preference" for "sever[ing] the offending term and enforc[ing] the balance of the agreement." *Roman v. Superior Court*, 92 Cal. Rptr. 3d 153, 166 (Ct. App. 2009). The district court abused its discretion in concluding otherwise. There was no defensible basis to conclude that the "central purpose" of the delegation clause is "so tainted with illegality that there is no lawful object of the contract to enforce." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017). And regardless, even if the entire agreement were thrown out, this case would still have to be arbitrated before JAMS, not litigated in court, as mandated by the prior version of the agreement.

## STANDARD OF REVIEW

Denial of a motion to compel arbitration is reviewed de novo. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). Refusal to sever unconscionable portions of an arbitration agreement is reviewed for abuse of discretion. *Lim v.*

*TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Poublon*, 846 F.3d at 1259.

## ARGUMENT

The core question in this case is who gets to decide whether the parties' agreement to arbitrate this antitrust case is enforceable—the district court, New Era, or a different arbitrator. The parties' contract dictates the answer: It indisputably delegates that decision to New Era in the first instance, or to FairClaims or a different arbitrator if New Era cannot conduct the arbitration. By refusing to enforce the delegation clause, the district court violated the FAA and California law, while nullifying the parties' unmistakable intent to arbitrate their disputes.

## I. DELEGATION CLAUSES ARE ENFORCEABLE EXCEPT IN EXTRAORDINARY CIRCUMSTANCES

By default, threshold questions about the enforceability of an arbitration agreement are "for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). But the Supreme Court has held that a delegation clause—"an agreement to arbitrate threshold issues"—is itself a separate and enforceable arbitration agreement under the FAA. *Rent-A-Ctr., West, Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010). Therefore, if parties "clearly and unmistakably" delegate questions of enforceability to an arbitrator, a court must honor that agreement. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In such cases, the only

question for the court is "whether the particular agreement to *delegate* arbitrability—the Delegation Provision—is itself unconscionable." *Id.* at 1132. If not, the "court possesses no power to decide" whether the arbitration agreement is otherwise enforceable and must leave that threshold "arbitrability issue" for the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Under *Rent-A-Center*, efforts to invalidate a delegation clause must "challenge[] the delegation provision specifically," not the arbitration agreement in its totality. 561 U.S. at 72. That is, unless the delegation clause *itself* is unconscionable, the court must enforce it, while "leaving any challenge to the validity of the [arbitration agreement] as a whole for the arbitrator." *Id.*

Here, there is no dispute that the parties "clearly and unmistakably" delegated all threshold questions—including enforceability—to New Era (or alternatively to FairClaims or a mutually agreeable arbitrator). The Terms state that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority" to "resolve all disputes" between the parties "arising out of or relating to the interpretation, applicability, enforceability, or formation of [the arbitration agreement]." 2-ER-124. As the district court recognized in *Oberstein*, "[m]ultiple" courts "have looked at th[is] exact same language" and concluded that "it satisfies the 'clear and unmistakable' standard." No. CV 20-3888, 2021 WL 4772885, at *7 (C.D. Cal. Sept. 20, 2021) (listing cases); *see Mohamed v. Uber Techs., Inc.*, 848

22

F.3d 1201, 1208-09 (9th Cir. 2016). Plaintiffs have never argued otherwise, and the district court reiterated that correct determination here. 1-ER-10.

Accordingly, the only question properly before the district court was whether the delegation clause—as opposed to the procedures for resolving the underlying antitrust claims—is unenforceable. That is also the only question before this Court.

## II. THE PARTIES VALIDLY DELEGATED TO NEW ERA THE AUTHORITY TO RESOLVE THRESHOLD ARBITRABILITY DISPUTES

Under California law, a delegation clause—like any contract—cannot be found unconscionable without *both* procedural *and* substantive unconscionability. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021). But these two types of unconscionability "need not be present in the same degree." *Id.* Rather, "a sliding scale exists such that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required'"—and "'vice versa.'" *Id.* Under this framework, a "standardized contract"—even one "imposed and drafted by the party of superior bargaining strength"—"will be enforceable unless the degree of substantive unconscionability is high." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017).

Here, the district court concluded that the parties' arbitration agreement (1) "is extremely procedurally unconscionable" and (2) "contain[s] several elements" that "standing alone[] might *not* suffice" for substantive unconscionability, but were

23

purportedly sufficient to invalidate the agreement "alongside the extremely high degree of procedural unconscionability." 1-ER-16, 29–30 (emphasis added). The court's analysis was deeply flawed. The parties' agreement is not unconscionable, and it should now be enforced.

## A.     The Delegation To New Era Is Not Procedurally Unconscionable

Procedural unconscionability "addresses the circumstances of contract negotiation and formation." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 690 (Cal. 2019); *see Lim*, 8 F.4th at 1000. Live Nation's delegation to New Era was no more procedurally unconscionable than commonly enforced contracts of adhesion—i.e., minimally procedurally unconscionable—and in fact even less so. The district court's conclusion that the agreement "evinces" an "extreme" amount of procedural unconscionability "far above and beyond a run-of-the-mill contract-of-adhesion case" has no basis in California law. 1-ER-11.

### 1.     The New Era Delegation Was Part Of A Routine Contract Of Adhesion

Procedural unconscionability "focus[es]" on the elements of "oppression or surprise." *OTO*, 447 P.3d at 690. Oppression occurs "when a contract involves lack of negotiation and meaningful choice." *Id.* Surprise occurs when "the allegedly unconscionable provision is hidden within a prolix printed form." *Id.*

a. Live Nation's revised Terms delegating threshold arbitrability disputes to New Era was not oppressive. Plaintiffs were not "lied to, placed under duress, or

otherwise manipulated into signing the [delegation clause]." *Poublon*, 846 F.3d at 1261 n.2 (quoting *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12 (Cal. 2016)). On the contrary, Plaintiffs agreed to the clause in a procedurally fair and appropriate manner.

Even before the switch to New Era, Plaintiffs had all affirmatively assented to a virtually identical delegation clause. During that period, Plaintiffs voluntarily signed into their accounts and made dozens of purchases. 2-ER-153–59 (¶¶5, 12, 20, 27). Each time, they were notified of and assented to the Terms, including the delegation clause and the possibility of future changes to the Terms. 2-ER-111–14 (¶¶18-24).

Plaintiffs also freely agreed to the delegation to New Era by making additional purchases after the new Terms were published on July 2, 2021. For each purchase, they signed into their accounts, which required clicking a "Sign in" button next to a notice that says, "By continuing past this page, you agree to the **Terms of Use**." 2-ER-106–07, 111 (¶¶7, 18). When finalizing purchases, they checked a box acknowledging that "I have read and agree to the current **Terms of Use**." 2-ER-107–08, 112–13 (¶¶10, 21); *see* 2-ER-109, 113–14 (¶¶11-12, 22-23).

No one forced Plaintiffs to agree—repeatedly—to the delegation clause. They used Live Nation's websites to buy tickets for "nonessential recreational activit[ies]," which they could have purchased through other channels (e.g., directly

from venues) or "forgone" entirely "if they disliked the requirement that they" delegate enforceability questions to New Era. *Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 650 (Ct. App. 2007); *accord Olsen v. Breeze, Inc.*, 55 Cal. Rptr. 2d 818, 824 (Ct. App. 1996); *Price v. Apple, Inc.*, No. 21-cv-02846, 2022 WL 1032472, at *3 (N.D. Cal. Apr. 6, 2022). Someone wanting to attend a Metallica concert faces nothing like the overwhelming "economic pressure" that applies to, for example, "employees [who] are required to accept an arbitration agreement in order to keep their job." *OTO*, 447 P.3d at 691 (emphasis omitted). Much as heavy metal fans might enjoy the convenience of using Live Nation's websites, they "always ha[ve] the option" of buying tickets elsewhere—or "simply forgoing" ticket purchases altogether. *Belton*, 60 Cal. Rptr. 3d at 650. There was no oppression.

b. There was no surprise either. The "allegedly unconscionable provision"— the delegation of threshold questions to New Era—was not "hidden within a prolix printed form." *Lane v. Francis Cap. Mgmt. LLC*, 168 Cal. Rptr. 3d 800, 810 (Ct. App. 2014). It was "clearly delineated in the [Terms]." *Baltazar*, 367 P.3d at 13. And there was an obvious "hyperlink[]" to the Terms on the "checkout and [sign-in] pages" of Live Nation's websites. *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017).

