**No. 23-55770**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**SKOT HECKMAN; LUIS PONCE; JEANENE POPP; JACOB ROBERTS,**
**on behalf of themselves and all those similarly situated,**

*Plaintiffs-Appellees*,

v.

**LIVE NATION ENTERTAINMENT, INC.; TICKETMASTER LLC,**

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the Central District of California
No. 2:22-cv-00047-GW-GIS (George H. Wu, District Judge)

---

**EXCERPTS OF RECORD FOR DEFENDANTS-APPELLANTS LIVE
NATION ENTERTAINMENT, INC. AND TICKETMASTER, LLC**

**VOLUME III of III (3-ER-296 to 3-ER-315)**
**—UNDER SEAL—**

---

Roman Martinez
Uriel Hinberg
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Sadik Huseny
LATHAM & WATKINS LLP
300 Colorado Street
Suite 200
Austin, TX 78701
(737) 910-7300

November 13, 2023

Timothy L. O'Mara
*Counsel of Record*
Andrew M. Gass
Alicia R. Jovais
Robin L. Gushman
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600
tim.omara@lw.com

*Counsel for Defendants-Appellants*
*Live Nation Entertainment, Inc. and Ticketmaster, LLC*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**\*\*UNDER SEAL\*\***

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-0047-GW-GJSx | Date | May 1, 2023 |
|---|---|---|---|
| Title | *Skot Heckman, et al. v. Live Nation Entertainment, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Kevin Y. Teruya | Timothy L. O'Mara |
| William R. Sears | Alicia R. Jovais |
| Warren D. Postman | Robin L. Gushman |
| | Kirsten M. Ferguson |

**PROCEEDINGS:    DEFENDANTS' MOTION TO COMPEL ARBITRATION [30]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Defendants' Motion is continued to June 22, 2023 at 8:30 a.m. Cross-supplemental briefs, not to exceed 13 pages, are to be filed by May 22, 2023. Cross-replies, not to exceed seven pages, are to be filed by June 8, 2023.

|  | 1 | : | 05 |
|---|---|---|---|
| Initials of Preparer | JG | | |

**_Skot Heckman, et al. v. Live Nation & Ticketmaster._**; Case No. 2:22-cv-00047-GW-(GJSx)
Tentative Ruling on Defendants' Motion to Compel Arbitration (<mark>sealed</mark>[1])

## I. <u>Introduction</u>[2]

Plaintiffs brought this putative class action against Defendants Live Nation Entertainment, Inc. and Ticketmaster LLC (collectively, "Defendants") alleging various anticompetitive practices in violation of the Sherman Act. *See generally* Compl., ECF No. 1. Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, the named plaintiffs (collectively, "Plaintiffs"), claim that they suffered damages from paying "supracompetitive fees on primary and secondary ticket purchases from Ticketmaster's online platforms." Compl. ¶ 6. On March 8, 2022, Defendants moved to compel arbitration, arguing that this case is virtually identical to another case against Defendants which this Court previously sent to arbitration. *See Oberstein v. Live Nation Entertainment, Inc.*, No. CV 20-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021), *aff'd*, 60 F.4th 505 (9th Cir. 2023). The sole apparent difference between this case and the *Oberstein* case is that in July 2021, after the *Oberstein* complaint was filed, Defendants updated their terms of use ("TOU") to select a new arbitration provider. Compl. ¶ 1; *see* TOU, ECF No. 31-30 at 10-13. Whereas the TOU at issue in *Obsterstein* designated JAMS, the updated TOU selects New Era ADR ("New Era"). *See* Compl. ¶¶ 1-5. New Era offers standardized procedures for administering mass arbitrations, which Defendants assert "facilitates the arbitration of mass individual consumer claims efficiently and fairly, and thereby *promotes* arbitration."[3] Mot. at 2. Plaintiffs, on the other hand, believe New

---

[1] This Tentative Ruling is initially filed under seal as it references materials previously filed by the parties under seal which were designated as "confidential." The parties shall advise the Court whether they request that any portion of this Tentative Ruling remain sealed in the final version of the order. If so, within three days of the hearing, the parties shall submit proposed redactions via email to the Courtroom Deputy Clerk.

[2] The following abbreviations are used for the filings: (1) Complaint ("Compl."), ECF No. 1; (2) Defendants' Motion to Compel Arbitration ("Mot."), ECF No. 30; (3) Plaintiffs' Opposition to Defendants' Motion ("Opp."), ECF No. 146; (4) Defendants' Reply in Support of their Motion ("Reply"), ECF No. 153.

[3] Defendants seem to be asserting that promoting "arbitration" is – in and of itself – a good thing. But there are various types of arbitration some of which are not necessarily viewed with favor. For example, in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), the Supreme Court noted various differences between "the individualized form of arbitration envisioned by the [Federal Arbitration Act ]" and class arbitration; and seemingly disparaged the latter in observing that:

> In individual arbitration, "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Class arbitration lacks those benefits. It "sacrifices the principal advantage of arbitration – its informality – and makes the

1

Era's mass arbitration procedures require "consumers to engage in a novel and one-sided process that is tailored to disadvantage consumers." Compl. ¶ 5. According to Plaintiffs, Defendants' selection of New Era in the TOU "skews the odds so egregiously in Defendants' favor through its defense-biased provisions" that the arbitration agreement is rendered unconscionable. *Id.*

Before filing an opposition to Defendants' Motion, Plaintiffs sought discovery related to the validity, unconscionability, and severability of the dispute-resolution provisions in the TOU. *See* ECF No. 34 at 3. On June 9, 2022, the Court granted Plaintiffs' request and allowed the parties to conduct limited discovery as to those issues. *See* ECF No. 50. The parties completed such discovery on January 27, 2023. Plaintiffs filed an Opposition to Defendants' Motion on March 22, 2023. Defendants filed a Reply on April 18, 2023.

