**No. 23-55770**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**SKOT HECKMAN; LUIS PONCE; JEANENE POPP; JACOB ROBERTS,**
**on behalf of themselves and all those similarly situated,**

*Plaintiffs-Appellees*,

v.

**LIVE NATION ENTERTAINMENT, INC.; TICKETMASTER LLC,**

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Central District of California
No. 2:22-cv-00047-GW-GJS (George H. Wu, District Judge)

### REPLY BRIEF OF LIVE NATION ENTERTAINMENT, INC.
### AND TICKETMASTER LLC

### UNDER SEAL

Roman Martinez
Uriel Hinberg
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Sadik Huseny
LATHAM & WATKINS LLP
300 Colorado Street
Suite 200
Austin, TX 78701
(737) 910-7300

January 3, 2024

Timothy L. O'Mara
  *Counsel of Record*
Andrew M. Gass
Alicia R. Jovais
Robin L. Gushman
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600
tim.omara@lw.com

*Counsel for Defendants-Appellants*
*Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 3

I.     THE DELEGATION CLAUSE IS NOT UNCONSCIONABLE .................. 3

    A.     The Delegation Clause Is Not Procedurally Unconscionable .............. 3

        1.     Contracts Of Adhesion Are Routinely Enforced ....................... 3

        2.     There Was No Surprise ................................................. 5

        3.     There Was No Oppression .............................................. 8

    B.     The Delegation Clause Is Not Substantively Unconscionable .......... 10

        1.     New Era's Arbitrator-Selection Procedures Do Not Make The Delegation Clause Unconscionable ................................... 11

        2.     The Limited Right To Appeal Grants Of Injunctive Relief Has No Bearing On The Delegation Clause ........................... 13

        3.     New Era's "Precedent" Rules Do Not Render The Delegation Clause Unconscionable ........................................... 15

        4.     Default Limits On Complaints, Briefing, And Discovery Do Not Implicate The Delegation Clause ................................ 19

    C.     The District Court Correctly Rejected Plaintiffs' Meritless Alternative Arguments ........................................................ 23

        1.     Plaintiffs Cannot Resurrect *Discover Bank* .......................... 23

        2.     Plaintiffs' Bias Allegations Are Baseless .............................. 24

II.     THE PARTIES' FALLBACK AGREEMENT MUST BE HONORED ...... 26

    A.     The Parties' Agreement To Arbitrate Before A Backup Arbitrator Must Be Respected ................................................. 26

    B.     At Minimum, This Case Must Be Arbitrated Before JAMS ............. 30

CONCLUSION ..................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adair v. Stockton Unified School District*,
    77 Cal. Rptr. 3d 62 (Ct. App. 2008) ....................................................27

*Allen v. Santa Clara County Correctional Peace Officers Association*,
    38 F.4th 68 (9th Cir. 2022) .............................................................32

*Arbitech, LLC v. Hackney*,
    2017 WL 4296101 (Cal. Ct. App. Sept. 28, 2017)......................30, 31

*Arconic, Inc. v. APC Investment Co.*,
    969 F.3d 945 (9th Cir. 2020) ..........................................................13

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
    6 P.3d 669 (Cal. 2000) ...................................................................28

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).................................................2, 19, 23, 24

*Baltazar v. Forever 21, Inc.*,
    367 P.3d 6 (Cal. 2016) .....................................................................5

*Baxter v. Genworth North America Corp.*,
    224 Cal. Rptr. 3d 556 (Ct. App. 2017) ...........................................22

*Belton v. Comcast Cable Holdings, LLC*,
    60 Cal. Rptr. 3d 631 (Ct. App. 2007) ...............................................4

*Berman v. Freedom Financial Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) .............................................................6

*Bielski v. Coinbase, Inc.*,
    87 F.4th 1003 (9th Cir. 2023) ......................................................5, 19

*Cal-State Business Products & Services, Inc. v. Ricoh*,
    16 Cal. Rptr. 2d 417 (Ct. App. 1993) ...............................................7

*Capili v. Finish Line, Inc.*,
    116 F. Supp. 3d 1000 (N.D. Cal. 2015)...........................................29

**Page(s)**

*Capriole v. Uber Technologies, Inc.*,
7 F.4th 854 (9th Cir. 2021) ...............................................................25

*Circuit City Stores, Inc. v. Mantor*,
335 F.3d 1101 (9th Cir. 2003) ...........................................................10

*Davis v. Kozak*,
267 Cal. Rptr. 3d 927 (Ct. App. 2020) ..............................................22

*Dotson v. Amgen, Inc.*,
104 Cal. Rptr. 3d 341 (Ct. App. 2010) ..............................................22

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018) .........................................................................1

*Franco v. Greystone Ridge Condominium*,
252 Cal. Rptr. 3d 149 (Ct. App. 2019) ................................................8

*Graham v. Scissor-Tail, Inc.*,
623 P.2d 165 (Cal. 1981) ......................................................................5

*Green Tree Financial Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000) ..............................................................................18

*In re Holl*,
925 F.3d 1076 (9th Cir. 2019) .............................................................6

*Kindred Nursing Centers Ltd. Partnership v. Clark*,
581 U.S. 246 (2017) .................................................................1, 11, 12

*Lane v. Francis Capital Management LLC*,
168 Cal. Rptr. 3d 800 (Ct. App. 2014) ................................................6

*Lhotka v. Geographic Expeditions, Inc.*,
104 Cal. Rptr. 3d 844 (Ct. App. 2010) ................................................4

*Mayo v. Dean Witter Reynolds, Inc.*,
258 F. Supp. 2d 1097 (N.D. Cal. 2003) .............................................12

*Mercuro v. Superior Court*,
116 Cal. Rptr. 2d 671 (Ct. App. 2002) ..............................................22

iii

**Page(s)**

*Modiano v. BMW of North America LLC*,
2021 WL 5750460 (S.D. Cal. June 29, 2021) ...................................................12

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) .............................................................10, 18, 19

*In re NFL's Sunday Ticket Antitrust Litigation*,
2016 WL 6768841 (C.D. Cal. May 23, 2016)...................................................18

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023) ...............................................................................30

*OTO, L.L.C. v. Kho*,
447 P.3d 680 (Cal. 2019) ......................................................................................6

*Ovitz v. Schulman*,
35 Cal. Rptr. 3d 117 (Ct. App. 2005) ................................................................12

*Pinela v. Neiman Marcus Group, Inc.*,
190 Cal. Rptr. 3d 159 (Ct. App. 2015) ..............................................................28

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) .........................................................10, 17, 18, 27, 28

*Rent-A-Center West, Inc. v. Jackson*,
561 U.S. 63 (2010)................................................................................................2

