No. 23-55770

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SKOT HECKMAN; LUIS PONCE; JEANENE POPP; JACOB ROBERTS,
on behalf of themselves and all those similarly situated,

*Plaintiffs-Appellees.*

v.

LIVE NATION ENTERTAINMENT, INC.; TICKETMASTER LLC,

*Defendants-Appellants*,

On Appeal from the United States District Court
for the Central District of California
No. 2:22-cv-00047-GW-GIS (George H. Wu, District Judge)

**FURTHER EXCERPTS OF RECORD FOR DEFENDANTS-APPELLANTS
LIVE NATION ENTERTAINMENT, INC. AND TICKETMASTER, LLC
(FER-1 to FER-20)
—UNDER SEAL—**

Roman Martinez
Uriel Hinberg
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Sadik Huseny
LATHAM & WATKINS LLP
300 Colorado Street
Suite 200
Austin, TX 78701
(737) 910-7300

January 3, 2023

Timothy L. O'Mara
    *Counsel of Record*
Andrew M. Gass
Alicia R. Jovais
Robin L. Gushman
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600
tim.omara@lw.com

*Counsel for Defendants-Appellants
Live Nation Entertainment, Inc. and Ticketmaster, LLC*

# FURTHER EXCERPTS OF RECORD
## Provisionally Under Seal

| Date | Dkt. No. | Description | Page |
|---|---|---|---|
| 06/06/2023 | 168 | Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion to Compel Arbitration | FER-3 |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN LLC
  Warren Postman (Bar No. 330869)
  wdp@kellerpostman.com
  Albert Pak (admitted pro hac vice)
  albert.pak@kellerpostman.com
1100 Vermont Avenue, N.W., 12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>Defendants. | Case No: 2:22-cv-00047-GW-GJS<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: July 13, 2023<br><br>Hearing Time: 8:30 a.m. |

**FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED JUNE 5, 2023**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

A. The New Era Rules Are Unconscionable ............................................ 2

    1. The Rules are procedurally unconscionable in the extreme ................... 2

    2. The Arbitration Clause is substantively unconscionable ....................... 4

        a. The mass arbitration protocol violates basic fairness, notice, and representation requirements .................................................... 5

        b. New Era's discovery limitations are unconscionable ................... 6

        c. The non-mutual right of appeal is unconscionable ....................... 8

        d. New Era's Rules violate California arbitrator selection law ........ 9

        e. New Era's alignment with Defendants is unconscionable ......... 10

B. The Delegation Clause Itself Is Unconscionable ............................. 11

C. Unconscionability Permeates the Arbitration Agreement ............... 12

D. The FAA Does not Preempt California Unconscionability Law Here. .......... 13

CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771 (2012) ..................................................................... 4, 7

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) .................................................................................. 1, 4, 12

*Azteca Constr., Inc. v. ADR Consulting, Inc.*, 121 Cal. App. 4th 1156 (2004) ........................................................................... 9

*Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019) ............................................................................... 9

*Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000 (N.D. Cal. 2015) .......................................................... 12

*Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74 (2014) ........................................................................... 12

*Cheng-Canindin v. Renaissance Hotel Assocs.*, 50 Cal. App. 4th 676 (1996) ........................................................................... 10

*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004) ............................................................................ 7

*Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846 (2001) .............................................................................. 4

*Geoffroy v. Washington Mut. Bank*, 484 F. Supp. 2d 1115 (S.D. Cal. 2007) .......................................................... 3, 4

*Graham v. Scissor-Tail, Inc.*, 623 P.2d 165 (1981) ......................................................................................... 10

*Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003). ........................................................................ 5

*Kalasho v. BMW of N. Am., LLC*, 520 F. Supp. 3d 1288 (S.D. Cal. 2021) ............................................................ 13

*Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816 (2010) .......................................................................... 11

*Little v. Auto Stiegler, Inc.*, 63 P.3d 979 (Cal. 2003) ...................................................................................... 8