Both before and after the July 2021 update, consumers who signed into their Live Nation accounts or made purchases were provided with notice of the revised

Terms, including through a bolded, different-colored hyperlink. 2-ER-111–14 (¶¶18-24). The very first page of the Terms announced the existence of an arbitration agreement with the large, bold, all-caps heading: "**NOTICE REGARDING ARBITRATION AND CLASS ACTION WAIVER**." 2-ER-117. The text underneath made clear that the "[t]erms contain an arbitration agreement" and succinctly summarized what was in that agreement. *Id.* It noted that the full arbitration clause was reproduced in Section 17 of the same document. *Id.* Users could thus simply scroll down or—even easier—click a link to proceed to the arbitration agreement. *Id.*

The arbitration agreement begins with the large, bold heading: **"Mandatory Arbitration Agreement and Class Action Waiver."** 2-ER-123. The agreement consists of (1) a single, short paragraph in large, bold, all-caps typeface describing the essence of the agreement in simple language, followed by (2) a number of relatively short subsections introduced by bold headings and consisting of short paragraphs and/or bullets. 2-ER-123–25. The delegation clause is one of those subsections, captioned by a bold heading—"**Delegation; Interpretation**"—and consisting of only five lines of text. 2-ER-124.

Another subsection—"**Arbitration Proceedings and Rules**"—plainly and conspicuously identifies the "arbitrator" referenced in the delegation clause. 2-ER-124. The first line says, "Any arbitration will be administered by New Era

ADR" and provides a hyperlink to New Era's rules and procedures, *id.*, which clearly announce "Mass Arbitration" procedures, 2-ER-164, 190–93. "In the event that New Era ADR is unable to conduct the arbitration for any reason," the subsection further provides that "the arbitration will be conducted by FairClaims pursuant to its FastTrack Rules & Procedures"—and supplies a link to FairClaims' rules. 2-ER-124. The very next sentence states that a mutually agreeable arbitrator will hear the case if FairClaims "is unable to conduct the arbitration for any reason." *Id.*

c. It is true that the delegation clause is part of a contract of adhesion—i.e., a contract "written on a preprinted form and offered on a take-it-or-leave it basis." *Baltazar*, 367 P.3d at 12. But that supplies only a "minimal" level of procedural unconscionability. *Serafin v. Balco Properties, LLC*, 185 Cal. Rptr. 3d 151, 162 (Ct. App. 2015). After all, "[o]rdinary contracts of adhesion" are "indispensable facts of modern life that are generally enforced" by California courts. *Baltazar*, 367 P.3d at 14. Thus, a regular contract of adhesion is enforceable "unless the degree of substantive unconscionability is high." *Poublon*, 846 F.3d at 1263.

Here, there is "no other indication of oppression or surprise," so the delegation to New Era had—at very most—the minimal level of procedural unconscionability that comes with any run-of-the-mill contract of adhesion. Indeed, it had even less, as the delegation clause pertained to nonessential recreation activities, and the Terms clearly and conspicuously advised consumers of the clause's existence and effect.

### 2. The District Court's Finding Of "Extreme" Procedural Unconscionability Is Deeply Flawed

The cornerstone of the district court's refusal to enforce the parties' agreement was its view that "the arbitration agreement"—and ostensibly, "the delegation clause contained therein"—"is procedurally unconscionable to an extreme degree." 1-ER-11. That is clearly wrong.

a. For starters, the district court ignored *Rent-A-Center*'s command to focus on "the delegation provision specifically." 561 U.S. at 72. What drew the district court's ire was the purportedly "significant change" from "individual, bilateral arbitration to mass arbitration" brought about by enlisting New Era and its procedures addressing mass arbitration filings. 1-ER-11–12. Nowhere did the district court explain how that shift rendered the Terms' longstanding delegation clause oppressive or surprising. The Terms have delegated enforceability questions to the arbitrator for over 12 years. There was nothing novel about that arrangement; all that changed was the arbitration provider. So while the court paid lip service to *Rent-A-Center*, its actual analysis failed to assess procedural unconscionability "*as applied* to the delegation provision." 561 U.S. at 74.

b. The problems with the district court's reasoning run deeper than that threshold error. The court began its procedural unconscionability analysis by asserting that the arbitration agreement is a contract of adhesion, meaning that "the elements of oppression and surprise" are "satisfied on these grounds alone."

29

1-ER-11.  That is incorrect.  As explained, a contract of adhesion reflects *at most* a minimal level of procedural unconscionability, such that the contract is enforceable absent a high degree of substantive unconscionability—which even the district court acknowledged was not present here.  *Supra* at 17; *infra* at 40; *see* 1-ER-30.

The district court also neglected a key lesson from its own decision in *Oberstein*.  Like the plaintiffs there, Plaintiffs here "could choose not to attend these specific recreational events or purchase tickets on the secondary market," which cuts *against* procedural unconscionability.  *Oberstein*, 2021 WL 4772885, at *9.  The court did not even try to reconcile its contrary decision in this case, instead dismissing this critical point in a conclusory footnote.  1-ER-11 n.7.  And the only authority the court cited—*Lhotka v. Geographic Expeditions, Inc.*—*confirms* that "the nonessential nature of recreational activities is a factor to be taken into account" for procedural unconscionability purposes.  104 Cal. Rptr. 3d 844, 849 (Ct. App. 2010).

c.  The rest of the district court's reasoning cannot support its conclusion of extreme procedural unconscionability either.  In distinguishing this case from "a run-of-the-mill contract-of-adhesion case," the court asserted that adding New Era was done "(1) to bring about a significant change in the parties' agreement (from individual, bilateral arbitration to mass arbitration); (2) unilaterally; (3) in the midst of ongoing litigation; (4) to be applied retroactively to already accrued claims;

(5) without giving any notice to existing customers about this major change; and (6) while burying the true nature of this change in New Era's difficult-to-parse Rules." 1-ER-11–12. None of these factors withstands scrutiny.

**"Significant Change" Without "Notice" (Factors 1, 5)**. Contrary to the district court's assertion, nothing in California law requires that any "significant change" to a company's terms be accompanied by specific "notice to customers" underscoring the particulars of that change. 1-ER-12. The district court cited no authority for that proposition. And it is inaccurate: California law does not require a "website host seeking to bind a consumer or user to new terms of use to publish a redline version of the terms any time an amendment is made." *Shen v. United Parcel Serv.*, No. 21-cv-08446, 2022 WL 17886012, at *4 (C.D. Cal. Nov. 21, 2022).