## II. <u>Background</u>

This case is one of several consumer class actions alleging Ticketmaster and Live Nation engaged in anticompetitive conduct in the primary and secondary ticketing services market.[4] One such case previously before this Court and asserting nearly identical allegations was *Oberstein*, No. 2:20-cv-03888-GW-GJS, filed on April 28, 2020. On September 20, 2021, this Court granted Ticketmaster and Live Nation's motion to compel arbitration in *Oberstein*, finding that: (1) Ticketmaster and Live Nation's websites provided sufficient constructive notice of the terms of use; (2) the authority to decide whether the arbitration agreement was enforceable had been delegated to the arbitrator; and (3) that delegation clause was not itself unconscionable. *See Oberstein*, 2021 WL 4772885, at *6-9. The Court's decision was affirmed on appeal. *Oberstein v. Live Nation*, 60 F.4th 505 (9th Cir. 2023).

On July 2, 2021, while Ticketmaster and Live Nation's motion to compel arbitration in *Oberstein* was pending, Defendants updated their TOU to select New Era as the default arbitration

---

process slower, more costly, and more likely to generate procedural morass than final judgment." Indeed, we recognized just last Term that with class arbitration "the virtues Congress originally saw in arbitration, its speed and simplicity and inexpensiveness, would be shorn away and arbitration would wind up looking like the litigation it was meant to displace."

*Id.* at 1416 (citations omitted).

[4] Plaintiffs' Complaint alleges that Defendants entered into a consent decree with the Department of Justice's Antitrust Division, which the Department of Justice extended after finding that Defendants had engaged in anticompetitive conduct in violation of the terms of the decree. *See* Compl. ¶¶ 57-58, 91-96. In their papers, however, the parties do not address the extent to which the existence of that consent decree and the purported violations thereof affect the Court's decision on the instant Motion. The Court would ask the parties for additional information on these issues.

2

provider. *See* TOU at 10-13. New Era was founded in 2020 and launched its alternative dispute resolution ("ADR") services in April 2021. *See* Opp. Ex. C at 10:16-18, 11:3-5. Unlike traditional arbitration providers like JAMS, New Era includes procedures for administering mass individual consumer arbitrations presenting common issues of fact or law. *See* New Era Rules ("Rules"), ECF No 30-4, Rules 2(x), 6(b). New Era offers two pricing options: (1) a standard option whereby the company pays $9,500 and the consumer pays $500 per arbitration; and (2) a subscription option whereby the company pays an annual subscription fee and the claimant pays a $300 filing fee. *See* Rules 1(a)(ii), 1(e)(i), 6(a)(iii)(1)(c).

On May 4, 2021, New Era first reached out to Defendants' counsel Latham & Watkins ("Latham") to pitch its mass arbitration services. Opp. Ex. C at 86:2-88:2. At that time, New Era had not yet conducted any arbitrations and had not finalized its Rules governing mass arbitration procedures. *Id.* at 109:1-110:10. The parties disagree about the nature of the initial conversations between New Era and Latham and the extent to which Defendants and Latham had input on, or helped shape, New Era's Rules. However, on June 21, 2021, New Era executed a subscription agreement with Live Nation as its first subscriber, and later that same day, New Era published its ADR Rules. *Id.* at 145:6-147:10.

Plaintiffs filed suit on January 4, 2022, alleging that Defendants' modification to the TOU was both procedurally and substantively unconscionable. *See* Compl. ¶¶ 1-5. Following Defendants' alteration to the TOU in July 2021, the named Plaintiffs each purchased tickets on Defendants' sites between four and eight separate times. *See* Mot. at 6-7. To make those purchases, Plaintiffs were required to sign into their accounts, whereupon they were notified: "By continuing past this page, you agree to the **Terms of Use** and understand that information will be used as described in our **Privacy Policy**." *Id.* at 6. That notice is the same as the one that was at issue in *Oberstein*. *Id.* Plaintiffs were further required to check a box acknowledging their acceptance of the TOU. *Id.*

## III. Legal Standard

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010). A party aggrieved by the refusal of another party to arbitrate under a written arbitration agreement may petition the court for an order compelling arbitration as provided for in the parties' agreement. *See* 9 U.S.C. § 4. "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead

**3-ER-300**

mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985). "The court's role under the [FAA] is therefore limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quotations omitted). Both parties have briefed the issues under California contract law.