*Roman v. Superior Court*,
92 Cal. Rptr. 3d 153 (Ct. App. 2009) ................................................................27

*Roussos v. Roussos*,
275 Cal. Rptr. 3d 196 (Ct. App. 2021) ..............................................................13

*Sanchez v. Valencia Holding Co.*,
353 P.3d 741 (Cal. 2015)......................................................................10, 14, 15

*Sanfilippo v. Match Group, LLC*,
2021 WL 4440337 (9th Cir. Sept. 28, 2021) ......................................................8

*Serafin v. Balco Properties, LLC*,
185 Cal. Rptr. 3d 151 (Ct. App. 2015) ................................................................3

iv

**Page(s)**

*Shen v. United Parcel Service*,
2022 WL 17886012 (C.D. Cal. Nov. 21, 2022) ...................................6

*Sweeney v. Tractor Supply Co.*,
390 F. Supp. 3d 1152 (N.D. Cal. 2019)...............................................6

*Szetela v. Discover Bank*,
118 Cal. Rptr. 2d 862 (Ct. App. 2002) ..............................................10

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
59 F. Supp. 2d 1067 (S.D. Cal. 1999)................................................31

*United States v. McAdory*,
935 F.3d 838 (9th Cir. 2019) .............................................................28

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022)...........................................................................24

*Wells Fargo Bank, N.A. v. Bank of America NT & SA*,
38 Cal. Rptr. 2d 521 (Ct. App. 1995) ...............................................30

**STATUTES**

9 U.S.C. § 2 ........................................................................................11

9 U.S.C. § 5 ........................................................................................11

Cal. Civ. Code § 1530........................................................................30

Cal. Civ. Code § 1643........................................................................17

Cal. Civ. Code § 1670.5(a) ..................................................................9

**INTRODUCTION**

At all times relevant here, Plaintiffs and Live Nation have freely agreed to arbitrate any disputes arising between them. For years, their designated arbitration provider was JAMS, but in July 2021, Live Nation switched providers. It did so to maintain arbitration as a workable forum for resolving disputes, despite the growing phenomenon of plaintiffs' firms seeking to extract blackmail settlements by threatening financially ruinous mass arbitration filings that could not realistically be adjudicated under JAMS's rules. After this change, Plaintiffs again repeatedly agreed to arbitrate any disputes with Live Nation and expressly agreed to the new arbitration provider, New Era. They also agreed that, if New Era could not arbitrate, FairClaims or another mutually-agreeable provider would do so.

Plaintiffs do not—and cannot—deny that this lawsuit seeks to cancel those agreements. As their answering brief makes clear, Plaintiffs brazenly seek to avoid arbitration *altogether* and litigate their antitrust claims in court based on alleged shortcomings unique to New Era. None of their arguments holds water, and all of them violate the FAA's core commands "to place arbitration agreements 'on equal footing with other contracts,'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246 (2017), and to enforce them "according to their terms," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).

On procedural unconscionability, Plaintiffs have no good answer for the fact that they expressly assented to the change to New Era after having every opportunity to review the arbitration agreement and New Era's rules. The procedures Live Nation used to modify its terms and procure Plaintiffs' assent were identical to those repeatedly blessed by this Court in other cases involving the same websites.

On substantive unconscionability, Plaintiffs treat the delegation clause as an afterthought, instead focusing their attack on the agreement as a whole, in violation of *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63 (2010). They also mischaracterize New Era's mass arbitration protocol, flout the text of New Era's rules, ignore that arbitration agreements (like other contracts) must be construed in favor of enforceability, overlook that streamlined proceedings are a hallmark of arbitration, and defy binding precedent. Plaintiffs even try to resurrect two groundless arguments the district court rightly rejected, one of which shamelessly tries to circumvent *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

The parties' agreement to delegate enforceability questions to New Era should be upheld. But even if New Era were disqualified, this Court should honor the parties' agreement to arbitrate before FairClaims, a provider Plaintiffs have never challenged. Plaintiffs scarcely grapple with that fallback agreement, or with the Terms' additional backup of a mutually agreeable arbitrator. Plaintiffs also ignore the Terms' global severability clause, which favors severance in a situation—like

2

this one—where all the alleged unconscionability flows from the single provision designating New Era. And they fail to plausibly explain why, if the current arbitration agreement is unenforceable, JAMS should not arbitrate pursuant to the parties' prior agreement. One way or another, this case must be arbitrated.

## ARGUMENT

## I.     THE DELEGATION CLAUSE IS NOT UNCONSCIONABLE

### A.     The Delegation Clause Is Not Procedurally Unconscionable

The cornerstone of the decision below was a finding that switching to New Era involved an "extreme amount of procedural unconscionability." 1-ER-11. That is mistaken. Live Nation clearly presented the delegation clause in the Terms, with a conspicuous hyperlink to New Era's rules. *See* Appellants' Opening Brief ("AOB") 26-28. Plaintiffs were neither forced to purchase tickets nor misled about the bargain involved. *Id.* at 24-26. Instead, they repeatedly assented to the Terms— including the delegation clause. *Id.* Plaintiffs are wrong to insist that the delegation clause evinces "extreme" procedural unconscionability because it was part of a contract of adhesion supposedly imposed with unfair surprise and oppression.

#### 1.     Contracts Of Adhesion Are Routinely Enforced

The parties agree that the Terms "were a contract of adhesion," Appellees' Answering Brief ("RAB") 22-24, yielding only a "minimal" level of procedural unconscionability, *Serafin v. Balco Props., LLC*, 185 Cal. Rptr. 3d 151, 162 (Ct.

App. 2015).  Here, that presumptive level is even lower because Plaintiffs bought tickets for "recreational activit[ies]" that can be purchased elsewhere, or "forgone" entirely.  *Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 650 (Ct. App. 2007); *see* AOB25-26.

Plaintiffs' contract-of-adhesion argument boils down to an unconvincing quarrel with that last point.  While Plaintiffs stress that contracts for recreational activities are not "'immune from analysis for procedural unconscionability,'" RAB23, their own lead case acknowledges that the "availability of market alternatives" for "nonessential" activities is "relevant to the existence, and degree, of oppression," *Lhotka v. Geographic Expeditions, Inc.*, 104 Cal. Rptr. 3d 844, 851 (Ct. App. 2010).