*Modiano v. BMW of N. Am.*, No. 21-cv-00040, 2021 WL 5750460 (S.D. Cal. June 29, 2021) ............................. 13

-ii-                               Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**FER-5**

*Nguyen v. BMW of N. Am.*,
  No. 20-cv-2432, 2022 WL 102203 (S.D. Cal. Jan. 11, 2022) ................................. 13

*OTO, L.L.C. v. Kho*,
  8 Cal. 5th 111 (2019) ................................................................................. 1, 5, 11

*Ovitz v. Schulman*,
  133 Cal. App. 4th 830 (2005) ............................................................................ 13

*Peleg v. Neiman Marcus Grp., Inc.*,
  204 Cal. App. 4th 1425 (2012) ............................................................................ 4

*Peng v. First Republic Bank*,
  219 Cal. App. 4th 1462 (2013) ......................................................................... 3, 4

*Pinela v. Neiman Marcus Grp., Inc.*,
  238 Cal. App. 4th 227 (2015) .................................................................. 2, 4, 9, 12

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) ............................................................................. 7

*Sanchez v. Valencia Holding Co., LLC*
  353 P.3d 741 (Cal. 2015) ..................................................................................... 8

*Szetela v. Discover Bank*,
  97 Cal. App. 4th 1094 (2002) ......................................................................... 3, 11

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ........................................................................................... 13

**Statutes**

9 U.S.C. § 2 ............................................................................................................. 13

Cal. Civ. Proc. Code § 1281.85 ............................................................................... 9

-iii-                                                                   Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**FER-6**

# INTRODUCTION

The Court rightly indicated that Defendants' "midstream change" to New Era provides "a fairly good reason for finding procedural unconscionability." Ex. 1 at 5:12-16 26:11-19, 43:3-14. In imposing the Terms, Defendants: (1) used a contract of adhesion to impose a novel procedure that departs radically from the process a consumer would expect; (2) slid this change into terms that most consumers had previously agreed to, without flagging the dramatic shift being made; (3) misled consumers about the nature of the agreement; (4) attempted to gain an upper hand regarding claims that not only had accrued, but also were the subject of anticipated litigation; and (5) gave itself the unilateral right to amend the Terms without advance notice or assent from the consumer. That makes this case easy: with "substantial procedural unconscionability," "even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 130 (2019).

But the substantive unconscionability here goes well beyond a "relatively low degree." The New Era arbitration process: (1) binds all claimants to the decisions of a single arbitrator more closely than plaintiffs are bound in an MDL, but then strips away most of the protections present in an MDL; (2) eliminates any right to formal discovery; (3) gives Defendants a one-way right to appeal on the critical issue of injunctive relief; (4) violates California law governing arbitrator selection; and (5) makes claimants proceed in a biased tribunal that has firmly aligned itself with Defendants.

Defendants' primary response to these defects has been to disavow New Era's rules as written, and to assert that New Era will simply apply other, unspecified procedures instead. But Defendants cannot salvage their unconscionable contract by disavowing problematic terms once they have been called out in litigation. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 125 (2000) (citation omitted). And the idea that New Era will depart from the plain text of its Rules (or that the Terms do not mean what they say) only makes the procedural unconscionability worse—by highlighting that consumers cannot tell what the novel, untested, and half-baked process

at New Era will look like.

Each of the above flaws applies specifically to the delegation clause in the Terms. Further, the Rules are so permeated with unconscionable provisions that the Court should invalidate the entire arbitration requirement. And this application of settled unconscionability law is not preempted by the Federal Arbitration Act ("FAA").

## ARGUMENT

### A.  The New Era Rules Are Unconscionable

#### 1.  The Rules are procedurally unconscionable in the extreme

Defendants' imposition of the New Era Rules reveals an extreme level of procedural unconscionability in no fewer than *five* ways.