In fact, no specific notice of changes is needed to switch from court to arbitration. *See, e.g.*, *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019) (observing that "California law" has no "special rule" requiring that "an offeror of an adhesive consumer contract specifically highlight" an arbitration clause "to render the clause enforceable"). Consider *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020). There, "Ticketmaster's terms did not include an arbitration clause" when the plaintiff "first began using" Ticketmaster's "website." *Lee v. Ticketmaster L.L.C.*, No. 18-cv-05987, 2019 WL 9096442 at *1 (N.D. Cal. Apr. 1, 2019). "Ticketmaster did not notify users when the terms were amended" to add the initial version of the

arbitration clause at issue here, including the "delegation provision." *Id.* Even though that change required customers to arbitrate *for the very first time*, there was— "at most"—a "'minimal degree of procedural unconscionability.'" *Id.* The district court accordingly rejected the *Lee* plaintiff's call to deem "the delegation provision unenforceable." *Id.* This Court affirmed without oral argument. *Lee*, 817 F. App'x at 395 & n.*. If no specific notice is required to transfer disputes from court to arbitration, then surely no specific notice is required merely to switch arbitration providers, even if their rules and procedures differ.

At any rate, the district court misunderstood the magnitude of the change here. The court claimed that New Era's bellwether procedures transform arbitration from "individual, bilateral arbitration" into a representative—and therefore fundamentally different—type of dispute-resolution mechanism. 1-ER-11. That is incorrect: Each claim in a mass arbitration filing retains its individual character. Unlike determinations on common issues in a class action, which bind all class members, such determinations in a bellwether case do *not* bind everyone else. Although New Era's bellwether rules allow for the limited use of "Precedent," that use is discretionary, and any party remains free to present—in his individual case— "compelling reason to depart from" it. 2-ER-79–80 (¶14); *infra* at 47-50.

The district court appeared to ground its "significant change" analysis in a handful of California decisions connecting the unconscionability inquiry with

whether a contract revision "fall[s] within the reasonable expectations of the weaker . . . party," *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 172 (Cal. 1981); *see* 1-ER-12. But those cases do not save the district court's analysis. The district court could not "double count" a purported "problem of substantive unconscionability" with New Era's mass arbitration procedures as *also* posing a procedural unconscionability issue. *Fuentes v. Empire Nissan, Inc.*, 307 Cal. Rptr. 3d 512, 520 (Ct. App. 2023). And regardless, here it was foreseeable that Live Nation might respond to the proliferation of mass arbitration filings by selecting a new arbitrator capable of handling them. More fundamentally, though, "[n]otice" is an "extremely significant" factor "in assessing the reasonable expectations" of the weaker party. *Graham*, 623 P.2d at 173 n.18; *cf. Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 805 (Ct. App. 2005) (noting that the "reasonable expectations" inquiry "should lead to the same result" as the "hidden within a prolix form" inquiry. (citations omitted)). The revised Terms—including the delegation to New Era— were clearly and conspicuously presented to Plaintiffs.

**New Era's "Difficult-To-Parse" Rules (Factor 6)**. The district court similarly erred in concluding that New Era's supposedly "novel mass arbitration procedure" was "hidden" from customers. 1-ER-16. The court adopted that view because the amended arbitration agreement itself "makes no mention" of New Era's

bellwether procedures in particular, so customers "would need to parse through New Era's separately posted rules." *Id.*

The district court was mistaken. New Era's bellwether procedures for handling mass arbitration filings were not "hidden in a prolix printed form." *Patterson v. ITT Consumer Financial Corp.*, 18 Cal. Rptr. 2d 563, 565 (Ct. App. 1993). The arbitration agreement was clearly and conspicuously announced on the very first page of the Terms, and reproduced in full just a few pages down. 2-ER-117. The arbitration agreement was broken into small, clearly identified paragraphs, one of which—titled **"Arbitration Proceedings and Rules"**—stated that "[a]ny arbitration will be administered by New Era ADR in accordance with their Virtual Expedited Arbitration Rules and Procedures and General Rules and Procedures"—and provided a clear hyperlink to New Era's rules. 2-ER-123.

Nor did New Era's rules hide the existence of so-called "mass arbitration" proceedings. From the start, their table of contents has made clear that there are two types of arbitration: (1) "Standard Arbitration" and (2) "Expedited/Mass Arbitrations":

Arbitration ............................................................. 4
  In General .......................................................... 4
  Standard Arbitrations ......................................... 5
  Expedited/Mass Arbitrations .............................. 5

2-ER-163.  New Era's Rules also make clear that the "Mass Arbitration Rules and Procedures" are a subset of the "Virtual Expedited Arbitration Rules and Procedures"—which the Terms explicitly identify as applicable:

| | |
|---|---|
| Virtual Expedited Arbitration Rules and Procedures | 25 |
|     Process and Rules at Each Stage | 25 |
|     Mass Arbitration Rules and Procedures | 28 |

2-ER-164.  Consumers would have understood that the "Mass Arbitration Rules and Procedures" could apply in an arbitration against Live Nation.

The core features of the mass arbitration procedures are also clear and conspicuous in the July 2021 version of New Era's rules—including that they apply when more than five arbitration claims present common issues, and that they involve bellwether cases, lead decisions, and precedent.  2-ER-190–93 (Rule 6(b)).  So too were the definitions of key terms such as "Precedent" and "Common Issues of Law and Fact."  2-ER-177–78 (Rules 2(x), (y)).  In other words, all relevant characteristics of the challenged procedures were easily accessible and clear to anyone who bothered to look.

The district court was also wrong to emphasize that the parties had "struggled" to agree on how to interpret New Era's rules.  1-ER-16.  Interpretive disagreements over contractual details have nothing to do with procedural unconscionability.  Under California law, mere "ambiguity" in contractual provisions does not constitute "'surprise'" where—as here—provisions are "in normal text," readily

"available" for review, and "not hidden or incomprehensible." *Ponkey v. LLR, Inc.*, No. 22-55532, 2023 WL 4863296, at *1 (9th Cir. July 31, 2023). A different rule would be untenable, as few contracts (or rules of procedure) are drafted with perfect precision. And besides, uncertainty about precisely how New Era's bellwether procedures function scarcely supports the district court's assertion that customers could not understand that "they were agreeing" to a "mass arbitration procedure" more generally. 1-ER-15–16.

**"In The Midst Of Ongoing Litigation" (Factor 3).** The district court made no attempt to explain why it matters that New Era was designated as the default arbitration provider "in the midst of ongoing litigation." 1-ER-12. Apart from including that assertion in its six-item list of procedural unconscionability concerns, the district court's opinion does not elaborate on the point *anywhere.* And it has no legal or factual basis. The Terms were not amended in the midst of *this* litigation. They were amended in July 2021, at the tail end of the *Oberstein* case—and six months before Plaintiffs filed this lawsuit. *Supra* at 5-6, 11. Plaintiffs were not parties to *Oberstein*, and there is no good reason why Plaintiffs' assent to changes during that case should suggest procedural unconscionability in this one.

**"Unilateral" Change (Factor 2).** The district court was also wrong to assert that the switch to New Era from JAMS constitutes "an unfair unilateral modification" of the arbitration agreement. 1-ER-15. The switch was not unilateral:

Plaintiffs repeatedly assented to the revised Terms, and the change was not binding until they did. *Compare supra* at 14, *with Cobb v. Ironwood Country Club*, 183 Cal. Rptr. 3d 282, 284 (Ct. App. 2015) (clause "allowing for future amendments to [club's] bylaws" was improperly "unilateral" because it provided that "members are automatically bound by whatever amendments the Club makes," "even after the members have resigned their membership" (emphasis omitted)); *Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273, 278 (Ct. App. 1998) (same where modification provision did not require any form of assent).

The district court tried to dodge this reality by asserting that the Terms state that customers will "agree" to amendments by "continuing to use" Live Nation's website. 2-ER-117; *see* 1-ER-13. But even if mere use is insufficient to manifest assent in California (unlike in other states where the Terms also apply), here Plaintiffs did much more. They affirmatively clicked buttons and checked boxes expressly assenting to Live Nation's current Terms. 2-ER-153–60 (¶¶6, 13, 21, 28). By taking those steps, Plaintiffs repeatedly and affirmatively agreed to delegate enforceability disputes to New Era. *Supra* at 12-14. Under California law, this was a mutual agreement, not a unilateral imposition.