## IV. Discussion

Plaintiffs do not appear to contest that they repeatedly agreed to Defendants' updated TOU prior to purchasing tickets on Defendants' website. Nor do Plaintiffs take issue with this and other courts' findings that Defendants' websites provided users sufficient notice of the terms of use. *See Oberstein*, 2021 WL 4772885, *aff'd*, 60 F.4th 505, 509; *Lee v. Ticketmaster LLC*, 817 Fed. App'x 393, 394 (9th Cir. 2020) (affirming a holding that "Ticketmaster's website provided sufficient notice for constructive assent, and therefore, there was a binding arbitration agreement between [plaintiff] and Ticketmaster"); *Dickey v. Ticketmaster LLC*, No. 18-cv-09052, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019) (upholding the same arbitration agreement); *Nevarez v. Forty Niners Football Company, LLC*, No. 16-cv-07013, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017) (upholding the same arbitration agreement); *Himber v. Live Nation Worldwide, Inc.*, No. 16-cv-05001, 2018 WL 2304770, at *4 (E.D.N.Y. May 21, 2018) (upholding the arbitration agreement on the Live Nation website).

Instead, the gravamen of Plaintiffs' argument is that Defendants' selection of New Era as the arbitration provider renders the arbitration and delegation clauses within the TOU unconscionable. Plaintiffs maintain that Defendants, faced with a mounting number of consumers

4

pursuing individual arbitration against them in connection with the ongoing antitrust litigations, abruptly switched from JAMS to a provider Defendants knew would be beholden to their interests. Plaintiffs further assert that the Rules promulgated by New Era favor Defendants' interests and are substantively unfair to Plaintiffs and other potential claimants.

## A. Delegation Clause

As a threshold issue, the Court must first determine whether the TOU to which Plaintiffs agreed delegates the authority to decide issues of enforceability, including unconscionability, to the arbitrator rather than the Court. "A court is normally tasked with two gateway issues when deciding whether to compel arbitration under the FAA: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Morgan v. Glob. Payments Check Servs., Inc.*, No. 2:17-CV-01771-JAM-CMK, 2018 WL 934579, at \*2 (E.D. Cal. Feb. 15, 2018) (quoting *Chiron*, 207 F.3d at 1130). "But the parties can agree to expressly delegate these gateway issues to an arbitrator, in which case an arbitrator, rather than a court, must decide the issues." *Id.* A court must determine whether the underlying agreement "clearly and unmistakably" delegated the questions of arbitrability to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (internal quotation marks and citations omitted). The Supreme Court has since reiterated these points. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (explaining that the "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). The Supreme Court emphasized that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *See id.*

Here, Defendants' TOU contain a delegation clause, which provides:

> The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable.

TOU at 13. This clause is identical to the one that at issue in *Oberstein*, which this Court determined "clearly and unmistakably delegates arbitrability to the arbitrator." *Oberstein*, 2021 WL 4772885, at \*8. The Court sees no reason to depart from this prior finding, and Plaintiffs have

5

not suggested one. The Court would therefore find that the delegation clause contained in the updated TOU delegates issues of enforceability to the arbitrator, and thus "the Court's unconscionability inquiry is limited to the delegation clause instead of the arbitration clause as a whole." *Id.* In other words, the only issue now before the Court is whether the *delegation clause itself* – rather the overarching agreement to arbitrate in which it is contained, or the TOU in which the agreement to arbitrate is contained – is unconscionable.

Defendants claim that should end the Court's inquiry, as Plaintiffs have failed to specify why the delegation clause specifically is unconscionable. In support of that argument, Defendants cite to *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010). There, the Supreme Court addressed an unconscionability challenge to a delegation provision almost identical to the one at issue here. *See id.* at 66. The plaintiff argued, as Plaintiffs do here, that certain arbitration procedures specified in the arbitration agreement (*e.g.*, limitations on discovery) rendered the entire arbitration agreement invalid. The Supreme Court rejected that argument, reasoning that the plaintiff "did not make any arguments specific to the delegation provision; he argued that the [purportedly unfair] procedures rendered the *entire* Agreement invalid." *Id.* at 74. Thus, Defendants assert it is not enough for Plaintiffs to argue that the challenged procedures "'apply equally to the delegation clause'; instead, Plaintiffs 'must argue that those provisions are unconscionable <u>as applied to the delegation clause</u>.'" Reply at 5 (quoting *Taylor v. TA Operating*, No. 2:22-cv-00947-WBS-DMC, 2023 WL 171359, at *9 (E.D. Cal. Jan.12, 2023)).

The Court agrees with Defendants that the decision in *Rent-A-Center* controls the analysis in this situation. However, unlike the plaintiff in *Rent-A-Center*, Plaintiffs here *do* argue, at least in passing, that New Era's purportedly unfair procedures apply to the delegation clause specifically. *See* Opp. at 23-24. To be sure, the bulk of Plaintiffs' Opposition is devoted to detailing why New Era's general procedures governing mass arbitrations are unconscionable, and the arguments regarding the delegation clause appear to be almost an afterthought.[5] Nevertheless, Plaintiffs' Opposition does assert that: (1) the delegation clause is a procedurally unconscionable contract of adhesion "imposed mid-stream on *known* claims;" (2) the initial determination as to

---

[5] Moreover, certain of the procedures Plaintiffs challenge in their Opposition would be less worrisome in the context of determining enforceability/arbitrability, as opposed to the merits of an underlying antitrust claim. For example, Plaintiffs' concern regarding the number of witnesses allowed, or that the page limit for pleadings is too short for antitrust claimants to "define the market, demonstrate anticompetitive conduct, prove damages, and more," would seem inapposite where the issue is simply whether the agreement to arbitrate is enforceable. *See* Opp. at 16.