The ticket purchases at issue were for entertainment events, something plainly "nonessential" under *Lhotka*.  Plaintiffs counter that "there *were* no market alternatives, given Live Nation's market dominance."  RAB23.  But their complaint concedes that tickets can be purchased elsewhere.  2 ER 226 (¶ 71).  And regardless, no authority suggests that unproven antitrust allegations counter California law's treatment of nonessential activities as unlikely candidates for unconscionability. The critical point is that Plaintiffs could have simply refrained from buying tickets to these nonessential activities altogether if they did not wish to arbitrate before New Era.  Instead, Plaintiffs expressly consented to that arrangement.  So while

California courts "generally enforce[]" contracts of adhesion, the case for enforcement is even stronger here. *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016).

### 2.    There Was No Surprise

Plaintiffs also claim "surprise," which contributes to procedural unconscionability "where 'the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party.'" *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1013 (9th Cir. 2023); *see* RAB24-28. The nub of that inquiry here is whether Plaintiffs had sufficient "notice" that enforceability issues would be delegated to New Era. *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 173 n.18 (Cal. 1981); *see* AOB33.

The answer is yes. Plaintiffs made numerous ticket purchases after the July 2021 revisions, each time expressly acknowledging that they read and agreed to the Terms. AOB12-14. The delegation clause itself was presented in the hyperlinked Terms in the exact manner that this Court and others have repeatedly upheld. *See* AOB6 & n.2 (collecting cases). And the top of the Terms' very first page clearly indicated they were revised on July 2, 2021. 2-ER-117. Any customer could read the agreement—which plainly identified New Era as the arbitration provider—and decide if it presented a reasonable bargain. AOB26-27.

Plaintiffs complain that there was "no email, no redline, and no explanation." RAB25.  But companies are not required "to publish a redline version of the terms any time an amendment is made." *Shen v. United Parcel Serv.*, 2022 WL 17886012, at *4-6 (C.D. Cal. Nov. 21, 2022) (rejecting procedural unconscionability challenge).  Nor must they "bring an arbitration clause to the attention of the consumer." *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019).  It is enough that the revised Terms were readily available and clearly presented.  Plaintiffs cite no case holding otherwise.[1]

Plaintiffs also argue that New Era's mass arbitration procedures were "hidden in the separate New Era Rules." RAB25.  But lengthy arbitration rules are *never* spelled out in arbitration agreements.  And Plaintiffs are wrong to fault Live Nation for "'not attaching [New Era's] rules.'" RAB28.  Making the referenced arbitration rules "easily accessible" via hyperlink was enough.  *Lane v. Francis Cap. Mgmt. LLC*, 168 Cal. Rptr. 3d 800, 812 (Ct. App. 2014); *accord Sweeney v. Tractor Supply Co.*, 390 F. Supp. 3d 1152, 1159 (N.D. Cal. 2019).

---

[1]  Plaintiffs fault Live Nation for citing cases focused on "[c]ontract formation," not procedural unconscionability  RAB27.  But facts bearing on contractual assent are equally relevant to procedural unconscionability's surprise inquiry, as *Shen* recognized in rejecting a procedural unconscionability argument for the same fair-notice reason it rejected a contract-formation argument.  2022 WL 17886012, at *4, *6; *compare Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022) (finding no assent because contract was "barely legible"), *with OTO, L.L.C. v. Kho*, 447 P.3d 680, 691 (Cal. 2019) (finding surprise for same reason).

Plaintiffs next accuse Live Nation of having "misled" customers. RAB26. Because the Terms reference "'individual arbitration'" without "mention[ing] bellwethers" or "mass arbitration," Plaintiffs argue, customers would "reasonably expect that they were signing up for traditional, bilateral arbitration." *Id.* But proceedings conducted under New Era's mass arbitration rules are *not* representative proceedings: As New Era has explained, every case is handled individually through bilateral arbitration, and bellwether determinations are not automatically binding on the rest. New Era uses procedures modeled after federal MDL proceedings to fairly and efficiently resolve thousands of similar claims. Those procedures do not change the fundamentally individual character of each case or eliminate individual plaintiffs' right to present evidence or argument. *See* AOB9-11, 32, 45-51; *infra* at 15-17.

Finally, Plaintiffs claim that customers could not reasonably expect New Era's mass arbitration procedures because few customers are "up-to-date on mass arbitration developments." RAB27-28. That misses the point. A contractual provision is within an opposing party's "reasonable expectations" if it is "not irrational" given the circumstances, "and there is no evidence the forum was selected" to "thwart an opponent's ability to litigate." *Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*, 16 Cal. Rptr. 2d 417, 426 (Ct. App. 1993). Given the rise of mass arbitration filings, it was eminently reasonable for Live Nation to ensure the

viability of arbitration by switching to an arbitration provider with rules and procedures addressing such filings. *See* Chamber Amicus Br. 18-24.

### 3.    There Was No Oppression

Plaintiffs also claim oppression.  They argue that "by unilaterally changing its arbitration provision" to New Era as to accrued claims, Live Nation "breached" an "implied covenant" that bars a party "'from [unilaterally] modifying an arbitration agreement once a claim has accrued or become known to it.'"  RAB28-30.  But the change here was *not* unilateral:  Plaintiffs repeatedly assented to the revised Terms by clicking buttons and checking boxes.    AOB14, 36-37.    Under these circumstances, California law approves enforcing the arbitration agreement "to cover all claims, regardless of when they accrued."  *Franco v. Greystone Ridge Condominium*, 252 Cal. Rptr. 3d 149, 151 (Ct. App. 2019); *accord Sanfilippo v. Match Grp., LLC*, 2021 WL 4440337, at *2 (9th Cir. Sept. 28, 2021).

Plaintiffs respond that before and after the July 2021 amendments, the Terms enabled Live Nation to "make changes" that become "effective immediately." RAB29 (quoting 2-ER-144).  But that standard language just means the Terms are *live* once posted.  The next sentence makes clear that changes are not *binding* until customers "agree to the changes" by "continuing to use th[e] Site after that date"— i.e., by taking further affirmative action.  2-ER-117.  Even if mere browsing does not constitute such assent in California, RAB31-32, the Terms apply in all fifty

states, and some follow different rules, AOB37. Live Nation is not asserting—and does not believe—that the July 2, 2021 Terms apply to any California consumer who merely browses the websites. And again, here Plaintiffs *expressly assented* to Live Nation's current Terms by clicking buttons and checking boxes. AOB37. Treating such express assent as binding and enforceable is fair and consistent with California law, not procedurally unconscionable.