*First*, Defendants used a contract of adhesion to impose a novel process that departs radically from what a consumer would expect. Ex. 1 at 43:3-14. Bilateral arbitration is, by now, familiar to many consumers. But New Era's mass arbitration protocol is not. Only by finding New Era's lengthy Rules (and puzzling through which set of rules controls) could a consumer realize he or she could be subjected to bellwether cases that resolve *all common issues*. *See* New Era Rule § 2(y). Indeed, even the most thorough consumer will often be unable to tell which version of the rules apply because the mass claims procedure can be triggered by the action of other claimants, which the consumer cannot predict or know at the time of contracting. This sort of surprise increases procedural unconscionability. *See Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 246 (2015).

*Second*, Defendants changed the Terms in a way consumers would not reasonably notice. As Defendants relish in pointing out, consumers assent to the Terms every time they login or buy tickets, which forms a new agreement "dozens, if not hundreds of times," Motion to Compel (ECF 30-1) at 11. After numbing consumers through repetition, Defendants made sweeping changes to their arbitration regime with no additional notice and no way for consumers even to see what changes they made. Ex. 1 at 10:1-11:19. No consumer had any reason to re-investigate the arbitration clause or

-2-   Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

FER-8

seek out New Era's rules. This lack of meaningful notice establishes procedural unconscionability. *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002).

*Third*, after burying the real nature of the surprising new process where it is hard to find, Defendants misled consumers about the nature of the agreement. If a consumer *had* glanced over the Terms, he or she would have seen that they prominently guarantee "individual arbitration," as contrasted with "any purported class or representative proceeding." Dkt. 31-29 (Terms of Use) § 17. Indeed, the Terms never mention "mass" proceedings at all. Any reasonable consumer who read the Terms would be left with the impression that they were signing up for a traditional, bilateral arbitration process, not the radically different representative process imposed by the New Era Rules. Misleading consumers is an obvious form of procedural unconscionability. *E.g.*, *Geoffroy v. Washington Mut. Bank*, 484 F. Supp. 2d 1115, 1121 (S.D. Cal. 2007).

*Fourth,* Defendants attempted to gain an upper hand regarding *accrued* claims that were the subject of *anticipated* litigation. Defendants knowingly fashioned a new "highly customized" subscription solution for "mass arbitrations," Ex. F[1] at 2, 11, that applied to antitrust claims that had already accrued—claims they predicted would become a mass arbitration. Defendants respond to this point by saying they "have never argued … that the *Oberstein* named plaintiffs must arbitrate at New Era." Reply at 7. But that is a half-denial at best. Defendants cannot dispute that they changed the Terms to gain a tactical advantage regarding claims that (a) they expected to be litigated and (b) *had already accrued.* Under settled California law an "implied covenant" "prevents [a party] from modifying an arbitration agreement once a claim has accrued or become known to it." *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1474 (2013). Here, Defendants' Motion to Compel Arbitration asks this Court to impose the modified Terms to Plaintiffs' *already-accrued* claims. *See also* Dkt. 31-29 §17 (The amended arbitration clause applies "irrespective of when [the] dispute … arose."). That violates the implied

---

[1] Exhibits referenced here are those filed in support of Plaintiffs' original Response.

-3-                                    Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

FER-9

covenant and is procedurally unconscionable.

*Fifth*, Defendants gave themselves the unilateral right to amend the terms in the future. Counsel for Defendants tried to disavow this fact at the hearing. Ex. 1 at 42:19-21. But Defendants cannot disavow unconscionable terms just because they become inconvenient in litigation. *Armendariz*, 24 Cal. 4th at 125. And the Terms could not be clearer: Defendants "may make changes to the Terms at any time. Any changes we make will be effective immediately when we post a revised version of the Terms on the Site. . . By continuing to use this Site after that date, you agree to the changes." Dkt. 31-29 at 2. The Terms thus give Defendants the right to alter the Terms, with immediate effect, simply by posting a revised version to the internet.[2] And merely *using the website* purportedly counts as assenting to revised Terms. That is egregiously unconscionable. *Peleg v. Neiman Marcus Grp., Inc.,* 204 Cal. App. 4th 1425, 1433 (2012).