**Application To Accrued Claims (Factor 4).** The district court also found procedural unconscionability in part because the revised Terms apply "irrespective of when th[e] dispute, claim, or controversy arose," 2-ER-123 (capitalization

normalized)—and therefore "appl[y] retroactively to already accrued claims," 1-ER-12. This too was mistaken. As an initial matter, even in the rare cases where California courts disapprove of retroactive application to accrued claims, it bears (if anything) on *substantive*, not procedural, unconscionability. *See, e.g.*, *Peng v. First Republic Bank*, 162 Cal. Rptr. 3d 545, 552-54 (Ct. App. 2013); *Platt, LLC v. OptumRx, Inc.*, No. A163061, 2023 WL 2507259, at *8 (Cal. Ct. App. Mar. 15, 2023). That is because retroactive application involves the effect of the contract's terms (substance), not the way in which the contract was negotiated and formed (procedure).

In any event, there was nothing problematic about applying the delegation to New Era to accrued claims. Courts "consistently" enforce "arbitration agreements retroactively where the agreements explicitly subsume prior agreements or facially apply to disputes arising prior to the agreement." *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953, 2017 WL 733096, at *8 (N.D. Cal. Feb. 24, 2017). What creates a problem is when one "party retains the unilateral, unrestricted right to terminate [or amend] the arbitration agreement," which renders the agreement "illusory." *Peleg v. Neiman Marcus Grp., Inc.*, 140 Cal. Rptr. 3d 38, 55 (Ct. App. 2012) (emphasis omitted). But as explained, the agreement here was not unilateral. *Supra* at 37-38. There is thus nothing procedurally unconscionable about having the delegation to New Era cover previously accrued claims.

For all these reasons, the delegation to New Era evinces no more than the minimal degree of procedural unconscionability found in any contract of adhesion—indeed, far less. The district court's contrary holding is mistaken.

### B. The Delegation To New Era Is Not Substantively Unconscionable

"Substantive unconscionability examines the fairness of a contract's terms." *Lim*, 8 F.4th at 1001 (quoting *OTO*, 447 P.3d at 692). But the doctrine "is concerned with terms that are 'unreasonably favorable to the more powerful party,' not just 'a simple old-fashioned bad bargain.'" *Id.* The "paramount consideration in assessing [substantive] unconscionability" is therefore the presence or absence of "mutuality." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280-81 (9th Cir. 2006). Only contractual provisions that are "so one-sided as to shock the conscience" qualify. *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1107 (9th Cir. 2003).

When assessing substantive unconscionability, courts must heed California law requiring them to resolve contractual ambiguities in ways that "make [the contract] lawful." Cal. Civ. Code § 1643. Along similar lines, the FAA directs this Court to resolve any "doubts" related to Plaintiffs' claimed "contract defense[]" in "favor of arbitration." *Poublon*, 846 F.3d at 1259.

Because the delegation clause here involved, at most, a minimal degree of procedural unconscionability, Plaintiffs had to show a high level of substantive unconscionability to render it unenforceable. *Supra* at 23-24, 28-39. No such

showing can be made here based on a mere switch in arbitration providers.  Even the district court acknowledged as much:  It apparently believed that the delegation clause would have been enforceable if not for the "extremely high degree of procedural unconscionability" it had (erroneously) found.  1-ER-29–30.

The district court found nothing substantively unconscionable on the face of Live Nation's longstanding delegation clause, which is virtually identical to the one upheld in *Oberstein*.  *Supra* at 6, 11-12.  Rather, the court cited five other "elements supporting a finding of substantive unconscionability."  1-ER-29.  Specifically, the court pointed to: (1) New Era's "arbitrator selection provisions" that do not comply with the CAA; (2) "the limited right of appeal" for grants, but not denials, of injunctive relief; (3) "the application of precedent from the bellwether decisions" and a "lack of corresponding procedural safeguards"; (4) default "procedural limitations," such as presumptive caps on complaints, briefs, and submitted documents; and (5) "the lack of a right to discovery."  1-ER-29.  But the court specifically identified only the first three elements as bearing on the delegation clause, as required by *Rent-A-Center*.  1-ER-29–30 n.21.  And it conceded that "[a]ny one these elements, standing alone, might not suffice to invalidate the agreement."  1-ER-29–30.  This analysis was flawed.  None of the procedures is substantively unconscionable as to the delegation clause specifically, or as to the agreement to arbitrate more generally.

### 1. New Era's Arbitrator-Selection Process Does Not Make The Delegation Clause Substantively Unconscionable

The district court's first error was holding that New Era's industry-standard procedures for selecting an arbitrator contributed to the substantive unconscionability of the delegation clause. The court held that those procedures violate CAA provisions giving parties a state-law "right to disqualify any arbitrator based on a mandated disclosure statement" that "may not be waived" by "private contract." 1-ER-26 (citing Cal. Civ. Proc. Code §§ 1281.9, 1281.91(b)(1)). That conclusion is indefensible: The FAA clearly preempts those CAA provisions. *See Modiano v. BMW of N. Am. LLC*, No. 21-cv-00040, 2021 WL 5750460, at *2 (S.D. Cal. June 29, 2021).

The FAA commands that a contractually agreed-upon "method of naming or appointing an arbitrator . . . *shall be followed*." 9 U.S.C. § 5 (emphasis added). And the FAA's broader directive that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," *id.* § 2, requires enforcement of such agreements, unless a "*generally applicable* contract defense[]" applies, *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (emphasis added). The CAA arbitrator-selection rules cited by the district court are textbook examples of "state laws applicable *only* to arbitration provisions." *Id.* Indeed, Section 1281.9 is entitled

41

"Neutral arbitrators," and Section 1281.91 is entitled "Disqualification of neutral arbitrators."

Here, because the parties disclaimed California rules of arbitration instead of "incorporating [them] into their agreement," New Era's rank-and-strike arbitration procedures were enforceable under federal law, regardless what California law says. *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989); *see* 2-ER-123. Those procedures cannot contribute to substantive unconscionability. *See Modiano*, 2021 WL 5750460, at *2.

The district court cited two cases to support its no-preemption holding, but neither is persuasive. 1-ER-26. In *Kalasho v. BMW of North America, LLC*, the parties inexplicably *agreed* that the provisions were not preempted by the FAA. 520 F. Supp. 3d 1288, 1295 (S.D. Cal. 2021). And in *Nguyen v. BMW of North America, LLC*, the defendant "fail[ed] to address" the plaintiff's argument that CAA provisions were not preempted by the FAA. No. 20-CV-2432, 2022 WL 102203, at *7 (S.D. Cal. Jan. 11, 2022). Other than these unpersuasive citations, the court made no effort to explain how the CAA's arbitrator-disqualification provisions could possibly govern despite the FAA.

### 2. The Limited Right Of Appeal Does Not Make The Delegation Clause Substantively Unconscionable

The district court also erred in holding that the Terms' "Limited Right to Appeal" renders the delegation clause substantively unconscionable. 1-ER-27–29.