6

**3-ER-303**

the enforceability of the arbitration agreement would be made by a biased arbitrator; and (3) there are other substantively unfair procedures that would apply to threshold issues of enforceability. *See* Opp. at 8, 24. Putting aside the merits of these contentions for the moment, Plaintiffs' arguments are sufficiently directed at the delegation clause to distinguish this case from *Rent-A-Center* – even if only barely. That said, the Court will address Plaintiffs' contentions only as they would apply specifically to the delegation clause.

Having determined that the delegation clause assigns issues of arbitrability to the arbitrator, the Court next turns to whether the delegation clause itself is unconscionable.

### B. Procedural Unconscionability

To prove unconscionability, Plaintiffs must show that the delegation clause was procedurally *and* substantively unconscionable. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The procedural component of unconscionability "focuses on the factors of oppression *and* surprise." *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (1993) (citations omitted, emphasis added). "Oppression results where there is no real negotiation of contract terms because of unequal bargaining power." *Id.* "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*

In support of their procedural unconscionability argument, Plaintiffs argue that: (1) the delegation clause is part of a contract of adhesion, and (2) the TOU were changed without notice to gain advantage in an ongoing litigation. As to Plaintiffs' first contention, the Court agrees that the delegation clause definitely falls within the scope of a contract of adhesion. There was no ability on the part of Defendants customers to negotiate as to the terms or opting out of the delegation clause.[6] As observed in *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 109 (2011):

---

[6] The Court acknowledges that there is at least some disagreement amongst California courts as to whether contracts for nonessential recreational activities, by their very nature, can ever be procedurally unconscionable. *Compare Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 822 (2010) (rejecting as unsound the contention that "contracts for recreational activities can never be unconscionably oppressive"); *with Pokrass v. The DirecTV Grp., Inc.*, No. EDCV 07-423-VAP, 2008 WL 2897084, at *7 (C.D. Cal. July 14, 2008) (citing cases in support of contention that "contracts for nonessential recreational activities cannot be procedurally unconscionable"). This Court would agree with the holding in *Lhotka.* It would make no sense to find that certain contracts could never be deemed procedurally unconscionable in a commercial sector of the economy merely because it involves

7

"[a]bsent unusual circumstances, evidence that one party has overwhelming bargaining power, drafts the contract, and presents it on a take-it-or-leave-it basis is sufficient to demonstrate procedural unconscionability and require the court to reach the question of substantive unconscionability, even if the other party has market alternatives." As such, the Court would find some procedural unconscionability with respect to Plaintiffs' contract-of-adhesion argument.

Plaintiffs' second contention – that Defendants retroactively changed the TOU to gain an advantage in ongoing arbitrations – is also troubling. First, it could be argued that there is a certain of level of surprise in the present situation because the TOU was substantially altered without specific notification to Defendants' then-existing customers that the terms of use which they had initially agreed to (and operating under) had been changed. The Court does not find that the language was intentionally hidden. Nevertheless, most of the time the customers could enter the site, conduct their business and click off on the browse-wrap boxes without effectuating a major change in their contract with the Defendants. It would seem untenable to require the customer – each time he, she or they enter the site – to do a sentence-by-sentence comparison of the former TOU (which they probably do not have a copy of) with the current one. Thus, this Court would find a degree of surprise herein – not necessarily dispositive, but present.

Second, the arbitration agreement states that any dispute, claim, or controversy, "irrespective of when that dispute, claim, or controversy arose," is governed by the TOU. TOU at 10. One could conclude from this language that not only are claims arising from ticket purchases made *after* the date Defendants revised the TOU subject to New Era's mass arbitration procedures, but so too are claims arising from ticket purchases made *before* the revised TOU went into effect (so long as at some point the claimant returned to the site with the amended TOU). Thus, under Plaintiffs' reading of the TOU, class members in *Oberstein* who had already submitted claims to JAMS could in theory now be required to resolve those same claims before New Era. *See* Opp. at 8-9. In response, Defendants argue that Plaintiffs are intentionally conflating this case with *Oberstein*. Defendants maintain that they "have never argued that the current Terms apply in *Oberstein*, that the *Oberstein* named plaintiffs must arbitrate at New Era, or that any claims filed prior to when the Terms were updated should go to New Era." Reply at 7. Defendants also cite

---

nonessential recreational activities. Indeed, such activities in the present case account for hundreds of millions of dollars and are, to certain persons, extremely important. Even so, some courts have held that the option to simply not participate in a nonessential recreational activity can mitigate a degree of procedural unconscionability. *See, e.g., Price v. Apple, Inc.*, No. 21-CV-02846-HSG, 2022 WL 1032472, at *3 (N.D. Cal. Apr. 6, 2022).