Plaintiffs later repackage this argument, calling the "current" arbitration agreement "illusory" because the "*current Terms* allow it to unilaterally amend the arbitration clause" in the future. RAB30. Plaintiffs concede that the "implied duty of good faith" would normally save a unilateral modification clause from being illusory by requiring the contract drafter "not to affect known or accrued claims." *Id.* But Plaintiffs argue that "Live Nation can no longer invoke the implied duty" because Live Nation previously "violated [that duty] in posting its [July 2021] Terms" switching from JAMS to New Era. *Id.* As just explained, however, the Terms do *not* contemplate unilateral modifications (i.e., without assent), so Live Nation did *not* breach any implied duty by posting the revised Terms in July 2021. And even if the current modification clause was somehow problematic, the proper course would be to "limit [its] application" to "avoid any unconscionable result" or simply to sever it. Cal. Civ. Code § 1670.5(a).

9

Finally, Plaintiffs invoke *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862 (Ct. App. 2002), to argue that "even if the change was not unilateral, the way [Live Nation] changed the contract was oppressive" because it was a "minimal-notice, take-it-or-leave-it change in the middle of an ongoing contractual relationship." RAB32-33. But *Szetela* merely held that modifying a contract of adhesion in the middle of an ongoing contractual relationship establishes the same minimal degree of procedural unconscionability it always does. 118 Cal. Rptr. 2d at 867. And the case nowhere addresses (let alone prohibits) changing terms "while in the middle of an ongoing" lawsuit brought by *other* people. RAB33.

## B.    The Delegation Clause Is Not Substantively Unconscionable

Substantive unconscionability's "paramount consideration" is "mutuality." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280-81 (9th Cir. 2006). Only contractual provisions that are "so one-sided as to shock the conscience" qualify. *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1107 (9th Cir. 2003).[2]

Because the delegation clause involved, at most, minimal procedural unconscionability, Plaintiffs had to show severe substantive unconscionability. *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017). Even the

---

[2]    Plaintiffs wrongly fault Live Nation for invoking California's shocks-the-conscience standard, RAB34-35, which accurately captures the "rigorous and demanding" showing California law requires, *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 749 (Cal. 2015).

district court agreed Plaintiffs could not do that, despite finding five "elements" supposedly supporting substantive unconscionability—only three of which it tied to the delegation clause.  1-ER-29–30 & n.21.  Plaintiffs likewise treat the delegation clause as an afterthought, while doubling down on the district court's other mistakes.

### 1. New Era's Arbitrator-Selection Procedures Do Not Make The Delegation Clause Unconscionable

The FAA plainly preempts CAA provisions creating a right to disqualify arbitrators based on state-mandated disclosure requirements.  AOB41-42.  The district court's contrary conclusion rests on an obvious error of law, and Plaintiffs' strained defense of that error should be rejected.

Most importantly, Plaintiffs do not even acknowledge the FAA's command that a contractual "method of naming or appointing" the arbitrator "*shall be followed*," even if state law requires a different one.  9 U.S.C. § 5 (emphasis added).  That federal-law mandate expressly preempts Plaintiffs' CAA provisions.

This conclusion is reinforced by 9 U.S.C. § 2, which requires enforcement of arbitration agreements, unless a "*generally applicable* contract defense[]" applies.  *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017) (emphasis added).  That provision bars courts from "invalidat[ing] an arbitration agreement based on" state "rules that 'apply only to arbitration.'"  *Id.*  Rules found in the California Arbitration Act entitled "Neutral arbitrators" and "Disqualification of neutral arbitrators" surely qualify.  AOB41-42.  Plaintiffs' characterization of these

11

CAA provisions as "innocuous," RAB52, changes nothing. *See, e.g.*, *Mayo v. Dean Witter Reynolds, Inc.*, 258 F. Supp. 2d 1097, 1114 n.18 (N.D. Cal. 2003) (rejecting analogous argument).[3]

Although Plaintiffs concede that *Modiano v. BMW of North America LLC*, 2021 WL 5750460 (S.D. Cal. June 29, 2021), rejected their position, they insist the decision offered "no analysis." RAB54. But *Modiano* carefully analyzed the issue. 2021 WL 5750460 at *2 & n.1. As Live Nation has explained, the only cases without analysis are the two the district court relied upon. AOB42.

Plaintiffs also argue that a third case—*Ovitz v. Schulman*, 35 Cal. Rptr. 3d 117 (Ct. App. 2005)—supports them. RAB54. Not so: *Ovitz* held that CAA standards for vacating arbitration awards in California courts were not preempted by 9 U.S.C. § 10(a)(2), because that separate FAA provision—not at issue here—applies "only to federal district courts," demonstrating "congressional intent not to preempt state law." 35 Cal. Rptr. 3d at 133. *Ovitz* is thus irrelevant.

Plaintiffs briefly assert that other arbitration providers "routinely follow[]" the CAA's arbitrator-selection procedures. RAB50. That is incorrect. For example, JAMS's rank-and-strike procedure does not provide an absolute "right to disqualify

---

[3] Purportedly similar "ethics rules" for judges, RAB53-54, do not make the CAA provisions *themselves* "generally applicable," much less a "contract defense[]," *Kindred Nursing*, 581 U.S. at 251.

[an arbitrator]," with no "limit on the number" of disqualifications and no "good faith or good cause requirement." *Roussos v. Roussos*, 275 Cal. Rptr. 3d 196, 201 (Ct. App. 2021); *see* 2-ER-92 (JAMS rule). No one thinks JAMS's procedure is unenforceable—for good reason: The CAA is clearly preempted.

Dead to rights on the merits, Plaintiffs claim that Live Nation did not raise FAA preemption below. RAB50-51. The district court thought otherwise, noting that Live Nation "argue[d] that [these CAA] provisions are preempted by the FAA." 1-ER-26. Plaintiffs themselves agreed. FER-15–16. Live Nation "did not forfeit" FAA preemption, which was "passed upon by the district court" in any event. *Arconic, Inc. v. APC Inv. Co.*, 969 F.3d 945, 956 n.8 (9th Cir. 2020).

## 2. The Limited Right To Appeal Grants Of Injunctive Relief Has No Bearing On The Delegation Clause

Like the district court, Plaintiffs assert that the Terms were substantively unconscionable because they permit appeals from the grant, but not the denial, of injunctive relief. RAB48-50. That argument has no bearing on the delegation clause—and it is foreclosed by *Sanchez* in any event.

Plaintiffs say the limited appeal right is relevant to the delegation clause because customers opposing arbitration could "seek an injunction barring the application of the unconscionable arbitration clause." RAB50. But the district court itself doubted that improbable notion, 1-ER-29 & n.21, and rightly so: It makes no sense. Just as Plaintiffs did here, customers can oppose arbitration without seeking

injunctive relief. An arbitrator who agrees would simply deem the agreement unenforceable. AOB44. There is no need for injunctive relief, and Live Nation enjoys no unfair right to appeal such a ruling.[4]

In any event, the California Supreme Court approved an identical appeal right in *Sanchez*, explaining that the "broad impact that injunctive relief may have on [a company's] business" justifies limiting appeal rights to "grants of injunctive relief.'" 353 P.3d at 753; *see* AOB44-45. That holding governs here.