Many cases have held that significant procedural unconscionability exists where, as here, key "terms are hidden in a prolix printed form," *Flores v. Transam. HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001), or the arbitral rules are "not attached," *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 797 (2012). But the unconscionability here is far greater. Defendants snuck in an unprecedented and unanticipated process. *Cf. Pinela*, 238 Cal. App. 4th at 246. They misleadingly told consumers they were agreeing to solely "individual" arbitration. *Cf. Geoffroy*, 484 F. Supp. 2d at 1121 (unconscionable where document had a "somewhat misleading … title"). They are attempting to impose new terms on already-accrued claims, in clear violation of California law. *Peng*, 219 Cal. App. 4th at 1474. And they reserved the right to make unilateral changes without any actual consent from consumers. *Peleg,* 204 Cal. App. 4th at 1433. These factors combined make the Terms extremely procedurally unconscionable.

**2.     The Arbitration Clause is substantively unconscionable**

---

[2] New Era also changes its Terms of Use with no warning, and did so *yesterday*—the same day it filed an unsolicited declaration in this Court. *See* Ex. 2 (https://www.neweraadr.com/terms-and-conditions/). Because these Terms of Use are incorporated by reference into the Arbitration Rules, they appear to apply to Plaintiffs.

-4-     Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

Under California's "sliding scale" approach, the high degree of procedural unconscionability with the Terms means Plaintiffs must make only a "relatively low" showing of substantive unconscionability. *OTO, L.L.C.*, 8 Cal. 5th at 126, 130. But the Terms are riddled with substantively unconscionable provisions too. "[B]oth procedural and substantive unconscionability are so present that it is almost impossible to keep from tripping over them." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406-08 (2003).

      **a.** ***The mass arbitration protocol violates basic fairness, notice, and representation requirements***

The core innovation of New Era's rules—which Defendants flee from at every turn—is consolidating all cases before one arbitrator, who issues rulings on common issues that bind *everyone who ever brings claims*. Defendants claim that the neutral merely "*may* apply" its resolution of common issues to all cases. Reply at 9. But that argument relies on the *general* definition of "Precedent" in the New Era Rules and ignores the more specific rule governing mass claims. That rule says that "Bellwether Cases" will result in "Lead Decisions," and "the determinations made from the Lead Decisions … ***will act*** as Precedent on subsequent cases with Common Issues of Law and Fact as applied to those Common Issues of Law and Fact," and in "all … cases, even if later filed, the Precedent(s) ***shall be applied***." Dkt. 30-4 ("New Era Rules") § 6(b)(iii)(4)-(5) (emphasis added).

The impact of this language is clear: across a host of case-dispositive issues—from the threshold unconscionability determination, to the market definition, to Defendants' antitrust liability—a ruling of law in the Bellwether case "***shall be applied***" in ***all*** future cases. That should not be surprising: the *whole point* of the mass arbitration protocol is to decide common issues for all cases *once*. But since the mass claims process applies to all cases deemed related (even if later filed), the result is that later-filed cases will be bound by a ruling for which the claimant had no notice, no opportunity to participate, and no opt-out right—a clear due process violation.

This due process violation is all the more troubling because all-important "Lead

-5-      Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**FER-11**

Decisions" must be litigated under (1) absurd limitations on briefing and record evidence and (2) without the ability to address threshold issues first. Specifically, briefing is limited to "15K" characters (roughly 5 single-spaced pages) and record evidence is limited to "10 total files, 25 total pages for each file." *See* Response at 9. While the Rules say arbitrators have discretion to modify record limitations, the rules omit that discretion for briefing limits. To the extent Defendants claim such discretion exists anyway, they concede that New Era's process does not follow the rules as written, and consumers have no way to know in advance what this novel, half-baked process will involve.