That provision authorizes any party to appeal the award of injunctive relief to a panel of JAMS arbitrators. 2-ER-124. The court held that this authorization was unfair to Plaintiffs—and invalidated the delegation clause—because it applied only to "a grant, but not a denial, of injunctive relief." 1-ER-27; *see* 1-ER-29–30 n.21.

a. The district court's holding makes no sense as applied to the delegation clause. While injunctive relief is potentially available when the arbitrator is adjudicating a dispute *on the merits*, it has nothing to do with the parties' delegation clause or the threshold assessment of enforceability. The district court seemed to recognize this when explaining why it believed the right to appeal only grants of injunctive relief is unfair: The court's discussion focused entirely on injunctive relief on the merits of an antitrust plaintiff's claim. *See* 1-ER-27–29 (noting that in antitrust cases injunctive relief is "a critical remedy for vindication of the public good," discussing appeal of any "adverse decision against Defendants that would require them to alter their business practices," and noting that "a denial of injunctive relief for a bellwether plaintiff could effectively foreclose the ability of an *entire class* of claimants to obtain injunctive relief").

Indeed, the district court itself admitted that "it is not entirely clear how" there could possibly be "any injunctive relief awarded on threshold issues of arbitrability." 1-ER-29–30 n.21. There couldn't be. If a New Era arbitrator rejects Plaintiffs' argument that the bellwether procedures were unconscionable, it would just proceed

with arbitration pursuant to those procedures. And if the arbitrator accepts Plaintiffs' argument, it would simply deem the agreement unenforceable. The limited appeal right is irrelevant to the delegation clause—and certainly is no reason to find that clause unconscionable.

b. In any event, the California Supreme Court has approved exactly this kind of limited right to appeal. In *Sanchez v. Valencia Holding Co., LLC*, a car buyer entered into an arbitration agreement that provided for a right to appeal "an award of injunctive relief," but not the denial of such relief. 353 P.3d 741, 751 (Cal. 2015). The buyer argued that the provision was "unreasonably one-sided and unenforceable." *Id.* at 751-52. But the Court disagreed, explaining that while "the car buyer is more likely than the seller to seek injunctive relief," the "broad impact that injunctive relief may have on the car seller's business" made it reasonable for the car seller to seek "the extra protection of additional arbitral review." *Id.* at 753. *Sanchez* controls.

The district court tried to distinguish *Sanchez* because it dealt with "traditional, bilateral arbitration," whereas this case deals with New Era's procedures for handling mass filings. 1-ER-27. According to the court, traditional arbitration implicates only "the interests of a single plaintiff," whereas under New Era's procedures "denial of injunctive relief for a bellwether plaintiff could effectively foreclose the ability of the *entire class* of claimants to obtain injunctive

44

relief." 1-ER-28**.** But aside from mistaking "Precedent" under New Era's rules as mandatory, *infra* at 47-50, this ignores *Sanchez*'s main point—that an erroneous *grant* of an injunction is fundamentally different from a *denial*, because a grant "can compel a [company] to change its business practices." 353 P.3d at 753. That creates "a legitimate commercial need" for Live Nation to have an additional "margin of safety"—a compelling interest that is qualitatively different from a plaintiff's interest in appellate review when injunctive relief is denied. *Id.*

The district court's observation that "injunctive relief is a critical remedy for vindication of the public good" changes nothing. 1-ER-28. The California Supreme Court explicitly acknowledged in *Sanchez* that "the public has a strong interest" in enjoining "fraudulent business practices" but was unmoved all the same. 353 P.3d at 753. The district court could not avoid *Sanchez* merely because, in its view, the decision "did not fully address" the public-interest point. 1-ER-28; *see, e.g., Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law."). And regardless, concerns about the public's ability to obtain injunctive relief in "an antitrust case" are irrelevant to the delegation clause. 1-ER-28.

### 3. New Era's Rule Governing Bellwether "Precedent" Does Not Make The Delegation Clause Substantively Unconscionable

The district court half-heartedly found that the procedure for applying determinations made in bellwether cases to other cases—what New Era calls

"Precedent"—"*evinces elements* of substantive unconscionability" based on a perceived "*risk* of being fundamentally unfair to claimants" due to the "unfettered discretion" arbitrators have in applying "Precedent." 1-ER-22–24 (emphasis added); *see* 1-ER-29–30 n.21. Here too the district court erred, for at least two reasons.

*First*, even if Plaintiffs were right that New Era's rules required enforceability determinations from bellwether cases to be mechanically applied to all other cases, that would affect both sides equally. Live Nation and claimants would *both* run the risk of an adverse bellwether determination applying across the board. The district court did not bother explaining how New Era's "Precedent" rules violate the "paramount consideration" of California substantive unconscionability doctrine— "mutuality"—and work only to Live Nation's benefit. *Nagrampa*, 469 F.3d at 1281. On no interpretation of New Era's rules can their treatment of bellwether determinations be deemed "so one-sided as to shock the conscience." *Circuit City Stores*, 335 F.3d at 1107.

*Second*, New Era's rules have never called for automatic and unwavering application of "Precedent" across individual cases. Rather, the rules call for determinations from bellwether cases to be applied to common issues in other cases as the arbitrator deems appropriate—and they guarantee that every claimant has the

opportunity to argue against application of adverse bellwether determinations in each individual case.

The text of New Era's rules has always made clear that "Precedent" is discretionary. The general definition of "Precedent" in the July 2021 version of Rule 2(y)(i) provides that "[w]hen significant factual findings and legal determinations have been made in one or more proceedings," an arbitrator "*may* apply these determinations in the same manner and with the same force and effect to the Common Issues of Law and Fact contained in other proceedings." 2-ER-178 (Rule 2(y)(i)) (emphasis added); *see* 2-ER-168 (Rule 2(a)). Use of "the word 'may' connotes a discretionary or permissive act," not a mandatory one. *HNHPC, Inc. v. Dep't of Cannabis Control*, 311 Cal. Rptr. 3d 771, 779 (Ct. App. 2023).

The July 2021 version of Rule 6(b)(iii)(5)(a), which refers specifically to mass arbitrations, confirms that the application of "Precedent" is discretionary: It provides that bellwether determinations "will act as Precedent on subsequent cases" involved in the arbitration "*as determined by*" the arbitrator. 2-ER-193 (Rule 6(b)(iii)(5)(a)) (emphasis added); *accord id.* (Rule 6(b)(iii)(5)(b)) (applying same rule for "later filed" cases). And Rule 6(b)(iii)(6)(b) further requires that the arbitrator implement "a process for handling and resolving individualized issues of law and fact to ensure fundamental fairness and equity," *id.* (Rule 6(b)(iii)(6)(a)), thus guaranteeing that all claimants will have the "opportunity to present

individualized arguments," 2-ER-79. All of these provisions thus confirm that, when faced with mass arbitration filings, the arbitrator has discretion in applying determinations from bellwether cases—subject to claimants' objections, and only as the arbitrator deems appropriate.

This discretionary approach accords with the MDL model on which New Era's bellwether procedures are based. Just like cases consolidated under New Era's rules, "[c]ases consolidated from MDL pretrial proceedings" still "retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015). Accordingly, in the MDL context, "a district court may apply prior rulings to new cases if a party presents no new facts, evidence, or arguments to warrant a departure." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 66 n.6 (3d Cir. 2023). And it is entirely "appropriate" for courts to "adhere to [prior] decision[s]" made in the MDL if a different party in that MDL cannot "present a sufficient reason why [they] should not be followed." *Id.* Under well-established MDL procedures, then, decisions made in the lead cases "are not binding" on the rest, just "highly persuasive." *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 630 (N.D. Cal. 2020). The same is true under New Era's rules: Determinations from bellwether proceedings are persuasive authority at best, and they do not formally bind claimants who were not parties to the bellwether cases.

Plaintiffs are simply wrong to imply that fair arbitration procedures require arbitrators to put on blinders and *ignore* prior rulings in identical cases.