*Lee v. Ticketmaster L.L.C.*, No. 18-CV-05987-VC, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020), for the proposition that changes to Defendants' TOU are enforceable where a plaintiff later agrees to updated TOU, even if the plaintiff did not receive specific notice regarding changes to specific terms. But the *Lee* case does not establish that proposition.[7]

The Court does not fully understand Defendants' position regarding the applicability of the updated TOU to claims arising under prior versions of the terms of use. Specifically, it is unclear whether it is Defendants' position that *all* claims for ticket purchases made under the earlier terms would still proceed to JAMS; or alternatively, whether only those claims *already filed* with JAMS would remain with JAMS, with the remainder going to New Era (assuming the claimant has subsequently agreed to the updated TOU, but even if the claimant has not made any ticket purchases under the updated TOU). The latter situation would seem to lend credence to Plaintiffs' allegations and would warrant a greater finding of procedural unconscionability. That is, the possibility that a claimant who had purchased a ticket agreeing to arbitrate before JAMS could now be required to bring that same claim before New Era, merely by signing in to Defendants' website at some later date, indicates an element unfair surprise.[8] Indeed, it would seem many of the *Oberstein* class members would fall into this category, and Defendants do not explain their contention that the TOU would not apply to the *Oberstein* named plaintiffs. The Court would seek clarity on this issue at the hearing.

## C. Substantive Unconscionability

Substantive unconscionability arises when a provision is so "overly harsh or one-sided" that it falls outside the "reasonable expectations" of the non-drafting party. *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77 at 88 (2003) *(quoting Armendariz*, 24 Cal. 4th at 113-14). It is not enough that terms are slightly one-sided or confer more benefits on a particular party; a

---

[7] The district court's opinion in *Lee* does not hold that changes to Defendants' TOU are enforceable where a plaintiff later agrees to an updated TOU, *even if the plaintiff did not receive specific notice regarding changes to specific terms*. The latter proposition is not mentioned in the decision. *See* 2019 WL 9096442. The Ninth Circuit in affirming *Lee* responded to plaintiff-appellant's citation to a case which held that "[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." *Douglas v. U.S. Dist. Court for Cent. Dist. of California*, 495 F.3d 1062, 1066 (9th Cir. 2007). However, the Circuit merely distinguished the cases and did not establish any binding precedent for purposes of this lawsuit.

[8] Such a situation would be distinguishable from *Lee*, because "Lee assented to terms that included an arbitration clause *when purchasing tickets*." *Lee*, 2019 WL 9096442, at *1 (emphasis added).

9

**3-ER-306**

substantively unconscionable term must be so unreasonable and one-sided as to "shock the conscience." *Am. Software, Inc. v. Ali,* 46 Cal. App. 4th 1386, 1391 (1996). Plaintiffs argue the delegation clause is substantively unconscionable because: (1) New Era is biased in favor of Defendants and Latham; (2) the mass arbitration protocol violates due process; (3) the procedure for selecting the arbitrator violates California law; (4) various other specific procedures are unconscionable; and (5) the class action waiver provision is unconscionable. The Court will address each contention in turn.

   i.  <u>New Era's Alleged Bias</u>

  First, Plaintiffs argue that New Era is biased in favor of Defendants and Latham. *See* Opp. at 9. As evidence of such bias, Plaintiffs point to New Era's early outreach to Latham and the fact that Live Nation was New Era's "anchor client" and only source of revenue initially. *Id.* Plaintiffs further assert that "New Era actively seeks business from Latham, uses Latham as a 'Reference' for other law firms, and has strong incentives to appease them." *Id.* Defendants contest these claims as "pure speculation," and argue that pre-arbitration discovery uncovered no evidence of actual bias. Reply at 12. Specifically, Defendants assert that the evidence shows they and Latham engaged only in arm's length discussions about the potential selection of New Era, that they had no hand in drafting New Era's Rules, and that Defendants' business now makes up only a small percentage of New Era's overall revenues. *See* Reply at 3-4.

  Although Plaintiffs' allegations appear troubling, the Court is inclined to agree with Defendants that the evidence of bias may not be all Plaintiffs make it out to be. Plaintiffs cite several emails and other documents purporting to demonstrate Latham's early involvement with, support for, and influence over, New Era. Upon review, however, those documents do not seem to indicate much more than that Latham was willing to serve as a reference for New Era, that Latham believed some of its clients would be interested in New Era's ADR services, and that New Era praised Latham and considered it an "evangelist" for the company. But as Defendants point out, *Plaintiffs'* counsel herein were themselves listed alongside Latham and other law firms as one of New Era's "evangelists." While evidence that New Era is financially dependent upon Defendants' continued business could certainly create an inference of bias, Defendants cite evidence that they are far from New Era's only client and now make up a small percentage of New Era's revenue. *See* Reply at 3-4. Similarly, while Plaintiffs allege Latham was involved in shaping New Era's Rules, they have not made any concrete showing to that effect. In sum, while the Court

10

**3-ER-307**

cannot entirely rule out the possibility of some impropriety or undue influence, neither is it inclined to conclude based on this evidence that New Era is "so identified with [Defendants] as to be in fact, even though not in name, [Defendants]," or that New Era lacks even "minimum levels of integrity." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 825, 827 (1981).

In any event, whether the delegation clause is substantively unconscionable ultimately turns on whether New Era's Rules and procedures are so one-sided that it "shocks the conscience." *Am. Software, Inc.*, 46 Cal. App. 4th at 1391. Thus, even if Latham's "involvement in the development of [New Era's] Protocol may raise some concern, the ultimate question is whether the Protocol is fair and impartial – *i.e.*, one that is not predisposed more favorably to [Latham], its clients (including [Defendants]), or defendants generally compared to other generally accepted conventional arbitration rules." *McGrath v. DoorDash, Inc.*, No. 19-CV-05279-EMC, 2020 WL 6526129, at *10 (N.D. Cal. Nov. 5, 2020). The Court analyzes those Rules in greater detail below.

ii.     Mass Arbitration Protocol

Plaintiffs claim that New Era's mass arbitration procedure operates similar to a Fed. R. Civ. P. 23(b)(3) representative class action but does not comply with the due process requirements of class actions – namely, to provide non-represented parties an opportunity to be heard, an opportunity to remove themselves, and adequate representation by the represented party. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see Concepcion*, 563 U.S. at 349 (noting that these requirements would also apply to class arbitrations).