Plaintiffs respond that the appeal right in *Sanchez* was supposedly "mutual in substance" because the parties there could also appeal "a take-nothing defense verdict" and "a high plaintiff's verdict." RAB49. The California Supreme Court saw things differently: It analyzed "the appeal threshold provision" (the one permitting appeals for certain monetary awards) separately from "the term providing that only arbitral grants of injunctive relief are subject to" appeal (the one relevant here), while expressly treating the latter as *not* mutual. *Sanchez*, 353 P.3d at 752-53.

Plaintiffs also echo the district court's argument that "the risks of injunctive relief here are equally high-stakes for both sides" because "denial of injunctive relief

---

[4]     Later, Plaintiffs raise the possibility of "an injunction to prevent Live Nation from defanging any bellwether cases it loses." RAB55. Whatever that means, Plaintiffs admit that the arbitrator in this hypothetical scenario would have *already* "enforce[d]" the arbitration clause, *id.*, so it is irrelevant to a threshold enforceability dispute.

for a bellwether plaintiff would result in the denial for all plaintiffs." RAB49-50. Besides mischaracterizing bellwether decisions as automatically binding, *infra* at 15-17, this argument misunderstands *Sanchez*'s main point—that a company's interests in appealing the grant of injunctive relief are fundamentally different from consumers' interests in appealing the denial of such relief. *Sanchez*, 353 P.3d at 753; *see* AOB44-45. The same logic applies here, so *Sanchez* controls.

### 3. New Era's "Precedent" Rules Do Not Render The Delegation Clause Unconscionable

The linchpin of Plaintiffs' substantive unconscionability argument—and their basis for mischaracterizing New Era's mass arbitration protocol as representative proceedings—is the notion that New Era's rules require bellwether determinations to be mechanically applied across all other cases. RAB35-43. Not even the district court believed that. 1-ER-22. Application of bellwether determinations is discretionary. Plaintiffs' contrary arguments defy the text of New Era's rules, ignore that any ambiguity must be construed in favor of enforceability, and disregard that "Precedent" applies equally to all parties.

a. New Era does not treat precedent as automatically binding on future cases. AOB47-48. The version of Rule 2(y)(i) at issue says that an arbitrator "*may* apply" bellwether determinations. 2-ER-178 (emphasis added); *see* AOB47. And Rule 6(b)(iii)(5)(a) provides that bellwether determinations "will act as Precedent on subsequent cases" involved in the arbitration "*as determined by*" the arbitrator, thus

confirming "Precedent" is discretionary. 2-ER-193 (emphasis added). New Era explicitly clarified this point, too, both in a sworn declaration and in amendments to the rules. AOB15.

Plaintiffs do not mention Rule 2(y)(i)'s use of the discretionary "may." They ignore Rule 6(b)(iii)(5)(a)'s caveat that "Precedent" applies in mass arbitration proceedings only "as determined by" the arbitrator. And they nowhere acknowledge this Court's duty to resolve ambiguities in favor of enforceability. Instead, Plaintiffs cynically embrace the most anti-plaintiff interpretation in order to serve their here-and-now goal of avoiding arbitration.

Lacking textual support for their view that "Precedent" unfailingly governs subsequent cases, Plaintiffs lean on cherry-picked comments from New Era's Rule 30(b)(6) witness. RAB37. But that witness analogized New Era's use of "Precedent" to MDL proceedings (where lead decisions are *not* binding on other cases), while remarking that "the whole goal is to make sure" that "if you have got something to say and be heard, that you have the opportunity to do that." 4-SER-431–35. And just before mentioning "a judge" deciding "if they were bound by the Second Circuit Court of Appeals," he emphasized that "all you would have to do" to raise new or better legal arguments "is raise your hand and say" so. 4-SER-463–65.

At any rate, the witness later cleared up any confusion in a declaration, and New Era published updated rules clarifying that applying "Precedent" is discretionary. 2-ER-28, 82. There is no reason to reject that reasonable reading, particularly given the imperative to resolve ambiguities in favor of enforceability. *See* Cal. Civ. Code § 1643; *Poublon*, 846 F.3d at 1259.

Plaintiffs ultimately resort to arguing that "Precedent" *has* to be binding, because "the entire point of New Era's Rules is providing 'special rules for adjudicating large numbers of virtually identical cases.'" RAB38. But even persuasive precedent facilitates efficient adjudication and settlement, as MDLs demonstrate: 97% of MDL cases are terminated before remand to the originating courts. Chamber Amicus Br. 21.[5]

b. Plaintiffs eventually pivot to a backup argument that the "Precedent" rules would be unconscionable even if New Era arbitrators "*could* allow new argument or evidence" when necessary and "*could* provide 'a fair arbitration process where each claimant is provided a sufficient opportunity to be heard.'" RAB42 (emphasis added) (quoting 1-ER-22–23). But, Plaintiffs argue, they could "just as easily" do otherwise, and "pure discretion is not enough." *Id.* That argument gives the game

---

[5] Plaintiffs' "perpetual bottleneck" concerns are likewise misplaced. RAB39. Their counsel—mass arbitration pioneers—know full well that "not even the largest arbitration providers can simultaneously arbitrate tens of thousands of cases." Chamber Amicus Br. 22.

away:  Courts must "assume that the arbitrator will operate in a reasonable manner in conformity with the law," *Poublon*, 846 F.3d at 1265, and the mere "risk" of unfairness is insufficient, *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).  Plaintiffs' argument flouts those established principles.  AOB50-51.

c.  Even if "Precedent" were binding, that would not be substantively unconscionable—because that regime would apply equally to both parties, satisfying the "paramount consideration" of "mutuality."  *Nagrampa*, 469 F.3d at 1281. Plaintiffs argue that binding precedent would not be "symmetric" because Live Nation "*litigated* the bellwether" and would have had "an opportunity to be heard," unlike "future claimants."  RAB40.  That incorrectly assumes Live Nation would necessarily be involved in every bellwether case.  Mass arbitration filings can be brought against multiple defendants, only a subset of which might litigate any given bellwether—as often happens in MDLs, particularly involving antitrust claims.  *See, e.g.*, *In re NFL's Sunday Ticket Antitrust Litig.*, 2016 WL 6768841 (C.D. Cal. May 23, 2016).

Plaintiffs' concern rings hollow as a practical matter, too.  Because mass arbitrations are almost invariably filed by one law firm (or coordinated group of firms), the idea that "Live Nation would know what happened" in bellwethers "but no potential claimants would" is fanciful, RAB36.  The lawyers (and the arbitrator)

would know what was decided. Any residual "lack of mutuality" would "establish[], at most, a low level of substantive unconscionability." *Bielski*, 87 F.4th at 1015.