Making matters worse, the Rules say that threshold issues including "arbitrability" and "jurisdiction … shall be argued … [with] the merits" and "not through any preliminary hearings or motion practice." New Era Rules §2(z)(ii). Particularly given the stringent briefing and record limitations, bellwether plaintiffs in complex cases risk being unable to brief and litigate threshold issues adequately for fear of prejudicing the merits of their complex antitrust claims. The "Precedent" from these cases would then apply to everyone, without regard to the adequacy of the briefing or record.

Defendants analogize to MDLs, but as the Court recognized, "[t]his is not the MDL process." Ex. 1 at 18:13-19:15. MDLs are public, giving plaintiffs notice of prior rulings before filing their case and an opportunity to weigh in on important issues that affect them. MDLs involve consolidation only for pre-trial purposes, reserving the merits for other decisionmakers. *Id.* MDLs have formally appointed leadership with duties to all plaintiffs and do not purport to resolve *all* common issues in a mere 45 days. And MDLs allow appeals, so that when a high-stakes issue is decided incorrectly, it can be reviewed; the New Era procedure denies that right to claimants (though it grants it to Defendants for injunctive relief). This defect applies specifically to the delegation clause, as that clause binds all litigants to a single, non-appealable decision on threshold questions, for which they are not afforded notice and an opportunity to be heard.

**b.**   *New Era's discovery limitations are unconscionable*

The discovery limitations under New Era's Rules are also unconscionable. The

-6-   Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**FER-12**

Rules make clear that only *standard arbitrations* provide a right to discovery: "A formal discovery process exists solely in New Era ADR's Standard Arbitration process." New Era Rules §2(o)(i). This Court observed that, if Plaintiffs wished to "upgrade" to standard arbitrations, Defendants would cover additional costs. *See* Tentative Ruling at 14-15. But Plaintiffs *cannot* upgrade without Defendants' permission (which they have no reason to provide): "parties may contractually determine whether certain proceedings fit under Virtual Expedited or Virtual Standard arbitrations, **and New Era ADR will respect those contractual agreements.**" New Era Rules §5(a)(i) (emphasis added).

Defendants argue that discovery actually *is* available even in expedited arbitrations "as needed to ensure a fundamentally fair process," and appear to posit some sort of unwritten, discretionary right to informal discovery. But there are three problems with that argument. *First*, Defendants cite no provision in the Rules that actually says that or anything like it applies under the Virtual Expedited Rules. Reply at 16. *Second*, Defendants argument only highlights the procedural unconscionability of imposing a novel process that does not give consumers notice of how disputes will be resolved. Indeed, Courts routinely reject attempts to save arbitration clauses by "interpret[ing] provisions] as applying only where lawful." *Ajamian*, 203 Cal. App. 4th at 800-01. *Third*, even if true, the New Era process would still not give consumers a *right* to any discovery. Every case upholding limitations to discovery in arbitration involved procedures that gave claimants a baseline *right* to some discovery, and then discretion to an arbitrator to grant *additional* discovery. *See, e.g.*, *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1269 (9th Cir. 2017) ("[E]xcept on a substantial showing of good cause, discovery will be limited to the exchange of relevant documents and three depositions per side."). Even then, courts have invalidated procedures where the standard for *additional* discovery was strict. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 716 (2004) (provision allowed two depositions by right and additional discovery only if "a fair hearing would be impossible without it."). Defendants have not cited any case upholding a process in which there was **no** discovery **as of right**, let alone where initial discovery

-7-   Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**FER-13**

is available only upon finding that denying discovery would be "fundamentally unfair."

This ground of unconscionability also applies to the delegation clause. As this case illustrates, discovery can often be relevant to questions of arbitrability—the Court granted Plaintiffs discovery on *threshold issues of arbitrability*, like unconscionability. ECF No. 49 at 4. But under New Era's rules, a plaintiff cannot obtain such discovery.