Below, Plaintiffs argued that New Era's application of "Precedent" is problematic because it is binding and deprives individual claimants of due process. That reading is inconsistent with the text of the rules. It also ignores New Era's repeated explanation that the intended meaning of the rules is for the application of "Precedent" to be discretionary. Below, the co-founder of New Era and co-drafter of the rules explicitly clarified that use of "Precedent" is "not absolute" and that "parties have the right to advocate as to why a Precedent should not apply to their particular case." 2-ER-78 (¶14). And in July 2023, New Era published revised rules that "clarify certain points of possible confusion" regarding "the issue of arbitrator discretion," making even more clear that "Precedent" is not to be mechanically applied. 2-ER-35 (¶4). For example, the revised rules state that, "[f]or the avoidance of doubt, parties remain free to argue that a Precedent" should "not be followed as to their case." 2-ER-71 (Rule 6(b)(iii)(5)(a)).

Even if the rules were ambiguous on this point, and even if a mandatory approach would pose unconscionability problems, California law requires courts to interpret a contract to "make it lawful" if that "can be done without violating the intention of the parties." Cal. Civ. Code § 1643. And the FAA similarly directs this Court to resolve any "doubts" related to Plaintiffs' claimed "contract defense[]" in

"favor of arbitration." *Poublon*, 846 F.3d at 1259 (citation omitted). There is no good reason to read any ambiguous provisions of New Era's rules to vitiate the delegation clause—especially when New Era has clarified its rules to ensure there is no arguable due process problem.

The district court did not disagree with Live Nation that application of "Precedent" to other cases is discretionary under the July 2021 version of New Era's rules. Indeed, the court *rejected* Plaintiffs' contention that those rules "necessarily prove" that "Precedent is to be applied in all instances by the [arbitrator] without discretion." 1-ER-22. And it acknowledged that Live Nation's interpretation was reasonable: The court explained that Rule 6(b)(iii)(5)(a)'s language stating that "determinations from bellwether cases 'will act as Precedent'" "could mean to 'act as' a 'determination[] made from [a] Lead Decision[],' which a neutral 'may apply'"—not *must* apply—just as Rule 2(y)(i) provides. 1-ER-21 (alterations in original) (first quoting Rule 6(b)(iii)(5)(a), then quoting Rule 2(y)(i)). In other words, Rule 6(b) merely mandates that "Precedent" be treated in the same discretionary way in bellwether proceedings, as set forth in Rule 2(y). *See id.*

Nonetheless, the district court opined that New Era's rules still "invite[d] the *potential* for unfairness" by giving arbitrators "unfettered discretion" in deciding "whether and how to apply" bellwether determinations to other cases. 1-ER-22. (emphasis added). The *potential* for arbitrators to act unfairly, however, is not

50

enough for substantive unconscionability. *Dotson v. Amgen, Inc.*, 104 Cal. Rptr. 3d 341, 349 (Ct. App. 2010) (arbitration agreement cannot be invalidated "based on speculation that arbitrator would not exercise discretion [fairly]"). The district court thus violated its duty to "'assume that the arbitrator will operate in a reasonable manner in conformity with the law'" when "determining the validity of an arbitration agreement." *Poublon*, 846 F.3d at 1265. And its "invalidation of [the parties'] arbitration agreement" based on mere "risk" of unfairness impermissibly "undermine[d] the 'liberal federal policy favoring arbitration agreements.'" *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

The district court also erroneously analogized New Era's bellwether procedures to class actions. The court deemed it "critical[]" that New Era's procedures do not include the same due process protections as class actions, such as requirements for "notice," "adequacy of counsel," and "opt out" rights. 1-ER-23–24. But those protections are needed in class actions because determinations of common issues in that context formally bind all class members. *Crawford v. Honig*, 37 F.3d 485, 487 & n.2 (9th Cir. 1994). Not so with bellwether procedures, where every case retains its individual character. Indeed, the whole point of selecting multiple bellwethers is that they might come out differently.

### 4. The Other Factors The District Court Cited Do Not Make The Delegation Clause Substantively Unconscionable

The district court also took issue with default "procedural limitations" on complaints, briefs, and submitted documents in New Era's rules, as well as "the lack of a right to discovery." 1-ER-29. But in its lone footnote attempting to tie its reasoning to the delegation clause—as required by *Rent-A-Center*—the district court failed to mention these limitations. 1-ER-29–30 n.21. And for good reason: As the district court itself previously acknowledged in a May 2023 tentative ruling, they cannot render the delegation clause unconscionable.

a. The district court explicitly acknowledged that New Era's default limits for the length of complaints (10 pages), evidentiary submissions (10 total files; 25 pages for each file, or 25MB of aggregate uncompressed downloads), and written argument (15,000 characters), do "*not*, standing alone, rise to the level of unconscionability." 1-ER-24 (emphasis added). That is correct. In fact, there is no reason to think that these efficiency-enhancing restrictions are unconscionable as applied to the delegation clause *at all*. They apply equally to both parties. And as New Era's founder explained, these default limits are mere "guardrails," and the rules "vest New Era's experienced neutrals" with discretion to depart from those default limits "when warranted." 2-ER-81–82 (¶20); *see* 2-ER-174–75, (Rules 2(p)(vi)-(vii), 6(a)(vii)(4)).

Oddly enough, the district court's May 1, 2023 Tentative Ruling understood all of this. Even if submissions limited to this extent "might prove insufficient" to allege and prove up "an antitrust claim," the Tentative Ruling explained, they "should be sufficient to contest the enforceability" of the delegation clause. 3-ER-311. And in the rare case where adjudicating the validity of a delegation clause requires more, "the arbitrator retains discretion to adjust the default limits." *Id.* The district court's final ruling omitted this language, without explaining whether or why the court changed its mind. *See* 1-ER-29–30 n.21.

b. The district court's determination that it is "problematic" for New Era's bellwether procedures to afford "no formal process of discovery as [of] right" likewise violates *Rent-A-Center* by failing to focus on the delegation clause. The *Rent-A-Center* plaintiff challenged an arbitration agreement with a delegation clause as unconscionable because of "limitations on discovery." 561 U.S. at 74. The Supreme Court recognized that those limitations applied to "*both* the agreement to arbitrate employment-related disputes *and* the delegation provision." *Id.* But the Plaintiff still had to show that those limitations "*as applied* to the delegation provision rendered *that provision* unconscionable." *Id.* That, the Supreme Court explained, would be "a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable." *Id.*

The district court ignored all this, focusing only on how the discovery limits might affect claimants' ability to "vindicate [their] statutory rights." 1-ER-25. The court reasoned, for example, that the limits might be problematic because "[a]ntitrust lawsuits brought under the Sherman Act are notoriously complex and fact-intensive." *Id.* n.19. That is *exactly* the kind of generalized attack *Rent-A-Center* foreclosed. The core question here is whether the default discovery limitations create one-sided unfairness as to the enforceability of a delegation clause. *See* 561 U.S. at 74. The district court gave no reason to believe they do—and there is none.

In any event, under New Era's rules, any party who believes discovery is necessary "submit[s]" a request to the arbitrator, and the arbitrator then "has discretion to determine whether it should be allowed or not." 2-ER-174 (Rule 2(o)(iii)). The requesting party need only demonstrate "good cause." 2-ER-175 (Rule 2(q)(i)). That is sufficient: California courts have repeatedly held that discovery limits are not unconscionable—even for litigating claims on the merits— if an arbitrator may order additional discovery for "good cause." *Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671, 683 (Ct. App. 2002); *accord Dotson*, 104 Cal. Rptr. 3d at 350 (upholding similar provision "giving the arbitrator broad discretion to control discovery" because courts may not presume "that the arbitrator w[ill] exercise his discretion in an unlawful manner"). A "good cause" standard

surely suffices when it comes to litigating the enforceability of a *delegation clause*, where discovery is far less likely to be important than on the merits. Nothing about delegating enforceability questions to New Era instead of JAMS was substantively unconscionable.