New Era's Rules governing mass arbitration apply if a neutral determines there are more than five cases presenting the same or similar evidence, witnesses, or issues of law and fact. Rules 2(x), 6(b)(ii)(1), 6(b)(iii)(3)(a). Although New Era may initially group together cases for administrative purposes, the ultimate determination as to whether those cases involve common issues is made by the neutral. Rules 2(x)(ii), 6(b)(ii)(2). Once that determination is made, three bellwethers are selected – one by each side and one according to a process determined by the neutral.[9] Rule 6(b)(iii)(3). After the neutral renders a decision in the three bellwethers, the parties must conduct settlement discussions. Rule 6(b)(4). If the parties reach an agreement, individual claimants or respondents may opt their particular case out of that settlement agreement. Rule

---

[9] The Court has a number of questions as to the selection process and the bell weather process. For example, assuming cases are brought from around the country, what effect would choice of law/conflict of laws issues have on the selection process? Who gets to select the plaintiff's bellweather case?

11

**3-ER-308**

6(b)(iii)(4). If no agreement is reached, "each party shall provide the neutral with the case(s) that such party believes involve individualized issues of law and/or fact that should not be subject to" precedent from the bellwether cases. *Id.* That precedent applies to later filed cases as well. Rules 2(y), 6(b)(iii)(5). The neutral creates a process for resolving the individualized issues in the remaining cases. Rule 6(b)(iii)(6).

Plaintiffs take issue with New Era's mass arbitration procedure, and in particular the use of bellwethers as precedent. They assert, for instance, that a claimant who brings a claim after the bellwethers had been resolved would effectively have had her case decided, in secret, before she even filed her case. Plaintiffs attempt to distinguish New Era's mass arbitration procedure from multidistrict litigation ("MDL") on this basis. In support, they cite *Home Depot USA, Inc. v. Lafarge North America, Inc.*, 59 F.4th 55 (3d Cir. 2023), where the Third Circuit held that it was impermissible to apply issue preclusion and the law of the case doctrine to individual cases within an MDL.

In response, Defendants argue that Plaintiffs have mischaracterized New Era's Rules. Defendants contend that precedent from bellwethers is not binding. Rather:

> the neutral *may* apply significant factual findings and legal determinations in one proceeding to another proceeding involving common issues. [Rule § 2(y)(i)]. Any party, however, is free to argue that a case 'involve[s] individualized issues of law and/or fact that should not be subject to [p]recedent.' [Rule 6(b)(iii)(4)(d)]. If the neutral agrees, then precedent from the bellwethers will not apply to those issues.

Reply at 10. Defendants thus conclude that New Era's mass arbitration procedures are substantively similar as MDLs in that the bellwethers do not have issue-preclusive effect.

The Court is inclined to agree with Plaintiffs that New Era's mass arbitration protocol bears a greater resemblance to a class action than an MDL especially in cases where the plaintiffs are seeking compensatory damages. Defendants argue that New Era's application of bellwether precedent is no different from an MDL, whereby "a judge may enter an order with respect to one party and then provide that it will be automatically extended to other parties if they do not come forward and show cause why it should not be applicable." *Home Depot*, 59 F.4th at 66; Reply at 10. However, as *Home Depot* makes clear, such orders are typically limited to pre-trial, case management issues – not legal findings on the merits. Here, by contrast, the neutral may apply significant factual and legal findings from all stages of the bellwether cases. In an MDL, moreover, once the pre-trial matters are resolved, the transferee court remands the cases for trial to the various transferor courts. Here, by contrast, a single neutral determines how to resolve all the individual

12

cases. While Defendants speculate that such a process "could, for example, include assigning cases to other New Era arbitrators," they offer no support for that contention. Reply at 10. Plaintiffs raise real concerns regarding the opacity with which the remaining cases are decided, and that the single arbitrator could create a bottleneck effect.

Furthermore, New Era's Rules lack critical procedural safeguards present in MDLs and class actions. For instance, the Rules do not provide notice to interest parties (the arbitrations are private) or an opportunity for them to be heard. There is no process for appointing leadership or making determinations as to adequacy of counsel. And critically, there is no opportunity for claimants to opt out, as is required for class actions maintained under Fed. R. Civ. P. 23(b)(3). In their Motion, Defendants analogize to *McGrath*, 2020 WL 6526129, at *9-11, in which Judge Chen of the Northern District found that a different mass arbitration protocol involving the use of randomly selected test cases was fair and impartial. However, "[m]ost important" to the court's determination in that case was the fact that "a claimant can choose to opt out of the arbitration process and go back to court." *Id.* No such option exists here. For these reasons, the Court is inclined to agree that the mass arbitration protocol appears to have some serious problems or at least unanswered questions and may be unfair to claimants which, therefore, evinces elements of substantive unconscionability.