### 4. Default Limits On Complaints, Briefing, And Discovery Do Not Implicate The Delegation Clause

a. The district court correctly concluded that New Era's default limits on complaints, initial submissions, and final arguments do "not, standing alone, rise to the level of unconscionability"—and certainly not as to the delegation clause. 1-ER-24.[6] Plaintiffs' contrary arguments improperly focus on "vindicat[ing]" antitrust claims, rather than resolving threshold enforceability disputes. RAB46. They also do not square with the text of New Era's rules or the interpretive principle that ambiguities must be resolved in favor of enforceability, and they ignore that "streamlined proceedings" are a standard and desirable feature of arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

To begin, New Era's default limitations do not lack "mutuality." *Nagrampa*, 469 F.3d at 1281. They apply equally to both sides. AOB52. Plaintiffs counter that "threshold issues 'shall be argued and decided'" at "'hearings on the merits of the case.'" RAB55 (quoting 2-ER-178 (Rule 2(z)(ii)). But to whatever extent Plaintiffs must "imperil their underlying [antitrust] claim" to challenge enforceability of the arbitration agreement, *id.*, Live Nation must likewise imperil its merits defense while

---

[6] Contrary to Plaintiffs' assertion, RAB47 n.9, the district court adopted this part of its August 10 Tentative Ruling, 1-ER-24.

resisting that procedural attack. Space is equally "precious" for both sides. RAB55-56.

At any rate, Plaintiffs exaggerate the impact on their ability to argue unenforceability. For example, although they suggest that the ten-page limit for *complaints* is unfair, RAB11-12, there is no reason Plaintiffs would need to address unconscionability in their complaint. *See* 2-ER-187–88 (Rule 6(a)(ii)(1)(a)) (requiring only that complaints make sufficient allegations on the merits).

Plaintiffs are also wrong to assert that "[a]ny legal argument is 'limited to 15k characters.'" RAB44. When arbitration begins, the parties submit "documents *and initial arguments*" that can consist of "the lesser of 10 total files, 25 total pages for each file or 25MB of aggregate uncompressed uploads." 2-ER-189 (Rule 6(a)(vii)) (emphasis added)). So Plaintiffs have 250 pages (or 25 megabytes) to set forth their initial positions—more than enough to challenge enforceability, without "imperiling" substantive claims. Additionally, Rule 6(a)(vii) gives the arbitrator "discretion" to permit uploads "in excess of the[se] stated limits as necessary to ensure a fundamentally fair process." 2-ER-189. And the arbitrator can always hold "a hearing." *Id.* (Rule 6(a)(ix)(1)). The 15,000-character limit applies only to "[f]inal arguments" submitted after "the hearing, or [a] ruling that no hearing is necessary." *Id.* (Rule 6(a)(x)(2)); *accord* 4-SER-470–71.

b.  The lack of formal discovery as of right does not render the delegation clause unconscionable either.  Discovery will seldom be required to resolve threshold enforceability disputes, and New Era's rules provide sufficient opportunity for discovery in any event.  AOB53-55.

Plaintiffs respond that "[t]he district court *in this case* deemed discovery necessary to fairly resolve unconscionability."  RAB47.  But discovery here was a pointless fishing expedition to support conspiratorial bias allegations against New Era—which the district court rightly rejected.  1-ER-18; *see infra* at 24-25.  In the rare event discovery is needed for threshold enforceability disputes, New Era's arbitrators can freely allow it.  And contrary to Plaintiffs' assertion, RAB43, that can happen even without agreement to arbitrate pursuant to New Era's "Standard" procedures.

Rule 2(o)(iii), which Plaintiffs ignore, gives the arbitrator "discretion to determine whether" to grant "*[a]ny* request for discovery"—without limitation. 2-ER-174 (emphasis added).  Rule 2(q)(i) also lets the arbitrator "direct the opposing party to produce" whatever "relevant or necessary evidence that they are not disclosing" based "upon a finding that good cause for the production exists." 2-ER-175.  Plaintiffs are wrong to say that Rule 2(q)(i) "probably does not apply" to mass arbitrations.  RAB44.  Rule 2 applies to "[a]ll proceedings on the New Era ADR platform."  2-ER-168 (Rule 2(a)(i)).

21

Plaintiffs invoke *Baxter v. Genworth North America Corp.*, 224 Cal. Rptr. 3d 556 (Ct. App. 2017), and *Davis v. Kozak*, 267 Cal. Rptr. 3d 927 (Ct. App. 2020), to claim that the discretionary discovery "failsafe" here is insufficient. RAB45-46. But in *Baxter*, the agreement required *more* than "good cause" to justify discovery. 224 Cal. Rptr. 3d at 570. And both cases concluded that the plaintiffs had made a "factual showing that the discovery limitations would as a practical matter thwart [their] ability to prove [their] particular claims." *Id.* at 569 (emphasis added); *accord Davis*, 267 Cal. Rptr. 3d at 939-40. Neither is true here.

California courts have repeatedly blessed a "good cause" failsafe even as to litigating substantive claims. AOB54 (citing *Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671, 683 (Ct. App. 2002); *Dotson v. Amgen, Inc.*, 104 Cal. Rptr. 3d 341, 350 (Ct. App. 2010)). Plaintiffs ignore *Dotson*. And while they note the agreement in *Mercuro* provided for sharply circumscribed discovery as of right, RAB45, the *Mercuro* court "conced[ed]" this did "not afford [the plaintiff] a reasonable opportunity to prove his statutory claims"—and upheld the scheme anyway, given the "good cause" backstop. 116 Cal. Rptr. 2d at 682-83. The same reasoning applies here. The default discovery limits are not unconscionable.

**C.    The District Court Correctly Rejected Plaintiffs' Meritless Alternative Arguments**

The district court rightly rejected Plaintiffs' two other unconscionability arguments. *See* RAB56-66.  The *Discover Bank* rule is a dead letter under Supreme Court precedent, and Plaintiffs' bias allegations are baseless.

**1.    Plaintiffs Cannot Resurrect *Discover Bank***

By agreeing to the Terms, Plaintiffs waived their right to participate in "class or representative proceeding[s]."  2-ER-123 (capitalization normalized).  Under *Discover Bank*, California law had generally deemed class waivers unconscionable. But in *Concepcion*, the Supreme Court held that the "*Discover Bank* rule is pre-empted by the FAA."  563 U.S. at 352.  On that ground, the district court correctly concluded that "the existence of a class action waiver" here is no "basis for invalidating the [arbitration] agreement."  1-ER-29.