### c. *The non-mutual right of appeal is unconscionable*

Defendants rely entirely on *Sanchez v. Valencia Holding Co., LLC* to defend the non-mutual right of appeal, but that case is distinguishable in two ways. 353 P.3d 741, 753 (Cal. 2015). *First*, as the California Supreme Court emphasized, the provision there allowed appeal *if the award was for $0, or* over $100,000, *or* injunctive relief was granted. *Id.* Generally, where a plaintiff did not receive injunctive relief, he also would get $0, and so could appeal. The only time the injunctive relief asymmetry would apply is if the plaintiff recovered *some* money, but not injunctive relief, which was unlikely, and not so tilted against plaintiffs as to shock the conscience. This case, however, is much closer to *Little v. Auto Stiegler, Inc.*, in which take-nothing judgments were *not* appealable, but "awards exceeding $50,000" were. 63 P.3d 979, 983 (Cal. 2003).

*Second*, the mass claims procedure here makes the denial of injunctive relief far more significant. *Sanchez* involved traditional, bilateral arbitration. There, the denial of injunctive relief affected just a single plaintiff, whereas the grant of injunctive relief could be broadly disruptive to the defendant. In that context, it was the uniquely "far-reaching [impact] of an injunctive relief remedy" on the defendant that warranted appellate protection. *Sanchez*, 353 P.3d at 753. Here, the denial of injunctive relief for a bellwether plaintiff would result in the denial for *all* plaintiffs. That is particularly significant in the context of antitrust claims, where injunctive relief is vital. Thus, the risks of injunctive relief here are equally high-stakes for both sides, not asymmetric for Defendants, and there is no justification for one-sided appellate protection.

Again, this ground applies to the delegation clause, as claimants would seek an injunction barring the application of the unconscionable arbitration clause itself. The

-8-  Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

New Era Rules grant Defendants a one-sided appeal of that right, but bar later claimants from litigating it (without notice or an opportunity to participate) with no appeal.

### d. *New Era's Rules violate California arbitrator selection law*

Defendants do not dispute that the selection procedure violates California law in multiple respects outlined in Plaintiffs' Response, but say that they opted-out of California law by providing that "the FAA governs" and that "[s]tate arbitration laws do not govern in any respect." Dkt. 31-29 § 17.

This argument fails because contractual waivers of California law are still subject to the unconscionability doctrine. *Pinela v. Nieman Marcas Group, Inc.* proves the point. 238 Cal. App. 4th at 227. There, a choice-of-law provision in the delegation clause required application of Texas law. *Id.* at 246. The court held that where "the contract is unconscionable under California law, a contractual provision requiring the application of a different state's law to enforce the contract is itself unenforceable." *Id.* at 246-47. The same is true where a delegation clause purports to "waive[]" a party's "statutory rights," which "is plainly obnoxious to public policy in California." *Id.* at 252; *see also, e.g.*, *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (upholding this non-waiver rule against an FAA challenge). Clearly, waiving the disclosure and ethics requirements of California law undermines the public policy of California. *See Azteca Constr., Inc. v. ADR Consulting, Inc.*, 121 Cal. App. 4th 1156, 1160 (2004) ("The provisions for arbitrator disqualification established by the California Legislature may not be waived or superseded by a private contract."). Indeed, California law expressly provides that each of the arbitrator disclosure, strike, and selection problems identified in the Response "are nonnegotiable and shall not be waived." Cal. Civ. Proc. Code § 1281.85(c). The purported waiver of mandatory California law in favor of some other body of law is therefore unconscionable and unenforceable.

Defendants do not really dispute that the New Era Rules violate California law. Instead, they claim that California law is preempted because they invoked the FAA in their contract. That response is a non-sequitur. The FAA preempts conflicting state law

-9-    Case No. 2:22-cv-00047-GW-GJS

rules *regardless* of whether the parties reference the FAA in their contract. The preemption analysis turns not on whether the parties reference the FAA, but on whether state law conflicts with the FAA. And, as explained further below, Defendants cannot show that California's arbitrator selection provisions conflict with the FAA.