## III. ALTERNATIVELY, A DIFFERENT ARBITRATOR MUST DECIDE WHETHER THIS CASE IS SUBJECT TO ARBITRATION

Even if the supposed problems with New Era's rules rendered the delegation to New Era unenforceable, all it would mean is that *New Era* should not arbitrate this case. The parties expressly agreed that if New Era "is unable to conduct the arbitration for any reason, the arbitration will be conducted by FairClaims." 2-ER-124. Failing that, the parties agreed they would "mutually select an alternative arbitration provider," rather than litigate in court. *Id.* And even if *all* of Live Nation's July 2021 amendments were deemed invalid, that would simply mean that the parties' pre-July 2021 agreement to arbitrate before JAMS is enforceable. The district court's refusal to send this case to arbitration—despite the parties' longstanding, crystal clear intent to arbitrate—was plainly mistaken.

### A. The Parties' Backup Agreement To Arbitrate Before FairClaims Or A Mutually Agreeable Arbitrator Must Be Respected

It makes no sense for this case to proceed in court. Live Nation and Plaintiffs—all longtime Live Nation customers—have agreed to arbitrate their disputes for *at least* eight years. 2-ER-154, 156, 158, 161 (¶¶9, 17, 24, 32). And

55

they have agreed to arbitrate threshold questions of enforceability for similar amounts of time.  *Oberstein* Tobias Decl. Ex. 44 at 6.  That arrangement had thus been in effect for *years* before the July 2021 revision, including under the agreement upheld in *Oberstein.  Supra* at 5-6.  The only pertinent change was the switch of the default arbitration provider from JAMS to New Era (with FairClaims or a mutually agreeable arbitrator as a backup).

In making that switch, the parties reiterated their ironclad intent to arbitrate any dispute.  Their agreement provides that if "New Era ADR is unable to conduct the arbitration *for any reason*," then "the arbitration will be conducted by FairClaims" or a "mutually" agreeable "alternative arbitration provider" if FairClaims cannot conduct it.  2-ER-124 (emphasis added).  More generally, the contract includes an express severability clause providing that "if any part of the Terms is determined to be illegal, invalid, or unenforceable," then (a) "that part shall nevertheless be enforced to the extent permissible in order to effect the intent of the Terms" and (b) "the remaining parts shall be deemed valid and enforceable." 2-ER-125.  These provisions demonstrate that the parties intended to arbitrate all their disputes, even if some aspect of the arbitration clause (such as New Era's role) are deemed unenforceable.

The parties' overarching intent to arbitrate must be respected, even if some portion of their agreement is unenforceable.  Under California law, if a court finds

part of a contract "unconscionable," it may: (1) "limit the application of any unconscionable clause as to avoid any unconscionable result," (2) "enforce the remainder of the contract without the unconscionable clause," or (3) "refuse to enforce the contract" as a whole.  Cal. Civ. Code § 1670.5(a).  But the "strong legislative and judicial preference" is "to sever the offending term and enforce the balance of the agreement." *Roman v. Superior Court*, 92 Cal. Rptr. 3d 153, 166 (Ct. App. 2009).  And refusing to sever unconscionable provisions despite an express severability clause is ordinarily an abuse of discretion. *See Blake v. Ecker*, 113 Cal. Rptr. 2d 422, 435-36 (Ct. App. 2001).  The FAA puts another thumb on the scale, requiring doubts about severability "to be resolved in favor of arbitration." *Poublon*, 846 F.3d at 1259.

Even if the delegation to New Era were unconscionable, this case would have to be arbitrated before FairClaims.  As the district court itself recognized in its May 1 Tentative Ruling, Plaintiffs' unconscionability arguments "almost exclusively relate to the selection of New Era" as the first-choice arbitration provider—and none concern FairClaims' procedures.  3-ER-314; *see* 1-ER-31 (final ruling noting that Plaintiffs' have not challenged FairClaims procedures).  Although the Tentative Ruling noted Plaintiffs' view "that *New Era*'s Rules are permeated by unconscionable provisions," it concluded that this "would not seem to render other provisions of [the arbitration agreement] unconscionable"—such as the "clause

stating that in the event New Era cannot conduct the arbitration for any reason, the arbitration will instead be conducted by a different arbitration provider." 3-ER-314–15.  So even if the "selection of New Era is unconscionable, it is not clear that would save [Plaintiffs] from having to proceed to arbitration."  3-ER-314.

That analysis is exactly right.  Even if New Era is problematic for some reason, Plaintiffs' claims must be arbitrated before FairClaims or an alternative arbitration provider.

### B.     The District Court Abused Its Discretion By Refusing To Send This Case To FairClaims Or A Mutually Agreeable Arbitrator

The district court abused its discretion in reversing course from its May 1 Tentative Ruling.  The court's final ruling refused to send this case to FairClaims on the ground that "unconscionability permeates the arbitration clause," reasoning that the selection of New Era was part of a purportedly "'systemic effort to impose arbitration on a customer as an inferior forum' to avoid having to arbitrate consumer claims individually."  1-ER-31 (citation omitted).  In support, the court cited its findings that there were "multiple unlawful provisions" in New Era's rules, and that Live Nation effected the switch to New Era "unilaterally, and in response to the looming prospect of defending against large numbers of arbitration claims." 1-ER-30–31.  The court also noted that the parties had not "briefed the issue" of whether arbitration by FairClaims would be fair.  1-ER-31.  None of this justifies the court's refusal to enforce the parties' agreement about backup arbitrators.

California law imposes no "per se rule" that an agreement is permeated by unconscionability "if more than one clause in the agreement is unconscionable or illegal." *Poublon*, 846 F.3d at 1273. Rather, "the dispositive question is whether the central purpose of the contract is so tainted with illegality" that the contract has "*no lawful object*," making it *impossible* to "'remove the unconscionable taint from the agreement'" by "'strik[ing] or restrict[ing]'" the offending parts. *Id.* (emphasis added) (citations omitted).

Here, there is no defensible basis to conclude that the "'central purpose'" of Live Nation's delegation clause (or the arbitration agreement as a whole) is "so tainted with illegality that there is no lawful object of the contract to enforce." *Id.* The "central purpose" of replacing JAMS with other arbitrators was to mitigate the unique practical challenges posed by mass arbitration filings. *Supra* at 11. That was a good faith effort to *restore* the viability of arbitration as a method for adjudicating claims on the merits.

The district court was therefore wrong to conclude that "the way in which Defendants effected the changes to the T[erms]" indicates an effort to impose an inferior arbitral forum, while avoiding "having to arbitrate consumer claims individually." 1-ER-31. Plaintiffs have never argued that FairClaims' rules are inferior or preclude claimants from litigating their claims individually. And the final

backstop in the agreement is a *mutually agreeable* arbitrator, which cannot plausibly be interpreted as imposing an inferior forum on unwilling claimants.

The district court was also wrong in refusing to send this case to FairClaims because "the parties ha[d] not briefed" whether FairClaims' rules would "alleviate the Court's concerns." 1-ER-31. *Plaintiffs* had "the burden of proving" that the FairClaims option was itself "unconscionab[le]." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224-25 (Cal. 2012). And until they did, the district court had to presume that FairClaims would "operate in a reasonable manner in conformity with the law." *Dotson*, 104 Cal. Rptr. 3d at 349.