     iii.    <u>Selection of the Arbitrator</u>

Next, Plaintiffs claim that New Era's mass arbitration protocol violates the California Arbitration Act's ("CAA") provisions regarding the selection of an arbitrator, which provides parties a right to disqualify any arbitrator based on a mandated disclosure statement. Plaintiffs point to three particular features of New Era's Rules that they claim violate California law: (1) New Era has the power to override a claimant's decision to disqualify an arbitrator; (2) each side, rather than each individual party, has a right to disqualify an arbitrator; and (3) a single arbitrator presides over several cases at one time. The problem with these arguments, however, is that the TOU is governed by the FAA, not the CAA. *See* TOU at 11. Plaintiffs spend much time arguing that the FAA does not preempt California unconscionability law, but nowhere do they argue that a violation of the CAA somehow renders the agreement unconscionable even where the agreement is not governed by the CAA. Moreover, Defendants have indicated that the aspects of New Era's selection process with which Plaintiffs take issue mirror the rules of JAMS and the American Arbitration Association. Thus, the Court would not find the purported contraventions of the CAA

13

to be grounds for invalidating the delegation clause.

      iv.     <u>Page and Record Limits</u>

Plaintiffs also argue that various New Era rules and procedures ("Rules") are unfair, beginning with the page and record limits. Under the Rules, complaints cannot exceed 10 pages, presentations of evidence are limited to 10 total references, and argument is limited to 15,000 characters (or approximately 5 pages).[10] *See* Opp. at 16. In response, Defendants contend that the default limits are guardrails, not mandates, and may be adjusted at the discretion of the arbitrator. Reply at 14. For instance, the Rules expressly allow for the neutral "to allow evidence in excess of the stated limits as necessary to ensure a fundamentally fair process," or "request additional evidence" and supplemental evidence or argument. Rules 2(p)(vi)-(vii), 6(a)(vii)(4). Defendants also cite the standing orders of various California district court judges with comparable page limits. Given that the arbitrator retains discretion to adjust the default limits as required, the Court would agree with Defendants that these page and record limits do not rise to the level of unconscionability. That is particularly true when keeping in mind that the only issue currently before the Court is whether the delegation clause, not the overarching arbitration agreement, is unconscionable. That is, even though a page 10 complaint might prove insufficient to allege the details of an antitrust claim, it should be sufficient to contest the enforceability of the arbitration agreement.

      v.     <u>Discovery Limits</u>

Plaintiffs further argue that New Era's discovery procedures are unconscionable. The parties agree that New Era's Expedited Arbitration procedure limits the amount of allowable discovery, but they disagree to what extent. Plaintiffs contend "there is no right to discovery" under New Era's Expedited Arbitration procedure; rather, to obtain discovery, a claimant would need to "make a request to be upgraded to New Era ADR's Standard Arbitration process," pay a fee, and get Defendants to consent. Opp. at 3-4 (second quote quoting Rule 2(o)(ii)). Defendants argue that these assertions are incorrect: First, the Rules expressly allow for discovery in Expedited Arbitration, albeit in an informal manner and at the arbitrator's discretion (*see* Rules 2(o)(iii), 2(q)(i), 6(a)(vii)-(viii)); and second, Defendants, not claimants, would not be required to

---

[10] At his deposition, New Era's corporate representative stated that this figure (*i.e.* 15,000 characters) was "extraordinarily small" and suggested it could have been a misprint, before acknowledging its accuracy. Opp. Ex. C at 123:19-125:18; 359:12-360:25.

14

**3-ER-311**

pay any fee should they wish to upgrade to Standard Arbitration (*see* TOU at 13). *See* Reply at 16-17.

The Court would generally agree with Defendants' reading of the Rules as allowing for informal discovery at the discretion of the arbitrator (though Defendants do not seem to contest that claimants would need Defendants' agreement to upgrade to Standard Arbitration). Plaintiffs cite *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004), in which the Fourth District held restrictions on discovery unconscionable. Even though the arbitrator in that case had some discretion to order discovery, the court found that was "an inadequate safety valve." *Id.* at 717. *Fitz*, however, is distinguishable because the court's decision turned on the fact that the arbitrator was "constrained by an 'impossibility' standard" – *i.e.*, it could grant discovery only if "a fair hearing would be *impossible* without" it. *Id.* at 716-17. Defendants point to subsequent cases which have distinguished *Fitz* on precisely those grounds. *See* Reply at 18 n.10. Defendants also cite case law standing for the proposition that "[l]imited discovery rights are the hallmark of arbitration." *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 689-90 (2000); *see* Reply at 17-18.