Plaintiffs nevertheless insist that New Era's mass arbitration procedures "deviate [so] markedly" from the "traditional, bilateral" arbitration envisioned by the FAA that "the *Discover Bank* rule survives preemption here."  RAB62-63. That is, Plaintiffs claim the FAA does not protect the parties' agreement to arbitrate pursuant to New Era's mass arbitration procedures, leaving the *Discover Bank* rule free and clear to force this case into federal court.

This argument is wrong all the way down.  For one thing, it rests on the mistaken premise that New Era's rules involve representative proceedings.  That is

23

wrong: Every case in a mass arbitration filing is handled individually in bilateral arbitration, and bellwether determinations are *not* automatically binding on other cases. *Supra* at 7, 15-17.

Plaintiffs also misread *Concepcion*. The Supreme Court was clear: "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations" if they "agree to arbitrate pursuant to the Federal Rules of Civil Procedure, or pursuant to a discovery process rivaling that in litigation." *Concepcion*, 563 U.S. at 351. That holding readily encompasses agreements to arbitrate pursuant to New Era's rules. Representative arbitration "is inconsistent with the FAA" only when "it is manufactured by" state law (as the *Discover Bank* rule required), not when it is "consensual" (as Plaintiffs claim here). *Id.* at 348.

*Concepcion* observed that class or representative arbitration "is not arbitration as envisioned by the FAA" merely to explain why such arbitration "may not be *required* by state law." *Id.* at 351 (emphasis added). A party may still be compelled "under the FAA to submit to class arbitration"—or other arbitration schemes deviating from the traditional, bilateral model—where, as here, "the party *agreed* to do so." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 651 (2022).

## 2. Plaintiffs' Bias Allegations Are Baseless

Plaintiffs incorrectly claim that "the district court did not resolve" their fact-intensive bias charges against New Era. RAB57. The district court found that

the "existing record" did not establish "impropriety or undue influence." 1-ER-18. Rather, it suggested only "that [Live Nation's counsel] was willing to serve as a reference for New Era, that [they] believed some of [their] clients would be interested in New Era's ADR services, and that New Era praised [Live Nation's counsel] and considered [them] 'evangelist[s]' for the company," along with "other law firms"—including Quinn Emanuel Urquhart & Sullivan LLP, "*Plaintiffs' counsel*" here. *Id.* Those factual findings are not clearly erroneous. *See Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 860 (9th Cir. 2021).

On appeal, Plaintiffs emphasize that arbitrators must have "'a minimum level of impartiality,'" RAB57, but ignore that New Era employs reputable, third-party arbitrators, AOB11. Plaintiffs observe that Live Nation provided a significant amount "of New Era's revenues in its first year of operation," RAB57, but omit that Live Nation "now makes up only a small percentage of New Era's overall revenues," 1-ER-18. Plaintiffs accuse Live Nation's counsel of having "helped [New Era] write its Rules," RAB 57-58, but they failed to make "any concrete showing to that effect," 1-ER-18. And while Plaintiffs claim Live Nation's counsel "coordinated with New Era throughout the district court proceedings," RAB57-58, coordination was appropriate given their common interest in upholding New Era's rules. Plaintiffs' remaining allegations—that "New Era actively seeks business" from corporate

defendants and "has strong incentives to appease them"—apply to *any* arbitration provider. RAB58.

Plaintiffs' bias allegations were rightly rejected below. The delegation to New Era should be enforced.

## II. THE PARTIES' FALLBACK AGREEMENT MUST BE HONORED

Plaintiffs offer no good reason why merely changing arbitration providers should eviscerate the parties' longstanding, unequivocal intent to arbitrate, particularly in the face of never-challenged fallback terms. Even if the delegation to New Era is unconscionable, this case must be arbitrated before FairClaims or a mutually agreeable arbitration provider pursuant to the parties' current agreement. And if that agreement is somehow unenforceable as well, the case must be arbitrated before JAMS pursuant to their preexisting agreement.

### A. The Parties' Agreement To Arbitrate Before A Backup Arbitrator Must Be Respected

Plaintiffs acknowledge that the parties "designat[ed]" what should happen if New Era cannot arbitrate—the case should be sent to FairClaims or a mutually agreeable arbitrator. RAB70. But Plaintiffs *still* have not suggested *any* problem with either alternative. Their defense of the district court's refusal to enforce the parties' backup agreement does not withstand scrutiny.

1. In claiming the district court had "broad leeway" not to sever any unconscionable provisions, RAB67, Plaintiffs ignore California's "strong"

presumption favoring severance. *Roman v. Superior Court*, 92 Cal. Rptr. 3d 153, 166 (Ct. App. 2009); *accord Adair v. Stockton Unified Sch. Dist.*, 77 Cal. Rptr. 3d 62, 73 (Ct. App. 2008). That presumption is especially strong here because the arbitration agreement has a global severability clause—which Plaintiffs ignore—and explicitly designates backup arbitrators. AOB56-58.

Plaintiffs cannot overcome the pro-severability presumption. Nothing suggests that the arbitration agreement has "no lawful object." *Poublon*, 846 F.3d at 1273. Arbitration is plainly lawful, and replacing JAMS with New Era was meant to restore arbitration as a viable dispute-resolution mechanism. Providing for backup alternatives whose impartiality has never been challenged cannot defensibly be viewed as attempting to impose an inferior forum. AOB59-60.

2. Plaintiffs respond that the agreement has "multiple independent substantively unconscionable provisions," and that California has a per se rule against severance whenever a contract "'contains more than one unlawful provision.'" RAB68. But Plaintiffs' overwhelming focus is on a single provision— the Terms' selection of New Era. New Era's rules and procedures are not separate provisions, any more than a state's rules of civil procedure are separate provisions of a contract containing a forum-selection clause.[7]

_____

[7] Plaintiffs note that the "one-sided appeal right" and "class-action waiver" are not in New Era's rules. RAB68. But as explained, the former is irrelevant to the

27

In any event, Plaintiffs' automatic "no-severance" rule does not exist. As this Court recognized in *Poublon*, "California courts have not adopted" a "per se rule" against severance if there is "more than one [unconscionable] clause." 846 F.3d at 1273 & n.7. While Plaintiffs disparage that conclusion as "dicta," RAB69, this Court is "bound" by *Poublon*'s detailed analysis, even if it is only "'[w]ell-reasoned dicta.'" *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019).

*Poublon* is also correct. The touchstone of the severance inquiry is whether the contract is "permeated by unconscionability." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 698 (Cal. 2000). The mere fact of multiple unconscionable provisions—even if minor or readily severable—is a poor proxy for whether the contract has "no lawful object" as a whole. *Poublon*, 846 F.3d at 1273.