### e. *New Era's alignment with Defendants is unconscionable*

Defendants repeatedly invoke cases holding that courts should be reluctant to find that an arbitrator is actually biased. Reply at 12-13. But they ignore a separate line of cases holding that contracts are unenforceable if they require arbitration before a forum that lacks minimum levels of integrity. This latter line does not require a finding of actual bias and instead reflects the sensible proposition that plaintiffs cannot be forced to play on a defendant's home court. These cases ask whether the forum has "interests [] so allied with those of the party that, for all practical purposes, [it] is subject to the same disabilities which prevent the party [itself] from serving." *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 177 (1981); *see also Cheng-Canindin v. Renaissance Hotel Assocs.*, 50 Cal. App. 4th 676, 687-88 (1996).

Discovery shows that New Era lacks a "minimum level of impartiality." Defendants provided virtually **100%** of its revenues for its first year of operations—an unprecedented fact that renders New Era unlike any other ADR provider in history. Ex. E. Its advertising pitched New Era as a "critical prophylactic measure for … mass arbitration risk." Ex. F at 14; Ex. C at 66. Its business model rests on attracting *corporate defendant clients* who need a "mass arbitration/class action risk-reducing subscription solution." Dkt 34-1 at 5. New Era's allergy to sunlight is also striking. New Era spent hours in the critical period when writing its arbitration rules on Zoom calls with the defense-side lawyers litigating this very case—but took no notes and scrupulously avoided email. Ex. C at 105-09, 146-48. New Era's founder admitted that its ties with Latham could give rise to an appearance of bias. Ex. C at 142-43.

Then, after resisting discovery, New Era has insisted that the deposition of its founder delving into the creation of its rules be *sealed*, together with the documents it

-10-   Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**FER-16**

turned over. Reputable arbitration providers such as AAA or JAMS would not align themselves so heavily with a single corporate Defendant who also happens to be their first major client and then insist on the secrecy of these associations. AAA and JAMS each also have bedrock protections for consumers that guarantee minimum levels of fairness. *See* Ex. A (AAA Due Process Protocol); Ex. B (JAMS Arbitration Minimum Standards). New Era does not.

**B.     The Delegation Clause Itself Is Unconscionable**

Each argument above directly renders the delegation clause itself unconscionable. The delegation clause is procedurally unconscionable because it imposes a novel mass process for threshold arbitrability disputes, in a contract of adhesion, without clear notice to consumers. The Terms further mislead consumers by suggesting that threshold issues will be decided in purely "individual" arbitration as contrasted with a representative proceeding. Defendants' oppression in rewriting their arbitration provision to favor them with respect to *known* and *accrued* claims is clearest in the delegation clause, which makes the tilted process impossible to challenge fairly. And the Terms purport to give Defendants the right to unilaterally change the delegation clause in the future. *See OTO, L.L.C.*, 447 P.3d at 692 (high procedural unconscionability rendered a delegation clause unconscionable); *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 822-23 (2010) (same); *Szetela*, 97 Cal. App. at 1094 (same).

The delegation clause is also substantively unconscionable. The mass arbitration protocol by its text applies to all threshold issues, meaning future litigants will have arbitrability and unconscionability resolved confidentially in "precedents" before having any notice or an opportunity to be heard. The discovery and record limitations apply to threshold issues that this Court has determined call for discovery and briefing. And, unlike this Court, arbitrators are not permitted to bifurcate threshold issues or resolve them by dispositive motions practice. They *must* consider them with the merits. New Era Rules §§2(z)(ii), §2(r)(iii)(1). The non-mutual appeal provision applies to threshold issues, since equitable relief (including rescission or enjoining the application of an

-11-                                            Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

1 unconscionable arbitration provision) could be appealed, but not straight defense wins. And New Era's alignment with defendants eliminates the minimum levels of integrity needed to make a plaintiff comfortable with its adjudication of threshold issues. Finally, the California disclosure and disqualification rules go to the core of the delegation clause, since they affect which arbitrators serve and what ethics disclosures they make.