Plaintiffs have never identified any specific substantive problem—none whatsoever—with FairClaims. And FairClaims' rules, which Plaintiffs did not even bother to make part of the record, do not provide for bellwether proceedings or other mass-arbitration procedures. *See* FairClaims, *FastTrack Rules & Procedures for Claims Over $25,000* (effective Oct. 15, 2021), https://s3.amazonaws.com/arbi-website/fairclaims-rules/FairClaims-FastTrack-Rules.pdf. Nor have Plaintiffs complained about the substantive procedures that would be applied by a mutually agreeable arbitrator.

Instead, Plaintiffs' entire substantive-unconscionability attack has been focused on New Era. But any problems with New Era's rules are limited *to New Era*. They do not infect FairClaims or any other arbitrator—and they certainly do not

permeate the entire delegation clause. In these circumstances, this Court must "enforce the remainder of the" delegation clause and require arbitration of threshold enforceability questions before FairClaims. Cal. Civ. Code § 1670.5(a).

### C. If The Entire Arbitration Agreement Is Unenforceable, Then This Case Must Be Arbitrated By JAMS

As Live Nation explained below, before the challenged July 2021 switch to New Era, Plaintiffs had "repeatedly (dozens if not hundreds of times) agreed to" arbitration. Dkt. 30-1 at 11. So even if the entire updated arbitration agreement were unenforceable, that *still* would not mean Plaintiffs' claims could proceed in court. Rather, the prior arbitration agreement—which mandated arbitration at JAMS—would once again become enforceable.

Contract law is clear that "when a modification or substitution [of an agreement] is void for failure to meet the requirements of a valid contract"—such as when the changes are held unconscionable—"then the modification or substitution is unenforceable *and the prior contract is revived*." *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067, 1071 (S.D. Cal. 1999) (emphasis added); *accord Restatement (Second) of Contracts* § 279 cmt. b (1981) (observing that, if a new contract is "unconscionab[le], recourse may be had on the original duty"); 1 B.E. Witkin, *Summary 11th Contracts* § 993(3) (2023) (similar). California courts routinely apply this established rule. *See, e.g.*, *Arbitech, LLC v. Hackney*, No. G053744, 2017 WL 4296101, at *7 (Cal. Ct. App. Sept. 28, 2017); *Airs Int'l, Inc. v.*

*Perfect Scents Distribs., Ltd.*, 902 F. Supp. 1141, 1147-48 (N.D. Cal. 1995); *Rejuso v. Brookdale Senior Living Communities, Inc.*, No. CV 17-5227, 2018 WL 6173384, at \*4 (C.D. Cal. Nov. 13, 2018).

Here, this means that if this Court agrees with the district court that the July 2021 revision of Live Nation's Terms is "invalid," Plaintiffs' "previous obligation[]" to arbitration before JAMS was "not extinguished." *Airs Int'l*, 902 F. Supp. at 1148-49. After all, the parties plainly "understood the later agreement was intended to simply update the earlier version." *Arbitech*, 2017 WL 4296101, at \*7. Accordingly, Plaintiffs' "original duty" to arbitrate disputes before JAMS "is again enforceable." *Restatement (Second) of Contracts* § 279 cmt. b.

Simply put, this case does not belong in court. One way or another, it must be sent to arbitration—just as the parties have always agreed.

## CONCLUSION

This Court should reverse and remand with instructions to grant the motion to compel arbitration.

Dated:  November 13, 2023

Respectfully submitted,

_/s/ Timothy L. O'Mara_

Roman Martinez
Uriel Hinberg
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Sadik Huseny
LATHAM & WATKINS LLP
300 Colorado Street
Suite 200
Austin, TX 78701
(737) 910-7300

Timothy L. O'Mara
   *Counsel of Record*
Andrew M. Gass
Alicia R. Jovais
Robin L. Gushman
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600
tim.o'mara@lw.com

*Counsel for Defendants-Appellants*
*Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8.  Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 23-15092 & 23-15156

I am an attorney for Defendant-Appellee World Aquatics.

This brief contains 13,938 words, including 85 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f).  The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[..] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** *s/ Timothy L. O'Mara*          **Date** November 13, 2023

64

**ADDENDUM**

**Pursuant to 9th Cir. R. 28-2.7**

# ADDENDUM
# TABLE OF CONTENTS

| Description | Page |
| --- | --- |
| 9 U.S.C. § 2 | ADD-1 |
| 9 U.S.C. § 5 | ADD-2 |
| Cal. Civ. Proc. Code §§ 1281.9, 1281.91(b)(1) | ADD-3 |
| Cal. Civ. Code § 1643 | ADD-5 |
| Cal. Civ. Code § 1670.5(a) | ADD-6 |

# 9 U.S.C. § 2

## § 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

## 9 U.S.C. § 5

### § 5. Appointment of arbitrators or umpire

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

## Cal. Civ. Proc. Code § 1281

**PART 3. OF SPECIAL PROCEEDINGS OF A CIVIL NATURE**
  **TITLE 9. ARBITRATION**

**CHAPTER 2. Enforcement of Arbitration Agreements [1281 - 1281.99]**

\* \* \*

**1281.9.** (a) In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including all of the following:

(1) The existence of any ground specified in Section 170.1 for disqualification of a judge. For purposes of paragraph (8) of subdivision (a) of Section 170.1, the proposed neutral arbitrator shall disclose whether or not he or she has a current arrangement concerning prospective employment or other compensated service as a dispute resolution neutral or is participating in, or, within the last two years, has participated in, discussions regarding such prospective employment or service with a party to the proceeding.

(2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter.

(3) The names of the parties to all prior or pending noncollective bargaining cases in which the proposed neutral arbitrator served or is serving as a party arbitrator for any party to the arbitration proceeding or for a lawyer for a party and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any. In order to preserve confidentiality, it shall be sufficient to give the name of any party who is not a party to the pending arbitration as "claimant" or "respondent" if the party is an individual and not a business or corporate entity.

(4) The names of the parties to all prior or pending noncollective bargaining cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any. In order to preserve confidentiality, it shall be sufficient to give the name of any party not a party to the pending arbitration as "claimant" or "respondent" if the party is an individual and not a business or corporate entity.

(5) Any attorney-client relationship the proposed neutral arbitrator has or had with any party or lawyer for a party to the arbitration proceeding.

(6) Any professional or significant personal relationship the proposed neutral arbitrator or his or her spouse or minor child living in the household has or has had with any party to the arbitration proceeding or lawyer for a party.

(b) Subject only to the disclosure requirements of law, the proposed neutral arbitrator shall disclose all matters required to be disclosed pursuant to this section to all parties in writing within 10 calendar days of service of notice of the proposed nomination or appointment.

(c) For purposes of this section, "lawyer for a party" includes any lawyer or law firm currently associated in the practice of law with the lawyer hired to represent a party.

(d) For purposes of this section, "prior cases" means noncollective bargaining cases in which an arbitration award was rendered within five years prior to the date of the proposed nomination or appointment.

(e) For purposes of this section, "any arbitration" does not include an arbitration conducted pursuant to the terms of a public or private sector collective bargaining agreement.

* * *

## 1281.91. . . .

(b)(1)  If the proposed neutral arbitrator complies with Section 1281.9, the proposed neutral arbitrator shall be disqualified on the basis of the disclosure statement after any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days after service of the disclosure statement.

* * *

ADD-4

## Cal. Civ. Code § 1643

**DIVISION 3. OBLIGATIONS**
 **PART 2. CONTRACTS**

**TITLE 3. INTERPRETATION OF CONTRACTS [1635 - 1663]**

\* \* \*

**1643.** A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.

\* \* \*

**Cal. Civ. Code § 1670.5**

**DIVISION 3. OBLIGATIONS**
  **PART 2. CONTRACTS**
**TITLE 4. UNLAWFUL CONTRACTS [1667 - 1670.11]**

\* \* \*

**1670.5.** (a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

\* \* \*