The Court is persuaded by Defendants' argument. While New Era's Rules governing Expedited Arbitration are not a model of clarity, they do at least contemplate informal, discretionary discovery (a fact New Era's representative confirmed at deposition). Thus, the Court would not find unconscionability on these grounds. *See Coast Plaza*, 83 Cal. App. 4th at 690 ("The fact that an arbitration may limit a party's discovery rights is not 'substantive unconscionability.' If it were, *every* arbitration clause would be subject to an unconscionability challenge on that ground.").

vi.    Right of Appeal

Next, Plaintiffs challenge what they characterize as a "non-mutual right of appeal" under the TOU. Opp. at 18. The TOU provides: "[I]n the event that the arbitrator awards injunctive relief against either you or us, the party against whom injunctive relief was awarded may . . . appeal that decision to JAMS."[11] TOU at 13. Plaintiffs argue that this exclusive right to appeal *grants* of injunctive relief favors Defendants. Relying on *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1070 (2003), Plaintiffs contend that the right of appeal would be valuable to a defendant

---

[11] The Court has a question as to whether this provision is correct in that it states that the appeal of an award of injunctive relief is to be heard by JAMS. The parties should address this item at the hearing.

when injunctive relief against it is granted, but only valuable to a claimant when injunctive relief is denied. Defendants, in turn, cite *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 917 (2015), for the proposition that given the "potentially far-reaching nature of an injunctive relief remedy," the review of a grant of injunctive relief furnishes a corporate defendant a "'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need."

The Court is inclined to agree with Plaintiffs that the right to appeal a grant, but not a denial, of injunctive relief is unfair to claimants. It would seem to the Court that, for all intents and purposes, claimants would be the only parties pursuing any real form of injunctive relief (certainly in the context of a mass arbitration). Thus, while the New Era appeal provision nominally applies to Plaintiffs and Defendants in equal measure, only Defendants will benefit in practice. In antitrust cases, moreover, injunctive relief is a critical remedy for vindication of the public good. A provision that unevenly affects the parties' rights to appeal decisions pertaining to that remedy – and effectively makes it harder for claimants to ever attain injunctive relief – would seem to support a finding of substantive unconscionability. As such, *Sanchez*'s reasoning that a "margin of safety" is required to protect a defendant car seller from the "broad impact" of an injunction is inapposite in the present context. *Id.* Here, it is the *denial* of an injunction that could have a "broad impact" on Plaintiffs, and by proxy, on the public.[12]

      vii.    <u>Class Action Waiver</u>

Lastly, Plaintiffs assert that the class action waiver contained in the TOU is substantively unconscionable under California law, based on the California Supreme Court's decision in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005). The *Discover Bank* rule provides that waivers of the right to a class action are unconscionable "when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Id.* at 1110. But as Plaintiffs acknowledge, the United States Supreme Court overruled *Discover Bank* in *Concepcion*, 563 U.S. 333. Plaintiffs

---

[12] The Court also notes that the parties have not address how, if at all, Plaintiffs' request in the Complaint for injunctive relief to remedy the alleged antitrust violations might affect the unconscionability analysis (*e.g.*, the extent to which delegating the right to seek injunctive relief to the arbitrator might be substantively unconscionable). The Court intends to inquire about that issue.

16

**3-ER-313**

nonetheless contend that the *Concepcion* holding does not apply here because its reasoning was premised on the notion that the *Discover Bank* rule interfered with the FAA's purpose to facilitate *bilateral* arbitrations, not mass arbitrations. While that might be true, the Court fails to see how that observation assists Plaintiffs for purposes of avoiding *Concepcion*'s preemptive effect.[13] The Court is inclined to reject Plaintiffs' reasoning, but they will have an opportunity to further expound on this argument at the hearing, should they wish.[14]

       viii.    <u>Summary</u>

In sum, the Court is unable to determine conclusively at this juncture whether New Era's Rules are so one-sided that they render the delegation clause substantively unconscionable. Plaintiffs certainly raise legitimate due process concerns regarding the lack of procedural safeguards and the potential for abuse of New Era's mass arbitration procedures. For example, the Rules do not create an opt out mechanism, nor do they provide unrepresented individuals notice or an opportunity to be heard. Furthermore, the limited right of appeal is concerning, and the discretionary nature of many of the Rules could in practice be abused in Defendants' favor. At the same time, however, the Court is not entirely persuaded based on the evidence presently before it that all of Plaintiffs' fears are substantiated. Moreover, the Court has outstanding questions it intends to address with the parties before issuing a final decision as to this matter.

## D. Severability

Lastly, the Court notes that even if Plaintiffs were to persuade the Court that Defendants' selection of New Era is unconscionable, it is not clear that would save Plaintiffs from having to proceed to arbitration. That is because the TOU contains a clause stating that in the event New Era cannot conduct the arbitration for any reason, the arbitration will instead be conducted by a different arbitration provider. Plaintiffs respond by urging the Court to refuse to enforce the entire agreement because it is "permeated" by unconscionable provisions. Opp. at 24. However, the provisions Plaintiffs claim are unconscionable almost exclusively relate to the selection of New Era. Plaintiffs may believe that *New Era*'s Rules are permeated by unconscionable provisions, but

---

[13] There is no indication that once the Supreme Court considers the creation and use of mass arbitrations, it will reconsider its ruling that the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures.

[14] Relatedly, Plaintiffs spend a great deal of time arguing that the FAA does not preempt California unconscionability law. Defendants do not dispute that California unconscionability law applies, and so the Court need not address these arguments.

17

**3-ER-314**

that fact would not seem to render other provisions in Defendants' TOU unconscionable.[15]

## V. Conclusion

Based on the foregoing discussion, the Court reserves final decision on Defendants' Motion at this time, pending oral argument and potentially additional briefing.

---

[15] However, if it is determined that the arbitration will not be conducted by New Era, would that mean that it would be conducted by JAMS; and, if JAMS does not have a procedure for mass arbitration, then the arbitration would be conducted on an individual basis?

18

**3-ER-315**