Plaintiffs thus overread *Pinela v. Neiman Marcus Group, Inc.*, 190 Cal. Rptr. 3d 159 (Ct. App. 2015). *Pinela* did not establish a hard-and-fast rule that severance is "not appropriate" whenever a contract has "multiple" unconscionable provisions. RAB67-68. Rather, *Pinela* held that severance is required unless doing so would require "rewriting the parties' contract." 190 Cal. Rptr. 3d at 184; *see Poublon*, 846 F.3d at 1273 n.7 (rejecting analogous mischaracterization). Here, nothing needs to be rewritten.

---

delegation clause, and Plaintiffs' attacks on both are foreclosed by *Sanchez* and *Concepcion*, respectively. *Supra* at 14-15, 23-24.

3. Finally, Plaintiffs argue that allowing contractual "contingency plan[s]" would "'incentiv[ize] [companies] to pack their arbitration agreements with unenforceable provisions.'" RAB70 (quoting *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1009 (N.D. Cal. 2015)). But Plaintiffs' only authority does not support that proposition. In *Capili*, the arbitration agreement erected "substantial barrier[s]" to filing claims, while the defendant merely offered to "waive" those concededly unconscionable measures after the fact. 116 F. Supp. 3d at 1007, 1009. The agreement also lacked "mutuality" because it applied only to claims against the defendant, meaning it could not be saved even by eliminating those barriers. *Id.* at 1008-09.

This case is totally different. Both parties must arbitrate their claims. There are no barriers to filing claims. And an explicit provision addresses the possibility that New Era cannot serve as arbitrator. Far from seeking "'to resuscitate a legally defective contract merely by offering to change it,'" *id.* at 1009, Live Nation seeks to enforce the balance of the parties' contract as written. Parties should be encouraged to agree on contingency arrangements in this sensible manner.

The bottom line is that Plaintiffs have identified no problems with FairClaims or a mutually agreeable arbitrator. New Era's purported shortcomings are no reason to cancel arbitration entirely, particularly given the parties' longstanding agreement

29

to arbitrate, and the parties' express agreement to backup options no one has challenged. Refusing to honor those backup agreements was an abuse of discretion.

**B.    At Minimum, This Case Must Be Arbitrated Before JAMS**

Arbitration cannot be denied altogether just because the parties agreed to switch arbitration providers. If that switch is unenforceable, then the preexisting agreement to arbitrate before JAMS—which this Court upheld in *Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505 (9th Cir. 2023)—should be enforced.

Both parties agree that the revised Terms attempted to effect a novation of their prior arbitration agreement, which California law defines as "substitut[ing]" a "new obligation" in place of "an existing one." Cal. Civ. Code § 1530; *see* AOB61-62. Plaintiffs argue that the new agreement to arbitrate before New Era "supersedes" the old agreement to arbitrate before JAMS. RAB72. But only a *successful* novation "extinguishes the original obligation"; an *unsuccessful* novation does not. *Wells Fargo Bank, N.A. v. Bank of Am. NT & SA*, 38 Cal. Rptr. 2d 521, 525 (Ct. App. 1995). The lone exception is when the parties "intend[ed] to destroy the first contract without establishing a new enforceable contract in its place." *Arbitech, LLC v. Hackney*, 2017 WL 4296101, at *7 (Cal. Ct. App. Sept. 28, 2017).

Contrary to Plaintiffs' conclusory assertion, nothing suggests that the parties here "'intended rescission of the first contract [to arbitrate before JAMS]'" even if the revised contract was unenforceable. RAB72. "Both agreements concerned the

30

same subject matter." *Arbitech*, 2017 WL 4296101, at \*7. "The parties understood the later agreement was intended to simply update the earlier version." *Id.* And the mutual "desire to arbitrate" was "unequivocal." *Id.* So here, as in *Arbitech*, "rescission of the [pre-July 2021 arbitration agreement] was conditional upon the enforceability of the [post-July 2021 arbitration agreement]." *Id.* If the new agreement is unenforceable, there was no "effective novation," and this case must proceed before JAMS. *Id.*[8]

Plaintiffs' reliance on *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067 (S.D. Cal. 1999), is similarly misplaced. *Thiele* recognized "that when a modification or substitution is void," then "the prior contract is revived." *Id.* at 1071. It declined to apply that rule only because the modified arbitration agreement there was *not* void—it was "wholly enforceable" as to some claims. *Id.* at 1072. Here, Plaintiffs assert that the July-2021 agreement switching to New Era or alternative arbitrator providers is completely *un*enforceable. *See, e.g.*, RAB20.

Plaintiffs ultimately cry forfeiture. RAB71. But Live Nation has always maintained that, even if "New Era's rules and procedures were unenforceable," this "case would still proceed in arbitration, just not at New Era." 2-SER-107. The

---

[8] *Arbitech* ultimately "*affirmed* an order denying a motion to compel arbitration," RAB72, but only because the defendant waived its right to compel arbitration by "actively litigat[ing]" in "superior court," *Arbitech*, 2017 WL 4296101, at \*8. Live Nation has made no such waiver.

JAMS argument is, at worst, "a new argument in support of [that] consistent claim." *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 71 (9th Cir. 2022). Live Nation "thus did not forfeit" this issue. *Id.* The Court must decide it, if this case comes to that.

## CONCLUSION

This Court should reverse and remand with instructions to grant the motion to compel arbitration.

Dated: January 3, 2024                    Respectfully submitted,

                                                          */s/ Timothy L. O'Mara*

Roman Martinez                          Timothy L. O'Mara
Uriel Hinberg                                *Counsel of Record*
LATHAM & WATKINS LLP        Andrew M. Gass
555 Eleventh Street, NW            Alicia R. Jovais
Suite 1000                                    Robin L. Gushman
Washington, DC 20004              Nicholas Rosellini
(202) 637-2200                            LATHAM & WATKINS LLP
                                                  505 Montgomery Street
Sadik Huseny                              Suite 2000
LATHAM & WATKINS LLP        San Francisco, CA 94111
300 Colorado Street                     (415) 391-0600
Suite 200                                     tim.o'mara@lw.com
Austin, TX 78701
(737) 910-7300

*Counsel for Defendants-Appellants*
*Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 8.  Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** <u>23-55770</u>

      I am an attorney for Defendant-Appellants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.

      This reply brief contains 6,999 words, excluding the items exempted by Fed. R. App. P. 32(f).  The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

      I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[..] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>*s/ Timothy L. O'Mara*</u>      **Date** <u>January 3, 2024</u>