**C.     Unconscionability Permeates the Arbitration Agreement**

The *Pinela* case illustrates the proper course in determining severability. There, the Court first "found the delegation clause to be unenforceable," and then "consider[ed] the enforceability of the … Agreement as a whole." 238 Cal. App. 4th at 250. Each of the unconscionable elements that infect the delegation clause also infect the rest of the arbitration agreement, intensifying the problem (for example, as applied to the merits, the Rules are even more surprising and oppressive). But there are also other unconscionable aspects the Court should consider: how the extreme limits on page counts and discovery would affect the fairness of a *merits* determination; the unconscionability of imposing $300 per claimant even for the thousandth claimant, for whom the alternative was free participation in a class action; the unconscionability of granting statutorily entitled fees only if the arbitrator "deem[s]" such an award "reasonable," New Era Rules §2(v)(iii), or of failing to allow an opt-out, or many others.

Because "the central purpose of … [the] arbitration agreement is tainted with illegality," "the provision as a whole cannot be enforced." *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 90 (2014). Where, as here, "more than one unlawful provision" exists, courts routinely refuse to sever. *Armendariz*, 24 Cal. 4th at 124. Here, Defendants' design is perfectly clear. They fashioned an unfair arbitral forum specifically to defeat accrued antitrust claims they knew would be filed. In light of that purpose, it is unsurprising that the agreement has many unconscionable terms. Because Defendants acted strategically, this Court should decline to sever—otherwise, companies "would have every incentive to pack their arbitration agreements with unenforceable provisions designed to chill … claims." *Capili v. Finish Line, Inc.*, 116

-12-                                    Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

F. Supp. 3d 1000, 1009 (N.D. Cal. 2015).

### D. The FAA Does not Preempt California Unconscionability Law Here.

The FAA does not preempt any of the well-established grounds for unconscionability above because they are all "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Regardless of whether arbitration is involved, contracts are unconscionable if they deny notice and an opportunity to be heard, unfairly restrict the right to discovery or hearing through absurd page and discovery limitations, impose one-sided procedural rules, use biased decisionmakers, or waive statutory rights.

Defendants largely concede this point, invoking preemption only against California's disclosure and disqualification rules. But the FAA does not "reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 477 (1989). So, to show conflict preemption, Defendants must identify an FAA provision that overrides California's disclosure and disqualification rules. They cannot. The FAA does not address arbitrator disclosure and disqualification. And the California rules do nothing to interfere with arbitration. Instead, they *promote* arbitration by buttressing public confidence in arbitrators' neutrality. Defendants cite one unpublished case against applying these rules, *Modiano v. BMW of N. Am.*, No. 21-cv-00040, 2021 WL 5750460 (S.D. Cal. June 29, 2021), but they ignore published, on-point authority from the same court and the California Court of Appeals holding the opposite. *See Ovitz v. Schulman*, 133 Cal. App. 4th 830, 849 (2005); *Kalasho v. BMW of N. Am., LLC*, 520 F. Supp. 3d 1288, 1295 (S.D. Cal. 2021) ("the CAA provisions at issue are not preempted by the FAA because the two statutes do not conflict"); *Nguyen v. BMW of N. Am.*, No. 20-cv-2432, 2022 WL 102203, at *6 (S.D. Cal. Jan. 11, 2022) (following *Kalasho*, not *Modiano*).

### CONCLUSION

The Motion to Compel should be denied. To the extent the Court believes calling witnesses from New Era and Defendants will allow the Court to better evaluate any contested facts regarding bias, Plaintiffs request an evidentiary hearing.

-13-   Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**FER-19**

| | |
|---|---|
| Dated: June 2, 2023 | Respectfully submitted, |
| | /s/ *Kevin Y. Teruya* |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN LLC
  Warren Postman (Bar No. 330869)
  wdp@kellerpostman.com
  Albert Pak (admitted *pro hac vice*)
  albert.pak@kellerpostman.com
1100 Vermont Avenue, N.W., 12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123
Facsimile: (312) 971-3502

*Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated*

-14-   Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION